## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHICAGO WOMEN IN TRADES, | |
|      Plaintiff, | Case No. 1:25-cv-02005 |
| v. | Judge: Hon. Matthew F. Kennelly |
| PRESIDENT DONALD J. TRUMP, DEPARTMENT OF LABOR, ACTING SECRETARY OF LABOR VINCENT MICONE, OFFICE OF MANAGEMENT AND BUDGET, DIRECTOR OF THE OFFICE OF MANAGEMENT AND BUDGET RUSSELL VOUGHT, U.S. DEPARTMENT OF JUSTICE, ATTORNEY GENERAL OF THE U.S. DEPARTMENT OF JUSTICE PAMELA BONDI, | JURY TRIAL DEMANDED |
|      Defendants. | |

## MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................................................1

FACTUAL BACKGROUND ................................................................................................2

    A.    Chicago Women in Trades .......................................................................2

    B.    EO 14151, "Ending Radical and Wasteful Government DEI
Programs and Preferencing" ....................................................................2

    C.    EO 14173, "Ending Illegal Discrimination and Restoring Merit-
Based Opportunity" ..................................................................................2

    D.    The Government Cannot Define the Scope of the Anti-Diversity
EOs .............................................................................................................3

    E.    The Executive Branch Has Already Acted to Enforce the Anti-
Diversity EOs ............................................................................................4

    F.    The EOs Threaten CWIT's Federally Funded Grants ..........................5

    G.    The EOs Have a Chilling Effect on CWIT ...........................................7

ARGUMENT .........................................................................................................................8

I.    The Anti-Diversity EOs Violate the First Amendment .................................8

    A.    The EOs are Unconstitutionally Overbroad ..........................................8

        1.    The EOs Do Not Identify Prohibited Conduct ........................8

        2.    The EOs Allow for Arbitrary Enforcement .............................9

    B.    The EOs are Unconstitutionally Viewpoint Specific ..........................10

    C.    The EOs Impose Unconstitutional Conditions ...................................10

II.    The EOs are Unconstitutionally Vague in Violation of the Fifth
Amendment ......................................................................................................11

III.    The EOs Violate the Separation Of Powers and the Spending Clause ..........12

IV.    CWIT Will be Irreparably Harmed Absent Relief and the Government Will
Suffer No Harm ...............................................................................................14

V.    CWIT's Requested Relief is in the Public Interest .......................................14

VI.    CWIT's Requested Relief Should be Nationwide in Scope ..........................15

CONCLUSION ....................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agency for Int'l Dev. v. All For Open Soc'y Int'l, Inc.*,
   570 U.S. 205 (2013)....................................................................................................10, 11

*In re Aiken Cty.*,
   725 F.3d 255 (D.C. Cir. 2013) ....................................................................................13

*American Civil Liberties Union v. Alvarez*,
   679 F.3d 583 (7th Cir. 2012) ......................................................................................14

*Bd. Of Cnty. Comm'rs v. Umbehr*,
   518 U.S. 668 (1996)................................................................................................10, 11

*Brown v. Kemp*,
   86 F.4th 745 (7th Cir. 2023) .....................................................................................8, 9

*Cassell v. Snyders*,
   990 F.3d 539 (7th Cir. 2021) ........................................................................................8

*Christian Legal Soc'y v. Walker*,
   453 F.3d 853 (7th Cir. 2006) ......................................................................................14

*City & Cnty. of San Francisco v. Trump*,
   897 F.3d 1225 (9th Cir. 2018) ....................................................................................13

*City of Chicago v. Barr*,
   961 F.3d 882 (7th Cir. 2020) ......................................................................................13

*City of Chicago v. Sessions*,
   888 F.3d 272 (7th Cir. 2018) ...........................................................................1, 13, 15

*Coates v. Cincinnati*,
   402 U.S. 611 (1971)......................................................................................................12

*Cook County v. Wolf*,
   962 F.3d 208 (7th Cir. 2020) ........................................................................................8

*Ctr. for Individual Freedom v. Madigan*,
   697 F.3d 464 (7th Cir. 2012) ......................................................................................12

*Ezell v. City of Chicago*,
   651 F.3d 684 (7th Cir. 2011) ......................................................................................14

*F.C.C. v. Fox Television Stations, Inc.*,
    567 U.S. 239 (2012) ................................................................................................12

*Grayned v. City of Rockford*,
    408 U.S. 104 (1972) ...........................................................................................11, 12

*Gresham v. Peterson*,
    225 F.3d 899 (7th Cir. 2000) ..................................................................................11

*Grossbaum v. Indianapolis-Mario Cnty. Bldg. Auth.*,
    63 F.3d 581 (7th Cir. 1995) ...................................................................................14

*Hegwood v. City of Eau Claire*,
    676 F.3d 600 (7th Cir. 2012) .................................................................................11

*HIAS, Inc. v. Trump*,
    985 F.3d 309 (4th Cir. 2021) .................................................................................15

*Int'l Ass'n of Fire Fighters, Loc. 365 v. City of E. Chicago*,
    56 F.4th 437 (7th Cir. 2022) ...............................................................................8, 14

