**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| CHICAGO WOMEN IN TRADES, | |
| Plaintiff, | Case No. 1:25-cv-02005 |
| v. | Judge: Hon. Matthew F. Kennelly |
| PRESIDENT DONALD J. TRUMP, DEPARTMENT OF LABOR, ACTING SECRETARY OF LABOR VINCENT MICONE, OFFICE OF MANAGEMENT AND BUDGET, DIRECTOR OF THE OFFICE OF MANAGEMENT AND BUDGET RUSSELL VOUGHT, U.S. DEPARTMENT OF JUSTICE, ATTORNEY GENERAL OF THE U.S. DEPARTMENT OF JUSTICE PAMELA BONDI, | JURY TRIAL DEMANDED |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF MOTION FOR**
**TEMPORARY RESTRAINING ORDER**

# TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................................1

ADDITIONAL FACTUAL BACKGROUND...........................................................3

    A.    Immediately after the President issued the anti-diversity EOs, DOL and other federal agencies took steps to implement them. ...................................3

    B.    The lack of clarity surrounding "illegal" diversity, equity, and inclusion continues.............................................................................5

ARGUMENT ......................................................................................................7

I.     LEGAL STANDARD ....................................................................................7

II.    CWIT AND OTHER RECIPIENTS OF FEDERAL FUNDING WILL BE IRREPARABLY HARMED IN THE ABSENCE OF AN INJUNCTION ......................7

    A.    The anti-diversity EOs are violating the First Amendment, chilling speech and causing Constitutional harm.............................................................7

        1.    Overbreadth and Vagueness..................................................8

        2.    Viewpoint Discrimination...................................................10

    B.    When the government terminates grants pursuant to the EOs, the harm to recipients would be immediate and irreparable...................................11

    C.    Absent a TRO, the harm CWIT and other funding recipients are already experiencing as a result of the EOs would be imminently further compounded. ..........................................................................12

III.   CWIT IS LIKELY TO SUCCEED ON THE MERITS OF ITS COMPLAINT ......................................................................................14

IV.   THE GOVERNMENT SUFFERS NO COUNTERVAILING HARM IF THE COURT GRANTS THIS TRO.....................................................................15

V.    PUBLIC INTEREST AND HARM TO CWIT WEIGH IN FAVOR OF A TEMPORARY RESTRAINING ORDER PENDING RESOLUTION OF CWIT'S PRELIMINARY INJUNCTION MOTION ......................................................15

VI.   DUE TO THE CONSTITUTIONAL RIGHTS AT ISSUE, THE SCOPE OF THE INJUNCTIVE RELIEF SHOULD BE AGAINST THE GOVERNMENT NATIONWIDE OR, IN THE ALTERNATIVE, AGAINST THE DEFENDANTS AS PERTAINING TO CWIT ................................16

CONCLUSION..................................................................................................18

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. C.L. Union of Illinois v. Alvarez*,
  679 F.3d 583 (7th Cir. 2012) ...............................................................................15

*Bantam Books, Inc. v. Sullivan*,
  372 U.S. 58 (1963).................................................................................................10

*Brown v. Kemp*,
  86 F.4th 745 (7th Cir. 2023) ...........................................................................8, 9, 10

*City of Chicago v. Sessions*,
  888 F.3d 272 (7th Cir. 2018) ...............................................................................16

*Cooksey v. Futrell*,
  721 F.3d 226 (4th Cir. 2013) ...................................................................................9

*Grossbaum v. Indianapolis-Mario Cnty. Bldg. Auth.*,
  63 F.3d 581 (7th Cir. 1995) ...................................................................................15

*HIAS Inc. v. Trump*,
  985 F.3d 309 (4th Cir. 2021) ...............................................................................17

*Hill v. Colorado*,
  530 U.S. 703 (2000)..................................................................................................9

*Hills v. Gautreaux*,
  425 U.S. 284 (1976)................................................................................................17

*Int'l Ass'n of Fire Fighters, Local 365 v. City of East Chicago*,
  56 F.4th 437 (7th Cir. 2022) ................................................................................12

*Mays v. Dart*,
  453 F. Supp. 3d 1074 (N.D. Ill. 2020) ...................................................................7

*Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*,
  2025 WL 573764 (D. Md. Feb. 21, 2025) ..............................................................1

*Nat'l Rifle Ass'n of Am. v. Vullo*,
  602 U.S. 175 (2024)................................................................................................10

*Reno v. Am. C.L. Union*,
  521 U.S. 844 (1997)..................................................................................................9

*Texas Top Cop Shop, Inc. v. Garland*,
  2024 WL 5049220 (E.D. Tex. Dec. 5, 2024)........................................................17

*Texas v. United States*,
  809 F.3d 134 (5th Cir. 2015) ..............................................................................16

*Wisconsin Right to Life State Pol. Action Comm. v. Barland*,
  664 F.3d 139 (7th Cir. 2011) .................................................................................9

**Other Authorities**

2 C.F.R. § 200.200.1 .....................................................................................................3

