UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHICAGO WOMEN IN TRADES, <br><br> Plaintiff, <br><br> v. <br><br> PRESIDENT DONALD J. TRUMP, DEPARTMENT OF LABOR, ACTING SECRETARY OF LABOR VINCENT MICONE, OFFICE OF MANAGEMENT AND BUDGET, DIRECTOR OF THE OFFICE OF MANAGEMENT AND BUDGET RUSSELL VOUGHT, U.S. DEPARTMENT OF JUSTICE, ATTORNEY GENERAL OF THE U.S. DEPARTMENT OF JUSTICE PAMELA BONDI, <br><br> Defendants. | Case No. 1:25-cv-02005 <br><br> Judge: Hon. Matthew F. Kennelly <br><br> JURY TRIAL DEMANDED |

**MEMORANDUM IN SUPPORT OF PLAINTIFF CHICAGO
WOMEN IN TRADES' MOTION TO MODIFY THE PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

                                                                                   **Page**

INTRODUCTION ...............................................................................................................................1

LEGAL STANDARD .......................................................................................................................2

ARGUMENT ....................................................................................................................................2

      I.      THE COURT SHOULD MODIFY THE SCOPE OF THE INJUNCTION TO COVER A SECOND GRANT AUTHORIZED BY DOL'S WOMEN'S BUREAU ...............................................................................................3

      II.     UNDER THE COURT'S ANALYSIS CWIT'S OTHER THREE GRANTS ARE ALSO "GRANTS TO FUND EXCLUSIVELY EQUITY-RELATED PROJECTS" ..................................................................................................5

            1.     THE ABA GRANT .....................................................................................6

            2.     THE JOBS FOR THE FUTURE GRANTS ................................................8

CONCLUSION..................................................................................................................................9

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Guy v. AARP Foundation*,
   Case No. 4:19-cv-211, 2020 WL 999197 (E.D. Mo. Feb. 28, 2020) ......................................3

*PrimeSource Building Prods., Inc. v. Felten*,
   Case No. 16-cv-11468, 2018 WL 10425921 (N.D. Ill. Mar. 8, 2018) ..................................2

*Sosebee v. Astrue*,
   494 F.3d 583 (7th Cir. 2007)................................................................................................2

*Su v. Fensler*,
   Case No. 22-cv-01030, 2023 WL 8446380......................................................................1, 2

*Thornburg v. Gingles*,
   478 U.S. 30 (1986) ............................................................................................................2, 3

**Statutes**

29 U.S.C.§ 13 .....................................................................................................................4

Pub. L. No. 66-259, 41 Stat. 87...........................................................................................5

Pub. L. No. 102-530, 106 Stat. 3465 § 2 (1992) ................................................................1

Pub. L. No. 113-128, 128 Stat. 1425 (2014).......................................................................5

Pub. L. No. 116-94, Division A, Title I (2020)...........................................................3, 8, 9

Pub. L. No. 116-260, 134 Stat. 1182, 1548 (2020).........................................................5, 6

Pub. L. No. 116-260, Division H, Title I (2021).............................................................6, 7

Pub. L. No. 116-260, Sec. 4, Title I (2021) .....................................................................3, 6

**Other Authorities**

Congressional Research Service, *Appropriations Report Language: Overview of Development and Components* (Updated March 22, 2023).....................................................3

Congressional Research Service, *Registered Apprenticeship: Federal Role and Recent Federal Efforts* (2025)..................................................................................................6

Consolidated Appropriations Act, 2021 Committee Print on H.R. 133, Pub. L. No. 116-260................................................................................................................................8

Fed. R. Civ. P. 59(e) ................................................................................................... 1, 2

Report of the Committee on Appropriations House of Representatives on H.R.
2740, H. Rept. 116-62 ............................................................................................. 9

## INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 59(e), Plaintiff Chicago Women in Trades ("CWIT") respectfully moves for modification of this Court's April 15, 2025, Preliminary Injunction Order, ECF 69. *See Su v. Fensler*, Case No. 22-cv-01030, 2023 WL 8446380, at *2 & *4 n. 4 (N.D. Ill. Nov. 28, 2023) (stating that motions to "reconsider, alter, or amend a preliminary injunction order are governed by Federal Rule of Civil Procedure 59(e)" and noting that a District Court "retains discretion to modify the terms of [an] injunction, even during the pendency of an appeal").

Based on the legal analysis set forth in the Court's April 14, 2025, Opinion & Order, ECF 68, and based on the publicly available legislative background of the grants at issue, CWIT respectfully requests that the Court modify its decision to enjoin enforcement of the Termination Provision as to only one of CWIT's federal grants. Instead, the Order should be expanded to enjoin enforcement of the Termination Provision as to all five of CWIT's federally funded grants.

