**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **CHICAGO WOMEN IN TRADES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 25 C 2005** |
| | ) | |
| **PRESIDENT DONALD J. TRUMP, DEPARTMENT OF LABOR, ACTING SECRETARY OF LABOR VINCENT MICONE, OFFICE OF MANAGEMENT AND BUDGET, DIRECTOR OF THE OFFICE OF MANAGEMENT AND BUDGET RUSSELL VOUGHT, U.S. DEPARTMENT OF JUSTICE, ATTORNEY GENERAL OF THE U.S. DEPARTMENT OF JUSTICE PAMELA BONDI,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Chicago Women in Trades (CWIT) has moved under Federal Rule of Civil Procedure 59(e) to modify the preliminary injunction the Court entered on April 15, 2025. *See Chi. Women in Trades v. Trump*, No. 25 C 2005, 2025 WL 1118659, at *1 (N.D. Ill. Apr. 15, 2025). Specifically, CWIT asks the Court to modify its decision regarding section 2(b)(i) (Termination Provision) of Executive Order 14151, 90 Fed. Reg. 8339 (Jan. 20, 2025) (hereinafter J20 Order). The Court preliminarily enjoined the Secretary of Labor, the U.S. Department of Labor, and its officers, agents, and other persons in active concert or participation with any of them, from terminating CWIT's

Women in Apprenticeship and Nontraditional Occupations (WANTO) Act grant.[1] CWIT asks the Court to broaden the preliminary injunction to preclude enforcement of the Termination Provision of the J20 Order against its other four federal funding sources.

**Background**

The Court assumes familiarity with the facts as described in the preliminary injunction opinion. *See Chi. Women in Trades v. Trump*, --- F. Supp. 3d ---, 2025 WL 1114466, at *1–5 (N.D. Ill. Apr. 14, 2025).

CWIT receives five sources of federal funding: (1) a WANTO grant, (2) a Tradeswomen Building Infrastructure Initiative (TBII) grant, (3) an Apprenticeship Building America (ABA) grant, (4) a HUB Apprenticeship USA (HUB) grant, and (5) an Intermediary Industry Contract (IIC)[2]. CWIT is a subrecipient of the HUB grant and a subcontractor to the IIC through Jobs for the Future (JFF).

On April 14, 2025, the Court issued a decision on CWIT's preliminary injunction motion. The Court found that CWIT was likely to succeed on the merits of its claim that the Termination Provision of the J20 Order violated the Spending Clause and the separation of powers with respect to CWIT's WANTO grant. *See id.* at *16–18. The congressional appropriation for the WANTO grant states that "not less than $5,000,000 shall be used for grants authorized by the Women in Apprenticeship and Nontraditional Occupations Act." Further Consolidated Appropriations Act, 2024, Pub. L. No. 118-47, 138 Stat. 460, 641. Under the WANTO Act, DOL "shall make grants to community-

---

[1] CWIT does not seek modification of the portion of the preliminary injunction pertaining to section 3(b)(iv) of Executive Order 14173, 90 Fed. Reg. 8633 (Jan. 21, 2025).

[2] The IIC was formerly known as the Improving Diversity and Equity in Apprenticeship for Manufacturing (IDEA-M) contract. Pl.'s Corrected Mem. in Supp. of Mot. to Modify Prelim. Inj. at 8.

based organizations to provide technical assistance to employers and labor unions." 29 U.S.C. § 2503(a). Because "every example of 'technical assistance' that the Act lists involves supporting women, in particular, who hold nontraditional occupations," "the Court [was] unable to conceive of any grant issued under the WANTO Act that would not be an 'equity-related' grant." *Chi. Women in Trades*, 2025 WL 1114466, at *17. Accordingly, the Court found CWIT was likely to succeed on the merits of its claim that the directed termination of "equity-related" grants violated the Spending Clause and the separation of powers with respect to its WANTO grant. For this and the other reasons described in the Court's opinion, it issued the above-referenced preliminary injunction.

CWIT now seeks modification of the preliminary injunction to prevent termination of its remaining funding sources pursuant to the J20 Order's Termination Provision.

