UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHICAGO WOMEN IN TRADES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 25 C 2005 |
| v. ) | |
| ) | Judge Kennelly |
| PRESIDENT DONALD J. TRUMP, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION FOR A PROTECTIVE ORDER TO STAY DISCOVERY
PENDING RESOLUTION OF THEIR MOTION TO DISMISS**

**Introduction**

On May 14, 2025, the court authorized discovery to proceed in this action arising from five provisions in two executive orders (EOs 14,151 and 14,173)[1] while counseling for restraint at this early litigation stage. CWIT issued sweeping agency-wide discovery requests two weeks later. CWIT's Discovery Requests, attached as Exhibit A. The defendants ask that the court decline to authorize those improper discovery requests and stay discovery pending resolution of their motion to dismiss based on principles from two Supreme Court decisions issued in June 2025.

The discovery requests CWIT chose to issue deeply offend separation-of-powers doctrine. They reach into even deliberative exchanges among high-ranking officials and the Office of the President and inquire about *all provisions* in two executive orders issued by the President himself, including those that the court held CWIT lacked standing to challenge and all those CWIT does not challenge. But on June 6, the Supreme Court ordered the D.C. Circuit to rigorously use tools

---

[1] Executive Order 14,151, 90 FR 8339, *Ending Radical and Wasteful Government DEI Program and Preferencing*; Executive Order 14,173, 90 FR 8633, *Ending Illegal Discrimination and Restoring Merit-Based Opportunity*.

such as relevance principles to narrow a district court order that improperly authorized discovery that also offended separation of powers. *In re U.S. DOGE Serv.*, No. 24A1122 (2025 (select documents attached as Exhibit B). Thus, the court should not authorize the broad requests here.

CWIT also improperly seeks agency-wide discovery probing into the details of agency decision-making, motives, and positions. *See* Ex. A. But on June 18, the Supreme Court issued a decision clarifying that APA record-rule requirements must also inform the scope of any discovery here—*Nuclear Reg. Comm'n v. Texas*, 605 U.S. ---- (June 18, 2025), attached as Exhibit C. There, the Court held that courts' equity powers are unavailable when a statute provides "an alternative path to judicial review." *Id.* at *9. Assuming this action about federal grant and contract money does not belong in the Court of Federal Claims, the APA is a statute providing a path to judicial review. CWIT believes that it even has "the right" to bring "APA claims." Compl. at 30 n.22. So, the APA *must* inform discovery on CWIT's challenges, all brought under the court's equity powers.

CWIT's requests are far-reaching in scope, directed to three large federal agencies and their heads, and concerned with executive orders issued by the President himself. They inquire about *all* provisions in the executive orders; *all* government contractors, grantees, and funding recipients; agency deliberations, methodologies, and motives; and more. Such requests are certain to force extensive privilege objections. Separation of powers, however, requires courts to explore "other avenues, short of forcing the Executive to invoke privilege," before authorizing such sweeping discovery against the Executive Branch. *Cheney v. U.S. Dist. Court for Dist. Of Columbia*, 542 U.S. 367, 390-91 (2004). The common-sense approach here is to stay discovery until the court resolves the motion to dismiss. CWIT would suffer no prejudice from a stay; rather, the court entered a preliminary injunction for CWIT, and the court recognized several arguments raised in the forthcoming motion to dismiss, so the proper issues are sure to be at least substantially limited.

**Background**

CWIT challenges five provisions in executive orders 14,151 and 14,173, which it says chill its speech and jeopardize federal funding it receives from five sources, all administered by DOL. Dkt. 1; *see also* Dkt. 90 (summarizing funding sources). CWIT says its complaint seeks no "money damages" and challenges the five provisions and any agency action implementing them under the First Amendment, *id.*, Cts. I-III, the Due Process Clause, *id.*, Ct. IV, the Spending Clause, *id.*, Cts. V, VI, and separation-of-powers principles, *id.*, Cts. VII, VIII. But CWIT alleges that it also has had the "right" to bring "APA claims" based on its allegations. Compl. at 30 n.22.

