UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHICAGO WOMEN IN TRADES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 25 C 2005 |
| v. | ) | |
| | ) | Judge Kennelly |
| PRESIDENT DONALD J. TRUMP, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'**
**RULE 12(b)(1), (6) MOTION TO DISMISS THE COMPLAINT**

**Table of Contents**

Introduction ..........................................................................................................................1

**Background** ........................................................................................................................3

    I.     Executive Orders 14,151 and 14,173 .................................................................3

    II.    CWIT and Its Federal Funding Sources.............................................................4

    III.   CWIT's Complaint.............................................................................................5

    IV.   The TRO and Preliminary Injunction Proceedings.........................................6

**Argument** ...........................................................................................................................8

    I.     CWIT Lacks Standing to Challenge the Three Intra-Governmental Provisions ..........8

    II.    CWIT Cannot Sue the Non-DOL Defendants for Reasons Specific to Them.............9

    III.   CWIT's Challenges to the Termination Provision Should Be Dismissed...................10

        A.  The Court Properly Rejected the First Amendment Challenges............................11

        B.  The Court Properly Rejected the Due Process Challenge ....................................11

        C.  The Court Properly Rejected Nearly All "Separation-of-Powers" Challenges .....12

        D.  The Last Challenge, Which Involves the WANTO Act, Fails ..............................12

            1.  Counts V and VII Bring No Constitutional Claims Based on *Dalton* ............13

            2.  Counts V and VII Fail Based on Tucker Act Principles..................................16

            3.  Any Challenge Under the Court's Equity Powers Is Foreclosed Because the APA Provides a Path of Review and CWIT Shows No Extreme Error ..........18

    IV.   CWIT's Challenges to the Certification Provision Should Be Dismissed.................21

        A.  The First Amendment Challenges Fail ...............................................................21

            1.  CWIT Fails to Satisfy Either *Speech First* Standing Standard.......................21

            2.  The First Amendment Challenges Lack Merit.................................................25

        B.  The Fifth Amendment Challenge Fails.................................................................26

        C.  The Spending Clause and Separation-of-Powers Challenges Fail........................27

        D.  The Challenges Fail Because the APA Provides a Path of Judicial Review ..........28

**Conclusion** ......................................................................................................................28

**Table of Authorities**

**Cases**

*Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205 (2013) ............................... 11

*Am. Ass'n of Colleges for Teacher Educ. v. McMahon*, 2025 WL 1232337
   (4th Cir. Apr. 10, 2025) ....................................................................... 18

*Armstrong v. Exceptional Child Ctr. Inc.*, 575 U.S. 320 (2015) ................................. 9, 19

*Artis v. District of Columbia*, 583 U.S. 71 (2018) ...................................... 25

*Bell v. Keating*, 697 F.3d 445 (7th Cir. 2012) ....................................... 23

*Bd. of Governors of Fed. Reserve Sys. v. MCorp Fin., Inc.*, 502 U.S. 32 (1991) ........................ 19

*City of Chicago v. Sessions*, 888 F.3d 272 (7th Cir. 2018)............................................. 12

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) ................................... 23

*Cnty. of Santa Clara v. Trump*, 250 F. Supp. 3d 497 (N.D. Cal. 2017)........................................ 27

*Commonwealth of Puerto Rico v. United States*, 490 F.3d 50 (1st Cir. 2007) ............................... 20

*Ctr. for Biological Diversity v. Trump*, 453 F. Supp. 3d 11 (D.D.C. 2020)............................ 10, 20

*Dalton v. Specter*, 511 U.S. 462 (1994) ...................................... 1, 13, 14

*DCH Reg'l Med. Ctr. v. Azar*, 925 F.3d 503 (D.C. Cir. 2019) ................................ 19, 20

*Dep't of Educ. v. California*, 145 S.Ct. 966 (2025)........................................ 2, 16

*DeVillier v. Texas*, 601 U.S. 285 (2024)........................................... 19

*Dolan v. Postal Serv.*, 546 U.S. 481 (2006) ...................................... 26

*Employers Ins. of Wausau v. Browner*, 52 F.3d 656 (7th Cir. 1995)............................................ 19

*Ezell v. City of Chicago*, 651 F.3d 684, 698 (7th Cir. 2011) ................................... 12, 27

*Fed. Express Corp. v. U.S. Dep't of Commerce*, 39 F.4th 756 (D.C. Cir. 2022) .................... 19, 20

*Franklin v. Massachusetts*, 505 U.S. 788 (1992)........................................................ 9

*Grayned v. City of Rockford*, 408 U.S. 104 (1972)........................................ 26

*Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U. S. 204 (2002)........................................ 17

*Grupo Mexicano De Desarrollo v. All. Bond Fund*, 527 U.S. 308 (1999) ..................................... 9

*Guardians Ass'n v. Civ. Serv. Comm'n of City of N.Y.*, 63 U.S. 582 (1983) ................................ 27

*Hammer v. United States,* 989 F.3d 1 (D.C. Cir. 2021).................................................................. 17

*I.N.S. v. St. Cyr*, 533 U.S. 289 (2001) .......................................................................................... 25

*Ingersoll-Rand Co. v. United States*, 780 F.2d 74 (D.C. Cir. 1985)............................................. 18

*Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1 (2011) ..................................... 26

*Kilborn v. Amiridis*, 131 F.4th 550 (7th Cir. 2025) ...................................................................... 23

*Knick v. Township of Scott*, 588 U.S. 180 (2019)......................................................................... 19

*Maryland v. King*, 567 U.S. 1301 (2012)...................................................................................... 16

*Mass. Fair Housing Ctr*, No. 2025 WL 1225481 (D. Mass. Apr. 14, 2025) ............................... 18

*McClelland v. Katy Ind. Sch. Dist.*, 63 F.4th 996 (5th Cir. 2023) ................................................ 12

*State of Mississippi v. Johnson*, 71 U.S 475 (1866)....................................................................... 9

*Murthy v. Missouri*, 144 S. Ct. 1972 (2024) ................................................................................. 10

*National Urban League v. Trump*, 2025 WL 1275613 (D.D.C. May 2, 2025)..................... passim

*Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569 (1998)................................................ 11, 12

*Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175 (2024) ................................................................ 11

*New York v. Ferber*, 458 U.S. 747 (1982)..................................................................................... 25

*Nuclear Regul. Comm'n v. Texas*, 145 S. Ct. 1762 (June 18, 2025) ................................... 2, 19, 28

*Rust v. Sullivan*, 500 U.S. 173 (1991) .......................................................................................... 11

*San Francisco A.I.D.S. Foundation v. Trump*, 2025 WL 1621636
   (N.D. Cal. June 9, 2025)................................................................................... 3, 8, 21, 26

*Seila Law. LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197 (2020)........................................ 18

*Sessions v. Dimaya*, 584 U.S. 148 (2018) .................................................................................... 26

*Sierra Club v. Trump*, 140 S.Ct. 1 (2019) .............................................................................. 15, 16

*Sierra Club v. Trump*, 929 F.3d 670 (9th Cir. 2019) .............................................................. 15, 16

iv

*Simic v. City of Chicago*, 851 F.3d 734 (7th Cir. 2017) ...................................................... 22

*Slattery v. United States*, 635 F.3d 1298 (Fed. Cir. 2011) ............................................. 16

*Speech First, Inc. v. Killeen*, 968 F.3d 628 (7th Cir. 2020).................................................. 21, 22

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ....................................................... 24

*Spuhler v. State Collection Serv., Inc.*, 983 F.3d 282 (7th Cir. 2020) .......................................... 10

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) ................................................... 24

*Trump v. CASA, Inc.*, --- S.Ct. ---- 2025 WL 1773631 (June 27, 2025).................................... 2, 9

*Trump v. Sierra Club*, 140 S.Ct. 2620 (2020) ..................................................... 16

*United States ex rel. Health v. Wisconsin Bell, Inc.*, 92 F.4th 654 (7th Cir. 2024) ...................... 23

