UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHICAGO WOMEN IN TRADES, | ) |
| Plaintiff, | ) |
| v. | ) No. 25 C 2005 |
| | ) Judge Kennelly |
| PRESIDENT DONALD J. TRUMP, *et al.*, | ) |
| Defendants. | ) |

**DEFENDANTS' MOTION FOR AN INDICATIVE RULING AND PARTIAL STAY**

In *Trump v. CASA*, No. 24A884 (June 27, 2025), the Supreme Court held that district courts do not have equitable powers to issue a "universal injunction," barring the defendant from enforcing "a law or policy against *anyone*." *Id.* at 1, 2 n.1. Moreover, the Court emphasized that while courts in equity may fashion a remedy that provides the aggrieved party with "complete relief," the concept of "'complete relief' is not synonymous with 'universal relief.'" *Id.* at 16. And even "[c]omplete relief is not a guarantee—it is the maximum a court can provide." *Id.* at 18. Put another way: completeness is "a ceiling"—not "a mandate." *Id.* (Thomas, J., concurring) at 2.

Consistent with these principles, Defendants request that this Court issue an indicative ruling that on remand from the court of appeals it would modify the scope of its preliminary injunction—which currently prevents the Department of Labor (DOL) from implementing the Certification Provision of Executive Order 14173 with respect to *any* grantee or contractor—to cover only Plaintiff Chicago Women in Trades (CWIT), or, at most, CWIT as well as the entities

-1-

that contract with CWIT. Defendants also request that this Court stay the universal scope of the preliminary injunction with respect to the Certification Provision pending resolution on appeal.[1]

## BACKGROUND

On April 15, 2025, this Court issued its preliminary injunction order, which in part, enjoined the Secretary of Labor; DOL; its officers, agents, servants, employees, attorneys; and other persons who are in active concert or participation with any of them, from implementing the Certification Provision with respect to *any* recipient. ECF No. 69 at 2. In particular, the preliminary injunction order provided that the enjoined parties "shall not require any grantee or contractor to make any 'certification' or other representation pursuant to the Certification Provision." *Id.* The Court was "persuaded that granting a preliminary injunction barring DOL from enforcing the Certification Provision against *any* grantee or contractor is appropriate in these circumstances" and concluded that the scope of the injunction was "necessary to ensure that CWIT is provided complete relief and to prevent infringement of the First Amendment rights of other grantees and contractors." ECF No. 68 at 44.

On June 27, 2025, the Supreme Court issued its decision in *CASA*, where it addressed "universal injunctions," which are injunctions that bar the defendant from enforcing "a law or policy against *anyone*," in contrast to an injunction that bars the defendant from enforcing the challenged law or policy against the plaintiff. Op. 1, 2 n.1. The Supreme Court explained that

---

[1] The requested relief in the instant motion is limited to remedying the universal scope of this Court's injunction with respect to the Certification Provision. On appeal, Defendants reserve the right to challenge this Court's preliminary injunction ruling in its entirety, including its conclusion that requiring certification pursuant to the Certification Provision outlined in Section 3(b)(iv) of Executive Order 14173 violates the First Amendment, *see* ECF No. 68 at 23–26, and that any future termination of CWIT's Women in Apprenticeship and Nontraditional Occupations (WANTO) grant on the basis of the Termination Provision outlined in Section 2(b)(i) of Executive Order 14151 would violate the Spending Clause and separation of powers, *see id.* at 36–41.

"Congress has granted federal courts no such power," *id.* at 5, as universal injunctions have no historical analogue in equity practice, *id.* at 5–11.

Instead, the governing principle is that a court granting equitable relief "'may administer complete relief *between the parties*.'" *Id.* at 16 (citation omitted). "Under this principle, the question is not whether an injunction offers complete relief to *everyone* potentially affected by an allegedly unlawful act; it is whether an injunction will offer complete relief *to the plaintiffs before the court*." *Id.* at 17. And even then, "[c]omplete relief is not a guarantee—it is the maximum a court can provide." *Id.* at 18; *see also id.* (Thomas, J., concurring) at 2 (explaining that "[t]he complete-relief principle operates as a ceiling"). Thus, "'the broader and deeper the remedy the plaintiff wants, the stronger the plaintiff's story needs to be.'" Op. 18 (citation omitted).

On July 3, 2025, Defendants filed their Notice of Appeal to the Seventh Circuit from this Court's Memorandum Opinion and Order. ECF No. 112.