*Keyishian v. Bd. of Regents of Univ. of State of N.Y.*,
    385 U.S. 589 ...........................................................................................................10

*Lamb's Chapel v. Center Moriches Union Free School Dist.*,
    508 U.S. 384 (1993) ...............................................................................................10

*Legal Servs. Corp. v. Velazquez*,
    531 U.S. 533 (2001) ...............................................................................................11

*Nat'l Ass'n for Advancement of Colored People v. Button*,
    371 U.S. 415 (1963) ............................................................................................9, 10

*Nat'l Assoc. of Diversity Officers in Higher Ed., et al. v. Donald J. Trump, et al.*,
    No. 1:25-CV-00333-ABA, 2025 WL 573764 (D. Md. Feb. 21, 2025) .....................3, 4, 9, 15

*Nat'l Council of Nonprofits et al v. OMB et al*,
    1:25-cv-00239 (D.D.C 2025), ECF No. 30.................................................................5

*Perry v. Sindermann*,
    408 U.S. 593 (1972) ...............................................................................................11

*Reno v. American Civil Liberties Union*,
    521 U.S. 844 (1997) .............................................................................................8, 12

*Roberts v. United States Jaycees*,
    468 U.S. 609 (1984) ...............................................................................................11

*Roman Cath. Diocese of Brooklyn v. Cuomo*,
    592 U.S. 14 (2020) .................................................................................14

*Rosenberger v. Rector v. Rector and Visitors of Univ. of Va.*,
    515 U.S. 819 (1995) ...............................................................................10

*Sherman v. Twp. High Sch. Dist. 214*,
    624 F. Supp. 2d 907 (N.D. Ill. 2007) ....................................................10

*Trump v. Int'l Refugee Assistance Project*,
    582 U.S. 571 (2017) ...............................................................................15

*United States v. Stevens*,
    559 U.S. 460 (2010) ...............................................................................10

*United States v. Williams*,
    553 U.S. 285 (2008) ...............................................................................12

*Wisconsin Vendors, Inc. v. Lake Cnty., Illinois*,
    152 F. Supp. 2d 1087 (N.D. Ill. 2001) ..................................................10

**Statutes**

29 U.S.C. § 50 ...................................................................................................6

29 U.S.C. § 2503 ..............................................................................................5

Pub. L. No. 102-530, 106 Stat. 3465 § 2 (1992) .............................................5

Pub. L. No. 105-277, 112 Stat. 2681-641, 653 (1998) ...................................6

Pub. L. No. 113-128, 128 Stat. 1425 (2014) ...................................................7

Pub. L. No. 116-260, 134 Stat. 1182, 1548 (2020) .........................................6

**Rules**

Fed. R. Civ. P. 65(c) .......................................................................................15

**U.S. Constitution**

U.S. Const. Art. I, sec. 8, cl. 1 .......................................................................13

U.S. Const. Art. I, sec. 9, cl. 7 .......................................................................13

**Other Authorities**

11A Charles Alan Wright, et al., Federal Practice and Procedure § 2948.1 (2d ed.
    1995) .......................................................................................................14

## INTRODUCTION

Congress has promulgated no law declaring "diversity," "equity," or "inclusion" illegal. Nor has any court so ruled. To the contrary, Congress has used these terms, and others with similar meaning, in legislation, grants, funding and programs for the past half century, all to promote the goal of equal opportunity embraced by our Constitution. But Executive Orders 14151 and 14713 (collectively, the "anti-diversity EOs") declare diversity, equity, and inclusion—as well as "DEI programs"—"illegal and immoral discrimination." The anti-diversity EOs aim to strip federal funding from any entity that practices or promotes diversity, equity, and inclusion without any definition of the terms used or the specific conduct prohibited.

Plaintiff Chicago Women in Trades ("CWIT") is dedicated to promoting diversity, equity, and inclusion within the skilled trades industry, working every day to achieve gender equity in male-dominated industries. CWIT receives funding via multiple federal grants. CWIT cannot both continue with its mission and comply with the anti-diversity EOs.

The anti-diversity EOs are vague and indeterminate in violation of the First and Fifth Amendments of the U.S. Constitution. They also violate the Spending Clause because their reach exceeds the grasp of the Executive Branch. Indeed, "the Executive Branch does not otherwise have the inherent authority as to . . . condition the payment of [ ] federal funds on adherence to its political priorities." *City of Chicago v. Sessions*, 888 F.3d 272, 283 (7th Cir. 2018). The anti-diversity EOs unconstitutionally trample CWIT's core mission "to ensure that all Americans have the opportunity to earn a fair living, work in a safe environment, and pursue the American dream."[1] For these reasons, set forth in more detail below, the anti-diversity EOs should be enjoined.

---

[1] Declaration of Jayne Vellinga ("Vellinga Decl.") ¶ 74.