BBC News, *Arlington Cemetery strips content on black and female veterans from
  website*............................................................................................................6

14173, *Ending Illegal Discrimination and Restoring Merit-Based Opportunity*
  ("J21 EO") .....................................................................................................1

Executive Order Nos. 14151, *Ending Radical and Wasteful Government DEI
  Programs and Preferencing*........................................................................1, 5, 7, 14

March 15, 2025, https://www.bbc.com/news/articles/cz03gjnxe25o ............................6

March 15, 2025, https://www.msnbc.com/top-stories/latest/arlington-cemetery-
  black-veterans-women-history-website-dei-trump-rcna196586 ............................6

*Memorandum for All Department of Justice Employees: Eliminating Internal
  Discriminatory Practices*, February 5, 2005,
  https://www.justice.gov/ag/media/1388556/dl?inline ............................4

MSNBC, *Trump's anti-diversity push comes for Arlington Cemetery's rich,
  diverse history*.........................................................................................6

*New Trump Administration*, March 7, 2025,
  https://www.nytimes.com/interactive/2025/03/07/us/trump-federal-agencies-
  websites-words-dei.html ...........................................................................6

U.S. Department of Education, *U.S. Department of Education Takes Action to
  Eliminate DEI*, January 23, 2025, https://www.ed.gov/about/news/press-
  release/us-department-of-education-takes-action-eliminate-dei................................4

**INTRODUCTION**

At the March 12, 2025 hearing, the parties proposed a briefing schedule for a preliminary injunction, subject to a request for modification should a change in circumstances occur. That change has occurred.

The current schedule for CWIT's motion for preliminary injunction[1] was made in consideration of a nationwide preliminary injunction entered by a district court in Maryland. That injunction enjoined the provisions in the executive orders that CWIT challenges, Executive Order Nos. 14151, *Ending Radical and Wasteful Government DEI Programs and Preferencing* ("J20 EO") and 14173, *Ending Illegal Discrimination and Restoring Merit-Based Opportunity* ("J21 EO") (collectively, the "anti-diversity EOs"). *Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*, 2025 WL 573764 (D. Md. Feb. 21, 2025). While CWIT was and is entitled to a preliminary injunction, the Maryland district court's nationwide injunction forestalled the immediate urgency that CWIT faced, including the government's decision to take adverse action against CWIT and its grants.

On March 14, 2025, however, the Fourth Circuit granted the government's motion to stay the Maryland court's nationwide injunction. *Nat'l Ass'n of Diversity Officers in Higher Educ.*, No. 25-1189 (4th Cir. Mar. 14, 2025). Without an injunction in place, CWIT now faces an imminent, urgent harm, which is irreparable.

Prior to the nationwide injunction, the Department of Labor ("DOL") had already instructed CWIT to cease all "activities related to 'diversity, equity, and inclusion' (DEI) or 'diversity, equity, inclusion, and accessibility' (DEIA)" under its grants (without any consideration of whether that programming was "illegal"). Now that the preliminary injunction

---

[1] Defendants' response is due April 18, 2025, and CWIT's reply is due May 2, 2025. *See* Min. Entry, ECF No. 38.

has been lifted, DOL assuredly will take the opportunity afforded by the Fourth Circuit to take action against CWIT, including the termination of its grants. The J20 EO has a March 21, 2025 deadline, which requires that agencies terminate "all 'equity action plans,' 'equity' actions, initiatives, or programs, 'equity-related' grants or contracts" within sixty days of the J20 EO. *See* J20 EO § 2(b)(i). This is without regard to the steps DOL has already taken, including the request that CWIT cease all diversity, equity, inclusion and accessibility activities. Moreover, even after the nationwide injunction issued, an entity from which CWIT receives federal grant money as a sub-recipient, instructed CWIT to scrub all diversity, equity, and inclusion initiatives and related language from its programming, purportedly at DOL's direction. The entity has threatened to cut off the funding if its request is not heeded.

Requiring CWIT to change what they say, what they do and who they are to avoid termination violates CWIT's First and Fifth Amendment rights. The immediate result of the anti-diversity EOs is chilled speech. The harms to CWIT, as well as any other recipient of federal funding that have programs that could arguably be described as promoting "DEI," are deep and irreparable.

Accordingly, CWIT returns to this Court to request a temporary restraining order to enjoin the government, including Defendants, as well as other federal executive branch agencies, departments, and commissions, and their heads, officers, agents, subdivisions, contractors, and grant recipients from taking adverse action against CWIT or any other recipient of federal funding based on activities or programs claimed to be covered by the anti-diversity EOs, either as a direct grant recipient or as a sub-recipient. Plaintiff requests that the injunction remain in place until such time this Court renders a decision on Plaintiff's motion for preliminary injunction. In the alternative, CWIT requests that the Court issue a temporary restraining order to

enjoin the Defendants from taking adverse action against CWIT, either as a direct grant recipient or as a sub-recipient, while its motion for preliminary injunction is pending. Finally, CWIT respectfully requests that the briefing on the preliminary injunction be accelerated and adjudicated during the pendency of this Court's TRO.