First, the Court found that one of the statutes under which CWIT's grants were issued— the Women in Apprenticeship and Nontraditional Occupations ("WANTO") Act, Pub. L. No. 102-530, 106 Stat. 3465 § 2 (1992)—contains a congressional directive that "grants are to go toward projects benefitting women," and accordingly enjoined termination. ECF 68 at 38. However, the WANTO grant as well as the Tradeswomen Building Infrastructure Initiative ("TBII") grant are authorized by the Department of Labor's ("DOL") Women's Bureau which is tasked with improving employment opportunities for women. CWIT asks that the Court expand the scope of the injunction to include that additional grant.

Second, expansion of the injunction's scope to cover CWIT's other three grants is also warranted because those grants, just like the WANTO grant, as reflected in the Congressional Appropriation Committee Reports, were intended by Congress to be equity-related and specifically

1

aimed at gender equality. *See Thornburg v. Gingles*, 478 U.S. 30, 44 n.7 (1986) ("We have repeatedly recognized that the authoritative source of legislative intent lies in the committee reports on the bill.")

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 59(e), a federal district court has the discretion to modify, reconsider, alter, or amend the terms of an injunction, even during the pendency of an appeal. *Su*, 2023 WL 8446380, at *2 & 4 n. 4. Motions pursuant to Rule 59(e) allow for the correction of errors that "may have crept into the proceeding" or to demonstrate why a party has indeed met "the standard the court adopted." *See Sosebee v. Astrue*, 494 F.3d 583, 589 (7th Cir. 2007); *see also PrimeSource Building Prods., Inc. v. Felten*, Case No. 16-cv-11468, 2018 WL 10425921, at *2 (N.D. Ill. Mar. 8, 2018).

## ARGUMENT

CWIT respectfully submits that modification of the Preliminary Injunction regarding the Termination Provision is warranted so that all five of CWIT's federally funded grants are covered by its scope. First, expansion of the Preliminary Injunction's scope is warranted to cover the TBII grant, a subaward through the Illinois Department of Labor ("IDOL") to CWIT which, just like the WANTO grant, is administered by the DOL Women's Bureau. Second, expansion of the injunction's scope to cover CWIT's other three grants is also warranted because those grants, again, just like the WANTO grant, were intended by Congress to be equity-related and specifically aimed at expanding opportunities for women, minorities, and other underserved populations.

While a statute itself is binding, the Appropriations Report language gives guidance as to

Congress' intent with regard to that specific measure.[1] *See Thornburg*, 478 U.S. at 44 n.7. These reports from the House and Senate Appropriations Committees accompany appropriations acts and explain the funding decisions, including occasionally more specific direction for the executive agencies on congressional objectives. They provide guidance on how agencies should interpret and obligate the authorized funds. In essence, appropriations are the legal foundation for spending, while the accompanying reports help to clarify the intent and purpose behind the spending decisions made by Congress.[2] As set forth below, the Appropriation Committee Reports for the authorizing statutes here make clear that it was the intention of Congress to spend the grant money via the three non-WANTO CWIT grants on equity-related efforts, and specifically, providing women, who according to Congress are "largely underrepresented in apprenticeship programs," access to the very programs and training offered and promoted by CWIT. *See* Further Consolidated Appropriations Act, 2020, Pub. L. No. 116-94, Div. A, Tit. I.

## I. THE COURT SHOULD MODIFY THE SCOPE OF THE INJUNCTION TO COVER A SECOND GRANT AUTHORIZED BY DOL'S WOMEN'S BUREAU

CWIT first urges the Court to modify the Preliminary Injunction's scope to include its TBII grant, CWIT's subaward from IDOL. The DOL Women's Bureau administers both the TBII grant, Vellinga Decl. ¶ 37, ECF No. 26-9, and the WANTO grant, *id.* ¶ 20. As explained further below,

---

[1] *See* Congressional Research Service, *Appropriations Report Language: Overview of Development and Components* (Updated March 22, 2023), https://www.congress.gov/crs-product/R44124#:~:text=Although%20the%20language%20contained%20in,and%20obligate%20the%20funds%20provided; *see also* Consolidated Appropriations Act, 2021, Pub. L. No. 116-260, § 4 ("The explanatory statement regarding this Act, printed in the House section of the Congressional Record on or about December 17, 2019, and submitted by the Chairwoman of the Committee on Appropriations of the House, shall have the same effect with respect to the allocation of funds and implementation of divisions A through D of this Act as if it were a joint explanatory statement of a committee of conference."); *see also Guy v. AARP Foundation*, Case No. 4:19-cv-211, 2020 WL 999197, at *3 (E.D. Mo. Feb. 28, 2020) (referencing appropriations reports to DOL and other executive agencies as evidence of congressional intent regarding the whether or not plaintiff was an employee under Title VII, the ADA and the ADEA).