**Discussion**

CWIT argues that this Court misunderstood the nature of four of its federal funding sources, specifically the TBII grant, ABA grant, and two grants administered through JFF. It contends that these grants, like the WANTO grant, should be characterized as equity-related grants based on their statutory language and legislative history. Under this reading, these four remaining grants would then be at risk of termination under the Termination Provision of the J20 Order, namely under its directive that agency and department heads "shall . . . terminate, to the maximum extent allowed by law, all . . . 'equity-related' grants or contracts." Executive Order 14151, 90 Fed. Reg. 8339, § 2 (Jan. 20, 2025). CWIT contends that this outcome would conflict with the Court's reasoning in its preliminary injunction ruling, which prevented the termination of grants that Congress specified as equity-focused. CWIT argues that, similar to the

WANTO grant, Congress has specifically allocated funds for these four allegedly "equity-related" grants. Therefore, CWIT argues that the Court's logic enjoining termination of the WANTO grant should also preclude termination of CWIT's other grants. Accordingly, CWIT contends that this Court erred by declining to preliminarily enjoin termination of those grants.

Before turning to the merits of CWIT's motion, the Court addresses an argument raised in the government's brief in response to the motion.

**A. Reviewability by this Court**

The government, for the first time in any of the briefs it has filed in this case (specifically, its briefs filed on the motion for temporary restraining order and the motion for preliminary injunction), argues that the Supreme Court's holding in *Dalton v. Specter*, 511 U.S. 462 (1994), precludes the Court from considering CWIT's constitutional separation of powers argument as applied to each of its grants.

In *Dalton*, the Supreme Court determined that the plaintiffs could not challenge based on the separation of powers that the President's closure of a naval base was allegedly "in excess of his statutory authority." *Id.* at 471, 477–78. The Court noted that it had "often distinguished between claims of constitutional violations and claims that an official has acted in excess of his statutory authority." *Id.* at 472. The Court found that these past decisions "establish[ed] that claims simply alleging that the President has exceeded his statutory authority are not 'constitutional' claims." *Id.* at 473. For plaintiffs to allege a constitutional separation of powers claim, the Court held, the plaintiffs must base their claim on the "*absence* of *any* statutory authority," not just "that the President acted in excess of such authority." *Id.* (distinguishing *Youngstown Sheet & Tube Co. v.*

*Sawyer*, 343 U.S. 579 (1952)); *see also City of Chicago v. Barr*, 961 F.3d 882, 919 (7th Cir. 2020) (noting that *Dalton* "distinguish[ed] ultra vires claims, alleging an action that exceeded the authority, from constitutional claims, alleging an absence of *any* authority").

The government appears to contend that, under *Dalton*, CWIT's claim that the Termination Provision of the J20 Order constitutes an impermissible *ultra vires* act by the President is not a constitutional claim, but a statutory one. Therefore, the government says, *Dalton* instructs that the claim is properly reviewable in a district court only by raising it vis-à-vis the Administrative Procedures Act. With regard to CWIT's WANTO grant, the government's argument reads like a motion for reconsideration: it contends that the Court's ruling on the WANTO grant "is erroneous because . . . it contravenes binding precedent under *Dalton*." Defs.' Mem. in Opp. to Pl.s' Mot. to Modify Prelim. Inj. at 2. The government bases this argument at least partly on its apparent contention that CWIT did not assert an *ultra vires*, as-applied challenge under the Spending Clause. *Id.* at 4 (suggesting that CWIT had asserted only a facial Spending Clause challenge and arguing that "Plaintiff's case must rise and fall *on the claims it chooses to bring*" (emphasis added)). For the reasons stated below, the Court finds the government's argument under *Dalton* unavailing.

**1. Forfeiture and waiver**

At the outset, the government has forfeited or waived the argument that *Dalton v. Specter* forecloses this Court's review. "Forfeiture is the failure to make the timely assertion of a right." *Hamer v. Neighborhood Hous. Servs. of Chi.*, 583 U.S. 17, 20 n.1 (2017) (cleaned up). A party forfeits an argument even if its failure to raise it was

"inadvertent." *Love v. Vanihel*, 73 F.4th 439, 449 & n.5 (7th Cir. 2023); *see also United States v. Kopp*, 922 F.3d 337, 341 (7th Cir. 2019) ("[A] party forfeits an issue when it fails to raise an argument due to accident or neglect." (cleaned up)). And a party's "inadequately briefed arguments are forfeited" even if the party intended to raise the issue. *Dalton v. Teva N. Am.*, 891 F.3d 687, 692 (7th Cir. 2018).