The court has entered a preliminary injunction concerning two of the five challenged provisions. Dkt. 68, 69 (preliminary injunction order), 90. The first is the Termination Provision in EO 14,151, which directs agency, department, and commission heads to terminate "equity-related" federal grants or contracts to the extent consistent with the law. EO 14,151 §§ 2(b)(i), 4(b). And the second is the Certification Provision, which provides that each agency head "shall include in every contract or grant award" a "term requiring such counterparty or recipient to certify that it does not operate any programs promoting DEI that violate any applicable Federal anti-discrimination laws," EO 14,173 § 3(b)(iv)(B), consistent with the law, *id.* § 4(b), and that such certifications will be material to government payment decisions, *id.* § 3(b)(iv). The court found a likelihood of success for only two challenges relating to those provisions: (1) a separation-of-powers challenge to DOL's alleged decision to terminate funding CWIT receives under the WANTO Act based on the Termination Provision, and (2) a First Amendment challenge to DOL's alleged plan to place certifications under the Certification Provision in contract and grant awards that CWIT (or parties it could contract with) might apply for in the future. Dkt. 68, 90.

The court otherwise denied CWIT's preliminary injunction motion, Dkt. 68 at 2, and found several challenges to suffer from jurisdictional defects or lack merit on purely legal grounds, Dkt. 52, 68, 90. The court was "unpersuaded that CWIT can establish the required injury in fact" to challenge the three executive order provisions in § 2(b)(ii)(A) in EO 14,151 and § 3(c)(iii) and 4(b) in EO 14,173 because they "focus on internal government agency processes and programs and reporting to the President from his subordinates." Dkt. 52 at 5. The court also found that "CWIT is unlikely to succeed" on its First Amendment, Dkt. 68 at 32, Fifth Amendment, *id.* at 34, and facial separation of powers challenges to the Termination Provision in EO 14,151, *id.* at 68. And the court declined to extend the preliminary injunction concerning the Termination Provision to CWIT's four funding sources apart from the WANTO Act. Dkt. 90.

After entering the preliminary injunction, the court authorized discovery to proceed on May 14, 2025. Dkt. 94. Two weeks later, on May 28, 2025, CWIT served broad discovery requests on all defendants—the President, the Department of Justice (DOJ) and its Attorney General, DOL and its Secretary, and the Office of Management and Budget (OMB) and its Director. Ex. A. CWIT has withdrawn its discovery requests for the President. Dkt. 99 at 4. The discovery requests now consist of 16 production requests and 16 interrogatories for each defendant agency and agency head. Ex. A. Responses are due June 27, 2025. *See* Fed. R. Civ. P. 33(a)(b)(2), 34(b). The court has not decided whether or to what extent CWIT's discovery requests should be authorized. *See* Dkt. 94. On June 25, 2025, the defendants conferred telephonically and in good faith with CWIT to resolve their differences under Local Rule 37.2 but were unable to reach an accord.

**Legal Standard**

The court may stay discovery under its inherent power to control the disposition of causes on its docket with economy of time and effort for itself, litigants, and attorneys, *Air Line Pilots*

4

*Ass'n v. Miller*, 523 U.S. 866, 879 (1998), or for good cause under Fed. R. Civ. P. 26(c)(1), *Crawford-El v. Britton*, 523 U.S. 574, 598-99 (1998). "In determining whether to grant a stay, a court may consider the following factors: (1) whether a stay will unduly prejudice or tactically disadvantage the non-moving party, (2) whether a stay will simplify the issues in question and streamline the trial; and (3) whether a stay will reduce the burden of litigation on the parties and on the court." *Calderon v. Procter & Gamble Co.*, 2022 WL 20742696, at *1 (N.D. Ill. Oct. 6, 2022). Discovery stays are "'not disfavored and are often appropriate where the motion to dismiss can resolve the case,'" *id.* at *2 (quoting *Bilal v. Wolf*, 2007 WL 1687253, at *1 (N.D. Ill. June 6, 2007)), particularly when the motion "can resolve a threshold issue such as jurisdiction, standing, or qualified immunity" or where "discovery may be especially burdensome and costly to the parties." *DSM Desotech Inc. v. 3D Sys. Corp.*, 2008 WL 4812440, at *2 (N.D. Ill. Oct. 28, 2008).