*United States ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739 (2023).......................................... 23

*United States v. Hansen*, 599 U.S. 762 (2023).......................................................... 3, 25

*Wabash Valley Power Ass'n, Inc. v. Rural Electrification Admin.*, 903 F.2d 445
  (7th Cir. 1990) ............................................................................ 18

*Wirtshafter v. Trustees of Indiana Univ.*, 2025 WL 1558171
(S.D. Ind. May 29, 2025) ................................................................. 22, 23

**Statutes**

5 U.S.C. § 702 ............................................................................... 2

28 U.S.C. § 1491 ........................................................................ 17, 18

28 U.S.C. § 1346 ............................................................................ 2

29 U.S.C. § 2501 ............................................................................ 2

29 U.S.C. § 2503 ....................................................................... 5, 12

31 U.S.C. § 3729 ............................................................................ 4

42 U.S.C. § 2000d-1 ........................................................................ 27

Further Consolidated Appropriations Act, 2024, Pub. L. No. 118-47, 138 Stat. 460 .......... 2, 5, 13

**Other Authority**

Executive Order 14,151, 90 FR 8339, *Ending Radical and Wasteful Government DEI Programs and Preferencing* ............................................................................................................ passim

Executive Order 14,173, 90 FR 8633, *Ending Illegal Discrimination and Restoring Merit-Based Opportunity* ...................................................................................................................... passim

**Introduction**

In his first days in office, the President issued two executive orders setting forth certain of his new policy priorities and directing federal agencies to align funding and enforcement strategies with those priorities to the extent permitted by law. Executive Order 14,151, 90 FR 8339, *Ending Radical and Wasteful Government DEI Programs and Preferencin*g; Executive Order 14,173, 90 FR 8633, *Ending Illegal Discrimination and Restoring Merit-Based Opportunity*.

This action arises from five provisions in the executive orders. Plaintiff Chicago Women in Trades asserts that the provisions jeopardize federal funds it receives from the Department of Labor directly or indirectly from third parties, and chill its speech about the discrimination women face in skilled trades. CWIT alleges violations of the First Amendment, (counts I-III), the Due Process Clause, (count IV), and the Spending Clause and separation of powers, (counts V-VIII). In May 2025, the court entered a preliminary injunction upon finding a likelihood of success for only two challenges and rejected most others, including by finding that CWIT failed to establish standing to challenge three of the five executive order provisions.

CWIT's complaint should now be dismissed in full. For brevity, only dismissal grounds for the challenges that the court found likely to succeed are summarized here. They arise from the Termination Provision, EO 14,151 § 2(b)(i), and Certification Provision, EO 14,173 § 3(b)(iv).

The Termination Provision directs agency, department, and commission heads to terminate "equity-related" grants or contracts to the extent consistent with the law. EO 14,151 §§ 2(b)(i), 4(b). The court found all challenges to this provision are unlikely to succeed, except for one that CWIT styles as alleging Spending Clause and separation of powers violations. But that challenge fails at the outset because it is not a *constitutional* challenge. *Dalton v. Specter*, 511 U.S. 462, 474 (1994). At bottom, CWIT alleges that terminating its grant authorized by the Women in Apprenticeship and Nontraditional Occupations Act, 29 U.S.C. § 2501, *et seq.*, would, no matter

1

the circumstances, violate not the *Constitution*, but an *appropriations act* provision providing that "not less than $5,000,000 shall be used for grants authorized by the" WANTO Act. Further Consolidated Appropriations Act, 2024, Pub. L. No. 118-47, 138 Stat. 460, 641. Separately, those allegations are contractual and seek "money damages," so they can belong only in the Court of Federal Claims based on Tucker Act principles. 28 U.S.C. §§ 1346, 1491; *see also Dep't of Educ. v. California*, 145 S.Ct. 966, 968 (2025) (per curiam).

The challenge would also fail were CWIT right that it is constitutional and not a contractual claim for "money damages." In that case, the challenge must arise under the court's equity powers from the Judiciary Act of 1789. *Trump v. CASA, Inc.*, --- S.Ct. ----, 2025 WL 1773631, at *6 (June 27, 2025). But those powers are unavailable if a *statute* provides a path of judicial review, and the APA does so here. *Nuclear Regul. Comm'n v. Texas*, 145 S. Ct. 1762, 1776 (June 18, 2025). The APA allows plaintiffs seeking "relief other than money damages" to request "judicial review" of whether final agency action, 5 U.S.C. § 702, and agency action leading up to it, § 704, is "contrary to constitutional right," § 706(2)(B). CWIT itself believes that it has not only a *path* but the "right" to "bring APA claims" based on its allegations. Dkt. 1 (Compl.) at 30 n.22. CWIT also fails to show any *extreme* error of the sort required for claims brought under the court's equity powers.

Next, the Certification Provision provides that agency heads "shall include in every contract or grant award" two terms described in EO 14,173 §§ 3(b)(iv)(A), (B), to the extent consistent with law, *id.* § 4(b). If placed in an award, the terms would require "the contractual counterparty or grant recipient" to both "agree that its compliance in all respects with all applicable Federal anti-discrimination law is material to the government's payment decisions for purposes of" a False Claims Act provision, and "certify that it does not operate any programs promoting DEI that violate any applicable Federal anti-discrimination laws." *Id.* §§ 3(b)(iv)(A), (B).

2

The court should dismiss the First Amendment challenges to this provision as well, though it previously found them likely to succeed. They are pre-enforcement facial challenges, but CWIT does not establish standing requirements for such challenges. The Certification Provision also survives facial First Amendment scrutiny. The provision concerns activity that would violate federal antidiscrimination law—not protected speech. And even if CWIT offered an acceptable reading posing serious First Amendment problems, the canon of constitutional avoidance requires the court to favor the government's narrower interpretation so long as it is "fairly possible," even if it is "not the best one." *United States v. Hansen*, 599 U.S. 762, 781 (2023). The defendants' interpretation is more than fairly possible; indeed, multiple courts recently adopted it. *National Urban League v. Trump*, 2025 WL 1275613, at *24-25 (D.D.C. May 2, 2025); *San Francisco A.I.D.S. Found. v. Trump*, 2025 WL 1621636 (N.D. Cal. June 9, 2025); *Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*, No. 25-1189 (4th Cir. Mar. 14, 2025), Dkt. 29 at 2, 7. CWIT's challenges to the Certification Provision also fail because the APA provides a path of judicial review and thereby prohibits them from being asserted under the court's equity powers.

## Background

### I.    Executive Orders 14,151 and 14,173

On January 20, 2025, the President issued Executive Order 14,151, 90 FR 8339, *Ending Radical and Wasteful Government DEI Programs and Preferencin*g. As relevant here, CWIT challenges this executive order's Termination Provision, which directs that within 60 days of the order's issuance, each "agency, department, or commission head, in consultation with the Attorney General, the Director of OMB, and the Director of OPM" shall "terminate, to the maximum extent allowed by law," federal "'equity-related' grants or contracts." *Id.* § 2(b)(i).

On January 21, 2025, the President issued Executive Order 14,173, 90 FR 8633, *Ending Illegal Discrimination and Restoring Merit-Based Opportunity*. This executive order's "purpose"

is to ensure that the federal government is "enforcing our civil-rights laws" by "ending *illegal* preferences and discrimination," *id.* § 1 (emphasis added), and the President directed that it is to be implemented consistent with the First Amendment rights of parties such as federal contractors, *id.* § 7(b). CWIT challenges this executive order's Certification Provision, which provides that each agency head "shall include in every contract or grant award" the two terms in § 3(b)(iv)(A), (B), to the extent consistent with law, *id.* § 4(b)  If placed in an award, the terms would require "the contractual counterparty or grant recipient" to both "agree that its compliance in all respects with all applicable Federal anti-discrimination law is material to the government's payment decisions for purposes of" 31 U.S.C. § 3729(b)(4) in the False Claims Act; and "certify that it does not operate any programs promoting DEI that violate any applicable Federal anti-discrimination laws." *Id. §* 3(b)(iv)(A), (B).