**ARGUMENT**

**I.     This Court should issue an indicative ruling of its intent to modify the preliminary injunction pursuant to *CASA*.**

Defendants' appeal of this Court's preliminary injunction "divests [this] [Court] of its control over those aspects of the case involved in the appeal." *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 740 (2023) (citation omitted). As such, this Court currently lacks jurisdiction to modify the preliminary injunction. But pursuant to Federal Rule of Civil Procedure 62.1(a)(3), this Court may issue an indicative ruling "stat[ing] either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." The Supreme Court's intervening decision in *CASA* warrants such an indicative ruling.

By its own terms, this Court's injunction with respect to the Certification Provision—which bars DOL from implementing the Certification Provision with respect to anyone—provides relief

-3-

to nonparties. *See* ECF No. 68 at 44. This Court concluded that the scope of the injunction was "necessary" for two separate reasons: (1) "to prevent infringement of the First Amendment rights of other grantees and contractors" and (2) "to ensure that CWIT is provided complete relief." *Id.* Neither justification can withstand *CASA*.

The first justification was unequivocally rejected by the Supreme Court in *CASA*, which explained that "[a] universal injunction can be justified only as an exercise of equitable authority, yet Congress has granted federal courts no such power." *CASA*, Op. 5. Thus, no matter the "nature of the First Amendment right at stake," ECF No. 68 at 44, this Court lacks the authority to issue universal relief.

The second justification conflicts with *CASA* as well. This Court erroneously reasoned that "complete relief" to CWIT requires a universal injunction because "CWIT does not just work alone, but (at least in some instances) in conjunction with other organizations that may be considered to provide DEI-related programming." ECF No. 68 at 46. As such, this Court reasoned, a universal injunction is warranted to ensure that CWIT can work with other recipients and that current and prospective partners are not chilled from partnering with CWIT. *Id.* at 46–47.

This Court's reasoning cannot be squared with *CASA*, which explained that "[c]omplete relief" should not be treated as "synonymous with universal relief." *CASA*, Op. 16 (internal quotation marks omitted). Complete relief "is a narrower concept: The equitable tradition has long embraced the rule that courts generally 'may administer complete relief *between the parties.*'" *Id.* (quoting *Kinney-Coastal Oil Co.* v. *Kieffer*, 277 U. S. 488, 507 (1928)). As such, although "the complete-relief principle has deep roots in equity," it does not "justif[y] the award of relief to nonparties." *CASA*, Op. 15. To be sure, there are instances where "afford[ing] the plaintiff complete relief[] [leaves] the court [with] only one feasible option," which "might have the *practical effect*

of benefiting nonparties," but any such "benefit[] [to] nonparties . . . '[is] merely incidental.'" *Id.* at 16 (citation omitted) (final alternation in original); *see also id.* (explaining that in "an archetypal case" where "one neighbor sues another for blasting loud music at all hours of the night," providing "complete relief" to the plaintiff—i.e., an order to turn the music off—would "necessarily benefit the defendant's surrounding neighbors too").

This Court's injunction directly contravenes these principles. It goes beyond simply enjoining DOL with respect to CWIT with "mere incidental" benefits to nonparties—it provides relief directly *to* nonparties. *Cf. id.* at 17 (explaining that "[t]he complete-relief inquiry is more complicated for the state respondents, because the relevant injunction *does not* purport to directly benefit nonparties" (emphasis added)).

Besides, even if an injunction beyond CWIT could theoretically make CWIT's relief "more complete," *id.*, such an injunction is not warranted here. As the Supreme Court emphasized in *CASA*, "[c]omplete relief is not a guarantee—it is the maximum a court can provide." Op. 18. The scope of the injunction must be consistent with the long-standing principle that courts should not issue an injunction that "is 'more burdensome than necessary to redress' [plaintiff's] asserted harms." *Id.* (quoting *Califano* v. *Yamasaki*, 442 U. S. 682, 702 (1979)). Here, the scope of the injunction is unduly burdensome. The current injunction covers thousands of current and prospective DOL funding recipients. And while it may be theoretically possible for CWIT to enter into partnerships with any one of those current and prospective DOL funding recipients, in practice, CWIT has only partnered with a handful of recipients. Thus—at most—enjoining enforcement of the Certification Provision as to CWIT and the few DOL funding recipients with whom CWIT *actually* partners would provide CWIT with complete relief.

This Court previously concluded that any such limited injunction would not "completely remedy the effect of the Certification Provision to CWIT" because it would not cover "prospective grant recipients[s] who might want to work with CWIT." ECF No. 68 at 46–47. But such future collaborations between unidentified "prospective grant recipients[s]" and CWIT are purely hypothetical. And any conclusion that complete relief must be universal to protect the plaintiff from even the *possibility* of any future harm cannot be squared with *CASA*'s explanation that "complete relief" is a "narrower concept" than "universal relief." *CASA*, Op. 16; *see also id.* at 15 (explaining that "complete relief" does not "justif[y] the award of relief to nonparties"). Simply put, applying the complete-relief principle in such an expansive manner "risk[s] replicating the problems of universal injunctions under the guise of granting complete relief." *Id.* at 2 (Thomas, J., concurring); *see also id.* at 5 ("Courts may not use the complete-relief principle to revive the universal injunction.").