1

## FACTUAL BACKGROUND

### A.     Chicago Women in Trades

CWIT is a non-profit organization that prepares women across the country to enter and remain in high-wage skilled construction trades (*e.g.*, carpentry, electrical work, welding, and plumbing), which are plagued by longstanding discrimination and occupational segregation. *See* Vellinga Decl. ¶¶ 1, 3, 6-9. CWIT is dedicated to promoting diversity, equity, and inclusion; approximately 70% of its program participants identify as Black and Latina. *See id*. ¶¶ 4-5, 10-11.  As a recipient of multiple federal grants (*see infra* Factual Background § F), CWIT provides training programs, best practices guides, employer resources, and advocacy to attract and retain women in skilled trades. *See id*. ¶¶ 3, 10-12, 14. CWIT's national reach includes mentorship programs in Illinois, New York, Michigan, Texas, Pennsylvania, and Ohio. *See id*. ¶¶ 15, 72.

### B.     EO 14151, "Ending Radical and Wasteful Government DEI Programs and Preferencing"

On January 20, 2025, President Trump signed Executive Order 14151 ("J20 EO") declaring programs promoting diversity, equity, and inclusion "illegal and immoral discrimination." J20 EO § 1. CWIT challenges the legality of two provisions of the J20 EO:

**Section 2(b)(i)** orders all executive agencies to "terminate . . . 'equity-related' grants or contracts" without defining "DEI," "DEIA," "diversity," "equity," "equity-related," "inclusion," or "accessibility." § 2(b)(i) ("J20 Termination Provision"); and for that purpose,

**Section 2(b)(ii)(A)** of the J20 EO directs each agency head to identify for the OMB Director "agency or department DEI, DEIA, or 'environmental justice' positions, committees, programs, services, activities, budgets, and expenditures in existence on November 4, 2024," and to assess whether any such initiatives have been "misleadingly relabeled[.]"

### C.     EO 14173, "Ending Illegal Discrimination and Restoring Merit-Based Opportunity"

On January 21, 2025, President Trump signed Executive Order 14173 ("J21 EO").  The J21 EO declares programs supporting diversity, equity, and inclusion "dangerous, demeaning,

and immoral." § 1. Like the J20 EO, the J21 EO does not define "DEI," "DEIA," "diversity,"
"equity," "equity-related," "inclusion," or "accessibility." CWIT challenges the legality three
provisions of the J21 EO:

> **Section 3(c)(iii)** orders the OMB Director, with the assistance of the Attorney General, to
> "[t]erminate all 'diversity,' 'equity,' 'equitable decision-making,' 'equitable deployment
> of financial and technical assistance,' 'advancing equity,' and like mandates,
> requirements, programs, or activities, as appropriate." ("J21 Termination Provision").

> **Section 3(b)(iv)** orders all executive agencies to "include in every contract or grant
> award" a certification, enforceable through the False Claims Act, that the contractor and
> grantee "does not operate any programs promoting DEI that violate any applicable
> Federal anti-discrimination laws." ("Certification Provision").

> **Sections 4(b), 4(b)(iii)** orders the Attorney General to take "appropriate measures to
> encourage the private sector to end illegal discrimination and preferences, including
> DEI," to "deter" such "programs or principles," and to "identify . . . potential civil
> compliance investigations" to accomplish such "deter[rence]." ("Enforcement Threat
> Provision").

### D. The Government Cannot Define the Scope of the Anti-Diversity EOs

On February 19, 2025, the United States District Court for the District of Maryland held a

TRO hearing in *Nat'l Assoc. of Diversity Officers in Higher Ed., et al. v. Donald J. Trump, et al.*,

No. 1:25-CV-00333-ABA, 2025 WL 573764 (D. Md. Feb. 21, 2025), a separate challenge to the

anti-diversity EOs. The court asked the government a simple question: "what are equity-related

grants?" *See* Declaration of Warrington Parker ("Parker Decl.") ¶ 2, Ex. A at 62:17. Counsel for

the government refused to answer, deeming the question not "relevant to the litigation." *See id*.

62:23-63:14. The court probed further: "in attempting to defend the Government's right to

terminate these contracts you are not prepared to tell me how the Government is determining

whether to terminate grants or contracts?" *Id*. 65:11-14. Counsel would not answer that question,

either. *See id*. 65:15-17.

The court also asked two hypotheticals aimed at determining the meaning of the terms in

the Certification Provision: whether (1) it would "constitute illegal DEI for a teacher to use

[Department of Education-funded] computers to teach about Jim Crow?"; and (2) "a small business that's in the IT industry [and] that historically has received mostly white applicants" would commit "illegal DEI" by "do[ing] an information session at an HBCU?" *Id*. 78:23-79:25. In both instances, counsel for the government declared she could not "answer these sorts of hypotheticals." *See* 78:23-80:10. The court concluded that "even the government does not know what constitutes DEI-related speech that violates federal anti-discrimination laws." *Nat'l Ass'n of Diversity Officers in Higher Educ.*, 2025 WL 573764, at \*22.