## ADDITIONAL FACTUAL BACKGROUND

As detailed in CWIT's motion for preliminary injunction, CWIT is a non-profit organization that prepares women across the country to enter and remain in high-wage skilled trades (*e.g.*, carpentry, electrical work, welding, and plumbing) which are plagued by longstanding race and gender-based discrimination and occupational segregation. Declaration of Jayne Vellinga, filed March 5, 2025 in support of motion for preliminary injunction, Dkt. No. 26-9 ("PI Vellinga Decl.") ¶¶ 1, 3, 6-9. As a recipient of multiple federal grants, subawards, and subcontracts, CWIT provides pre-apprentice training programs, best practices guides, employer resources, and advocacy to attract and retain women in skilled trades, a significant portion of which reaches all 50 states. *See id.* ¶¶ 3, 10-12, 14-15, 34.

### A.     Immediately after the President issued the anti-diversity EOs, DOL and other federal agencies took steps to implement them.

Within days of the issuance of the anti-diversity EOs, CWIT received communications separately from the DOL and a pass-through entity from which CWIT has a subaward,[2] regarding CWIT's grants. PI Vellinga Decl. ¶¶ 39-46. Those communications instructed CWIT to remove all references to DEI and DEIA from the programs it was administering. *Id.*

As CWIT explained in its Complaint and Motion for Preliminary Injunction, the anti-diversity EOs provide no definition for "diversity," equity," or "inclusion," or any guidance as to what makes DEI or DEI-programming "illegal." Plaintiff's Complaint for Declaration and

---

[2] *See* 2 C.F.R. § 200.200.1 at "Pass-through entity," "Subaward," and "Subrecipient."

Injunctive Relief, Dkt. No. 1 ("Complaint") ¶¶ 134-134; Plaintiff's Memorandum in Support of Motion for Preliminary Injunction, Dkt. No. 26 ("Plaintiff's PI Memo") 1, 2, 3-4, 8-9. The instructions CWIT has received to date from DOL and one of CWIT's pass-through entities are similarly opaque. They simply state that the J20 and J21 EOs required the cessation of all grant activity related to DEI and DEIA. PI Vellinga Decl. ¶¶ 39-46. The communications from DOL and Illinois Department of Labor ("IDOL") also informed CWIT that DEI activities would be considered unallowable, meaning that any "DEI" work would not be paid after the date of the letter. *Id.* ¶¶ 40-41.

Other federal agencies followed suit, both in direction and opacity. For example, on February 5, 2025, the Attorney General instructed the Department of Justice to confirm by March 15, 2025 the "termination, to the maximum extent allowed by law, … [of] all 'equity-related' grants or contracts" and to "pay particular attention to ending references to DEI and DEIA . . . including references to 'unconscious bias,' 'cultural sensitivity,' [and] 'inclusive leadership.'"[3] DOJ is not alone.[4]

Neither DOL nor any other federal agency cite to any antidiscrimination laws being violated or provide any information to determine how the federal agencies are or will interpret those things the EOs bar. The government may claim that the EOs are intended to implement

---

[3] Office of the Attorney General, *Memorandum for All Department of Justice Employees: Eliminating Internal Discriminatory Practices*, February 5, 2005, https://www.justice.gov/ag/media/1388556/dl?inline.

[4] *See* U.S. Department of Education, *U.S. Department of Education Takes Action to Eliminate DEI*, January 23, 2025, https://www.ed.gov/about/news/press-release/us-department-of-education-takes-action-eliminate-dei ("The U.S. Department of Education has taken action to eliminate harmful Diversity, Equity, and Inclusion (DEI) initiatives, including references to them in public-facing communication channels and its associated workforce. These actions are in line with President Trump's ongoing commitment to end illegal discrimination and wasteful spending across the federal government.").

4

antidiscrimination laws, but the implementation reflects that is not so. CWIT is being asked to terminate programs that do not violate antidiscrimination laws. Rather, these are programs that seek to help women and that seems to be enough to draw the government's ire, but without explanation. *See* Supplemental Declaration of Jayne Vellinga, filed concurrently, in support of temporary restraining order ("Suppl. Vellinga Decl.") ¶¶ 15-16. This indiscriminate implementation of the anti-diversity EOs illustrates the failure of federal agencies to determine if CWIT's (and other organizations') activities violate antidiscrimination laws.

Without clarity on what DEI means, CWIT does not know how or even whether it can ever comply with the notices it has received. As an organization devoted to equal opportunity for women in the skilled trades, the anti-diversity EOs are a threat not only to CWIT's mission, but to its organizational existence. CWIT's activities do not violate any law, yet, under the anti-diversity EOs, the entire purpose of CWIT's work is under attack. As such, even though CWIT's activities were expressly approved by the government when the grants were awarded, the government could now deem those very same activities to be "illegal DEI."