[2] *See Appropriations Report Language: Overview of Development and Components, supra* n.1.

both grants further the directives of the organic (enabling) statute of the DOL Women's Bureau to improve the employment opportunities for women.

In granting CWIT's motion for a preliminary injunction, the Court found that "the termination of the WANTO grant runs afoul of the Spending Clause." ECF 68 at 37. The Court, reasoning that "CWIT has not been able to show that Congress intended for the other grants to fund exclusively equity-related projects," thus enjoined enforcement of the Termination Provision, but only as applied to the WANTO grant received from the DOL Women's Bureau. *Id.* at 41.

CWIT agrees with the Court's reasoning with respect to the WANTO grant. As the Court notes, under the WANTO Act, "the DOL 'shall make grants to community-based organizations to provide technical assistance to employers and labor unions.'" ECF 68 at 37 (quoting 29 U.S.C. § 2503(a)). The Court is further right that "every example of 'technical assistance' that the Act lists involves supporting women, in particular, who hold nontraditional occupations." ECF 68 at 37 (citing 29 U.S.C. § 2503(a)(1)–(7)). CWIT, like the Court, "is unable to conceive of any grant issued under the WANTO Act that would *not* be an 'equity-related' grant." ECF 68 at 38.

As the Court acknowledges, the WANTO Act is administered by the DOL Women's Bureau. *Id.* at 37. But the WANTO Act is not the Women's Bureau's only statutory direction; the Bureau's organic statute (which establishes the power and responsibilities of a government agency) requires it to:

> ***formulate standards and policies which shall promote the welfare of wage-earning women, improve their working conditions, increase their efficiency, and advance their opportunities for profitable employment.*** The said bureau shall have authority to investigate and report to the Department of Labor upon all matters pertaining to the welfare of women in industry. The director of said bureau may from time to time publish the results of these investigations in such a manner and to such extent as the Secretary of Labor may prescribe.

4

Pub. L. No. 66-259, 41 Stat. 87, *codified at* 29 U.S.C.§ 13 (emphasis added). Consistent with its mission, the DOL Women's Bureau also administers grants authorized by other statutes, including the Workforce Innovation and Opportunity Act ("WIOA"), Pub. L. No. 113-128, 128 Stat. 1425 (2014), under which CWIT's TBII grant was subawarded through IDOL. The scope of work under the TBII grant effectuates the original directive of the Women's Bureau's organic statute. For example, the scope of work includes working with industry stakeholders to implement the Framework for Workforce Equity for Women and People of Color, promoting respectful and harassment-free workplaces, and sustaining inclusive and diverse infrastructure worksites. *See* Complaint ¶ 57. In other words, it is irrefutable that the TBII grant "promote[s] the welfare of wage-earning women, improve[s] their working conditions, increase[s] their efficiency, and advance[s] their opportunities for profitable employment," just like CWIT's WANTO grant. CWIT is "unable to conceive of any grant issued under" WIOA "that would *not* be an 'equity-related' grant" and therefore, for the same reason the Court enjoined termination of the WANTO grant, it should similarly enjoin termination of the TBII grant.

## II. UNDER THE COURT'S ANALYSIS CWIT'S OTHER THREE GRANTS ARE ALSO "GRANTS TO FUND EXCLUSIVELY EQUITY-RELATED PROJECTS"

As for CWIT's other three federally funded grants, Congress made clear its intent to fund equity programs and grants by way of the appropriations bills enacted pursuant to their enabling statutes. As the Court acknowledged, those appropriations can also impose conditions on the Executive Branch's expenditure of funds, even conditions that go beyond the requirements of an authorization. *See* ECF 68 at 36. This can be true even where Congress enacted a very broad spending authorization, like the National Apprenticeship Act, Pub. L. No. 116-260, 134 Stat. 1182, 1548 (2020), that authorizes CWIT's remaining three grants. Considering both the National Apprenticeship Act and the annual appropriations acts for each of the grants CWIT has placed

5

before this Court, the equity focus of each is clear. As such, and under this Court's reasoning, an injunction should issue as to all.