"[W]aiver," on the other hand, "is the intentional relinquishment or abandonment of a known right." *Hamer*, 583 U.S. at 20 n.1 (cleaned up). A party is not required "to expressly state on the record [it]s intent to waive a challenge before [a court] will consider it waived." *United States v. Hathaway*, 882 F.3d 638, 641 (7th Cir. 2018). Instead, a court "evaluate[s] the record as a whole" to determine whether a party waived an argument by failing to raise it. *Id.*

"When a party selects among arguments as a matter of strategy, [it] also waives those arguments [it] decided not to present." *Holder v. Ill. Dept. of Corr.*, 751 F.3d 486, 493 (7th Cir. 2014). For example, the Seventh Circuit has "repeatedly recognized that district courts are entitled to treat an argument raised for the first time in a reply brief as waived." *O'Neal v. Reilly*, 961 F.3d 973, 974 (7th Cir. 2020) (Barrett, J.); *see also Tuduj v. Newbold*, 958 F.3d 576, 579 (7th Cir. 2020) ("[A]rguments not raised in an opening brief are waived."). This is because it is the parties', not the Court's, "responsibility to research and construct [their] arguments." *Gross v. Town of Cicero*, 619 F.3d 697, 704 (7th Cir. 2010) (citation omitted); *see also id.* ("[C]onclusory analysis will be construed as waiver.").

In its complaint, CWIT expressly alleged the Termination Provision was *ultra vires* in violation of the Spending Clause and that it violated the separation of powers

"both facially and as applied." Compl. ¶¶ 140–147, 156–168. CWIT then made its Spending Clause and separation of powers arguments in its preliminary injunction opening brief and incorporated those arguments in its temporary restraining order briefing. Pl.'s Mem. in Supp. of Mot. for Prelim. Inj. at 12–13; Pl.'s Mem. in Supp. of Mot. for TRO at 14.

In its response to these motions, the government solely relied on one out-of-circuit case to dispute CWIT's separation of powers arguments on the merits: the D.C. Circuit's decision in *Building & Construction Trades Department, AFL-CIO v. Allbaugh*, 295 F.3d 28 (D.C. Cir. 2002). According to the government, *Allbaugh* was dispositive on the separation of powers issue, as the D.C. Circuit reasoned that an executive order limited "to the extent permitted by law" merely "instruct[ed] . . . agenc[ies] to follow the law." *See* Defs.' Mem. in Opp. to Pl.'s Mot. for Prelim. Inj. at 32–33. The Court ultimately found, in its preliminary injunction ruling, that *Allbaugh* was unpersuasive. *See Chi. Women in Trades*, 2025 WL 1114466, at *18 (distinguishing *Allbaugh* based on the Ninth Circuit's reasoning in *City & County of San Francisco v. Trump*, 897 F.3d 1225 (9th Cir. 2018)).

Prior to this point, the government has not mentioned *Dalton v. Specter* in its briefing at all. The closest the government got to citing *Dalton* anywhere in these proceedings was during the preliminary injunction hearing. During the hearing, the Court asked the government whether the Termination Provision of the J20 Order violated the separation of powers by requiring the termination of equity-related grants in contravention of the WANTO Act. Citing no case in particular, the government argued "[t]he Supreme Court has distinguished between a claim that says the [E]xecutive

[B]ranch has acted outside the scope of its statutory authority as opposed to a separation of powers argument." Tr. of Proceedings, 78, Apr. 10, 2025. Yet when asked "[w]hat's the difference" between the Executive overstepping its statutory authority and a separation of powers violation, the government backtracked to previous arguments, stating it had "not really looked at [this] very closely because, again, plaintiffs have raised this separation of powers argument very cursor[ily] and again we're not there yet because WANTO hasn't been terminated." *Id.* at 78–79. Only when further pressed did the government assert that a specific challenge to the Termination Provision based on the WANTO Act would require arguing "the [P]resident has violated the statute, perhaps" under the "APA." *Id.* at 79. Lastly, when the Court asked the government whether the WANTO Act required funding equity-related grants in conflict with the Termination Provision's termination of such grants, the government resorted to its argument from *Allbaugh* that the Termination Provision's "extent permitted by law" language simply instructed agencies to follow the law. *Id.* at 80–81.