## Argument

**I.     Discovery Should Be Stayed Based on Separation-of-Powers Doctrine.**

CWIT's discovery requests violate separation of powers. They seek discovery about all provisions in two executive orders while reaching deeply into even deliberative exchanges among the President and his advisors and high-ranking officials—the Attorney General, OMB Director, and DOL Secretary. Supreme Court precedent requires courts to tread carefully before authorizing such requests, and a stay should be entered so that the court and parties proceed with required care.

**A.     Separation of Powers Must Inform the Timing and Scope of Any Discovery.**

The Supreme Court's June 6 decision in *DOGE* provides a roadmap for the court to decide whether, when, and how to authorize CWIT's discovery requests. Ex. B at 3. There, the Court reviewed a district court discovery order that authorized the plaintiff's discovery requests involving the U.S. DOGE Service—a presidential advisory body within the Executive Office of the President that the President tasked, in various executive orders, with providing

5

recommendations about important policy matters—to determine whether the body was subject to FOIA. *Id.* at 6-7. The plaintiff argued that the issue turned on DOGE's level of influence within the Executive Branch. *Id.* Soon after the district court entered an order authorizing many requests, the government petitioned for a writ of mandamus with the D.C. Circuit, which denied the petition. *Id.* at 5-8. The Supreme Court then granted certiorari, vacated the petition denial, and remanded the case to the D.C. Circuit with instruction for narrowing the discovery order. *Id.* at 2-3. The Court explained that the order failed to observe relevance and separation-of-powers principles counseling "judicial deference and restraint in the context of discovery regarding internal Executive Branch communications." *Id.* at 3 (citing *Cheney*, 542 U.S. at 385). The order, for example, disregarded that whether DOGE was an "agency" under FOIA did not turn on its "ability to persuade" and improperly authorized discovery about "the content of intra-Executive Branch USDS recommendations and whether those recommendations were followed." *Id.*

The takeaway from *DOGE* is that when plaintiffs seek discovery about matters involving official duties of high-level executive officials and the Office of the President, separation of powers requires courts to rigorously use available tools to protect the Executive Branch from unnecessarily intrusive discovery. Courts, for example, should carefully time and limit discovery using tools such as relevance, proportionality, and justiciability principles. Indeed, the Supreme Court "has held, on more than one occasion," that respect for the Office of the President should "inform the conduct of the entire proceeding, including the *timing and scope of discovery*.'" *Cheney*, 542 U.S. at 385 (emphasis added) (quoting *Clinton v. Jones*, 520 U.S. 681, 707 (1997)). The Court has more generally required courts to consider "'the paramount necessity of protecting the Executive Branch from vexatious litigation that might distract it from the energetic performance of its constitutional duties.'" *Ziglar v. Abbasi*, 582 U.S. 120, 141 (2017) (quoting *Cheney*, 542 U.S. at 382).

The timing and sweeping nature of CWIT's discovery requests run roughshod over these separation-of-powers requirements. As a limited sampling, the production requests seek just at the outset all documents relating to any guidance, interpretations, applications, and enforcement for every single provision in both executive orders, Ex. A at 8, ¶ 1, and all documents provided by any executive official to contractors or grantees regarding every single provision in both executive orders, *id.* at 9, ¶ 2. Meanwhile, the interrogatories request information about any guidance or instruction relating to the administration or enforcement of all provisions in both executive orders, universal definitions of terms in executive order provisions that the court held CWIT lacks standing to challenge and in provisions that CWIT does not challenge, and the processes and methodologies agencies applied to reach certain alleged decisions. *E.g.*, *id.* at 19-21, ¶¶ 12, 11, 7, 9.