CWIT also challenges three additional provisions—those in EO 14,151 § 2(b)(ii)(A) and EO 14,173 §§ 3(c)(iii) and 4(b).  But as this and other courts have found, those three provisions "focus on internal government agency processes and programs and reporting to the President from his subordinates," so CWIT lacks standing to challenge them.  Dkt. 52 at 5; *see also infra* at 9-10.

The President directed in both executive orders that each must be "implemented consistent with applicable law."  EO 14,151 § 4(b); EO 14,173 § 8(b).  The second executive order also directs agencies to ensure that its implementation does not prevent federal contractors and certain other parties "from engaging in First Amendment-protected speech."  *Id*. § 7(b).

## II.     **CWIT and Its Federal Funding Sources**

CWIT is a nonprofit that prepares women to enter and remain in high-wage skilled trades, such as carpentry, electrical work, welding, and plumbing.  Dkt. 1 (Compl.) ¶ 12.  For its services, CWIT receives funds from DOL under two grants and payments from two third parties—Jobs for

the Future and the Illinois Department of Labor—that directly receive funds from DOL. *Id.* ¶¶ 42-57. CWIT alleges that those payments account for about 40% of its annual budget. *Id.* ¶ 42.

CWIT's funds come from five federal funding programs, and Congress enacted authorization and appropriations laws for those programs. Dkt. 90 (summarizing funding programs and associated authorizing and appropriations laws); Compl. ¶¶ 42-57. Most notably for purposes of this motion, CWIT receives funds from DOL from a grant authorized by the WANTO Act, which authorizes DOL "'make grants to community-based organizations to provide technical assistance to employers and labor unions.'" *Id.* ¶ 45 (quoting 29 U.S.C. § 2503). An associated appropriations act provision provides that "funds available to" DOL's "Women's Bureau may be used for grants to serve and promote the interests of women in the workforce: Provided further, that of the amounts made available to the Women's Bureau, not less than $5,000,000 shall be used for grants authorized by the" WANTO Act." Pub. L. No. 118-47, 138 Stat. 460, 641.

## III. CWIT's Complaint

In February 2025, CWIT filed its complaint arising from the five executive order provisions. Compl. The complaint consists of eight counts that collectively challenge the provisions on their face and as they are applied by "any agency action implementing them." *Id.* ¶¶ 102, 110, 120, 128, 140, 148, 156, 169. CWIT alleges that the provisions threaten funding it receives from DOL directly or indirectly from third parties, *id.* at ¶¶ 42-57, and chill its speech "promoting women in the skilled trades" and "stating facts" such as that "women face discrimination in the skilled trades," *id.* ¶ 93. CWIT sues the President and three agencies and their heads—DOJ and its Attorney General, DOL and its Secretary, and OMB and its Director. *Id.* ¶¶ 25-31. Only DOL, however, is alleged to have taken action under just one provision (the Termination Provision) and is alleged to have done so only preliminarily. *Infra* at 8-9.

The challenges to the Termination and Certification Provisions are summarized here. Counts I through III allege that the provisions violate the First Amendment by being vague and overbroad (count I) and amounting to content and viewpoint discrimination (count II), and that the Certification Provision imposes grant and contract conditions that violate the First Amendment (count III). Compl., Cts. I-III. Count IV brings a facial Fifth Amendment vagueness challenge against each provision. *Id.*, Ct. IV. CWIT styles counts V and VI as (constitutional) *ultra vires* challenges under the Spending Clause and counts VII and VIII as separation-of-powers challenges. *Id.*, Cts. V-VIII. Count V alleges that the Executive Branch lacks authority to "unilaterally terminate 'equity-related' grants and contracts" under the Termination Provision. *Id.* ¶ 143. Count VI alleges that the Executive lacks authority to require certifications in contract or grant awards under the Certification Provision. *Id.*, ¶¶ 150-51. Count VII alleges that Congress has the power of the purse, *id.*, ¶ 159, and authorized and appropriated amounts for the federal programs, *id.* ¶ 163, and that the Termination Provision unlawfully requires agencies to terminate and impose conditions on equity-related grants and contracts without authority, *id.*, ¶¶ 163, 166-67. Count VIII alleges that the Certification Provision requires that conditions be imposed on contract and grant awards, but the Executive Branch lacks authority to impose them. *Id.*, Ct. VIII.

The complaint requests declarations that the five executive order provisions are unlawful and unconstitutional, a preliminary and permanent injunction enjoining the defendants from enforcing them, and attorney fees and costs. *Id.* at 44 (prayer for relief).

## IV. The TRO and Preliminary Injunction Proceedings

In March 2025, the court issued a memorandum opinion and order granting in part CWIT's motion for a TRO and entering interim relief based on its First Amendment challenges to the Termination and Certification Provisions. Dkt. 52. The TRO enjoined DOL from enforcing the Termination Provision against CWIT and from enforcing the Certification Provision against any

grantee or contractor. Dkt. 53. The TRO further enjoined the government from initiating any False Claims Act action against CWIT pursuant to the Certification Provision. *Id.*

In April 2025, the court issued a memorandum opinion and order granting in part CWIT's preliminary injunction motion and entered a preliminary injunction order. Dkt. 68, 69. The court found a likelihood of success for only two challenges relating to those provisions: (1) a separation-of-powers challenge to DOL's alleged decision to terminate funding CWIT receives under the WANTO Act based on the Termination Provision, and (2) a First Amendment challenge to DOL's alleged plan to place certifications under the Certification Provision in contract and grant awards that CWIT (or parties it could contract with) might apply for in the future. Dkt. 68, 69, 90.

The court otherwise denied CWIT's preliminary injunction motion, Dkt. 68 at 2, and has found several challenges to suffer from jurisdictional defects or lack merit on purely legal grounds, Dkt. 52, 68, 90. The court was "unpersuaded that CWIT can establish the required injury in fact" to challenge the three executive order provisions in § 2(b)(ii)(A) in EO 14,151 and § 3(c)(iii) and 4(b) in EO 14,173 because they "focus on internal government agency processes and programs and reporting to the President from his subordinates." Dkt. 52 at 5. The court also found that "CWIT is unlikely to succeed" on its First Amendment, Dkt. 68 at 32, Fifth Amendment, *id.* at 34, and facial separation of powers challenges to the Termination Provision in EO 14,151, *id.* at 68. And the court declined to extend the preliminary injunction concerning the Termination Provision to CWIT's four funding sources apart from the WANTO Act. Dkt. 90.

## Argument

The complaint should be dismissed in full. Taking this case's posture and the court's prior decisions into consideration, the defendants hereby incorporate and reassert the arguments in their prior briefs against CWIT's challenges, Dkt. 44, 57, 82, and also raise the arguments below.

## I.    CWIT Lacks Standing to Challenge the Three Intra-Governmental Provisions.

The court should dismiss CWIT's challenges to three of the five executive order provisions based on standing—those in EO 14,173 §§ 3(c)(iii), 4(b) and EO 14,151 § 2(b)(ii)(A). The court properly rejected them on that basis before, Dkt. 52 at 5, as did recent district court decisions, *National Urban League,* 2025 WL 1275613, at *7-9; *San Francisco*, 2025 WL 1621636, at *7-8.

EO 14,173 § 4(b)—the Reporting Provision—directs the Attorney General, in consultation with agencies, "to submit a *report* to the Assistant to the President for Domestic Policy containing recommendations for enforcing Federal civil-rights laws and taking other appropriate measures to encourage the private sector to end *illegal* discrimination and preferences." EO 14,173 § 4(b) (emphases added). That report will include a "proposed strategic enforcement plan," *id*., with, among other things, a plan of action "to deter DEI programs or principles" that "*constitute illegal discrimination or preferences"* wherein agencies will identify, as part of that plan of action, "potential civil compliance investigations" of certain large entities, *id*. § 4(b)(iii) (emphasis added).