Indeed, hypothetical future harm would not even sufficiently establish CWIT's standing to seek injunctive relief—let alone justify universal relief. What is more, the balance of equities is deeply lopsided: The mere possibility that some unknown grant recipient may at some unknown point in the future partner with CWIT on some unknown project cannot justify outright barring an Executive Branch agency from carrying out the President's directive with respect to *any* of its thousands of funding recipients (the vast majority of whom will never partner with CWIT regardless of the scope of the injunction). See *CASA*, Op. 18 ("[I]n equity, 'the broader and deeper the remedy the plaintiff wants, the stronger the plaintiff's story needs to be.'" (citation omitted)); *see also id.* at 3 (Thomas, J., concurring) (explaining that consistent with the "traditional limits on a court's equitable powers," courts "must ensure that any injunctions comport with both the

complete-relief principle and other 'principles of equity,'" which may include "'justice … also for the defendant'" (citation omitted)).

Because this Court's universal injunction does not comport with *CASA*, Defendants request that this Court issue an indicative ruling under Federal Rule 62.1, stating that it would modify the scope of the injunction on remand to cover only CWIT—or, at most, CWIT and the entities with whom CWIT partners. As the Seventh Circuit has made clear, there is "no[] doubt . . . that a district judge has discretion to revise a preliminary remedy if persuaded that change had benefits for the parties and the public interest." *Commodity Futures Trading Comm'n v. Battoo*, 790 F.3d 748, 751 (7th Cir. 2015). Following *CASA*, modification of the scope of the injunction is not just in the public interest—it is required as a matter of law.

## II. This Court should partially stay the injunction pending resolution on appeal.

Defendants further request that, pursuant to Federal Rule of Civil Procedure 62, this Court stay the universal scope of the injunction pending resolution on appeal.[2] This Court must consider four factors in assessing a motion for stay pending appeal: (1) the movant's likelihood of prevailing on the merits of the appeal, (2) whether the movant will suffer irreparable harm absent a stay, (3) the harm that other parties will suffer if a stay is granted, and (4) the public interest. *See Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).

For the reasons outlined above, Defendants are likely to prevail on the merits of their argument that the universal scope of the injunction contravenes *CASA*. *See supra* Part I.

The remaining factors—irreparable harm, the balance of harms, and the public interest—likewise favor the requested stay. As the Supreme Court explained in *CASA*, "[w]hen a federal

---

[2] Although this Court lacks jurisdiction to modify the injunction, it retains jurisdiction to stay it in whole or in part under Rule 62.

court enters a universal injunction against the Government, it 'improper[ly] intru[des]' on 'a coordinate branch of the Government' and prevents the Government from enforcing its policies against nonparties," and that intrusion is sufficient to demonstrate irreparable harm warranting a stay. *CASA*, Op. 24 (citation omitted) (second and third alternation in original); *see* Op. 25. And because limiting an injunction to CWIT (or, at most, CWIT and its partners) causes CWIT no harm, "the balance of equities does not counsel against awarding the Government interim relief." Op. 26.[3]

## CONCLUSION

For the foregoing reasons, Defendants request that this Court issue an indicative ruling pursuant to Rule 62.1, stating that on remand it would modify the scope of the injunction with respect to the Certification Provision to encompass only CWIT—or, at most—CWIT and the entities with whom it partners. Defendants further request that, pursuant to Rule 62, this Court stay the universal application of the injunction with respect to the Certification Provision pending resolution on appeal.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

YAAKOV M. ROTH
Deputy Assistant Attorney General

JOSEPH E. BORSON
Assistant Branch Director

ANDREW S. BOUTROS

---

[3] Although Defendants are moving for both an indicative ruling and a stay pending resolution on appeal, the two requests are independent. As such, in the event that this Court denies Defendants' request for an indicative ruling, Defendants request that it nevertheless grant their request for a stay pending appeal.

United States Attorney

THOMAS P. WALSH
PATRICK JOHNSON
Assistant United States Attorneys

*/s/ Pardis Gheibi*

PARDIS GHEIBI (D.C. Bar No. 90004767)
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel.: (202) 305-3246
Email: pardis.gheibi@usdoj.gov

*Attorneys for Defendants*