E.     **The Executive Branch Has Already Acted to Enforce the Anti-Diversity EOs**

On January 21, 2025, the Office of Personnel Management ("OPM") Acting Director issued a memorandum directing agency heads to "terminate any DEIA-related contractors" and, by January 23, 2025, to provide OPM with "a complete list of all DEIA-related agency contracts as of November 5, 2024." Parker Decl. ¶ 3, Ex. B. Consistent with this memorandum, on January 22, 2025, CWIT received an email from the grant administrator at the DOL Women's Bureau directing the immediate cessation of "all activities related to 'diversity, equity, and inclusion' (DEI) or 'diversity, equity, inclusion, and accessibility' (DEIA) under [its] federal awards, consistent with the requirements of the" anti-diversity EOs." Vellinga Decl. ¶ 40, Ex. 1.  That same day, CWIT received Training and Employment Notice ("TEN") No. 21-24 from DOL Acting Deputy Assistance Secretary Michelle Paczynski with the subject "Immediate Implementation of [the anti-diversity EOs]."  It directed the same. Vellinga Decl. ¶¶ 42-43, Ex. 2.

On January 27, 2025, OMB issued Memorandum M-25-13, instructing all federal agencies, as of January 28, 2025, to "temporarily pause all activities related to . . . financial assistance for . . . nongovernmental organizations, DEI, [and] woke gender ideology[.]" Parker Decl. ¶ 4, Ex. C; *see also Id*. ¶ 5, Ex. D (OMB Fact Sheet of January 28, 2025). OMB rescinded Memorandum M-25-13 two days later in response to a federal district court order. *See id*. ¶ 6, Ex.

E; *see also Nat'l Council of Nonprofits et al v. OMB et al*, 1:25-cv-00239 (D.D.C 2025), ECF No. 30. However, the White House Press Secretary stated that the rescission was "NOT a rescission of the federal funding freeze" and the anti-diversity EOs "on federal funding remain in full force and effect and will be rigorously implemented." Parker Decl. ¶ 7, Ex. F.

On February 5, 2025, the Attorney General issued a memorandum, citing the J21 EO, stating that DOJ's Civil Rights Division "will investigate, eliminate, and penalize illegal DEI and DEIA preferences, mandates, policies, programs, and activities in the private sector and in educational institutions that receive federal funds." *Id*. ¶ 8, Ex. G.

**F.      The EOs Threaten CWIT's Federally Funded Grants**

CWIT operates as a federal grantee, sub-grantee, and sub-contractor; approximately 40% of its annual budget comes from the federal government. *See* Vellinga Decl. ¶ 16. CWIT receives funding through the following five federal programs directly affected by the anti-diversity EOs:

*(1)  The Women in Apprenticeship and Nontraditional Occupations ("WANTO") Grant.* The WANTO Grant, through DOL, funds CWIT's "Transforming the Workforce System to Ensure Gender Equity in Infrastructure" program, which develops women-focused pre-apprenticeship programs and workforce equity plans for infrastructure projects, and creates women-focused cohorts for co-educational pre-apprenticeship programs. *See id*. ¶¶ 20-23. The WANTO Grant is authorized by the WANTO Act, Pub. L. No. 102-530, 106 Stat. 3465 § 2 (1992), which requires the Secretary of Labor to "make grants to community-based organizations to provide technical assistance to employers and labor unions," including "developing outreach and orientation sessions to recruit women into the employers' apprenticeable occupations and nontraditional occupations[.]" 29 U.S.C. § 2503.

*(2)  The Apprenticeship Building America ("ABA") Grant.* CWIT's ABA Grant, through DOL, partially funds two apprenticeship programs providing math and test preparation,

workforce readiness, physical conditioning, basic construction, and hands-on trade-specific experience in partnership with apprenticeship programs. *See* Vellinga Decl. ¶¶ 24-28. CWIT's ABA Grant is authorized by the National Apprenticeship Act ("Apprenticeship Act"), with funds appropriated in the Consolidated Appropriations, 2021, Public Law 116-260, Division H, Title I. The Consolidated Appropriations provides that "any grant funds used for apprenticeship shall be used to support only those apprenticeship programs registered under the National Apprenticeship Act." Pub. L. No. 116-260, 134 Stat. 1182, 1548 (2020). In turn, the Apprenticeship Act authorizes DOL to "bring together employers and labor for the formulation of programs of apprenticeship." 29 U.S.C. § 50. The ABA Grant is also authorized by the American Competitiveness and Workforce Improvement Act, Section 414(c), which requires the Secretary of Labor to use funds and "award grants" "to establish demonstration programs or projects to provide technical skills training for workers, including both employed and unemployed workers." Pub. L. No. 105-277, 112 Stat. 2681-641, 653 (1998).

(3) *The JFF's Improving Diversity and Equity in Apprenticeship for Manufacturing ("IDEA-M") Contract.* As a subcontractor to JFF under its IDEA-M contract, CWIT provides services to increase the number of women entering and retained in advanced manufacturing apprenticeship programs through in-person and online diversity, equity, and inclusion training to sponsors of apprenticeship programs. *See* Vellinga Decl. ¶¶ 29-30.