**B.     The lack of clarity surrounding "illegal" diversity, equity, and inclusion continues.**

Nothing that the administration or DOL has done since the anti-diversity EOs were issued indicates either will make any attempt to narrowly or consistently define what it means by diversity, equity, inclusion, and accessibility programs or to explain which CWIT activities are acceptable and which are not. The J20 EO declares any programs advancing diversity, equity, and inclusion "illegal and immoral discrimination." J20 EO § 1. The J21 EO calls them "dangerous, demeaning, and immoral." J21 EO § 1. Consistent with those characterizations, on March 7, 2025, the New York Times identified 199 words that were being removed from

government websites.[5] The words removed include "female," "women," advocate," "barriers,"

and "underrepresented." All words core to CWIT's mission. Consistent with this broad and

ambiguous scope of "DEI," news media reported that Arlington National Cemetery scrubbed

from its website internal links that directed users to webpages about Black, Hispanic and female

service members.[6]

It is in this environment that CWIT operates as an entity focused on diversity, equity, and

inclusion, under constant threat of grant termination. And the result is chilled speech. For

example, in the last two weeks, one of the pass-through entities for whom CWIT is a sub-

recipient instructed CWIT to remove all references to DEI from its training materials. Suppl.

Vellinga Decl. ¶ 15. In making this demand, the pass-through entity explained that its contract

from the government was modified to eliminate all references to DEI language. *Id.* ¶¶ 14, 15.

Furthermore, the pass-through entity rejected CWIT's proposed training materials that

used the words "Diversity and Equity" in the title, though the materials did not otherwise

mention diversity, equity, or inclusion. *Id.* ¶ 14.

---

[5] The New York Times, *These Words Are Disappearing in the New Trump Administration*, March 7, 2025, https://www.nytimes.com/interactive/2025/03/07/us/trump-federal-agencies-websites-words-dei.html.

[6] BBC News, *Arlington Cemetery strips content on black and female veterans from website*, March 15, 2025, https://www.bbc.com/news/articles/cz03gjnxe25o. *See also* MSNBC, *Trump's anti-diversity push comes for Arlington Cemetery's rich, diverse history*, March 15, 2025, https://www.msnbc.com/top-stories/latest/arlington-cemetery-black-veterans-women-history-website-dei-trump-rcna196586 ("Among the pages that have disappeared from the cemetery's website include links on the graves of prominent minority veterans, as well as educational pages on the Civil War, African American history and women's history. Some of the information has been removed outright, while others were placed under categories that do not mention race or gender.").

**ARGUMENT**

## I.    LEGAL STANDARD

The standard for issuing a temporary restraining order is the same standard that applies

for the issuance of a preliminary injunction. *Mays v. Dart*, 453 F. Supp. 3d 1074, 1087 (N.D. Ill.

2020). First, the moving party must show irreparable harm, the inadequacy of a legal remedy,

and some likelihood of success on the merits. *Id.* Once that threshold is met, the court proceeds

to weigh whether the balance of harms favors the moving party or whether the harm to the other

party and the public interest outweighs the moving party's interest. *Id.*; *see also* Plaintiff's PI

Memo. 7.

## II.    CWIT AND OTHER RECIPIENTS OF FEDERAL FUNDING WILL BE IRREPARABLY HARMED IN THE ABSENCE OF AN INJUNCTION

With the nationwide preliminary injunction lifted by the Fourth Circuit, the EOs are back

into effect. By its terms, the J20 EO results in the termination of the grants of CWIT's and other

recipients, if they are deemed to be "DEI" grants, by no later than March 21. *See* J20 EO §

2(b)(i). In addition, any future grants awarded by federal agencies must include a term that

requires entities to certify, under threat of False Claims Act liability, that they do not operate

programs promoting diversity, equity, and inclusion "that violate any applicable Federal anti-

discrimination laws," absent any indication what diversity, equity, and inclusion programs might

encompass. *See* J21 EO § 3(b)(iv)(A).

### A.    The anti-diversity EOs are violating the First Amendment, chilling speech and causing Constitutional harm.

The Complaint asserts multiple violations of the First Amendment: Count I pleads

"Overbreadth and Vagueness;" and Count II pleads "Viewpoint Discrimination;" because the

anti-diversity EOs are punishing and suppressing speech concerning diversity, equity and

inclusion, these issues are ripe for this Court's consideration, and require immediate injunctive relief.

### 1.    Overbreadth and Vagueness

Actions like the anti-diversity EOs not only violate the First Amendment because they are viewpoint specific. They are also unconstitutionally overbroad in at least two distinct ways. The first is usually referred to as vagueness. *Brown v. Kemp*, 86 F.4th 745, 781 (7th Cir. 2023). Vague rules are overbroad because their scope is uncertain and because they tend to produce large chilling effects. *Id.* (citing *NAACP v. Button*, 371 U.S. 415, 432-33 (1963)). The part of overbreadth doctrine concerned with vagueness is "predicated on the danger that an overly broad statute, if left in place, may cause persons whose expression is constitutionally protected to refrain from exercising their rights for fear of . . . sanctions." *Id.* (quoting *Massachusetts v. Oakes*, 491 U.S. 576, 581 (1989)).