As described in more detail below, in appropriating funds for DOL to make each of these grants Congress made several specific references to "equity intermediaries," "gender inequality," "underserved or underrepresented populations" and that "women are largely underrepresented in apprenticeship programs, and women who do participate make far less than men." For example, the legislative history underpinning these three grants is replete with references to "equity intermediaries." The term "equity intermediaries" generally refers to "organizations that bridge the gap between employers and underrepresented communities, ensuring access to opportunities like registered apprenticeship programs. These intermediaries also play a role in helping underserved communities navigate federal funding opportunities and ensure equitable grantmaking processes."[3] The definition of equity intermediaries describes roles played by both JFF and CWIT under the grants.

### 1. The ABA Grant

One of CWIT's non-WANTO grants is an Apprenticeship Building America ("ABA") grant from DOL. Complaint ¶50. As noted in the Complaint, the funds for this grant were appropriated in the Consolidated Appropriations, 2021, Pub. L. No. 116-260, Division H, Title I (2021), which provides that "any grant funds used for apprenticeships shall be used to support only apprenticeship programs registered under the National Apprenticeship Act." Pub. L. No. 116-260, 134 Stat. 1182, 1548 (2020); Complaint ¶51. The Complaint further alleged that, "[t]his [ABA grant] is statutorily authorized work promoting equity." Complaint ¶53. The appropriations

---

[3] *See* Congressional Research Service, *Registered Apprenticeship: Federal Role and Recent Federal Efforts* (2025), https://www.congress.gov/crs-product/R45171.

confirm this Congressional intent. The ABA Grant was funded by the FY2021 Omnibus and COVID Relief and Response Act and provided,

> [f]or necessary expenses of the Workforce Innovation and Opportunity Act (referred to in this Act as "WIOA") and the National Apprenticeship Act, $3,663,200,000, plus reimbursements, shall be available. Of the amounts provided: . . .
>
> (2) for national programs, $817,868,000 as follows:
>
> . . .
>
> (G) $185,000,000 to expand opportunities through apprenticeships only registered under the National Apprenticeship Act and as referred to in section 3(7)(B) of the WIOA, to be available to the Secretary to carry out activities through grants, cooperative agreements, contracts and other arrangements, with States and other appropriate entities, including *equity intermediaries and business and labor industry partner intermediaries,* which shall be available for the period July 1, 2021 through June 30, 2022."

*See* Consolidated Appropriations Act, 2021, Pub. L. No. 116-260, Div. H, Tit. I (emphasis added).

In addition to specifying that the grant funds were to be used for purposes including "equity intermediaries," there are at least three other instances in the explanatory statement and other legislative history where Congress made clear its intention for these funds to be equity related. The legislative history specifically identifies the ABA grant as intended for "equity intermediaries." It also provides that those intermediaries are to use the funds for "underserved and underrepresented populations." And it specifies that DOL is to report to Congress quarterly to ensure that the funding is expended to promote equity as directed:

> The agreement provides $185,000,000 to support registered apprenticeships and includes new bill language ensuring that *equity intermediaries and business and labor industry intermediaries* continue to remain eligible for funding under the program.
>
> The agreement notes that funding under this program should be prioritized to support State, regional, and local apprenticeship efforts, as well as efforts by intermediaries, to expand registered

7

> apprenticeships into new industries and ***for underserved or underrepresented populations***.
>
> The agreement ***directs the Department to provide quarterly briefings on all spending activities*** under this program to the Committees, and ***to comply with reporting directives in House Report 116–450***, including a detailed spend plan within 90 days of enactment of this Act."

*See* Consolidated Appropriations Act, 2021 Committee Print on H.R. 133, Pub. L. No. 116-260 at 1594 (emphasis added).[4] Finally, Congress stated:

> In addition, the Committee notes that apprenticeships are an important path to the middle-class, with those completing a program earning an average annual income of $70,000. ***However, women are largely underrepresented in apprenticeship programs, and women who do participate make far less than men. Therefore, the Committee directs the Department to accelerate efforts to recruit and retain women as part of these programs and to ensure equal compensation.***

*See,* Further Consolidated Appropriations Act, 2020, Pub. L. No. 116-94, Div. A, Tit. I (emphases added).

### 2. The Jobs for the Future Grants

Jobs for the Future ("JFF") has two grants: the HUB Apprenticeship USA ("HUB") grant and the Intermediary Industry Contact ("ICC") (formerly known as the Improving Diversity and Equity in Apprenticeship for Manufacturing contract). The Authorizing Statute and Appropriations are the same for both JFF grants. CWIT is both a subawardee and subcontractor to JFF under these grants. They require CWIT to research and document best practices for outreach, mentoring and retention of women, provide services to increase the number of women entering and retained in advanced manufacturing apprenticeship programs, and focus on providing online and in-person

---

[4] Available at https://www.congress.gov/117/cprt/HPRT43750/CPRT-117HPRT43750.pdf.

diversity, equity, and inclusion training to sponsors of apprenticeship programs. Complaint ¶¶54-55.