By referencing *Dalton*'s reasoning only during the preliminary injunction hearing, the government has at least forfeited the argument. The government had multiple timely opportunities to raise this issue, as it could (and should) have done so in its briefs on the motion for temporary restraining order and the motion for preliminary injunction. Instead, the government failed to brief the argument *at all* and only vaguely alluded to the principle discussed in *Dalton* during the preliminary injunction hearing. Whether by accident or neglect, the government at least forfeited the argument that *Dalton* forecloses this Court's review by failing to raise it earlier in a non-conclusory way. *See Teva N. Am.*, 891 F.3d at 692.

Moreover, the record reflects not just inadvertent forfeiture, but a deliberate focus on arguments other than the government's current *Dalton*-based argument. The government's briefing relied on one case, and one case only, in its separation of powers section—*Allbaugh*. When questioned by the Court on whether CWIT could challenge the Termination Provision on separation of powers grounds as applied to the WANTO grant, the government alluded to a *Dalton*-esque argument, but failed to cite any authority in particular and conceded it had "not really looked at" the argument "very closely." *Id.* at 78–79. The government then immediately shifted to its ripeness arguments, emphasizing that "we're not there yet because WANTO hasn't been terminated." *See id.* Finally, when asked specific questions about what grants the government was required to fund under the WANTO Act, the government again relied on *Allbaugh*'s reasoning to assert the Termination Provision could not violate the Act. This is the government "select[ing] among arguments"—ripeness and *Allbaugh*—"as a matter of strategy." *Holder*, 751 F.3d at 493. The Court concludes that this amounts to a waiver of the *Dalton*-based argument, at least with respect to the ruling on the WANTO grant, which is not before the Court by way of CWIT's motion to modify.

**2. Applicability of *Dalton***

Even if the Court found that the government did not waive its *Dalton* argument, the Court is not convinced that it is foreclosed from reviewing CWIT's Spending Clause and separation of powers claims at this time. As a preliminary matter, *Dalton* did not involve the Spending Clause, so it is distinguishable from the present action.

But even going to the heart of *Dalton*'s rationale, the Court finds the government's argument unpersuasive. To reiterate, *Dalton* distinguished between a

claim that the President acted in a "conceded *absence* of *any* statutory authority" and "a claim that the President acted in excess of such authority." *Dalton*, 511 U.S. at 473. The Court in *Dalton* "assume[d] for the sake of argument that some claims that the President has violated a statutory mandate are judicially reviewable outside the framework of the APA" but found that "longstanding authority holds that such review is not available when the statute in question commits the decision to the discretion of the President." *Id.* at 474.

Here, however, no such discretionary power exists. The federal spending power lies exclusively with Congress. U.S. Const., art. 1, § 8, cl. 1. The Executive Branch *must* respect congressional appropriations; it does not retain discretion to condition the payment of grants based on its political priorities absent a congressional delegation of such authority. *See In re Aiken County*, 725 F.3d 255, 259 (D.C. Cir. 2013) (Kavanaugh, J.) ("[T]he President may not decline to follow a statutory mandate or prohibition simply because of policy objections."); *see also City of Chicago v. Sessions*, 888 F.3d 272, 283 (7th Cir. 2018). The WANTO Act and its relevant appropriation acts, as discussed in the preliminary injunction order, likewise do not leave room for discretion permitting the President or DOL to withhold or terminate WANTO grant funds. *See Chi. Women in Trades*, 2025 WL 1114466, at *16–18 (discussing the specific language of the WANTO Act and relevant appropriations acts).