Those requests alone seek discovery about even deliberative recommendations and advice, even among high-ranking executive branch officials and the President and his advisors. They include, for example, a call for all documents and information *relating* to the executive order provision directing the "Attorney General" and other agency heads to make multiple "recommendations" about matters as sensitive as "enforcing Federal civil-rights laws" to "the Assistant to the President for Domestic Policy" to ultimately inform the President himself. EO 14,173 § 4(b). They also seek documents *relating* to an executive order provision requiring terminations of executive orders and a presidential memorandum, *see id.* § 3(a), and to another directing the Attorney General and Secretary of Education to provide certain guidance "regarding measures and practices to comply with *Students for Fair Admissions, Inc. v. President and Fellows of Harvard College*, 600 U.S. 181 (2023)," *id.* § 5. And they inquire into "'executive motivation,'" which represents "a 'substantial intrusion' into the workings of another branch of Government"

7

that should be avoided. *Dep't of Commerce v. New York*, 588 U.S. 752, 781 (2019) (quoting *Vill. of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 268 n. 18 (1977)).

CWIT's withdrawal of its requests to the President is far from a resolution. Rather, authorizing the pending requests would still impose highly intrusive and distracting discovery obligations on senior executive branch officials and the Office of the President. To respond, each recipient would need to gather responsive documents and information relating to *all* provisions in executive orders that the President himself issued. Each would then need to coordinate with high-ranking executive officials and the Office of the President to strategize and conduct extensive and distracting line-by-line reviews to decide on whether the documents and information should be disclosed based on complex privilege issues, responsiveness, relevance, proportionality, and so on. This would all occur *before* the defendants' motion to dismiss is resolved. Such a process would severely violate separation-of-powers requirements urging courts to tread carefully in deciding whether, when, and how to authorize such discovery requests.

Requiring the defendants to limit discovery by invoking privileges is also an improper resolution. Rather, separation of powers requires courts to explore "other avenues, short of forcing the Executive to invoke privilege," before authorizing discovery about official activities of the Office of the President and high-ranking executive branch officials. *Cheney*, 542 U.S. at 390-91. One such avenue here is to stay discovery until the court resolves the motion to dismiss. Resolution of the motion would limit or eliminate the proper subjects and recipients for any discovery. This common-sense approach is certainly a way to tread carefully in this fraught area.

**B.     The Requests Ignore Justiciability, Relevance, and Proportionality Principles.**

Several discovery tools enable the court to limit any discovery consistent with *DOGE*— including relevance, proportionality, and justiciability requirements. The court would properly employ those tools here by staying discovery until the motion to dismiss is resolved.

8

The Supreme Court has held that "courts must determine that they have jurisdiction before proceeding to the merits," including by deciding on the plaintiff's standing. *Lance v. Coffman*, 549 U.S. 437, 439 (2007) (citing *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 94-95 (1998)). But CWIT puts "the cart before the horse" by seeking discovery as to challenges it lacks standing to bring and from parties it lacks standing to sue. *DAC Mgmt., LLC v. United States*, 275 F. Supp. 3d 928, 932 (N.D. Ill. Sept. 8, 2017). Under *DOGE*, authorizing broad discovery about challenges CWIT lacks standing to bring and against parties CWIT lacks standing to sue is improper.

The court already rejected CWIT's challenges to three of the five executive order provisions—§ 2(b)(ii)(A) in EO 14,151, and § 3(c)(iii) and 4(b) in EO 14,173—because it was "unpersuaded that CWIT can establish the required injury in fact" to challenge them. Dkt. 52 at 5. Yet, CWIT' seeks discovery about those same provisions, such as definitions of "environmental justice" in § 2(b)(ii)(A) and other terms in them, *e.g.*, Ex. A at 20, ¶ 11, and documents relating to *all* executive order provisions, even those CWIT does not challenge, *id.* at 7-8, ¶¶ 1-3. But "standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek," which CWIT fails to do. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). And "discovery is not to be used as a fishing expedition." *E.E.O.C. v. Harvey L. Walner & Assocs.*, 91 F.3d 963, 971 (7th Cir. 1996). The court should not authorize discovery on non-justiciable challenges to executive orders issued by the President.