Meanwhile, EO 14,173 §§ 3(c)(iii) and EO 14,151 § 2(b)(ii)(A)—the Government DEI Provisions—instruct agencies to "provide the Director of the OMB with a list of" all "agency or department DEI, DEIA, or 'environmental justice'" positions and programs, among others, "and an assessment" on whether the positions and programs "have been misleadingly relabeled in an attempt to preserve their pre-November 4, 2024 function," § 2(b)(ii)(A); and direct OMB's Director to terminate government-wide diversity and equity "mandates, requirements, programs, [and] activities," § 3(c)(iii).

As the court found, CWIT lacks "the required injury in fact" to challenge those provisions. Dkt. 52 at 5. They "focus on internal government agency processes and programs and reporting to the President from his subordinates," and CWIT is not an agency and does not allege that it conducts "programming for the government," *id.*; *see also* Dkt. 44 at 9-10. CWIT also shows no "imminent danger of an injury" from the Reporting Provision, which "simply requires a cabinet official to issue a report at a future date." Dkt. 52 at 5. The defendants reassert and incorporate herein the additional arguments involving those provisions in their prior briefing. Dkt. 44, 57, 82.

## II. CWIT Cannot Sue the Non-DOL Defendants for Reasons Specific to Them.

The court should dismiss the President, the DOJ and its Attorney General, and OMB and its Director based on considerations particular to those parties.

First, CWIT lacks both standing and a cause of action to sue the President. CWIT identifies no statutory cause of action to bring any challenge in the complaint. *See generally* Compl. In the absence of one, a court's power to enforce the Constitution stems from its equity powers under the Judiciary Act of 1789, not an implied right of action contained in the Constitution itself. *CASA, Inc.*, 2025 WL 1773631, at *6; *Armstrong v. Exceptional Child Ctr. Inc.*, 575 U.S. 320, 324-27 (2015) (the "ability to sue to enjoin unconstitutional action by state and federal officers is the creation of courts of equity"); 33 Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. Judicial Review § 8307 (2d ed. 2024 update). But those equity powers can only encompass powers that were "traditionally accorded by courts of equity," *Grupo Mexicano De Desarrollo v. All. Bond Fund*, 527 U.S. 308, 319 (1999), and there is no tradition of equitable relief against the President, *State of Mississippi v. Johnson*, 71 U.S. 475, 501 (1866); *see also Franklin v. Massachusetts*, 505 U.S. 788 (1992); *id.* at 827 (Scalia, J., concurring in part and in the judgment) ("apparently unbroken historical tradition supports the view" that courts may not order the President to "perform particular executive" acts).

Second, CWIT fails to establish standing to sue the non-DOL defendants, but "for every defendant, there must be at least one plaintiff with standing to seek an injunction." *Murthy v. Missouri*, 144 S. Ct. 1972, 1988 (2024). This action challenges five executive order provisions and "any agency action implementing them," Compl. ¶ 102, but CWIT appears to sue the non-DOL parties merely because the President gave those parties roles in the executive orders. That is not enough. For each defendant, CWIT must provide *facts* showing "a concrete and particularized injury that is both fairly traceable to the challenged conduct and likely redressable by a judicial decision." *Spuhler v. State Collection Serv.*, *Inc.*, 983 F.3d 282, 284 (7th Cir. 2020).

CWIT offers no specific act—let alone any *unlawful* act—taken by any non-DOL defendant under any of the five executive order provisions that caused CWIT injury. Instead, *only* DOL is alleged to have taken specific action against CWIT under any provision; CWIT alleges that DOL sent an email and notice in January 2025 directing federal financial assistance recipients to cease certain activities. Compl. ¶¶ 79, 81. But even as to those allegations, CWIT alleges that it did and does not know whether and how the email and notice applied to it. *Id.* ¶¶ 79, 81. Moreover, CWIT's alleged funding and speech injuries all arise from funding programs that are all administered by *only* DOL. Dkt. 90. And the relief CWIT seeks does not reference a non-DOL defendant or indicate why any is required for complete relief. Compl. at 44.

Accordingly, the non-DOL defendants should be dismissed. *See Ctr. for Biological Diversity v. Trump*, 453 F. Supp. 3d 11, 35 (D.D.C. 2020) (dismissing the President as a defendant and not subjecting him to discovery, reasoning that litigation disrupts effective government and plaintiffs could obtain their requested relief from other defendants).

## III. CWIT's Challenges to the Termination Provision Should Be Dismissed.

The court should dismiss all challenges to the Termination Provision and indeed already rejected nearly all in prior decisions. Dkt. 68, 90. The defendants incorporate and reassert herein

their prior arguments against CWIT's challenges to this provision. Dkt. 44 at 9-32; Dkt. 57, 82. As explained below, the court should dismiss the already-rejected challenges for the reasons it did in prior decisions and should also dismiss the last challenge, which involves the WANTO Act.

### A. The Court Properly Rejected the First Amendment Challenges.

The First Amendment challenges should be dismissed for the reasons the court rejected them before. Dkt. 68 at 26-32. As the court found, the Termination Provision comports with the First Amendment because it does not attempt to regulate speech by funding recipients on their "own time and dime," including equity-related speech. *Id.* at 29 (quoting *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 218 (2013)); *see also National Urban League*, 2025 WL 1275613, at *21-22, 26 (accord). It is well-established that the government's "refusal to fund" certain speech does not run afoul of the First Amendment. *Rust v. Sullivan*, 500 U.S. 173, 193 (1991); Dkt. 68 at 28-29. Further, the Termination Provision concerns funding, not coercion, and CWIT offers no reason for extending the First Amendment's coercive threat framework to this context. *Id.* at 29-32 (distinguishing *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 198 (2024)).

### B. The Court Properly Rejected the Due Process Challenge.

The Fifth Amendment vagueness challenge to the Termination Provision also fails, as the court found. Dkt. 68 at 32-36. Vagueness doctrine does not apply in this context. Dkt. 44 at 14-15. Instead, the Termination Provision provides the President's direction to his subordinates, and "no notice concerns" arise from such direction, even if "arguably vague." Dkt. 68 at 34. And in any event, the provision's phrase "to the maximum extent allowed by law" is not unconstitutionally vague because, as the court found, any "concerns of vagueness regarding exactly what authority an agency may have to terminate a grant are internal considerations for the agency itself." *Id.* The term "equity-related" is also not unconstitutionally vague; the Supreme Court has upheld less specific terms in analogous contexts, as the court recognized. *Id.* at 35 (quoting *Nat'l Endowment*

*for the Arts v. Finley*, 524 U.S. 569, 588 (1998)).  CWIT also lacks a property interest to support its Fifth Amendment challenge here.  Dkt. 44 at 16-21; *see also McClelland v. Katy Ind. Sch. Dist.*, 63 F.4th 996, 1013 (5th Cir. 2023) (a "void-for-vagueness challenge is," at bottom, "a due-process claim," so a plaintiff must show it was "deprived of a constitutionally-protected property or liberty interest."); *National Urban League,* 2025 WL 1275613 at *18-20 (rejecting Fifth Amendment vagueness challenge involving the Certification and Termination Provisions).

### C.  The Court Properly Rejected Nearly All Separation-of-Powers Challenges.

The court should dismiss the already-rejected separation-of-powers challenges.  Dkt. 68 at 36-41.  CWIT fails to state a *facial* challenge because it cannot show that the Termination Provision "conflicts with *every* statute that appropriates funds for grants."  *Id.* at 37 (citing *Ezell v. City of Chicago*, 651 F.3d 684, 698 (7th Cir. 2011)).  Rather, there are many "situations in which the Executive Branch could lawfully terminate such grants without running afoul of the separation of powers."  *Id.* (citing *City of Chicago v. Sessions*, 888 F.3d 272, 284 (7th Cir. 2018)).  The as-applied challenges also fail.  They should be dismissed because they are not *constitutional*, as shown in the next subsection.  CWIT also presses them based on provisions in appropriations bills that do not restrict use of funds for equity-related grants or contracts and thus clearly do not prohibit terminations of them.  Dkt. 68 at 37-41 & 82 at 1.  The court recognized this, except for the last challenge involving the WANTO Act.  Dkt. 90.