(4) *The JFF Apprenticeship Grant.* CWIT is a subrecipient of JFF's Apprenticeship USA Grant from the DOL. *See* Vellinga Decl. ¶ 31. Under this grant, CWIT facilitates the inclusion of women in pre-apprenticeship and apprenticeship programs and provides programing aimed to recruit, mentor and retain women. *See id*. ¶¶ 32-36. The Apprenticeship Grant, like the ABA Grant, is authorized by the Apprenticeship Act.

6

*(5) The Tradeswomen Building Infrastructure Initiative ("TBII") Grant.* Via its TBII Grant, CWIT performs a subaward through the Illinois Department of Labor ("IDOL") in which, *inter alia*, CWIT advocates for inclusive and diverse infrastructure worksites, promotes the Framework for Workforce Equity for Women and People of Color, and provides state-level support and data evaluation jointly with IDOL. *See* Vellinga Decl. ¶¶ 37-38. The TBII Grant is authorized by the Workforce Innovation and Opportunity Act, Pub. L. No. 113-128, 128 Stat. 1425 (2014).

**G.     The EOs Have a Chilling Effect on CWIT**

In addition to threatening CWIT's federal funding, the anti-diversity EOs have had a significant chilling effect on CWIT's diversity, equity, and inclusion efforts. *See generally* Vellinga Decl. ¶¶ 47-72. CWIT's mission is to achieve gender equity in male-dominated industries; equity is the throughline across all CWIT programs. *See id.* ¶¶ 4-5, 10-11, 50-55. But CWIT has lost its ability to engage in its work without fear of violating the anti-diversity EOs. *See id.* ¶¶ 47-50. Because of its equity-driven mission, CWIT also has lost partnerships as a result of the anti-diversity EOs. *See id.* ¶ 56. Indeed, just days ago, one of the grantees to which CWIT is a subawardee asked CWIT to modify its materials to remove any reference to DEI. *See id.* ¶ 46.

The anti-diversity EOs also threaten CWIT's work under fourteen grants from sources other than the federal government. *See* Vellinga Decl. ¶ 18. Many of these grants require CWIT to perform work related to diversity, equity, inclusion, or accessibility. *See id.* CWIT's ongoing ability to benefit from these grants is in jeopardy because the J21 EO Certification Provision requires that CWIT "certify that it does not operate *any* programs promoting DEI" that violate "applicable Federal anti-discrimination laws," *see* J21 EO § 3(b)(iv)(B) (emphasis added), regardless of the program's source of funding. *See* Vellinga Decl. ¶ 58.

**ARGUMENT**

"'[A] party seeking a preliminary injunction must demonstrate (1) some likelihood of succeeding on the merits, and (2) that it has no adequate remedy at law and will suffer irreparable harm if preliminary relief is denied.'" *Int'l Ass'n of Fire Fighters, Loc. 365 v. City of E. Chicago*, 56 F.4th 437, 446 (7th Cir. 2022) (quoting *Cassell v. Snyders*, 990 F.3d 539, 544-45 (7th Cir. 2021)). A court must also consider the harm to the opposing party were an injunction granted and the public interest in the grant or denial of an injunction. *See id.*[2]

**I.     The Anti-Diversity EOs Violate the First Amendment**

**A.     The EOs are Unconstitutionally Overbroad**

The challenged provisions of the EOs are unconstitutionally overbroad. "Vague rules are overbroad because their scope is uncertain and . . . they tend to produce large chilling effects." *Brown v. Kemp*, 86 F.4th 745, 771 (7th Cir. 2023); *see also Reno v. American Civil Liberties Union*, 521 U.S. 844, 871-72 (1997). First, they "fail[] to provide people of ordinary intelligence a reasonable opportunity to understand what conduct [they] prohibit[.]" *Brown*, 86 F.4th at 772 (citations omitted). Second, they "authorize . . . arbitrary and discriminatory enforcement." *Id.*

**1.     The EOs Do Not Identify Prohibited Conduct**

The J20 EO fails to identify what conduct it prohibits. It does not define "DEI," "DEIA," "equity-related," "equity action plans," or "environmental justice," and it does not provide examples of "DEI, DEIA, or environmental justice positions, committees, programs, services, activities, budgets, and expenditures" that are "illegal." *See supra* Factual Background § B. Moreover, the J20 EO's scope is not limited to these undefined terms—it reaches any activities

---

[2] The Seventh Circuit uses a "sliding scale approach" to assess these factors, where "the more likely the plaintiff is to win, the less heavily need the balance of harms weigh in [its] favor [and] the less likely [the plaintiff] is to win, the more need [the balance of harms] weigh in [its] favor." *Cook County v. Wolf*, 962 F.3d 208, 234 (7th Cir. 2020) (citation omitted).

that an agency head subjectively believes should be characterized as DEI but has been "misleadingly relabeled." *Id.*

The J21 EO is equally problematic. It too does not define "DEI," "DEIA," "equity," "equitable decision-making," "equitable deployment of financial and technical assistance," "advancing equity," or "like mandates, requirements, programs or activities." *See* Factual Background § C. And it too is unbound by even its vague terms, directing the OMB Director to excise programs the director believes relate to DEI "under whatever name." *Id.*

As the Maryland District Court noted in its consideration of these terms, "*even the government* does not know what constitutes DEI-related speech that violates federal anti-discrimination laws." *Nat'l Ass'n of Diversity Officers in Higher Educ.*, 2025 WL 573764, at \*22 (emphasis added). Nor does any statute or judicial opinion provide further insight, which is unsurprising—neither Congress nor the courts have ever deemed it categorically illegal to promote or work towards diversity, equity, or inclusion.