Actions like the anti-diversity EOs can also be overbroad in a second, distinct sense: not because their scope is vague, but because the conduct they prohibit consists mostly of constitutionally protected activities. *Id.* These sorts of actions are overbroad even in the absence of vagueness and resulting chilling effects. *Id.* (citing *Oakes*, 491 U.S. at 587-88 (Scalia, J., concurring) (writing for a majority and holding that even if later narrowing of statute by amendment eliminated all chilling effects, it "does not eliminate the defense of overbreadth").

The anti-diversity EOs are both vague and overbroad on their face. They do not define any of the words and phrases that are prohibited but rather lump them all into "illegal DEI." Yet, it simply cannot be that all efforts to promote diversity, equity and inclusion are illegal. No court has so ruled. No statute says that. As a result, the anti-diversity EOs prohibit conduct and speech most of which is not only not legal but constitutionally protected.

Moreover because they are overbroad, the EOs "raise[] special First Amendment concerns because of [their] obvious chilling effect on free speech." *Reno v. Am. C.L. Union*, 521 U.S. 844, 871-72 (1997). They (1) "fail[] to provide people of ordinary intelligence a reasonable opportunity to understand what conduct [they] prohibit[]" and (2) they "authorize[] or even encourage[] arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000). "The lack of specificity is not cured here by any meaningful guidance from enforcement authorities…." *Brown,* 86 F.4th at 773. The vague language also allows for arbitrary and discriminatory enforcement, chilling plaintiffs who are reasonably concerned about over-enforcement. As the Seventh Circuit has made clear, "[t]he lack of objective criteria means that enforcement authorities, like individual citizens, cannot know when the line between lawful and unlawful conduct has been crossed. *Id.* at 774.

Finally, CWIT's constitutional claims are ripe. "First Amendment rights . . . are particularly apt to be found ripe for immediate protection, because of the fear of irretrievable loss. In a wide variety of settings, courts have found First Amendment claims ripe, often commenting directly on the special need to protect against any inhibiting chill." *Cooksey v. Futrell*, 721 F.3d 226, 240 (4th Cir. 2013) (quoting *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1500 (10th Cir. 1995) (omission in original); *Wisconsin Right to Life State Pol. Action Comm. v. Barland*, 664 F.3d 139, 148 (7th Cir. 2011) ("purely legal issues are normally fit for judicial decision" and "in challenges to laws that chill protected speech, the hardship of postponing judicial review weighs heavily in favor of hearing the case."). Here, CWIT and other federal funding recipients have been required to self-censor the description of what they are and what they do; the chilling effect is real and leaves open to question CWIT's (and other recipients') very existence due to the EOs overbreadth and vagueness. The case is ripe

because the constitutional injuries has already been inflicted and will continue absent immediate injunctive relief.

CWIT and other federal funding recipients are suffering ongoing violations of their constitutional rights today. There is no need to wait until its grants are, or are not, terminated. This is clear given that even if the grants are never terminated, but the EOs remain in place, CWIT's and other recipients right to free speech will remain chilled. The fact that CWIT and other recipients cannot today describe what they stand for without running afoul of the anti-diversity EOs violates the Constitution and demonstrates the need for immediate injunctive relief.

### 2. Viewpoint Discrimination

As pled in the Complaint, the anti-diversity EOs are viewpoint-specific and therefore violate the First Amendment. Dkt. No. 1, Complaint ¶¶ 110-119; *see also* Plaintiff's PI Memo. 10. A speech regulation is viewpoint-specific when it goes beyond general discrimination against speech about a specific topic and instead regulates one perspective of speech. *Brown,* 86 F.4th at 774 (citing *Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 829-31 (1995)). Viewpoint specific regulations are considered to be particularly pernicious because "[a]t the heart of the First Amendment's Free Speech Clause is the recognition that viewpoint discrimination is uniquely harmful to a free and democratic society." *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 187 (2024); *see also Bantam Books, Inc. v. Sullivan,* 372 U.S. 58, 67 (1963) (noting that a government entity's "threat of invoking legal sanctions and other means of coercion" in order "to achieve the suppression" of disfavored speech violates the First Amendment).

But this is exactly what the anti-diversity EOs seek to accomplish. There can be no question but that the anti-diversity EOs are viewpoint-specific. They seek to suppress those viewpoints that favor of diversity, equity and inclusion, thereby violating the First Amendment.

10

Indeed, CWIT is being required to self-censor its message of dismantling race and gender-based structural barriers to recruiting women in the skilled trades, under threat of losing funding if it does not remove all references to DEI from its training materials. The Executive Branch of Government cannot punish CWIT for espousing viewpoints with which the Administration disagrees. This is precisely the type of viewpoint-based coercion that the First Amendment prohibits.

**B.    When the government terminates grants pursuant to the EOs, the harm to recipients would be immediate and irreparable.**

Even though the funding for CWIT's grants at issue have been duly authorized by Congress via statute, and the grant award approved by DOL, the government can and will terminate CWIT's grants by March 21, 2025 while the motion for preliminary injunction is pending, as directed by the EOs. The additional and resulting harm to CWIT upon the pending termination would be immediate and profound. Suppl. Vellinga Decl. ¶¶ 18-49.