Congress specified that the JFF grants were for equity related efforts. *See* Further Consolidated Appropriations Act, 2020, Pub. L. No. 116-94, Div. A, Tit. I.[5] Congress specifically expressed its concern for and intent to target "gender-inequity." The legislative history states:

> Furthermore, ***the Committee is concerned with the persistent gender inequity in apprenticeship programs. While apprenticeships are an important path to the middle-class, women are often underrepresented in apprenticeship programs, and women who do participate often make far less than their male counterparts. The Committee encourages the Department to commit to addressing these inequalities within the apprenticeship programs and directs the Department to include an update on such efforts in its fiscal year 2021 Congressional Budget Justification***

*See*, Report of the Committee on Appropriations House of Representatives on H.R. 2740, H. Rept. 116-62 at 16 (emphasis added),[6] incorporated by reference in the Explanatory Statement, H. Comm. Prt. 38-679 at 91.[7] Accordingly, gender inequity in apprenticeship programs is specifically identified by Congress as a driving rationale for the JFF Grants.

In sum, a review of the public record and legislative history demonstrates that each of these grants were also intended by Congress to be "equity-related" projects, thereby implicating the separation of powers under the Court's analysis as set forth in the Memorandum Opinion.

## CONCLUSION

For these reasons, CWIT respectfully requests that the Court grant its motion to expand the scope of preliminary injunction.

---

[5] Available at https://www.congress.gov/116/plaws/publ94/PLAW-116publ94.pdf
[6] Available at https://www.congress.gov/116/crpt/hrpt62/CRPT-116hrpt62.pdf
[7] Available at https://www.govinfo.gov/content/pkg/CPRT-116HPRT38679/pdf/CPRT-116HPRT38679.pdf.

| | |
|---|---|
| Dated: April 18, 2025 | Respectfully Submitted, |

/s/ *Jason P. Stiehl*
Jason P. Stiehl
CROWELL & MORING LLP
455 N Cityfront Plaza Dr.
Suite 3600
Chicago IL 60611
Tel: (312) 840-3108
jstiehl@crowell.com

/s/ *Meshach Y. Rhoades*
Meshach Y. Rhoades*
CROWELL & MORING LLP
1601 Wewatta Street
Suite 815
Denver, CO 80202
Tel: (303) 524-8660
mrhoades@crowell.com

s/ *Sabrina A. Talukder*
Sabrina A. Talukder*
Kathryn J. Youker
Adria J. Bonillas
Olivia Sedwick
Gillian Cassell-Stiga
Lawyers' Committee for Civil Rights Under Law
1500 K Street, N.W. Suite 900
Washington, D.C. 20005
Telephone: (202) 662-8600
Facsimile: (202) 783-0857
stalukder@lawyerscommittee.org
kyouker@lawyerscommittee.org
abonillas@lawyerscommittee.org
osedwick@lawyerscommittee.org
gcassell-stiga@lawyerscommittee.org

Aneel L. Chablani (No. 6242658)
Ami D. Gandhi (No. 6282924)
Chicago Lawyers' Committee for Civil Rights
100 N. LaSalle St., Ste. 600
Chicago, IL 60602
Telephone: (312) 630-9744

/s/ *Anuj Vohra*
Anuj Vohra
Keith J. Harrison*
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004
Tel: (202) 624-2500
avohra@crowell.com
kharrison@crowell.com

/s/ *Warrington Parker*
Warrington Parker*
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, CA 94111
Tel: (415) 986-2800
wparker@crowell.com

Elizabeth E. Theran
Adrienne DerVartanian
National Women's Law Center
1350 I Street NW, Suite 700
Washington, DC 20005
Telephone: (202) 588-5180
Fax: (202) 588-5185
etheran@nwlc.org
adervartanian@nwlc.org

Lourdes M. Rosado*
Rafaela Uribe*
LATINOJUSTICE PRLDEF
475 Riverside Drive, Suite 1901
New York, NY 10115
Telephone: (212) 739-7583
lrosado@latinojustice.org
ruribe@latinojustice.org

   Facsimile: (312) 630-1127
   achablani@clccrul.org
   agandhi@clccrul.org

*Attorneys for Chicago Women in Trades*

*\*Pro hac vice motion forthcoming*

Case: 1:25-cv-02005 Document #: 74 Filed: 04/18/25 Page 15 of 15 PageID #:828