Accordingly, then, CWIT's claim regarding the Termination Provision as applied to its WANTO grant is best characterized as a claim that the President acted in the absence of any authority, and not a claim that he exceeded statutory authority. As the Court emphasized in its preliminary injunction order, the only authority given to the

Executive regarding the WANTO grant is a congressional mandate that "not less than $5,000,000 *shall* be used for *grants* authorized by the Women in Apprenticeship and Nontraditional Occupations Act." Further Consolidated Appropriations Act, 2024, Pub. L. No. 118-47, 138 Stat. 460, 641 (emphases added). Put differently, the WANTO Act and relevant appropriations acts do not allow for discretionary action by the Executive and contain a single permissible use of Executive authority: spend the money Congress allocated for the WANTO grants. In other words, the President lacks authority to allocate these funds towards any other grant and further lacks authority to terminate these grants. For these reasons, *Dalton* is inapposite.

**B. Rule 59(e)**

Under Rule 59(e), a party may file a motion to alter or amend a judgment, including an order for an injunction. *See* Fed. R. Civ. P. 59(e); *Su v. Fensler*, No. 22 C 1030, 2023 WL 8446380, at *2 (N.D. Ill. Nov. 28, 2023). "In general, to prevail on a motion for reconsideration a party must establish a 'manifest error of law or fact,' or must show there is 'newly discovered evidence' that would have precluded the order for which they seek reconsideration." *Su*, 2023 WL 8446380, at *2 (citations omitted). Manifest error of law requires the movant to establish a court's "wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000).

CWIT contends that, like its WANTO grant, its four other sources of federal funding call for funding of equity-related projects based on statutory language and the congressional record. CWIT thus asks the Court to preclude termination of these four other sources of funding based on its reasoning in the preliminary injunction decision.

The Court finds CWIT's arguments unpersuasive.

**1. TBII grant**

The TBII grant is awarded under the Workforce Innovation and Opportunity Act (WIOA). DOL's Women's Bureau administers grants authorized by the WIOA. As CWIT notes, Congress established DOL Women's Bureau in part to "formulate standards and policies which shall promote the welfare of wage-earning women, improve their working conditions, increase their efficiency, and advance their opportunities for profitable employment." 29 U.S.C. § 13. According to CWIT, then, any grant administered by DOL Women's Bureau pursuant to the WIOA necessarily is an equity-related grant, "and therefore, for the same reason the Court enjoined termination of the WANTO grant, it should similarly enjoin termination of the TBII grant." Pl.'s Corrected Mem. in Supp. of Mot. to Modify Prelim. Inj. at 5. CWIT further emphasizes this argument by pointing to the scope of work for its TBII grant, which CWIT contends "effectuates the original directive of the Women's Bureau's organic statute." *Id.*

The Court is not persuaded. As the government points out, the organic statute creating the DOL Women's Bureau does not mandate the funding of any grants, let alone the TBII grant. The only statutory authorization for Women's Bureau to allocate funds to the TBII grant comes from the 2024 Appropriations Act. And there, Congress did not use the same sort of language to fund WIOA grants that it used to fund WANTO grants.

In the 2024 Appropriations Act, Congress's allocation of funds to DOL included this language: "*[p]rovided further*, That the funds available to the Women's Bureau *may* be used for grants to serve and promote the interests of women in the workforce."

Further Consolidated Appropriations Act, 2024, Pub. L. No. 118-47, 138 Stat. 460, 641 (second emphasis added). By contrast, for the WANTO Act, the 2024 Appropriations Act stated: "*[p]rovided further*, That of the amounts made available to the Women's Bureau, not less than $5,000,000 *shall* be used for grants authorized by the Women in Apprenticeship and Nontraditional Occupations Act." *Id.* (second emphasis added).

The difference between "shall" and "may" is clear: although the 2024 Appropriations Act mandates that "not less than $5,000,000" must be used for WANTO Act grants, remaining "funds available" after that may, possibly, be used for other grants. *See Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 171–72 (2016) ("Unlike the word 'may,' which implies discretion, the word 'shall' usually connotes a requirement."). In short, DOL may, but is not required to, provide equity-related grants under WIOA.

The Women's Bureau's organic statute does not instruct otherwise. Although CWIT points to language in the statute that references equity, the language in an agency's organic statute does not, in this context, supersede directly applicable language that Congress placed in the relevant appropriations statute. Regarding the 2024 Appropriations Act, Congress made clear that DOL Women's Bureau is required to fund WANTO grants but gave it discretion to fund other grants that "serve and promote the interests of women in the workforce." Further Consolidated Appropriations Act, 2024, Pub. L. No. 118-47, 138 Stat. 460, 641. And although that language does sound in gender-based equity, the use of the permissive "may" in the 2024 Act indicates that Congress has different requirements for how, and whether, the Women's Bureau allocates funds to WIOA grants and, by extension, CWIT's TBII grant. This difference

leads the Court to conclude that it did not commit a manifest error of law in limiting its preliminary injunction to CWIT's WANTO grant.