Authorizing discovery that extends beyond—indeed, *well* beyond—DOL and CWIT would also be wholly improper under *DOGE*. CWIT improperly chose to request sweeping discovery across three large agencies and to seek information about *all* their grantees, contractors, enforcement and compliance efforts, as well as their methodologies and other matters. Responding to such requests would of course require high-level executive official involvement. This action,

9

however, involves alleged speech and federal funding injuries to just *one* funding recipient—CWIT itself—that all arise from federal programs administered by just *one* discovery recipient—DOL. *See* Dkt. 90. The Supreme Court has held that "for every defendant, there must be at least one plaintiff with standing to seek an injunction." *Murthy v. Missouri*, 144 S. Ct. 1972, 1988 (2024). And the Supreme Court's just-issued decision in *Trump v. CASA, Inc.*, --- S.Ct. --- (June 27, 2025), attached as Exhibit D, especially requires that discovery be limited to DOL and CWIT.

The discovery requests also ignore relevance and proportionality principles. CWIT seeks discovery to support challenges that the court rejected, even purely legal ones. The court found that "CWIT is unlikely to succeed" on its First Amendment, Dkt. 68 at 32, Fifth Amendment, *id.* at 34, and facial separation-of-powers challenges to the Termination Provision in EO 14,151, *id.* at 68, and declined to modify the preliminary injunction by extending relief as to the Termination Provision to funding sources other than the WANTO Act, Dkt. 90. Nevertheless, CWIT seeks discovery about *all* those challenges and *all* the executive order provisions. Separation of powers would be undermined if a court authorized sweeping discovery requests about executive orders issued by the President that pertain even to rejected, non-existent, or purely legal challenges.

The court should also resolve whether any challenges belong in the Court of Federal Claims before authorizing discovery about them here. The court's consideration of the Tucker Act heavily centered on CWIT allegations of *chilled speech*, but those allegations involve only the First Amendment, not the remaining constitutional challenges. Dkt. 68 at 17-22.

## II.  Discovery Should Be Stayed Based on APA Record-Rule Requirements.

*Nuclear Regulatory* supplies another reason to stay discovery while also reinforcing the defendants' first argument. There, the Court held that courts' equity powers are unavailable when a statute provides "an alternative path to judicial review." Ex. C at *9; *see also Employers Ins. of Wausau v. Browner*, 52 F.3d 656, 662 (7th Cir. 1995) (describing non-statutory review as providing

10

"the catch-all remedy for persons aggrieved by final agency action *for which no statute specifies a path of judicial review*") (emphasis added).[2] CWIT's challenges arise under this court's equity powers, not under any cause of action based in the Constitution. *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015). But the APA provides a path to raise such challenge, and CWIT believes it even has "the right" to bring "APA claims." Compl. at 30 n.22. Thus, under *Nuclear Regulatory*, if this action does not belong in the Court of Federal Claims, the APA can provide a path to judicial review for CWIT's challenges and thus forecloses them to the extent it does so. Moreover, the APA limits discovery based on record-rule principles.

The APA provides a path for judicial review of constitutional challenges in providing that final agency action may be challenged as "contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B). But such challenges must also observe APA requirements; courts, for example, may review only *final* agency action and must do so based on "the whole record or those parts of it cited by a party"—an evidentiary limitation called the "record rule." 5 U.S.C. § 706. "Discovery is rarely proper in the judicial review of administrative action." *USA Grp. Loan Servs. v. Riley*, 82 F.3d 708, 715 (7th Cir. 1996). Instead, the "focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp*, 411 U.S. at 142; *see also Little Co. of Mary Hosp. v.*