### D.  The Last Challenge, Which Involves the WANTO Act, Fails.

CWIT's final challenge to the Termination Provision asks the court to permanently enjoin the defendants from terminating grants authorized by the WANTO Act to the extent permitted by law, as the provision directs, based on two statutory provisions.  The first, which is in the WANTO Act, states that DOL "shall make grants to community-based organizations to provide technical assistance to employers and labor unions."  29 U.S.C. § 2503(a).  And the second, which is in an

appropriations act, provides that "not less than $5,000,000 shall be used for grants authorized by the" WANTO Act. Pub. L. No. 118-47, 138 Stat. 460, 641. All purported separation-of-powers and Spending Clause challenges, including this one, should be dismissed because they are not *constitutional* challenges, and separately because they can only belong in the Court of Federal Claims. But even if the challenges were constitutional and sought no "money damages," they fail both because the APA would provide a path of judicial review, and because CWIT shows no extreme agency error of the sort required to seek non-statutory review.

### 1. Counts V and VII Bring No Constitutional Claims Based on *Dalton.*

CWIT's challenges arising from the two statutory provisions above are not constitutional and thus fail at the outset. In *Dalton*, the Supreme Court rejected the proposition that "whenever the President acts in excess of his statutory authority, he also violates the constitutional separation of powers doctrine." 511 U.S. at 471. The Court held that not "every action by the President, or by another executive official, in excess of his statutory authority is *ipso facto* a violation of the Constitution" and carefully "distinguished between claims of constitutional violations and claims that an official has acted in excess of his statutory authority." *Id.* The Constitution is implicated only if the official relies on it as the "only basis of authority" or relies on an unconstitutional statute. *Id.* at 473 & n.5. Thus, *Dalton* draws a distinction between when an official claims "statutory authority" for an action—a statutory claim—and when the official claims to be acting "in the absence of any statutory authority" but under the Constitution—a constitutional claim. 511 U.S. at 471. CWIT's challenges fall on the statutory side of the *Dalton* test.

In prior decisions, the court disagreed and found that the challenge involving the WANTO Act *is* a constitutional one. Dkt. 90 at 9-11. In reaching that conclusion, the court first found that all conceivable grants under the WANTO Act must be equity-related because the Act's examples of technical assistance all involve supporting women holding nontraditional occupations. *Id.* at 2-

13

3.  From this, the court inferred that Congress, through the WANTO Act appropriations provision, *mandated* DOL to pay appropriated amounts to CWIT, so DOL lacks discretion entirely to terminate CWIT's grant, regardless of the circumstances, and can only terminate the grant by violating the Constitution.  *Id.* at 9-11.  The defendants submit that this analysis misapplies *Dalton*.

As a threshold matter, DOL did not terminate CWIT's WANTO Act grant, whether under the Termination Provision or otherwise, so DOL cannot have terminated the grant in either manner *Dalton* requires for there to be a *constitutional* challenge—*i.e.*, under the Constitution in the conceded absence of statutory authority or based on an unconstitutional statute.  Indeed, CWIT itself alleges that the Termination Provision "*could* result in termination" of the grants and contracts at issue—not that it did—and *could* bring about "*potential* financial consequences"—not that it did.  Compl. ¶¶ 9, 11 (emphasis added).  Thus, CWIT challenges *possible* future grant and contract terminations by DOL on the basis that *appropriations act* provisions—not the Constitution—prohibit DOL from terminating any in the future even under *any* circumstances.

Next, not only are CWIT's allegations *statutory*, but they are also incorrect.  CWIT cannot dispute that the plain text of the WANTO Act appropriations act provision grants DOL discretion to terminate its grant in multiple circumstances.  DOL, for example, can *at least* terminate the grant after using $5 million for WANTO Act grants, or if CWIT dissolves, ceases work, or begins working on matters entirely disconnected from the grant agreement.  Yet, if the court agreed with CWIT that the Constitution prevents terminations of CWIT's grant such that a permanent injunction should issue, DOL would be prohibited from terminating the grant in even *those* circumstances—though all parties must agree that the termination would be permitted by law.  Again, DOL did not terminate CWIT's grant, so all such circumstances are left open.  These are conceivable lawful applications of the Termination Provision, so there can be no *facial* challenge for all *WANTO Act* grants.  And no termination occurred, so there can be no *as-applied* challenge.

14

The defendants' positions raised here and in the following subsections are also supported by *Sierra Club v. Trump*, 140 S.Ct. 1 (2019). There, the plaintiffs, two nonprofits, alleged that the President and certain cabinet members took actions to fund a border barrier construction that "exceeded the scope of their constitutional and statutory authority by spending money in excess of what Congress allocated for border security" and "violated separation of powers principles as well as the Appropriations Clause and Presentment Clause of the Constitution" and a federal statute. *Sierra Club v. Trump*, 929 F.3d 670, 683 (9th Cir. 2019). One claim alleged that the defendants unlawfully used a section in an appropriations act to "'reprogram' funds appropriated by Congress to the Department of Defense for Army personnel needs and to redirect those funds toward building a barrier." *Id.* at 675. That section authorized DoD to "transfer funds for military purposes if the Secretary determines that the transfer is for higher priority items, based on unforeseen military requirements and the items for which funds are requested has" not "been denied by Congress." *Id.* at 676 (cleaned up). The plaintiffs "argued that the requirements" had "not been satisfied and that the use of the funds to build a border barrier was accordingly unsupported by any congressional appropriation and thus unconstitutional." *Id.*

The district court granted a preliminary injunction, and the Ninth Circuit denied the government's stay application over a dissent. *Id.* at 677. While the majority believed that the plaintiffs' claim was, "at its core, one alleging a constitutional violation," *id.* at 677, the dissent criticized that finding for "turning every question of whether an executive officer exceeded a *statutory* grant of power into a *constitutional* issue," *id.* at 707, and found that claim was *statutory* because the legal issue turned on whether the requirements in a section of an *appropriations act* were satisfied. *Id.* at 689. The dissent then concluded that the plaintiffs had no implied cause of action under the appropriations act section, *id.* at 712, no APA claim because they fell outside the section's zone of interests, *id.* at 715, and no constitutional challenge under the court's equity

15

powers because "the APA" provided a path of judicial review, *id.* at 716.

Critically, the Supreme Court issued an emergency stay and endorsed the dissent's finding that the government "made a sufficient showing at this stage that the plaintiffs have *no cause of action* to obtain review of the Acting Secretary's compliance with" the appropriations act, whether under courts' equity powers, the APA, or the act itself. *Trump v. Sierra Club*, 140 S.Ct. 1 (2019) (emphasis added); *see also Maryland v. King*, 567 U.S. 1301 (2012) (emergency stay petitions must establish "a fair prospect that the Court will then reverse the decision below"). The Court later denied a motion to lift the stay. *Trump v. Sierra Club*, 140 S.Ct. 2620 (2020).

Here, like the plaintiffs in *Sierra Club*, CWIT twists allegations turning on whether the government violated requirements about appropriated funds in an *appropriations act* into a *constitutional* issue. But as the Supreme Court indicated, they are not. The WANTO Act appropriations provision does not entail that DOL lacks authority to terminate CWIT's WANTO Act grant altogether. The provision does not mandate that any portion of appropriated funds be used for CWIT specifically; instead, the provision regulates the relationship between Congress and DOL regarding certain funds and in no way guarantees CWIT's specific interest in the expenditure of appropriations. Thus, CWIT's allegations based on the provision are *statutory*, and CWIT, like the plaintiffs in *Sierra Club*, has no cause of action, so its challenge must fail.