### 2. The EOs Allow for Arbitrary Enforcement

With no guidance from the government, statute, or judicial opinion as to what falls within the bucket of prohibited DEI, DEIA, and "like mandates," the anti-diversity EOs give the government free rein to enforce the EOs arbitrarily and without any known constraint. *See Brown*, 86 F.4th at 772.

The inscrutability of the anti-diversity EOs force CWIT and others to "refrain from exercising their rights" for fear of governmental sanction. *Brown*, 86 F.4th at 771 (citation omitted); *see* Vellinga Decl. ¶¶ 47-58. The EOs threaten investigations, civil lawsuits, and even criminal charges—coupled with the threat of losing funding. This renders the anti-diversity EOs unconstitutional. *See Brown*, 86 F.4th at 771 (criminal sanctions); *Nat'l Ass'n for Advancement*

*of Colored People v. Button*, 371 U.S. 415, 433 (1963) (same); *Keyishian v. Bd. of Regents of Univ. of State of N.Y.*, 385 U.S. 589, 597-604 (civil sanctions).

The government cannot salvage the unconstitutionally overbroad anti-diversity EOs by promising not to enforce them arbitrarily. The Supreme Court has counseled that it will "not uphold an unconstitutional statute merely because the Government promised to use it responsibly." *United States v. Stevens*, 559 U.S. 460, 480 (2010); *see also id*. ("[T]he First Amendment protects against the Government; it does not leave us at the mercy of *noblesse oblige*."); *Button*, 371 U.S. at 432. Based on the anti-diversity EOs' vagueness alone, CWIT is likely to succeed on the merits of its claims. *See e.g. Sherman v. Twp. High Sch. Dist. 214*, 624 F. Supp. 2d 907, 911 (N.D. Ill. 2007); *Wisconsin Vendors, Inc. v. Lake Cnty., Illinois*, 152 F. Supp. 2d 1087, 1094-99 (N.D. Ill. 2001).

**B.     The EOs are Unconstitutionally Viewpoint Specific**

The challenged provisions of the anti-diversity EOs are also unconstitutional because they discriminate based on viewpoint. While prohibiting grantees from promoting or encouraging diversity, equity, or inclusion, they do nothing to dissuade those who advocate *against* or seek to *diminish* equity or diversity. Hence, the anti-diversity EOs violate the First Amendment. "In the realm of private speech or expression, government regulation may not favor one speaker over another." *Rosenberger v. Rector v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995); *see also Bd. Of Cnty. Comm'rs v. Umbehr*, 518 U.S. 668, 675 (1996); *Lamb's Chapel v. Center Moriches Union Free School Dist.*, 508 U.S. 384, 393-94 (1993).

**C.     The EOs Impose Unconstitutional Conditions**

The anti-diversity EOs also unlawfully act as "conditions that seek to leverage funding to regulate speech outside the contours of the program" that the government is funding. *Agency for Int'l Dev. v. All For Open Soc'y Int'l, Inc.*, 570 U.S. 205, 214-15 (2013). The government may

"define the limits of [a] government spending program," but it *cannot* use funding to dictate what a grantee can or cannot do or say outside of those federally funded programs. *See id.* at 214-15. The Certification Provision does precisely this. It demands each contractor and grantee "certify that it does not operate *any* programs promoting DEI" that violate "applicable Federal anti-discrimination laws," J21 EO, § 3(b)(iv)(B) (emphasis added), regardless of the program's source of funding—and without any explanation of what programs promoting DEI could violate anti-discrimination laws. Doing so is "an unconstitutional burden on First Amendment rights." *Id.* at 214; *see also Legal Servs. Corp. v. Velazquez*, 531 U.S. 533, 548 (2001).

In addition, the Executive Branch cannot cut off funding "*because of* the[ ] [contractors' or grantees'] speech on matters of public concern." *Board of Cnty. Comm'rs v. Wabaunsee Cnty.*, 518 U.S. 668, 675 (1996) (emphasis added). Under the "unconstitutional conditions" doctrine, "the government 'may not deny a benefit to a person on a basis that infringes his constitutionally protected . . . freedom of speech' even if he has no entitlement to that benefit." *Id.* at 674 (quoting *Perry v. Sindermann,* 408 U.S. 593, 597 (1972)).