For example, CWIT would not be reimbursed for approximately $460,000 of expenditures that it has spent for the programs that are funded by its federal grants and contract. *Id*. ¶ 18. This funding loss, including both expected funding and reimbursement of expenses CWIT that has already incurred on the government's behalf, would result the following: (a) layoffs of three full-time staff; (b) stopping CWIT's trade-specific apprenticeship programs, conducted in partnership with skill-specific union apprenticeship programs and for which admittance is otherwise notoriously difficult; (c) stopping CWIT's critical funding for support services which provide stipends to cover childcare, transportation and union initiation fees for CWIT participants who are generally low-income; and (d) modifying CWIT's training and technical assistance work, in which CWIT works with new tradeswomen organizations, develops mentorship cohorts outside of Illinois, and provides training to industry stakeholders, effectively

eliminating CWIT's national presence. *Id.* ¶¶ 30-49. The cuts to funding would necessitate implementing a fee model that many new tradeswomen or newly formed unions would be unable to afford and would also require that CWIT end its highly sought-after individualized training. *Id.* ¶¶ 30, 47-48. There is no legal remedy that would undo all of these harms, once it is allowed to occur.

Similarly, once the government requires funding recipients to certify that they operate no diversity, equity, or inclusion programs "that violate any applicable Federal anti-discrimination laws" absent any explanation of what that means, the harm to recipients in the form of chilled speech is immediate. Already, the administration has made clear that certain words associated with diversity, equity, and inclusion in any form are prohibited. *See supra* at 5-6. This is not mere semantics—they cover the very purpose of the work that CWIT does under its federal grants. Based on the communications from DOL and a CWIT pass-through entity, the current administration appears to consider CWIT to be in noncompliance with the anti-diversity EOs, though all of its work is and remains lawful under existing anti-discrimination laws. Again, there is no adequate legal remedy for these harms. *Int'l Ass'n of Fire Fighters, Local 365 v. City of East Chicago*, 56 F.4th 437, 453 (7th Cir. 2022) (First Amendment harms were "serious injuries that money damages cannot remedy").

**C.    Absent a TRO, the harm CWIT and other funding recipients are already experiencing as a result of the EOs would be imminently further compounded.**

Both the DOL and a CWIT pass-through entity have undertaken actions to eliminate diversity, equity, and inclusion efforts, or language discussing diversity, equity, and inclusion without any consideration of whether CWIT's programming was "illegal" or inconsistent with federal antidiscrimination laws. As detailed above, within days of the issuance of the anti-diversity EOs, the DOL sent communications instructing CWIT to remove diversity, equity, and

inclusion from the programs it was administering. PI Vellinga Decl. ¶¶ 39-46. The pass-through entity, for which CWIT is a sub-recipient, also requested modifications to materials in response to the government's demands that references to diversity, equity, and inclusion be removed. Suppl. Vellinga Decl. ¶¶ 14, 15.

With no injunction against the anti-diversity EOs in place, the anti-diversity EOs require the DOL to resume its ambiguous and unconstitutional demands against grant recipients to eliminate all programming related to diversity, equity, and inclusion, under threat of penalties, including grant termination, by March 21, 2025. Given the nature of CWIT's programming and the work funded by its grants, the vagueness of the EOs puts CWIT in an untenable position. CWIT cannot remove all words conceivably or even tangentially associated with diversity, equity, and inclusion—such as "women" or "female"—from its materials and still fulfill its obligations under the grants. Moreover, any list of words could change given that there is no existing guidance and that different individuals at the DOL and other agencies may have different interpretations as to what words do or do not need to be removed or what would be discriminatory activities. This is true today and it will be true tomorrow.

To the extent the government argues the anti-diversity EOs prohibit only conduct that violates existing federal anti-discrimination laws—an argument the government has made in other litigation challenging the anti-diversity EOs—the argument rings hollow. Discrimination that violates federal law was unlawful before the anti-diversity EOs were issued. The anti-diversity EOs must have some purpose and the various attacks on diversity, equity, and inclusion, including the removal of names and links and so on, establish they do.

Moreover, the anti-diversity EOs expressly state that this administration believes that all DEI programs generally are illegal and immoral. The J20 EO describe actions taken by the Biden

13

Administration as "illegal and immoral" DEI, indicating that actions that are lawful would not be treated as lawful under this EO. "The Biden Administration forced illegal and immoral discrimination programs, going by the name 'diversity, equity, and inclusion' (DEI), into virtually all aspects of the Federal Government…." J20 EO, § 1.

Section 3(c)(ii) of the J21 EO likewise states that all DEI programs are improper, requiring the Director of the Office of Management and Budget to "[e]xcise references to DEI and DEIA principles, under whatever name they may appear, from Federal acquisition, contracting, grants, and financial assistance procedures….", and then revoking (J21 EO at § 3) certain prior executive actions, describing them as "illegal discrimination," including "Executive Order 12898 of February 11, 1994 (Federal Actions to Address Environmental Justice in Minority Populations and Low-Income Populations)" and "Executive Order 13672 of July 21, 2014 (Further Amendments to Executive Order 11478, Equal Employment Opportunity in the Federal Government, and Executive Order 11246, Equal Employment Opportunity)." As evidenced by the termination of these Executive Orders, the anti-diversity EOs reference to DEI and DEIA goes far beyond programs that actually violate the civil rights laws; rather, it encompasses all DEI/DEIA programs (whatever that means).