**2. ABA grant**

In describing the funding goals of the Apprenticeship Building America (ABA) grant, CWIT refers to the ABA's appropriation statute, the Consolidated Appropriations Act of 2021, and highlights its reference to "equity intermediaries" as one of the recipients of allocated funds for ABA grants. CWIT then refers to the explanatory statement and legislative history to emphasize that the ABA grants target "equity intermediaries" and "underserved and underrepresented populations." *See* Consolidated Appropriations Act, 2021 Committee Print on H.R. 133, Pub. L. No. 116-260 at 1594; H.R. Rep. No. 116-450, at 16 (2020).

The Consolidated Appropriations Act, 2021, provides that:

> For necessary expenses of the Workforce Innovation and Opportunity Act (referred to in this Act as "WIOA") and the National Apprenticeship Act, $3,663,200,000, plus reimbursements, shall be available. Of the amounts provided: . . .
>
> (2) for national programs, $817,868,000 as follows:
>
> . . .
>
> (G) $185,000,000 to expand opportunities through apprenticeships only registered under the National Apprenticeship Act and as referred to in section 3(7)(B) of the WIOA, to be available to the Secretary to carry out activities through grants, cooperative agreements, contracts and other arrangements, with States and other appropriate entities, including equity intermediaries and business and labor industry partner intermediaries, which shall be available for the period July 1, 2021 through June 30, 2022.

*See* Consolidated Appropriations Act, 2021, Pub. L. No. 116-260, Div. H, Tit. I, 134 Stat. 1182, 1547–49 (emphasis added).

CWIT argues that this language confirms that Congress has required DOL to

fund equity-related programming through the ABA grant and that the application of the Termination Provision to the ABA grant would therefore be unlawful, similar to this Court's finding in the context of the WANTO grant.

The Court disagrees with CWIT's reading of the statute. Although CWIT focuses on the statute's reference to "equity intermediaries," this reference is incomplete. The key language in the provision is "including," which directly precedes "equity intermediaries." The use of the preposition "including" indicates that the Secretary of Labor *may* choose to fund an "equity intermediary" but that it is not required to do so. The use of "including" begins a non-exhaustive list. In other words, equity intermediaries are just *one potential* category of "appropriate entities," in addition to entities such as "business and labor industry partner intermediaries." *See Samantar v. Yousuf*, 560 U.S. 305, 317 (2010) ("It is true that use of the word 'include' can signal that the list that follows is meant to be illustrative rather than exhaustive."); *see also Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Donovan*, 746 F.2d 855, 862 (D.C. Cir. 1984) (indicating that interpretations of statutes that maintain the discretion of the Executive are more consistent with the usual understanding of lump-sum appropriations).

This phrasing is in stark contrast with the WANTO grant, which expressly states that the Executive "shall" award grants for projects benefitting women. *See* 29 U.S.C. § 2503(a). Though equity-related projects are certainly a permitted use of the funds, as conveyed by the mention of "equity intermediaries," there is no language in the statute that *requires* the Executive to fund equity intermediaries. In fact, by mentioning other permissible recipients such as business partners, a more general reference that is not

equity related, the language suggests the opposite.

Moreover, as the government argues, it is well-established that legislative history does not bind agencies in the context of congressional appropriations. Indeed,

> a fundamental principle of appropriations law is that where Congress merely appropriates lump-sum amounts without statutorily restricting what can be done with those funds, a clear inference arises that it does not intend to impose legally binding restrictions, and indicia in committee reports and other legislative history as to how the funds should or are expected to be spent do not establish any legal requirements on the agency.

*Lincoln v. Vigil*, 508 U.S. 182, 192 (1993) (citations and internal quotation marks omitted); *Salazar v. Ramah Navajo Chapter*, 567 U.S. 182, 200 (2012) ("An agency's discretion to spend appropriated funds is cabined only by the 'text of the appropriation,' not by Congress' expectations of how the funds will be spent, as might be reflected by legislative history." (citation omitted)).