---

[2] *See also Dep't of Commerce*, 588 U.S. at 780-85 (indicating that record rule applied to APA claim alleging constitutional violations and separate Enumeration Clause challenge to agency action); *Jarita Mesa Livestock Grazing Ass'n v. U.S. Forest Serv.*, 58 F. Supp. 3d 1191, 1237 (D.N.M. 2014) (denying discovery on First Amendment retaliation challenge upon finding that it was "subject to the APA's procedural provisions"); *Harv. Pilgrim Health Care of New England v. Thompson*, 318 F. Supp. 2d 1, 7 (D.R.I. 2004) (denying discovery on equal-protection and due-process challenges upon finding that "the APA provides for the standing for this Court to utilize in reviewing the actions of an administrative agency"); *Lewis v. United States & United States Army Corps of Engineers*, 2019 WL 13115362, at *6 (E.D. La. Mar. 28, 2019) ("invoking the Constitution does not magically remove all limitations on discovery in APA cases"); *Chiayu Chang v. U.S. Citizenship & Immig. Servs.*, 254 F. Supp. 3d 160, 161 (D.D.C. 2017) (collecting cases).

*Sebelius*, 587 F.3d 849, 856 (7th Cir. 2009) (generally, "discovery outside of the administrative record is inappropriate"). A party may only rarely seek discovery upon making a "strong showing of bad faith or improper behavior," *Commerce*, 588 U.S. at 781 (citation omitted), though agencies are entitled to a presumption of regularity and good faith that CWIT would need to overcome with evidence, *FTC v. Owens-Corning Fiberglas Corp.*, 626 F.2d 966, 975 (D.C. Cir. 1980).

The APA acts as the administrative state's "fundamental charter"[3] and provides the cause of action and waiver of sovereign immunity for relief, 5 U.S.C. §§ 702-03, as well as the scope of review for constitutional and statutory challenges to agency action, § 706(2)(B), (C), unless a more specific statute does so, § 703. But the evidentiary limitation, carefully crafted by Congress, would be rendered "meaningless if any party seeking review based on statutory or constitutional deficiencies were entitled to broad-ranging discovery," *Malone Mortg. Co. Am. v. Martinez*, 2003 WL 23272381, at *2 (N.D. Tex. Jan. 6, 2003). And even when the APA is unavailable, there is a "strong case that, unless brought under a separate statutory scheme, constitutional challenges to agency action are necessarily subsumed by the APA's judicial review provisions." Conley K. Hurst, Comment, *The Scope of Evidentiary Review in Constitutional Challenges to Agency Action*, 88 U. CHI. L. REV. 1511, 1526 (2021). Record-rule principles are also predictable in application, *id.* at 1551-52, and prevent serious separation-of-powers violations, *id.* at 1517-18.

Some courts have applied an alternative framework that permits discovery depending on the nature of the constitutional challenge. *Cook County v. Wolf*, 461 F. Supp. 3d 779, 792 (N.D. Ill. 2020) (permitting discovery for equal-protection challenge requiring proof that agency acted with *discriminatory intent*). But that framework is unavailable if the APA provides a path for

---

[3] Kathryn E. Kovacs, *Superstatute Theory and Administrative Common Law*, 90 IND. L.J. 1207, 1208 (2015) (quoting Jack M. Bermann & Gary Lawson, *Reprocessing* Vermont Yankee, 75 GEO WASH. L. REV. 856, 874 (2007)).

judicial review. Ex. C. And a stay would be warranted even if the APA did not provide a path. Applying the approach would require the court to *first* identify any constitutional challenges surviving the motion to dismiss and *then* decide whether and how the nature of the challenges warrant discovery. Moreover, if a specific challenge permitted discovery, the record rule would dictate that its scope be strictly limited based on proportionality and relevance considerations. Congress crafted the record rule to address serious separation-of-powers problems, and easy artful pleading—done by simply deleting the letters "APA" from the counts in a complaint—should not leave them all exposed. Any deference owed to the defendant agencies would further narrow the relevance and proportionality of any discovery requests. *See Bellion Spirits, LLC v. United States*, 335 F. Supp. 3d 32, 42 (D.D.C. 2018).