### 2. Counts V and VII Fail Based on Tucker Act Principles.

Congress has vested the Court of Federal Claims with exclusive jurisdiction over challenges about federal grant and contract funding through the Tucker Act. *Dep't of Educ. v. California*, 2025 WL 1008354 (Apr. 4, 2025). The Tucker Act vests exclusive jurisdiction in the Court of Federal Claims over claims alleging breach of express or implied contracts seeking over $10,000, 28 U.S.C. §§ 1491(a), 1346(a)(2), "unless such jurisdiction was explicitly withheld or withdrawn by statute," *Slattery v. United States*, 635 F.3d 1298, 1321 (Fed. Cir. 2011) (*en banc*);

*see Hammer v. United States,* 989 F.3d 1, 2 (D.C. Cir. 2021).  Accordingly, CWIT's contractual allegations concerned with federal grant and contract funding cannot be prosecuted in this forum.

In a prior decision, the court found that Tucker Act principles do not require CWIT to prosecute its allegations in the Court of Federal Claims because they primarily implicate chilled speech, not federal money, and because CWIT explicitly requests only equitable relief that the Court of Federal Claims cannot provide.  Dkt. 68 at 21.  The court should reconsider this finding.

As for the court's first reason for why the Tucker Act does not divest this court of jurisdiction, the allegations about chilled speech concern only the First Amendment, and even a First Amendment challenge that the court rejected.  *Supra* at 11.  At the heart of all other challenges to the Termination Provision—including those involving appropriations provisions—is CWIT's desire to prevent terminations of certain grants and contracts and thus consistently get paid money.

Turning to the court's second reason, CWIT cannot escape the reach of the Tucker Act by explicitly requesting only injunctive relief.  In *California*, 145 S.Ct. at 968, for example, the Supreme Court considered a temporary restraining order "enjoining the Government from terminating various education-related grants" and requiring "the Government to pay out past-due grant obligations and to continue paying obligations as they accrue."  Even so, the Court held that "the Government is likely to succeed in showing the District Court lacked jurisdiction to order the payment of money under the APA" because "the APA's limited waiver of immunity does not extend to orders 'to enforce a contractual obligation to pay money' along the lines of what the District Court ordered."  *Id.* (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U. S. 204, 212 (2002)).  "Instead, the Tucker Act grants the Court of Federal Claims jurisdiction over suits based on 'any express or implied contract with the United States.'"  *Id.* (quoting 28 U. S. C. § 1491(a)(1)).  Notably, the Supreme Court held that the Tucker Act divested the district court of jurisdiction to decide on even challenges involving grants that the government had not actually terminated.  *Id.*

17

CWIT's challenges here also involve grant and contract terminations that never actually occurred.

Other courts, post-*California*, similarly concluded that grant termination actions belong in the Court of Federal Claims. *See Solutions in Hometown Connections v. Noem*, No. 8:25-cv-885 (D. Md. Apr. 8, 2025), Dkt. 46 (denying the plaintiffs' TRO motion challenging the termination of certain U.S. Citizenship and Immigration Services grants and concluding that the plaintiffs' APA claims were "in essence contract claims against the United States for which" the "Court of Federal Claims has exclusive jurisdiction"); *Am. Ass'n of Colleges for Teacher Educ. v. McMahon*, No. 25-1281 2025 WL 1232337 (4th Cir. Apr. 10, 2025), (staying a district court's preliminary injunction in a case involving education-related grants in light of the Supreme Court's *California* decision); Electronic Order, *Mass. Fair Housing Ctr*, No. 25-cv-30041 2025 WL 1225481 (D. Mass. Apr. 14, 2025) (dissolving a temporary restraining order that had enjoined termination of federal grants in light of the Supreme Court's "unmistakable directive"). Meanwhile, the Seventh Circuit has held that the Tucker Act "assigns to the Claims Court all actions seeking equitable relief based on a contract with the United States," including efforts to obtain specific performance. *Wabash Valley Power Ass'n, Inc. v. Rural Electrification Admin.*, 903 F.2d 445, 452 (7th Cir. 1990); *see also Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 80 (D.C. Cir. 1985).

CWIT's WANTO Act challenge to the Termination Provision seeks to ensure continued payments under a federal grant, so it sounds in contract and belongs in the Court of Federal Claims. That the grant is funded by appropriations is of no moment. After all, virtually no federal funds can be paid absent appropriations. *See Seila Law. LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 207 (2020) (noting that most agencies rely on annual appropriations for funding).

### 3. Any Challenge Under the Court's Equity Powers Is Foreclosed Because the APA Provides a Path of Judicial Review and CWIT Shows No Extreme Error.

CWIT's purported separation-of-powers and Spending Clause challenges would also fail

if they were constitutional and sought no "money damages." In that case, they must arise under the court's equity powers, but two limitations on those powers would require dismissal here. First, the APA would provide a path of judicial review. *Nuclear Regul.*, 145 S. Ct. at 1776. And second, CWIT shows no extreme error. *DCH Reg'l Med. Ctr. v. Azar*, 925 F.3d 503, 509 (D.C. Cir. 2019).

CWIT's challenges seek non-statutory review under the court's equity powers. *Supra* at 8. But non-statutory review provides "the catch-all remedy for persons aggrieved by final agency action" only when "*no statute specifies a path of judicial review*." *Employers Ins. of Wausau v. Browner*, 52 F.3d 656, 662 (7th Cir. 1995) (emphasis added). Moreover, because non-statutory review "could become an easy end-run around the limitations" of "judicial-review statutes," the Supreme Court has "strictly limited" such review. *Nuclear Regul.*, 145 S. Ct. 1762, 1775. A non-statutory review claim "is essentially a Hail Mary pass—and in court as in football, the attempt rarely succeeds." *Id.* at 1776; *see also Armstrong*, 575 U.S. at 327-28 (the "power of federal courts of equity to enjoin unlawful executive action is subject" to limitations).

The Supreme Court recently held that non-statutory review is "unavailable if, as is usually the case, a statutory review scheme provides aggrieved persons 'with a meaningful and adequate opportunity for judicial review,' or if a statutory review scheme forecloses all other forms of judicial review.'" *Id.* at 15 (quoting *Bd. of Governors of Fed. Reserve Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 43 (1991)). This is a usual case where a statutory path of judicial review exists.

First, if CWIT's allegations are contractual or seek "money damages," the Court of Federal Claims provides a path of judicial review. *DeVillier v. Texas*, 601 U.S. 285, 293 (2024) (reversing non-statutory exercise of jurisdiction where the plaintiff had an available statutory "cause of action" for compensation that it did not exercise); *Knick v. Township of Scott*, 588 U.S. 180, 201 (2019) (non-statutory equitable relief was unavailable because of availability of a statutory "adequate provision" for obtaining relief under the Tucker Act); *Fed. Express Corp. v. U.S. Dep't*

19

*of Commerce*, 39 F.4th 756, 763-764 (D.C. Cir. 2022).

And second, if the allegations are constitutional and seek no "money damages," CWIT would have a different "means of vindicating [its] rights without nonstatutory review: the APA." *Commonwealth of Puerto Rico v. United States*, 490 F.3d 50, 59-60 (1st Cir. 2007). If "the APA or a special statutory review proceeding can provide adequate relief," as the APA can here, "an equitable remedy via nonstatutory review ought not be available." 33 Fed. Prac. & Proc. Judicial Review § 8307 (2d ed.) (May 22, 2025 update); *Ctr. for Biological Diversity*, 453 F. Supp. 3d at 48 ("The Court doubts that Plaintiffs can bring an equitable claim when a statutory cause of action is available to it" under the APA); *Federal Express Corp. v. U.S. Dep't of Commerce*, 39 F.4th 756, 763 (D.C. Cir. 2022). Indeed, CWIT itself believes that it has not only a *path* but the "right" to "bring APA claims" based on its allegations. Compl. at 30 n.22.