## II.     The EOs are Unconstitutionally Vague in Violation of the Fifth Amendment

The challenged provisions of the anti-diversity EOs also violate the Due Process Clause because they are vague. "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972); *see also Hegwood v. City of Eau Claire,* 676 F.3d 600, 603 (7th Cir. 2012) ("The void for vagueness doctrine rests on the basic due process principle that a law is unconstitutional if its prohibitions are not clearly defined."); *Gresham v. Peterson*, 225 F.3d 899, 907 (7th Cir. 2000) (The void-for-vagueness doctrine forbids the enforcement of a law that contains "terms so vague that [persons] of common intelligence must necessarily guess at its meaning and differ as to its application." (quoting *Roberts v. United States Jaycees,* 468 U.S. 609, 629 (1984)).

11

As Justice Scalia reasoned:

> What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is. Thus, we have struck down statutes that tied criminal culpability to whether the defendant's conduct was "annoying" or "indecent"—wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings.

*United States v. Williams*, 553 U.S. 285, 306 (2008) (citing *Coates* v. *Cincinnati*, 402 U.S. 611, 614 (1971) and *Reno*, 521 U.S. at 870-71 & n.35).

The anti-diversity EOs contain no "statutory definitions, narrowing context, or settled legal meanings" regarding what constitutes "illegal DEI." As noted *supra* Argument § I. A, the anti-diversity EOs are vague and indeterminant because they do not let Plaintiff "know what is required of them so they may act accordingly[.]" *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012). And their vagueness allows for "arbitrary and discriminatory enforcement." *Grayned*, 408 U.S. at 109; *see also Ctr. for Individual Freedom v. Madigan*, 697 F.3d 464, 478-79 (7th Cir. 2012).

## III. The EOs Violate the Separation Of Powers and the Spending Clause

The Executive Branch does not have the authority to direct federal agencies to terminate grants because it deems those grants "equity-related," nor does the Executive Branch have any authority to direct the termination of "programs" or "activities" that involve "diversity," "equity," "equitable decision-making" or "advanc[e] equity." As the Seventh Circuit Court of Appeals has explained:

> The founders of our country well understood that the concentration of power threatens individual liberty and established a bulwark against such tyranny by creating a separation of powers among the branches of government. If the Executive Branch can determine policy, and then use the power of the purse to mandate compliance with that policy . . . all without the authorization or even acquiescence of elected legislators, that check against tyranny is forsaken.

*Sessions*, 888 F.3d at 277. The Constitution commits the spending power to Congress, and not the President. *See* U.S. Const. Art. I, sec. 9, cl. 7 (Appropriations Clause); U.S. Const. Art. I, sec. 8, cl. 1 (Spending Clause). Congress's authority under the Spending Clause is broad and cannot be usurped by the President via executive action. For this reason, courts have granted preliminary injunctions to plaintiffs challenging Executive Orders directing the withholding of funds based solely on the President's policy decisions. *See e.g.*, *Sessions*, 888 F.3d at 277 (affirming injunction entered by district court enjoining executive action); *City of Chicago v. Barr*, 961 F.3d 882, 931 (7th Cir. 2020) (same); *City & Cnty. of San Francisco v. Trump*, 897 F.3d 1225, 1235 (9th Cir. 2018) (Executive Order withholding funds from sanctuary cities violated Separation of Powers "[b]ecause Congress did not authorize withholding of funds").

To be sure, Congress may delegate authority to the Executive Branch regarding the right to refuse funding, but it has not done so here. *See supra* Factual Background § F. Absent such delegation, "the Executive Branch does not otherwise have the inherent authority . . . to condition the payment of [ ] federal funds on adherence to its political priorities." *Sessions*, 88 F.3d at 283; *see also In re Aiken Cty.*, 725 F.3d 255, 261 n.1 (D.C. Cir. 2013) (Kavanaugh, J.) (where President wants to "spend less than the full amount appropriated by Congress for a particular project or program . . . . [T]he President does not have unilateral authority *to refuse to spend the funds*. Instead, the President must propose the rescission of funds, and Congress then may decide whether to approve a rescission bill.") (emphasis added). CWIT will succeed on the merits of this claim. As the Seventh Circuit has emphasized, "[i]t falls to us, the judiciary, as the remaining branch of the government, to act as a check on such usurpation of power. We are a country that jealously guards the separation of powers, and we must be ever-vigilant in that endeavor." *Sessions* at 277.

13

**IV. CWIT Will be Irreparably Harmed Absent Relief and the Government Will Suffer No Harm.**

"When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Ezell v. City of Chicago*, 651 F.3d 684, 699 (7th Cir. 2011) (quoting 11A Charles Alan Wright, et al., Federal Practice and Procedure § 2948.1 (2d ed. 1995)). This is especially true when First Amendment rights are at issue. *See id.*; *see also City of E. Chicago*, 56 F.4th at 450-51 ("Under Seventh Circuit law, irreparable harm is presumed in First Amendment cases."); *Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020); *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 868 (7th Cir. 2006).