## III.    CWIT IS LIKELY TO SUCCEED ON THE MERITS OF ITS COMPLAINT

CWIT is likely to succeed on the merits. *See* Plaintiff's PI Memo. 8-13. The anti-diversity EOs (1) violate the First Amendment by being unconstitutionally overbroad, discriminating on the basis of viewpoint, and imposing unconstitutional conditions; (2) are unconstitutionally vague in violation of the Fifth Amendment; and (3) violate the separation of powers and the Spending Clause. CWIT respectfully requests that the Court refer to the papers supporting the motion for preliminary injunction (Dkt. No, 26), as well as the Supplemental Declaration submitted herewith.

## IV. THE GOVERNMENT SUFFERS NO COUNTERVAILING HARM IF THE COURT GRANTS THIS TRO

There is no legitimate countervailing harm the government can articulate that counsels against the issuance of a temporary restraining order. The funding for CWIT's grants at issue has been duly authorized by Congress via statute, and the award of grants approved by DOL. And to date, upon information and belief, DOL has not undertaken any analysis of whether any of CWIT's activities promoting diversity, equity, or inclusion are "illegal" by dint of judicial opinion or a Congressionally enacted statute. DOL has only attempted to end them *writ large*.

Rather than identify exactly what diversity, equity and inclusion programs actually violate the law, the EOs turn this process on its head by declaring them all illegal without any baseline definition for what it legal—which places the onus on grant recipients to prove legality definitively without any definitions or suffer the extreme and irreparable consequences. Indeed, the anti-diversity EOs are in this regard, *ex pos facto* in their impact because they declare to be legal, that which is not currently so.

## V. PUBLIC INTEREST AND HARM TO CWIT WEIGH IN FAVOR OF A TEMPORARY RESTRAINING ORDER PENDING RESOLUTION OF CWIT'S PRELIMINARY INJUNCTION MOTION

"[I]njunctions protecting First Amendment freedoms are always in the public interest." *Am. C.L. Union of Illinois v. Alvarez*, 679 F.3d 583, 590 (7th Cir. 2012) (citation omitted); *Grossbaum v. Indianapolis-Mario Cnty. Bldg. Auth.*, 63 F.3d 581, 585 (7th Cir. 1995) (stating that deciding whether a restriction was viewpoint discrimination was "surely in the public interest").

Moreover, a TRO to prevent the loss of CWIT's programs is in the public interest. Among the immediate harms would be the loss of CWIT's nationwide, trade-specific apprenticeship program, which helps women obtain employment in union apprenticeship

programs in the skilled trades. These programs address the very needs of the modern workforce that were identified by Congress when it allocated funds for these grants in the first instance. *See* Plaintiff's PI Memo 5-7 (referencing enabling statutes).

## VI. DUE TO THE CONSTITUTIONAL RIGHTS AT ISSUE, THE SCOPE OF THE INJUNCTIVE RELIEF SHOULD BE AGAINST THE GOVERNMENT NATIONWIDE OR, IN THE ALTERNATIVE, AGAINST THE DEFENDANTS AS PERTAINING TO CWIT

For the same reasons as argued in support of the preliminary injunction, the temporary restraining order should be nationwide in scope. "CWIT has provided technical assistance and gender equity training to industry stakeholders in all 50 states." PI Vellinga Decl. ¶15. Moreover, the nature, extent, and impact of the constitutional violation here spans the country. Thus, this case "presents an example of the type of case in which a district court should properly be able to apply an injunction nationwide." *City of Chicago v. Sessions*, 888 F.3d 272, 290 (7th Cir. 2018); *see also Texas v. United States*, 809 F.3d 134, 188 (5th Cir. 2015) (upholding nationwide injunction in immigration context). In upholding a similar nationwide injunction, the *Sessions* Court focused on "the purely legal nature of the issue here, the broad and uniform impact on all grant recipients, [and] the minimal harm to the Attorney General…." *Id. at* 293. Here, each of these factors weigh in favor of the requested nationwide relief. The same is true for the temporary restraining order.

A nationwide injunction is appropriate here based on the showing of likelihood of success on the merits of the constitutional claims. The anti-diversity EOs' chilling effects on speech impact every organization across the country that described diversity, equity, and inclusion efforts before the EOs' issuance and is compelled by the terms of the EOs' to self-censor its statements or lose its federal funding. Each grant recipient and subrecipient has already suffered

and will continue to suffer constitutional violations to its free speech rights as a direct result of the anti-diversity EOs.