CWIT has not pointed to any language in the actual appropriations statute that requires the government to fund equity-related grants akin to the Court's conclusion regarding the WANTO grants. The Court therefore concludes that it did not commit a manifest error of law with respect to CWIT's ABA grant.

**3. JFF-related funding**

CWIT's last two federal funding sources, its HUB grant and IIC, are administered through a different entity, Jobs for the Future; CWIT is a subawardee and subcontractor to JFF under these grants. According to CWIT, "[t]he Authorizing Statute and Appropriations are the same for both JFF grants." Pl.'s Corrected Mem. in Supp. of Mot. to Modify Prelim. Inj. at 8. In particular, CWIT emphasizes that the 2021 Appropriations Act allocated "$185,000,000 to *expand opportunities* through apprenticeships only registered under the National Apprenticeship Act and . . . the

WIOA." Consolidated Appropriations Act, 2021, Pub. L. No. 116-260, Div. H, Tit. I, § (G), 134 Stat. 1182, 1549 (emphasis added). Based on this language and relevant legislative history, CWIT contends that both JFF grants are congressional mandates directing DOL to disburse funds for equity-related grants. Accordingly, CWIT argues that terminating these grants would directly violate the congressional mandate regarding how to spend these funds.

For the reasons outlined above, the Court does not find CWIT's arguments persuasive. A general reference to "expand[ing] opportunities" is nothing like the women-focused mandate relating to WANTO grants. As the Court set out in its preliminary injunction order, Congress expressly directed DOL's Women's Bureau to allocate not less than a specified amount of federal funds to WANTO grants; in turn, every permissible use of grant funds under the WANTO Act required implementing programs supporting women in particular. The Court found that grants that fund programs focused on helping women to enter skilled labor jobs in which they are underrepresented could only be characterized as "equity-related grants." *See Chi. Women in Trades*, 2025 WL 1114466, at *16–18. It was in stepping through this analysis that the Court determined that the President lacked authority to terminate funding that Congress mandated under the WANTO Act and accompanying appropriation acts.

CWIT's brief does not discuss with particularity the statutory language or appropriations act for either JFF grant. Instead, CWIT focuses on the legislative history for the 2021 Appropriations Act, which it contends shows that "Congress specifically expressed its concern for and intent to target 'gender-inequity.'" Pl.'s Corrected Mem. in

Supp. of Mot. to Modify Prelim. Inj. at 9. The specific legislative history highlighted by CWIT states:

> Furthermore, the Committee is concerned with the persistent gender inequity in apprenticeship programs. While apprenticeships are an important path to the middle-class, women are often underrepresented in apprenticeship programs, and women who do participate often make far less than their male counterparts. The Committee encourages the Department to commit to addressing these inequities within the apprenticeship programs and directs the Department to include an update on such efforts in its fiscal year 2021 Congressional Budget Justification.

Report of the Committee on Appropriations House of Representatives on H.R. 2740, H.R. Rep. No. 116-62, at 16 (2019).

As explained earlier, this legislative history, although referencing concerns over gender inequity, does not carry the force and effect of a congressional mandate. Nor does it contain direct language akin to the WANTO Act that would persuade this Court that modification of the preliminary injunction is called for. The only "mandate" arguably found in the legislative history "directs" DOL to update the Committee on its "efforts" to address gender inequity—not to allocate funds to programs addressing such inequity.

In sum, then, the Court concludes that CWIT has not shown a manifest error of law warranting modification of the preliminary injunction to encompass any of CWIT's other sources of federal funding.

**Conclusion**

For the reasons stated above, the Court denies CWIT's motion to modify [dkt. no. 73]. A supplement to the April 28 joint status report (dkt. 84) is to be filed by May 9, 2025. The case is set for a telephonic status hearing on May 14, 2025 at 9:15 a.m., using call-in number 650-479-3207, access code 2305-915-8729. The Court intends to set at that time a schedule for any further proceedings needed to bring the case to a

conclusion.

Date: May 7, 2025

MATTHEW F. KENNELLY
United States District Judge