CWIT's discovery requests—far-reaching inquiries directed to *administrative agencies* about alleged *agency actions*—flout record-rule principles in multiple respects. For starters, the record rule focuses on the agency *decision*, not the *process* leading to that decision. *See Tafas v. Dudas*, 530 F. Supp. 2d 786, 794 (E.D. Va. 2008) (APA review is of the "agency's stated justification, not the predecisional process that led up to the final, articulated decision."); *Morgan v. United States*, 304 U.S. 1, 18 (1938). But CWIT violates this principle in asking agencies to provide, for example, detailed descriptions of "the *process* or *methodology*" used to identify CWIT "as a grantee administering programs potentially in violation of" the EOs and the "grant programs that may be subject to compliance with the" EOs, Ex. A at ROG, ¶¶ 4, 5 (emphasis added), as well as documents relating to "*methodologies*" each recipient "approved for use in identifying awards, grants, or contracts based on the" EOs, Ex. A at RFPs, ¶ 4 (emphasis added).

Moreover, the record rules requires that agency action be reviewed on *documents* that the agency considered for the *specific* challenged decision. But CWIT flouts this rule by, for example,

13

seeking discovery about *all* grants and other funding decisions made by *all* defendant agencies. *E.g.*, Ex. A at 18 ¶¶ 1-3 & 20-21 ¶¶ 13-15. CWIT further violates the rule in asking for universal definitions of several terms in the EOs, regardless of their application to CWIT itself, *e.g.*, *id.* at 19-20 ¶¶ 6-11. Still further, the requests fail to provide a time limit consistent with the principle that judicial review must be limited to evaluating the agency's "*contemporaneous* explanation in light of the existing administrative record." *Dep't of Commerce*, 588 U.S. at 780 (emphasis added).

CWIT alleges that one defendant—DOL—took two actions under the Termination and Certification Provisions. DOL allegedly decided to (1) terminate its WANTO Act grant under the Termination Provision and (2) place certifications under the Certification Provision in grant or contract awards that CWIT or a party it contracts with may apply for in the future. As will be explained in the motion to dismiss, DOL did not take those alleged actions, and any challenge to either would be purely legal and belong in the Court of Federal Claims. But if the court found otherwise, the record rule must inform what evidence may be considered on judicial review of any decision. Resolving the motion to dismiss would enable the defendants to identify what, if any, final agency decision CWIT challenges and whether they must produce an administrative record or other evidence. Thus, discovery should be stayed until the motion is resolved.

## III. A Stay Would Reduce Litigation Burdens and Not Unduly Prejudice CWIT.

A discovery stay would reduce litigation burdens without unduly prejudicing CWIT. As already explained, CWIT issued sweeping, agency-wide discovery requests about all provisions in two executive orders, even to high-ranking executive branch officials, so responding (and litigating about responding) would unquestionably be time-consuming and distracting. And the motion to dismiss is certain to limit the scope of any discovery. A stay would not prejudice CWIT, let alone unduly do so, because the court entered a preliminary injunction preventing termination of its funding and enforcement of the Certification Provision against it. That CWIT would need to "wait

for resolution" does not support denying this motion to stay discovery. *Medline Indus., Inc. v. C.R. Bard, Inc.*, 2019 WL 10948865, at *2 (N.D. Ill. Sept. 10, 2019).

## Conclusion

For the foregoing reasons, discovery should be stayed until the defendants' motion to dismiss is resolved.

Respectfully submitted,

| | |
|---|---|
| BRETT A. SHUMATE<br>Assistant Attorney General<br>Civil Division<br><br>JOSEPH E. BORSON<br>Assistant Branch Director<br><br>PARDIS GHEIBI<br>Trial Attorney, U.S. Department of Justice<br>Civil Division, Federal Programs Branch<br>1100 L Street, N.W.<br>Washington, D.C. 20005<br>Tel.: (202) 305-3246<br>Email: pardis.gheibi@usdoj.gov | ANDREW S. BOUTROS<br>United States Attorney<br><br>By: s/ Patrick Johnson<br>THOMAS P. WALSH<br>PATRICK JOHNSON<br>Assistant United States Attorneys<br>219 S. Dearborn Street, 5th Floor<br>Chicago, Illinois 60604<br>(312) 353-5312<br>(312) 353-5327<br>thomas.walsh2@usdoj.gov<br>patrick.johnson2@usdoj.gov |