CWIT has not shown that either mechanism for review—under the APA or the Tucker Act—is "constitutionally insufficient" such that it "must have a nonstatutory cause of action to vindicate" its rights. *Puerto Rico*, 490 F.3d at 60. Thus, CWIT's challenge, even if constitutional, should be dismissed because it must be brought under the APA and observe its requirements.

Non-statutory review is also limited in that it can apply only where an agency "plainly acts in excess of delegated powers," a standard that captures "only extreme agency error, not merely garden-variety errors of law or fact." *DCH*, 925 F.3d at 509. But as explained above, neither DOL nor any other defendant ever terminated CWIT's grant, as CWIT itself alleges. *Supra* at 14. CWIT cannot show *extreme agency error* in any grant and contract terminations when the defendant agencies did not even terminate any grant or contract. Thus, non-statutory review is foreclosed based on this second limitation on this court's equity powers, too.

## IV.     CWIT's Challenges to the Certification Provision Should Be Dismissed.

CWIT's challenges to the Certification Provision should be dismissed.  The defendants incorporate and reassert their prior arguments against this provision herein, Dkt. 44, 57, 82, and press additional arguments below.  Notably, two recent district court cases upheld the Certification Provision under the Constitution, including against facial First Amendment challenges—*National Urban League*, 2025 WL 1275613, at *20-24 and *San Francisco*, 2025 WL 1621636, at *19.

### A.  The First Amendment Challenges Fail.

CWIT's First Amendment challenges should be dismissed, and the court should reconsider its prior finding that they are likely to succeed.  CWIT brings them at a pre-enforcement facial posture but does not establish standing required for challenges at that posture.  The provision also survives facial First Amendment scrutiny.  As multiple courts recently found, the provision does not even infringe on protected speech, let alone do so enough to support a facial challenge.  And even if the provision could be read to pose serious First Amendment problems, the canon of constitutional avoidance would require that the government's narrower reading be adopted here.

#### 1.  CWIT Fails to Satisfy Either *Speech First* Standing Standard.

The court properly found that CWIT brings pre-enforcement facial First Amendment challenges to the Certification Provision and must therefore satisfy at least one standing standard in *Speech First, Inc. v. Killeen*, 968 F.3d 628, 638 (7th Cir. 2020).  When a "plaintiff brings a facial challenge under the First Amendment, a prior enforcement action is not required."  *Id.* at 638.  "In the absence of an enforcement action, though, plaintiffs must make one of two showings to establish an injury in fact."  *Id.*  The plaintiff must show either "an intention to engage in a course of conduct arguably affected by a policy, and that he faces a credible threat the policy will be enforced against him when he does" or "a chilling effect on his speech that is objectively reasonable, and that he self-censors as a result."  *Id.*

21

Contrary to the court's prior conclusion, CWIT satisfies neither *Speech First* standing standard. In holding otherwise, the court referenced allegations by CWIT that might concern only challenges to the *Termination Provision*. *See* Dkt. 68 at 14-15. The court highlighted, for example, that CWIT allegedly faced pressure to self-censor when Jobs for the Future sent it a notice of "*termination*" based on the executive orders and an email directing it to "cease DEI-related activity and warning of possible *termination* of grants" and when OPM sent a memo directing agency heads to "'*terminate* any DEIA-related contractors.'" *Id.* at 14-15 (emphasis added). But none of this pressure is alleged to have resulted from the *Certification Provision*, and CWIT fails to establish standing to challenge that provision for the following additional reasons.

CWIT satisfies neither element of the first standing standard. The Certification Provision makes a contractual counterparty or grant recipient's "compliance in all respects with all applicable Federal anti-discrimination laws" material to government "payment decisions" under the False Claims Act. EO 14,173 § (iv)(A). But CWIT does not allege that it *intends* to engage in conduct that violates federal anti-discrimination laws. *Wirtshafter v. Trustees of Indiana Univ.*, 2025 WL 1558171, at *5 (S.D. Ind. May 29, 2025) (plaintiffs lacked standing under this *Speech First* standard where they alleged that they "*would like*," but that "they *intend*" to "engage in conduct forbidden by the challenged policy). Nor could it; the Seventh Circuit has held that plaintiffs cannot establish pre-enforcement standing by alleging "concrete plans" to violate a law "of unquestioned validity." *Simic v. City of Chicago*, 851 F.3d 734, 738-39 (7th Cir. 2017). In *Simic*, for example, the plaintiff could not show standing to challenge a *local* distracted-driving law by alleging an intention to violate a *state* distracted-driving law. *Id.* Thus, CWIT cannot establish standing by planning to violate unquestionably valid federal antidiscrimination laws.

CWIT also does not show that it intends to engage in any protected speech involving anything made illegal under federal anti-discrimination law. Rather, CWIT offers general

22

allegations, such as that it speaks about "promoting women in the skilled trades" or "stating facts" such as that "women face discrimination in the skilled trades." Compl. ¶ 93. But such speech is not tied to anything *illegal* under federal anti-discrimination law. And CWIT does not allege that the government plans to use the Certification Provision to prosecute anyone for such speech.

CWIT also satisfies neither element of the second standing standard. The first requires CWIT to show an *objectively reasonable* chilling effect from the Certification Provision. But CWIT supplies only allegations of "subjective 'chill,'" which "are not an adequate substitute for a claim of a specific present objective harm or a threat of specific future harm." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 417-18 (2013); *Bell v. Keating*, 697 F.3d 445, 454 (7th Cir. 2012). The Certification Provision ties a provision of the False Claims Act to compliance with federal antidiscrimination law, and no *objective* chilling effect can result from such compliance. CWIT also cannot show *objective* chilling by alleging that its *confusion* about the provision might result in a False Claims Act enforcement action. The Act "requires proof of falsity, knowledge, materiality," so CWIT's *confusion* upon making a certification would be a *defense* in the action. *United States ex rel. Health v. Wisconsin Bell, Inc.*, 92 F.4th 654, 659 (7th Cir. 2024) (citing 31 U.S.C. § 3729(a)(1)(A)); s*ee also United States ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739, 752-53 (2023) (scienter requirement focuses on *subjective* beliefs).

The second element requires the plaintiff to show specific instances of self-censoring based on the objective chilling effect. But CWIT does not even *allege* a single instance of self-censoring, let alone show one arising from the Certification Provision. *See generally* Compl. Courts have required such allegations to be *specific*. For example, a professor showed that he self-censored due to a university policy he challenged when he "refrained from using pedagogically relevant cases in class because he fear[ed] they may be too racially charged." *Kilborn v. Amiridis*, 131 F.4th 550, 565 (7th Cir. 2025). Students, faculty, and others showed that they self-censored due

23

to a policy when they refrained from engaging in unapproved campus protests. *Wirtshafter*, 2025 WL 1558171, at *5. And a protestor showed self-censoring due to an ordinance criminalizing certain disorderly conduct when he had been previously arrested under the ordinance and subsequently became less willing to participate in future protests. *Bell*, 697 F.3d at 454.

CWIT, however, offers no such specific showings of self-censoring from the Certification Provision. It vaguely alleges that it felt *pressure* to self-censor. But such allegations are neither particularized nor concrete. *See Spokeo*, *Inc. v. Robins*, 578 U.S. 330, 339 (2016) (a particularized injury must affect the plaintiff in a personal, actual, and individual way, and a concrete injury be "'*de facto*'; that is, it must actually exist"). CWIT offers no detail about what specific speech it would have said, when, where, and to whom, had it not been for the Certification Provision.