Moreover, "if the moving party establishes a likelihood of success on the merits, the balance of harms normally favors granting preliminary injunctive relief because the public interest is not harmed by preliminarily enjoining the enforcement of a statute that is probably unconstitutional." *American Civil Liberties Union v. Alvarez*, 679 F.3d 583, 589-90 (7th Cir. 2012) (citation omitted). That is the case here. And even with the relaxed harm standard in the context of constitutional challenges, the harm to CWIT from the EOs is clearly irreparable, as explained above. *See* Vellinga Decl. ¶¶ 47-74. For these reasons, an injunction should issue.

**V. CWIT's Requested Relief is in the Public Interest**

"[I]njunctions protecting First Amendment freedoms are always in the public interest." *ACLU of Illinois*, 679 F.3d at 589-90 (citation omitted); *American Civil Liberties Union v. Alvarez*, 679 F.3d 583, 589-90 (7th Cir. 2012); *Grossbaum v. Indianapolis-Mario Cnty. Bldg. Auth.*, 63 F.3d 581, 585 (7th Cir. 1995) (stating that deciding whether a restriction was viewpoint discrimination was "surely in the public interest").

## VI.     CWIT's Requested Relief Should be Nationwide in Scope

The nature, extent, and impact of the constitutional violation here spans the country, given "CWIT has provided technical assistance and gender equity training to industry stakeholders in all 50 states." *See* Vellinga Decl. ¶ 15. Thus, this case "presents an example of the type of case in which a district court should properly be able to apply an injunction nationwide." *Sessions,* 888 F.3d at 290.   In upholding a similar nationwide injunction, the *Sessions* Court focused on "the purely legal nature of the issue here, the broad and uniform impact on all grant recipients, [and] the minimal harm to the Attorney General . . . ." *Id. at* 293. Here, each of these factors weigh in favor of the requested nationwide relief. *See also*, *Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571, 580 (2017)); *HIAS, Inc. v. Trump*, 985 F.3d 309, 326 (4th Cir. 2021). That another court has already issued a nationwide injunction as to these EOs further counsels in favor of the same relief here. *See Nat'l Assoc. of Diversity Officers in Higher Ed.*, 2025 WL 573764, at *31 (D. Md. Feb. 21, 2025). Finally, under Federal Rule of Civil Procedure 65(c) the Court should either waive entirely or set a nominal bond of zero because fundamental constitutional rights are at stake.

### CONCLUSION

For these reasons, CWIT respectfully requests that the Court grant its request for a preliminary injunction.

Dated: March 5, 2025                                                  Respectfully Submitted,


/s/ *Jason P. Stiehl*                                                   /s/ *Anuj Vohra*
Jason P. Stiehl                                                            Anuj Vohra
CROWELL & MORING LLP                                    Keith J. Harrison*
455 N Cityfront Plaza Dr.                                        CROWELL & MORING LLP
Suite 3600                                                                  1001 Pennsylvania Avenue, NW
Chicago IL 60611                                                      Washington, DC 20004
Tel: (312) 840-3108                                                  Tel: (202) 624-2500
jstiehl@crowell.com                                                 avohra@crowell.com

kharrison@crowell.com

/s/ *Meshach Y. Rhoades*
Meshach Y. Rhoades*
CROWELL & MORING LLP
1601 Wewatta Street
Suite 815
Denver, CO 80202
Tel: (303) 524-8660
mrhoades@crowell.com

s/ *Sabrina A. Talukder*
Sabrina A. Talukder*
Kathryn J. Youker
Adria J. Bonillas
Olivia Sedwick
Gillian Cassell-Stiga
Lawyers' Committee for Civil Rights
Under Law
1500 K Street, N.W. Suite 900
Washington, D.C. 20005
Telephone: (202) 662-8600
Facsimile: (202) 783-0857
stalukder@lawyerscommittee.org
kyouker@lawyerscommittee.org
abonillas@lawyerscommittee.org
osedwick@lawyerscommittee.org
gcassell-stiga@lawyerscommittee.org

Aneel L. Chablani (No. 6242658)
Ami D. Gandhi (No. 6282924)
Chicago Lawyers' Committee for
Civil Rights
100 N. LaSalle St., Ste. 600
Chicago, IL 60602
Telephone: (312) 630-9744
Facsimile: (312) 630-1127
achablani@clccrul.org
agandhi@clccrul.org

/s/ *Warrington Parker*
Warrington Parker*
CROWELL & MORING LLP
3 Embarcadero Center, 26th
Floor
San Francisco, CA 94111
Tel: (415) 986-2800
wparker@crowell.com

Elizabeth E. Theran
Adrienne DerVartanian
National Women's Law Center
1350 I Street NW, Suite 700
Washington, DC 20005
Telephone: (202) 588-5180
Fax: (202) 588-5185
etheran@nwlc.org
adervartanian@nwlc.org

Lourdes M. Rosado*
Rafaela Uribe*
LATINOJUSTICE PRLDEF
475 Riverside Drive, Suite 1901
New York, NY 10115
Telephone: (212) 739-7583
lrosado@latinojustice.org
ruribe@latinojustice.org

*Attorneys for Chicago Women in Trades*

*Pro hac vice motion forthcoming*