An injunction that extends to non-parties may be particularly "appropriate" where, as here, "the government relies on a 'categorical policy,' and when the facts would not require different relief for others similarly situated to the plaintiffs." *HIAS Inc. v. Trump*, 985 F.3d 309, 326 (4th Cir. 2021) (quoting *Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571, 580 (2017)). The anti-diversity EOs meet this test. Moreover, "[o]nce a constitutional violation is found, a federal court is required to tailor the scope of the remedy to fit the nature and extent of the constitutional violation." *Hills v. Gautreaux*, 425 U.S. 284, 293-94 (1976) (citations and internal quotation marks omitted). "It is not beyond the power of a court, in the appropriate circumstances, to issue a nationwide injunction." *Texas Top Cop Shop, Inc. v. Garland*, 2024 WL 5049220, at *35 (E.D. Tex. Dec. 5, 2024) (quoting *Texas v. United States*, 809 F.3d 124, 188 (5th Cir. 2015)). Here, the scope of the constitutional violation is nationwide and affects all similarly situated grant recipients and sub-recipients. The scope of the restraining order should match the scope of the constitutional violations.

In the alternative, CWIT requests that the Court grant a TRO as to the Defendants and their actions pertaining to CWIT. As demonstrated above, without such relief, CWIT will continue to suffer ongoing violations of its free speech and due process rights, while the imminent termination of its grants is almost certain to occur absent a TRO to maintain the status quo, at least as to the grant funding.

With the government suffering no immediate harm, and with CWIT's irreparable, immediate, and imminent harm, coupled with the weight of public interest in favor of protecting free speech, the balance of harms tips heavily in favor of granting the TRO.

17

**CONCLUSION**

For these reasons, CWIT respectfully requests that the Court grant its request for a temporary restraining order that precludes any and all federal agencies from taking action adverse to a federally funded contract, grant, or other implementing vehicle, where that action is animated by the anti-diversity EOs. Alternatively, CWIT requests the Court enter an injunction prohibiting DOL from (1) taking any adverse action animated by the anti-diversity EOs on any of the federal grants by which CWIT receives funding, as either a grant recipient, sub-recipient, or subcontractor; and (2) directing any other grant recipient or contractor under which CWIT operates as a sub-recipient or subcontractor from taking any adverse action on any of those grants on the basis of the anti-diversity EOs.

CWIT further requests that the briefing schedule on the preliminary injunction motion be accelerated and that the motion be adjudicated during the pendency of this Court's temporary restraining order.

Dated: March 18, 2025                                    Respectfully Submitted,

/s/ Jason P. Stiehl                                     /s/ Anuj Vohra
Jason P. Stiehl                                         Anuj Vohra
CROWELL & MORING LLP                                    Keith J. Harrison*
455 N Cityfront Plaza Dr.                               CROWELL & MORING LLP
Suite 3600                                              1001 Pennsylvania Avenue, NW
Chicago IL 60611                                        Washington, DC 20004
Tel: (312) 840-3108                                     Tel: (202) 624-2500
jstiehl@crowell.com                                     avohra@crowell.com
                                                        kharrison@crowell.com

/s/ Meshach Y. Rhoades                                  /s/ Warrington Parker
Meshach Y. Rhoades                                      Warrington Parker
CROWELL & MORING LLP                                    CROWELL & MORING LLP
1601 Wewatta Street                                     3 Embarcadero Center, 26th

Suite 815
Denver, CO 80202
Tel: (303) 524-8660
mrhoades@crowell.com

s/ *Sabrina A. Talukder*
Sabrina A. Talukder*
Kathryn J. Youker
Adria J. Bonillas
Olivia Sedwick
Gillian Cassell-Stiga
Lawyers' Committee for Civil Rights
Under Law
1500 K Street, N.W. Suite 900
Washington, D.C. 20005
Telephone: (202) 662-8600
Facsimile: (202) 783-0857
stalukder@lawyerscommittee.org
kyouker@lawyerscommittee.org
abonillas@lawyerscommittee.org
osedwick@lawyerscommittee.org
gcassell-stiga@lawyerscommittee.org

Aneel L. Chablani (No. 6242658)
Ami D. Gandhi (No. 6282924)
Chicago Lawyers' Committee for
Civil Rights
100 N. LaSalle St., Ste. 600
Chicago, IL 60602
Telephone: (312) 630-9744
Facsimile: (312) 630-1127
achablani@clccrul.org
agandhi@clccrul.org

Floor
San Francisco, CA 94111
Tel: (415) 986-2800
wparker@crowell.com

Elizabeth E. Theran
Adrienne DerVartanian
National Women's Law Center
1350 I Street NW, Suite 700
Washington, DC 20005
Telephone: (202) 588-5180
Fax: (202) 588-5185
etheran@nwlc.org
adervartanian@nwlc.org

Lourdes M. Rosado
Rafaela Uribe
LATINOJUSTICE PRLDEF
475 Riverside Drive, Suite 1901
New York, NY 10115
Telephone: (212) 739-7583
lrosado@latinojustice.org
ruribe@latinojustice.org

*Attorneys for Chicago Women in Trades*

*\*Pro hac vice motion forthcoming*