As for both standing standards, CWIT fails to show any *imminent*, *concrete*, and *particularized* injury from the Certification Provision. The Supreme Court summarized pre-enforcement First Amendment cases where plaintiffs satisfied these standing requirements in *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161 (2014). Those cases generally involved a history of past enforcement, enforcement warning letters, and enforcement statutes that could be easily used against the plaintiff. *Id.* In *Susan B. Anthony* itself, for example, the plaintiffs satisfied these standing requirements in bringing a pre-enforcement First Amendment challenge to a state false statement law by showing "specific statements they intend to make in future election cycles" that may violate the law, *id.* at 161, a "history of past enforcement," even against a plaintiff, *id.* at 164, and features of the law that made enforcement easy, such as that the state law allowed *any person* to file a complaint about *any false statement, id.* at 164. CWIT makes none of those allegations here. Indeed, CWIT does not even allege that it intends to apply for any specific grant or contract that might require a certification under the Certification Provision or when it intends to

24

do so.  But without even *those* allegations, CWIT cannot show an *imminent* injury, let alone a *concrete* and *particularized* one.  Accordingly, CWIT lacks standing under *Speech First*.

### 2.  The First Amendment Challenges Lack Merit.

Standing aside, the First Amendment challenges also fail on the merits.  As the government has argued here and elsewhere, the Certification Provision concerns activity that would violate federal anti-discrimination law, not protected speech.  *E.g.*, Dkt. 44 at 25-28; *National Urban League*, 2025 WL 1275613 at *24-25.  CWIT insists that the Certification Provision does not mean what it says and even applies to *all* DEI activity, but that reading is at odds with the text and explicitly stated purpose of the provision.  Dkt. 44 at 25-28.

Regardless, the canon of constitutional avoidance demands that this court favor the government's narrower interpretation so long as it is "fairly possible," even if it is "not the best one."  *United States v. Hansen*, 599 U.S. 762, 781 (2023) (applying canon in action involving facial First Amendment overbreadth challenge to statute); *I.N.S. v. St. Cyr*, 533 U.S. 289, 299 (2001); *Artis v. District of Columbia*, 583 U.S. 71, 89 (2018); *New York v. Ferber*, 458 U.S. 747, 769 n.24 (1982).  The government's reading here is more than fairly possible; indeed, multiple courts have adopted it.  As those courts have explained, the Certification Provision only requires "a certification that the grant recipient or contractual counterparty will not violate the federal antidiscrimination laws that they had to comply with long before President Trump issued the executive orders."  *National Urban League*, 2025 WL 1275613 at *24-25.  It requires "counterparties to certify that they do not violate federal laws that they are otherwise obligated to comply with does not chill protected speech."  *Id.* at *25.  It does not "purport to establish the illegality of all efforts to advance" DEI and "should not be so understood."  *Diversity Officers*, No. 25-1189 at 2; *id.* at 7 (Harris, J., concurring).  And its "operative word, 'violate,' modifies 'programs'—rather than 'promoting' or

'DEI" and thus "implicates the *operation* of programs that both promote DEI and 'violate any applicable Federal anti-discrimination laws." *San Francisco*, 2025 WL 1621636, at *18-19.

The Certification Provision should be interpreted based on consideration of the *whole* executive order, "'considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis.'" *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 7 (2011) (quoting *Dolan v. Postal Serv.*, 546 U.S. 481, 486 (2006)). This includes consideration of prior precedent revealing what activity is unlawful under federal anti-discrimination laws. *Id.* Here, the Certification Provision is in an executive order that references "Ending *Illegal Discrimination*" in its title, EO 14,173, has the "purpose" of ensuring that the government is "enforcing our civil-rights laws" by "ending *illegal* preferences and discrimination," *id.* § 1 (emphasis added), and directs that all provisions in the executive order are to be implemented consistent with the First Amendment rights of parties such as federal contractors, *id.* § 7(b).

**B. The Fifth Amendment Challenge Fails.**

The Fifth Amendment challenge to the Termination Provision is a nonstarter for the reasons the defendants presented before. Dkt. 44 at 14-21. To begin with, vagueness doctrine is inapplicable here. Dkt. 44 at 14-15. As explained in the concurrence in *Diversity Officers*, "where the Orders only purport to direct executive policy and actors," "vagueness principles [are not] outcome determinative." No. 25-1189 at 5, n.2. Rather, vagueness traditionally "guarantees that ordinary people have 'fair notice of the conduct a *statute* proscribes." *Sessions v. Dimaya*, 584 U.S. 148, 156 (2018). Even courts that have applied vagueness doctrine outside statutory contexts have done so to direct regulations of primary conduct, which do not encompass executive order provisions where the President gives subordinates even unclear directives. *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). Moreover, the Certification Provision concerns compliance with federal antidiscrimination law and is thus not vague. *Supra* at 24-25; *see also National Urban*

*League*, 2025 WL 1275613, at *20. If the provision were unclear, the canon of constitutional avoidance would require that any doubt be resolved in the government's favor. *Supra* at 24-25.

### C. The Spending Clause and Separation-of-Powers Challenges Fail.

The separation-of-powers and Spending Clause challenges to the Certification Provision should be dismissed because CWIT fails to show, as it must to bring such facial challenges, that the provision is unconstitutional in all conceivable applications by requiring recipients to certify that they do not operate DEI programs that "violate any applicable Federal anti-discrimination laws." EO 14,173 § 3(b)(iv)(B); *see also Ezell*, 651 F.3d at 698.

Moreover, while "*new* conditions on federal funds" may implicate separation of powers, *see Cnty. of Santa Clara v. Trump*, 250 F. Supp. 3d 497, 516 (N.D. Cal. 2017) (emphasis added), no such concern arises when the Executive merely reinforces preexisting legal obligations. That is the case here. The Certification Provision imposes no new requirements, adopts no new construction of any antidiscrimination law, and does not declare all DEI to be illegal. Rather, the provision simply requires recipients to certify their compliance with existing legal obligations under applicable federal civil rights laws such as Title VI of the Civil Rights Act of 1964, which applies to all recipients of federal assistance, 42 U.S.C. § 2000d-1—laws that are binding independent of any certification requirement. Indeed, it has been true for decades that every "application for Federal financial assistance must, 'as a *condition* to its approval and the extension of any Federal financial assistance,' contain assurances that the program will comply with Title VI *and* all requirements imposed pursuant ot the executive regulations issued under Title VI." *Guardians Ass'n v. Civ. Serv. Comm'n of City of N.Y.*, 463 U.S. 582, 629-30 & n.22 (1983) (Marshall, J., dissenting). Such "assurance" of compliance is "given in consideration of" federal aid, "and the federal government extends assistance in reliance on the assurance of compliance"— but the obligations of Title VI apply regardless of any certification. *Id.* at 630.

While the Certification Provision addresses unlawful DEI programs specifically—a subset of the potential ways in which federal funding recipients might violate antidiscrimination law—that limitation merely renders it narrower than scores of certifications signed by recipients of federal assistance attesting that they are complying with Title VI in *every* respect.  CWIT neither argues that these longstanding requirements are unconstitutional nor explains why their breadth is constitutionally required.  At bottom, the certification "does not place upon a recipient [any] unanticipated burdens because any recipient must anticipate having to comply with the law."  *Id.*

### D.  The Challenges Fail Because the APA Provides a Path of Judicial Review.

CWIT's challenges to the Certification Provision should also be dismissed because they arise under the court's equity powers even though the APA provides a statutory path of judicial review, as explained above.  *Supra* at 18-20; *see also Nuclear Regul.*, 145 S. Ct. at 1776.

### Conclusion

For the foregoing reasons, the defendants request that CWIT's complaint be dismissed.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

JOSEPH E. BORSON
Assistant Branch Director

PARDIS GHEIBI
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel.: (202) 305-3246
Email: pardis.gheibi@usdoj.gov

ANDREW S. BOUTROS
United States Attorney

By: s/ Patrick Johnson
    THOMAS P. WALSH
    PATRICK JOHNSON
    Assistant United States Attorneys
    219 S. Dearborn Street, 5th Floor
    Chicago, Illinois 60604
    (312) 353-5312
    (312) 353-5327
    thomas.walsh2@usdoj.gov
    patrick.johnson2@usdoj.gov