UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CHICAGO WOMEN IN TRADES,  )
            )
      Plaintiff,  )
            )  No. 25 C 2005
     v.     )
            )  Judge Kennelly
PRESIDENT DONALD J. TRUMP, *et al.*, )
            )
      Defendants. )

**MEMORANDUM IN SUPPORT OF DEFENDANTS'**
**RULE 12(b)(1), (6) MOTION TO DISMISS THE COMPLAINT**

**Table of Contents**

Introduction ...................................................................................................................1

**Background** ...............................................................................................................3

    I.      Executive Orders 14151 and 14173 ...............................................................3

    II.    CWIT and Its Federal Funding Sources .........................................................4

    III.   CWIT's Complaint ..........................................................................................5

    IV.   The TRO and Preliminary Injunction Proceedings ......................................7

**Argument** .................................................................................................................8

    I.      CWIT Lacks Standing to Challenge the Three Intra-Governmental Provisions ..........8

    II.    CWIT Cannot Sue the Non-DOL Defendants for Reasons Specific to Them .............9

    III.   CWIT's Challenges to the Termination Provision Should Be Dismissed ...................10

        A.  The Court Properly Rejected the Due Process Challenge ....................................10

        B.  The Court Properly Rejected the First Amendment Challenges ...........................14

        C.  The Purported Separation-of-Powers and Spending Clause Challenges Fail ........15

            1.  The Court Properly Rejected Nearly All Such Challenges. ..........................15

            2.  The Challenges Fail for Additional Reasons the Court Did Not Adopt. ........16

                i.    The Challenges Are Not Constitutional Based on *Dalton* and Could Not Satisfy the Standards for Limited Facial Challenges if They Were...........17

                ii.   The Challenges Fail Based on Tucker Act Principles ..............................20

                iii.  CWIT Cannot Invoke the Court's Equity Powers Because the APA Provides a Path of Judicial Review, and There Is No Extreme Error........23

                iv.  The Supreme Court Indicated Agreement with Arguments the Defendants Raise Here in *Sierra Club v. Trump*, 140 S.Ct. 1 (2019)........25

    IV.   CWIT's Challenges to the Certification Provision Should Be Dismissed ...................27

        A.  CWIT Lacks Standing to Bring Its Pre-Enforcement Challenges ........................27

            1.  CWIT Fails to Show an Imminent, Concrete, and Particularized Injury.........28

            2.  CWIT Fails to Satisfy the First *Speech First* Standard ...................................29

            3.  CWIT Fails to Satisfy the Second *Speech First* Standard ..............................30

B.   The First Amendment Challenges Lack Merit .......................................................31

C.   The Fifth Amendment Challenge Lacks Merit ......................................................33

D.   The Separation-of-Powers and Spending Clause Challenges Lack Merit ............33

E.   The Tucker Act or APA Provides a Path of Review, and There Is No Extreme
     Error .....................................................................................................................35

**Conclusion** ...............................................................................................................................35

**Table of Authorities**

### Cases

*Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205 (2013) ............................... 14

*Am. Ass'n of Colleges for Teacher Educ. v. McMahon*,
No. 25-1281, 2025 WL 1232337 (4th Cir. Apr. 10, 2025) ..................................... 22

*Am. Fed'n*, 139 F.4th 1020 (9th Cir. 2025) .................................................................... 19

*Armstrong v. Exceptional Child Ctr. Inc.*, 575 U.S. 320 (2015) ............................... 9, 23

*Artis v. District of Columbia*, 583 U.S. 71 (2018) ........................................................ 32

*Bd. of Governors of Fed. Reserve Sys. v. MCorp Fin., Inc.*, 502 U.S. 32 (1991) ......................... 23

*Bell v. Keating*, 697 F.3d 445 (7th Cir. 2012) ........................................................ 30, 31

*Gonzalez v. Carhart*, 550 U.S. 124, 149 (2007) ........................................................ 33

*City of Chicago v. Sessions*, 888 F.3d 272 (7th Cir. 2018) ............................................ 16

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) ................................................... 30

*Cnty. of Santa Clara v. Trump*, 250 F. Supp. 3d 497 (N.D. Cal. 2017) ........................... 34

*Comm'n v. Texas*, 145 S. Ct. 1762 (June 18, 2025) ......................................... 2, 23, 24, 35

*Commonwealth of Puerto Rico v. United States*, 490 F.3d 50 (1st Cir. 2007) .................... 24

*Ctr. for Biological Diversity v. Trump*, 453 F. Supp. 3d 11 (D.D.C. 2020) ............... 10, 11, 24

*Dalton v. Specter*, 511 U.S. 462 (1994) ............................................................... 1, 17

*DCH Reg'l Med. Ctr. v. Azar*, 925 F.3d 503 (D.C. Cir. 2019) ..................................... 23, 25

*Dep't of Educ. v. California*, 145 S.Ct. 966 (2025) .................................................. 2, 21, 22

*DeVillier v. Texas*, 601 U.S. 285 (2024) .................................................................. 24

*Doe v. Reed*, 561 U.S. 186 (2010) ......................................................................... 19

*Dolan v. Postal Serv.*, 546 U.S. 481 (2006) ........................................................... 32, 33

*Employers Ins. of Wausau v. Browner*, 52 F.3d 656 (7th Cir. 1995) ............................... 23

*Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011) ...................................... 16, 19, 34

iv

*F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239 (2012) ........................................................ 12

*Fed. Express Corp. v. U.S. Dep't of Com.*, 39 F.4th 756 (D.C. Cir. 2022) .................................... 24

*Franklin v. Massachusetts*, 505 U.S. 788 (1992) ............................................................................. 9

*Genusa v. City of Peoria*, 619 F.2d 1203 (7th Cir. 1980) ......................................................... 27, 28

*Gizzo v. Ben-Habib*, 44 F. Supp. 3d 374 (S.D.N.Y. 2014) ............................................................ 13

*Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U. S. 204 (2002) ........................................ 22

*Grupo Mexicano De Desarrollo v. All. Bond Fund*, 527 U.S. 308 (1999) ...................................... 9

*Guardians Ass'n v. Civ. Serv. Comm'n of City of N.Y.*, 463 U.S. 582 (1983) ......................... 34, 35

*Hammer v. United States*, 989 F.3d 1 (D.C. Cir. 2021) .......................................................... 21, 23

*Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010) ............................................................. 33

*I.N.S. v. St. Cyr*, 533 U.S. 289 (2001) .......................................................................................... 32

*Ingersoll-Rand Co. v. United States*, 780 F.2d 74 (D.C. Cir. 1985) ............................................. 22

*Intern'l Union of Operating Engineers Local 139 v. Schimel*, 863 F.3d 674 (7th Cir. 2017) ....... 19

*Johnson v. United States*, 576 U.S. 591 (2015) ............................................................................ 14

*Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1 (2011) ..................................... 32

*Kilborn v. Amiridis*, 131 F.4th 550 (7th Cir. 2025) ...................................................................... 31

*Knick v. Township of Scott*, 588 U.S. 180 (2019) ......................................................................... 24

*Maryland v. King*, 567 U.S. 1301 (2012) ..................................................................................... 26

*Mass. Fair Housing Ctr*, 2025 WL 1225481 (D. Mass. Apr. 14, 2025) ....................................... 22

*Maynard v. Cartwright*, 486 U.S. 356 (1988) .............................................................................. 14

*McClelland v. Katy Ind. Sch. Dist.*, 63 F.4th 996 (5th Cir. 2023) ................................................ 13

*Milk Train, Inc. v. Veneman*, 310 F.3d 747 (D.C. Cir. 2002) ...................................................... 20

*Moody v. NetChoice, LLC*, 603 U.S. 707 (2024) .......................................................................... 33

*Murthy v. Missouri*, 144 S. Ct. 1972 (2024) .................................................................................. 9

v

*Nat'l Urban League v. Trump*, 2025 WL 1275613 (D.D.C. May 2, 2025) ............................ passim

*Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569 (1998) ................................................. 11, 15

*Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175 (2024) ................................................................ 15

*New Vision Photography Program, Inc., v. District of Columbia*,
54 F. Supp. 3d 12 (D.D.C. 2014) ............................................................................ 13, 16, 23

*New York v. Ferber*, 458 U.S. 747 (1982) .................................................................................... 32

*Redondo-Borges v. U.S. Dep't of Hous. & Urb. Dev.*, 421 F.3d 1 (1st Cir. 2005) ................. 13, 18

*Rust v. Sullivan*, 500 U.S. 173 (1991) ......................................................................................... 14

*San Francisco A.I.D.S. Found. v. Trump*,
2025 WL 1621636 (N.D. Cal. June 9, 2025) .......................................................... 3, 8, 27, 32

*Seila Law LLC v. Consumer Financial Protection Bureau*, 591 U.S. 197 (2020) .................. 13, 23

*Sessions v. Dimaya*, 584 U.S. 148 (2018) .............................................................................. 12, 14

*Sierra Club v. Trump*, 140 S. Ct. 1 (2019) .................................................................. 25, 26, 31, 32

*Sierra Club v. Trump,* 929 F.3d 670 (9th Cir. 2019) ............................................................... 25, 26

*Simic v. City of Chicago*, 851 F.3d 734 (7th Cir. 2017) ............................................................... 29

*Slattery v. United States*, 635 F.3d 1298 (Fed. Cir. 2011) ........................................................... 21

*Speech First, Inc. v. Killeen*, 968 F.3d 628 (7th Cir. 2020) .................................................... 27, 28

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) .............................................................................. 31

*Spuhler v. State Collection Serv., Inc.*, 983 F.3d 282 (7th Cir. 2020) .......................................... 10

*State of Mississippi v. Johnson*, 71 U.S. 475 (1866) ..................................................................... 9

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) ...................................................... 28, 29

*Trump v. Am. Fed'n of Gov't Employees*, 2025 WL 1873449 ......................................... 11, 19, 20

*Trump v. CASA, Inc.*, --- S.Ct. ----, 2025 WL 1773631 (June 27, 2025) ........................... 2, 9, 25

*Trump v. Sierra Club*, 140 S.Ct. 2620 (2020) ............................................................................ 26

*United States ex rel. Health v. Wisconsin Bell, Inc.*, 92 F.4th 654 (7th Cir. 2024) ...................... 30

*United States ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739 (2023) ............................................. 30

*United States v. Hansen*, 599 U.S. 762 (2023) ...................................................................... 3, 32

*Wabash Valley Power Ass'n, Inc. v. Rural Electrification Admin.*,
    903 F.2d 445 (7th Cir. 1990) ................................................................................. 22

*Wirtshafter v. Trustees of Indiana Univ.*, 2025 WL 1558171 (S.D. Ind. May 29, 2025) ........ 29, 31

**Statutes**

5 U.S.C. § 702 ...................................................................................................... 2, 24

28 U.S.C. § 1346 ..................................................................................................... 2

28 U.S.C. § 1491 ................................................................................................. 21, 22

29 U.S.C. § 2501 ..................................................................................................... 1

29 U.S.C. § 2503 ................................................................................................. 5, 17

31 U.S.C. § 3729 ..................................................................................................... 4

42 U.S.C. § 2000d-1 ............................................................................................... 34

Consolidated Appropriations Act, 2021,
    Pub. L. No. 116-260, Div. H, Tit. I, 134 Stat. 1182 ................................................ 16

Further Consolidated Appropriations Act, 2024,
    Pub. L. No. 118-47, 138 Stat. 460, 641 ....................................................... 2, 5, 16, 17

**Other Authority**

Exec. Order No. 14151, 90 Fed. Reg. 8339 (Jan. 20, 2025) .................................... passim

Exec. Order No. 14173, 90 Fed. Reg. 8633 (Jan. 21, 2025) .................................... passim

Exec. Order No. 14210, 90 Fed. Reg. 9669 (Feb. 14, 2025) ...................................... 20

**Introduction**

The President issued two executive orders in his first days in office setting forth certain of his new policy priorities and directing federal agencies to align funding and enforcement strategies with those priorities where legally permissible. Exec. Order No. 14151, 90 Fed. Reg. 8339 (Jan. 20, 2025), *Ending Radical and Wasteful Government DEI Programs and Preferencing*; Exec. Order No. 14173, 90 Fed. Reg. 8633 (Jan. 21, 2025), *Ending Illegal Discrimination and Restoring Merit-Based Opportunity*. This action arises from five provisions in the executive orders. Plaintiff Chicago Women in Trades asserts that the provisions jeopardize federal funds it receives from the Department of Labor directly or indirectly from third parties and chill its speech about the discrimination women face in skilled trades. CWIT alleges violations of the First Amendment (counts I-III), the Due Process Clause (count IV), and the Spending Clause and separation of powers (counts V-VIII). In May 2025, the court entered a preliminary injunction upon finding a likelihood of success for only two challenges and rejected most others, including by finding that CWIT lacked standing to challenge three of the five executive order provisions.

CWIT's complaint should now be dismissed in full. For brevity, only dismissal grounds for the challenges that the court found likely to succeed are summarized here. They arise from the Termination Provision, EO 14151 § 2(b)(i), and Certification Provision, EO 14173 § 3(b)(iv).

The Termination Provision directs agency, department, and commission heads to terminate "equity-related" grants or contracts to the extent consistent with the law. EO 14151 §§ 2(b)(i), 4(b). The court found all challenges to this provision are unlikely to succeed, except for one that CWIT styles as alleging Spending Clause and separation-of-powers violations. But that challenge fails at the outset because it is not a *constitutional* challenge, and CWIT lacks a cause of action. *Dalton v. Specter*, 511 U.S. 462, 474 (1994). At bottom, CWIT alleges that terminating its grant authorized by the Women in Apprenticeship and Nontraditional Occupations Act, 29 U.S.C.

1

§ 2501, *et seq.*, would, no matter the circumstances, violate not the *Constitution*, but an *appropriations act provision* providing that "not less than $5,000,000 shall be used for grants authorized by the" WANTO Act.  Further Consolidated Appropriations Act, 2024, Pub. L. No. 118-47, 138 Stat. 460, 641.  Not only are those allegations *statutory*, but they could not satisfy facial constitutional standards.  Separately, the allegations are contractual and seek "money damages," so they can belong only in the Court of Federal Claims based on Tucker Act principles.  28 U.S.C. §§ 1346, 1491; *see also Dep't of Educ. v. California*, 145 S.Ct. 966, 968 (2025) (per curiam).

The challenge would also fail were CWIT right that it is a constitutional challenge and not a contractual challenge concerned about "money damages."  In that case, the challenge must arise under the court's equity powers from the Judiciary Act of 1789.  *Trump v. CASA, Inc.*, --- S.Ct. -----, 2025 WL 1773631, at *6 (June 27, 2025).  But those powers are unavailable if a *statute* provides a path of judicial review, and the APA would provide a path here.  *Nuclear Regul. Comm'n v. Texas*, 145 S.Ct. 1762, 1776 (June 18, 2025).  The APA allows plaintiffs seeking "relief other than money damages" to request "judicial review" of whether final agency action, 5 U.S.C. § 702, and agency action leading up to it, § 704, is "contrary to constitutional right," § 706(2)(B).  Indeed, CWIT itself believes that it has not only a *path* but the "right" to "bring APA claims" based on its allegations.  Dkt. 1 (Compl.) at 30 n.22.  CWIT also fails to show any *extreme* error of the sort required for claims brought under the court's equity powers.

Next, the Certification Provision provides that agency heads "shall include in every contract or grant award" two terms described in EO 14173 §§ 3(b)(iv)(A), (B), to the extent consistent with law, *id.* § 4(b).  If placed in an award, the terms would require "the contractual counterparty or grant recipient" to both "agree that its compliance in all respects with all applicable Federal anti-discrimination law is material to the government's payment decisions for purposes

2

of" a False Claims Act provision, and "certify that it does not operate any programs promoting DEI that violate any applicable Federal anti-discrimination laws." *Id.* §§ 3(b)(iv)(A), (B).

The court should dismiss the First Amendment challenges to the Certification Provision, though it previously found them likely to succeed. CWIT brings only pre-enforcement facial challenges but does not establish standing requirements for such challenges. The Certification Provision also survives facial scrutiny. The provision concerns activity that would violate federal antidiscrimination law—not protected speech. And if CWIT offered an acceptable reading posing serious First Amendment or other constitutional problems, the canon of constitutional avoidance requires the court to favor the government's narrower interpretation if it is even "fairly possible" and "not the best one." *United States v. Hansen*, 599 U.S. 762, 781 (2023). The defendants' interpretation is more than fairly possible; indeed, multiple courts recently adopted it. *Nat'l Urban League v. Trump*, 2025 WL 1275613, at *24-25 (D.D.C. May 2, 2025); *San Francisco A.I.D.S. Found. v. Trump*, 2025 WL 1621636 (N.D. Cal. June 9, 2025); *Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*, No. 25-1189 (4th Cir. Mar. 14, 2025), Dkt. 29 at 2, 7. CWIT's challenges to the Certification Provision also fail because the Tucker Act or APA provides a path of judicial review, and CWIT shows no extreme error required for non-statutory review.

## Background

### I.    Executive Orders 14151 and 14173

On January 20, 2025, the President issued Exec. Order No. 14151, 90 Fed. Reg. 8339 (Jan. 20, 2025), *Ending Radical and Wasteful Government DEI Programs and Preferencing*. As relevant here, CWIT challenges this executive order's Termination Provision, which directs that within 60 days of the order's issuance, each "agency, department, or commission head, in consultation with the Attorney General, the Director of OMB, and the Director of OPM" shall "terminate, to the maximum extent allowed by law," federal "'equity-related' grants or contracts." *Id.* § 2(b)(i).

3

On January 21, 2025, the President issued Exec. Order No. 14173, 90 Fed. Reg. 8633 (Jan. 21, 2025), *Ending Illegal Discrimination and Restoring Merit-Based Opportunity*. This executive order's stated purpose is to ensure that the federal government is "enforcing our civil-rights laws" by "ending *illegal* preferences and discrimination," *id.* § 1 (emphasis added), and the President directed that it is to be implemented consistent with the First Amendment rights of parties such as federal contractors, *id.* § 7(b). CWIT challenges this executive order's Certification Provision, which provides that each agency head "shall include in every contract or grant award" the two terms in § 3(b)(iv)(A), (B), to the extent consistent with law, *id.* § 4(b) If placed in an award, the terms would require "the contractual counterparty or grant recipient" to both "agree that its compliance in all respects with all applicable Federal anti-discrimination law is material to the government's payment decisions for purposes of" 31 U.S.C. § 3729(b)(4) in the False Claims Act; and "certify that it does not operate any programs promoting DEI that violate any applicable Federal anti-discrimination laws." *Id.* § 3(b)(iv)(A), (B).

CWIT also challenges three additional provisions—those in EO 14151 § 2(b)(ii)(A) and EO 14173 §§ 3(c)(iii) and 4(b). But as this and other courts have found, those three provisions "focus on internal government agency processes and programs and reporting to the President from his subordinates," so CWIT lacks standing to challenge them. Dkt. 52 at 5; *see also infra* at 8-9.

The President directed in both executive orders that each must be "implemented consistent with applicable law." EO 14151 § 4(b); EO 14173 § 8(b). The second executive order also directs agencies to ensure that its implementation does not prevent federal contractors and certain other parties "from engaging in First Amendment-protected speech." *Id.* § 7(b).

## II.     CWIT and Its Federal Funding Sources

CWIT is a nonprofit that prepares women to enter and remain in high-wage skilled trades, such as carpentry, electrical work, welding, and plumbing. Dkt. 1 (Compl.) ¶ 12. For its services,

4

CWIT receives funds from DOL under two grants and payments from two third parties—Jobs for the Future and the Illinois Department of Labor—that directly receive funds from DOL. *Id.* ¶¶ 42-57. CWIT alleges that those payments account for about 40% of its annual budget. *Id.* ¶ 42.

CWIT's funds come from five funding programs, and Congress enacted authorization and appropriations act provisions for those programs. Dkt. 90 (summarizing funding programs and their associated authorizing and appropriations act provisions); Compl. ¶¶ 42-57. For example, CWIT receives funds from DOL from a grant authorized by the WANTO Act, which authorizes DOL to "'make grants to community-based organizations to provide technical assistance to employers and labor unions.'" *Id.* ¶ 45 (quoting 29 U.S.C. § 2503). And the associated appropriations act provision provides that "funds available to" DOL's "Women's Bureau may be used for grants to serve and promote the interests of women in the workforce: Provided further, that of the amounts made available to the Women's Bureau, not less than $5,000,000 shall be used for grants authorized by the" WANTO Act. Pub. L. No. 118-47, 138 Stat. 460, 641.

## III.  CWIT's Complaint

In February 2025, CWIT filed its complaint arising from the five executive order provisions. Compl. CWIT alleges that they threaten funding it receives from DOL directly or indirectly from third parties, *id.* at ¶¶ 42-57, and chill its speech "promoting women in the skilled trades" and "stating facts" such as that "women face discrimination in the skilled trades," *id.* ¶ 93.

The complaint consists of eight counts that collectively challenge the provisions on their face and as they are applied by "any agency action implementing them." *Id.* ¶¶ 102, 110, 120, 128, 140, 148, 156, 169. The challenges to the Termination and Certification Provisions are summarized here. Counts I through III allege that the provisions violate the First Amendment by being vague and overbroad (count I) and amounting to content and viewpoint discrimination (count II), and that the Certification Provision imposes grant and contract conditions that violate the First

Amendment (count III). Compl., Cts. I-III. Count IV brings a facial Fifth Amendment vagueness challenge against each provision. *Id.*, Ct. IV.

CWIT styles counts V and VI as (constitutional) *ultra vires* challenges under the Spending Clause and counts VII and VIII as separation-of-powers challenges. *Id*., Cts. V-VIII. Counts V and VII allege that the Executive Branch lacks authority to terminate equity-related grants and contracts, including the specific ones at issue, *Id.* ¶ 143, because Congress has the power of the purse, *id.*, ¶ 159, and authorized and appropriated amounts for the underlying funding programs, *id.* ¶¶ 163, 166-67. Meanwhile, Counts VI and VIII allege that the Executive lacks authority to require certifications in contract or grant awards under the Certification Provision, *id.*, ¶¶ 150-51, and that the provision requires that conditions be imposed on contract and grant awards, but the defendants lack authority to ever impose those conditions, *id.*, Ct. VIII.

CWIT sues the President and three agencies and their heads—DOJ and its Attorney General, DOL and its Secretary, and OMB and its Director. *Id*. ¶¶ 25-31. But CWIT alleges that only one defendant, DOL, might have acted against it, and under only the Termination Provision. CWIT alleges that in January 2025 DOL sent an email and notice directing federal financial assistance recipients to cease activities related to DEI and DEIA consistent with requirements of the executive orders as DOL reviewed awards to take "appropriate action, including terminating the awards, consistent with the" executive orders. *Id.* ¶¶ 79, 81. CWIT alleges that it did not and does not know if the email and notice applied to its work, *id.* ¶¶ 79, 81, and that its grants and contracts "could be subject to termination" based on the Termination Provision. *Id*. ¶ 40 (emphasis added); *see also id.* ¶¶ 9, 44, 50, 55, 57. CWIT does not allege that any agency terminated a grant or contract, withheld payment, or acted on any other provision. The complaint seeks declarations that the executive order provisions are unlawful and unconstitutional, a preliminary and permanent injunction enjoining the defendants from enforcing them, and attorney fees and costs. *Id*. at 44.

6

IV.     **The TRO and Preliminary Injunction Proceedings**

In March 2025, this court issued a memorandum opinion and order granting in part CWIT's motion for a TRO and entering interim relief based on CWIT's First Amendment challenges to the Termination and Certification Provisions.  Dkt. 52.  The TRO enjoined DOL from enforcing the Termination Provision against CWIT and from enforcing the Certification Provision against any grantee or contractor.  Dkt. 53.  The TRO further enjoined the government from initiating any False Claims Act action against CWIT pursuant to the Certification Provision.  *Id.*

In April 2025, the court issued a memorandum opinion and order granting in part CWIT's preliminary injunction motion and entered a preliminary injunction order.  Dkt. 68, 69.  The court found a likelihood of success for only two challenges relating to those provisions: (1) a separation-of-powers challenge to DOL's alleged decision to terminate funding CWIT receives under the WANTO Act based on the Termination Provision, and (2) a First Amendment challenge to DOL's alleged plan to place certifications under the Certification Provision in contract and grant awards that CWIT (or parties it could contract with) might apply for in the future.  Dkt. 68, 69, 90.

The court otherwise denied CWIT's preliminary injunction motion, Dkt. 68 at 2, and has found several challenges to suffer from jurisdictional defects or lack merit on purely legal grounds, Dkt. 52, 68, 90.  The court was "unpersuaded that CWIT can establish the required injury in fact" to challenge the three executive order provisions in § 2(b)(ii)(A) in EO 14151 and § 3(c)(iii) and 4(b) in EO 14173 because they "focus on internal government agency processes and programs and reporting to the President from his subordinates."  Dkt. 52 at 5.  The court also found that "CWIT is unlikely to succeed" on its First Amendment, Dkt. 68 at 32, Fifth Amendment, *id.* at 34, and facial separation of powers challenges to the Termination Provision in EO 14151, *id.* at 68.  And the court declined to extend the preliminary injunction concerning the Termination Provision to CWIT's four funding sources apart from the WANTO Act.  Dkt. 90.

## Argument

**I.    CWIT Lacks Standing to Challenge the Three Intra-Governmental Provisions.**

The court should dismiss CWIT's challenges to three of the five executive order provisions based on standing—those in EO 14173 §§ 3(c)(iii), 4(b) and EO 14151 § 2(b)(ii)(A).  The court properly rejected them on that basis before, Dkt. 52 at 5, as did recent district court decisions, *Nat'l Urban League,* 2025 WL 1275613, at *7-9; *San Francisco*, 2025 WL 1621636, at *7-8.

EO 14173 § 4(b)—the Reporting Provision—directs the Attorney General, in consultation with agencies, "to submit a *report* to the Assistant to the President for Domestic Policy containing recommendations for enforcing Federal civil-rights laws and taking other appropriate measures to encourage the private sector to end *illegal* discrimination and preferences."  EO 14173 § 4(b) (emphases added).  That report will include a "proposed strategic enforcement plan," *id*., with, among other things, a plan of action "to deter DEI programs or principles" that "*constitute illegal discrimination or preferences"* wherein agencies will identify, as part of that plan of action, "potential civil compliance investigations" of certain large entities, *id*. § 4(b)(iii) (emphasis added).

Meanwhile, EO 14173 §§ 3(c)(iii) and EO 14151 § 2(b)(ii)(A)—the Government DEI Provisions—instruct agencies to "provide the Director of the OMB with a list of" all "agency or department DEI, DEIA, or 'environmental justice'" positions and programs "and an assessment" on whether they "have been misleadingly relabeled in an attempt to preserve their pre-November 4, 2024 function," § 2(b)(ii)(A); and direct OMB's Director to terminate government-wide diversity and equity "mandates, requirements, programs, [and] activities," § 3(c)(iii).

As the court found, CWIT lacks "the required injury in fact" to challenge those provisions. Dkt. 52 at 5.  They "focus on internal government agency processes and programs and reporting to the President from his subordinates," and CWIT is not an agency and does not allege that it conducts "programming for the government," *id.*  CWIT also shows no "imminent danger of an

injury" from the Reporting Provision, which "simply requires a cabinet official to issue a report at a future date." Dkt. 52 at 5. The challenges to the provisions also fail to satisfy standards for facial challenges and do not affect CWIT's protected speech or property. *See infra* at 13-14, 32-35.

## II.     CWIT Cannot Sue the Non-DOL Defendants for Reasons Specific to Them.

The court should dismiss the President, the DOJ and its Attorney General, and OMB and its Director based on considerations particular to those parties. First, CWIT lacks both standing and a cause of action to sue the President. CWIT identifies no statutory cause of action to bring any challenge in the complaint. *See generally* Compl. In the absence of one, a court's power to enforce the Constitution stems from its equity powers under the Judiciary Act of 1789, not an implied right of action contained in the Constitution itself. *CASA*, *Inc.*, 2025 WL 1773631, at *6; *Armstrong v. Exceptional Child Ctr. Inc.*, 575 U.S. 320, 324-27 (2015) (the "ability to sue to enjoin unconstitutional action by state and federal officers is the creation of courts of equity"); 33 Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. Judicial Review § 8307 (2d ed. 2024 update). But those equity powers can only encompass powers that were "traditionally accorded by courts of equity," *Grupo Mexicano De Desarrollo v. All. Bond Fund*, 527 U.S. 308, 319 (1999), and there is no tradition of equitable relief against the President, *State of Mississippi v. Johnson*, 71 U.S. 475, 501 (1866); *see also Franklin v. Massachusetts*, 505 U.S. 788 (1992); *id.* at 827 (Scalia, J., concurring in part and in the judgment) ("apparently unbroken historical tradition supports the view" that courts may not order the President to "perform particular executive" acts).

Second, CWIT fails to establish standing to sue the non-DOL defendants, even though "for every defendant, there must be at least one plaintiff with standing to seek an injunction." *Murthy v. Missouri*, 144 S.Ct. 1972, 1988 (2024). This action challenges five executive order provisions and "any agency action implementing them," Compl. ¶ 102, but CWIT sues the non-DOL parties merely because the President directed them to implement the executive orders "in various ways."

9

*Id.* ¶¶ 28-31. That is not enough; CWIT needs *facts* for each defendant showing "a concrete and particularized injury that is both fairly traceable to the challenged conduct and likely redressable by a judicial decision." *Spuhler v. State Collection Serv.*, *Inc.*, 983 F.3d 282, 284 (7th Cir. 2020).

CWIT offers no specific unlawful act by any non-DOL defendant under any executive order provision that caused it a redressable injury. Rather, *only* DOL allegedly acted against CWIT under a provision; CWIT alleges that DOL sent an email and notice in January 2025 directing federal funding recipients to cease certain activities, Compl. ¶¶ 79, 81, but even as to those alleged acts, CWIT alleges that it did and does not know if either applied to it, and that no grant or contract through which it receives funds has been terminated, *id.* ¶¶ 44, 50, 55, 57. Moreover, CWIT's purported speech and funding injuries all arise from funding programs administered by *only* DOL. Dkt. 90. And CWIT offers no hint at why any non-DOL defendant is required for complete relief; its requested relief does not even reference any non-DOL defendant, except to say that injunctive relief is *not* sought against the President. Compl. at 44(c.). Thus, the non-DOL defendants should be dismissed. *See Ctr. for Biological Diversity v. Trump*, 453 F. Supp. 3d 11, 35 (D.D.C. 2020) (dismissing the President as a defendant based on recognition that litigation disrupts effective government and plaintiffs could obtain their requested relief from other defendants).

## III. CWIT's Challenges to the Termination Provision Should Be Dismissed.

The court should dismiss the challenges to the Termination Provision and indeed rejected nearly all in prior decisions. Dkt. 68, 90. Below, the defendants request that the court dismiss the already-rejected challenges to the provision, including for the reasons it rejected them before, as well as the only remaining challenge, which involves the CWIT's grant under the WANTO Act.

### A. The Court Properly Rejected the Due Process Challenge.

CWIT's due process challenge contends that the Termination Provision is facially void under the Fifth Amendment vagueness doctrine. Compl., Ct. IV. That challenge fails for reasons

specific to the Termination Provision, as the court found, Dkt. 68 at 32-36, as well as for general reasons that require dismissal of *all* due process challenges against *any* provision.

Beginning with the specific reasons, the President, through the Termination Provision, has directed agency, department, or commission heads to "terminate, to the maximum extent allowed by law," "'equity-related' grants or contracts," EO 14151 § 2(b)(i), but none of that direction is unconstitutionally vague, even assuming that courts can apply vagueness doctrine to render the President's directives to his own subordinates void. The court correctly found that the Termination Provision's term "equity-related" is not unconstitutionally vague. Dkt. 68 at 35. When "the Government is acting as a patron rather than as a sovereign," as in the federal funding context here, "the consequences of imprecision are not constitutionally severe." *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 589 (1998). And in line with that principle, the Supreme Court has upheld less-specific terms than "equity-related" in analogous contexts. Dkt. 68 at 35. Indeed, CWIT's theory, if accepted, would "call into question the constitutionality" of "valuable Government programs and countless others like them." *Finley*, 524 U.S. at 589.

The Termination Provision's phrase "to the maximum extent allowed by law" is also not unconstitutionally vague. As the court concluded, the phrase tasks *agency officials*—not CWIT— with identifying "the *government's* authority" to terminate equity-related grants and contracts, so any "concerns of vagueness regarding exactly what authority an agency may have" are "internal considerations for the agency itself." *Id.* at 34. That conclusion is further supported by the Supreme Court's recent decision granting the government's application to stay a district court injunction directed at Executive Order No. 14210, 90 Fed. Reg. 9669 (2025) and an accompanying memorandum, which both directed agencies to prepare plans for federal workforce reductions "consistent with applicable law." *Trump v. Am. Fed'n of Gov't Employees*, 2025 WL 1873449, at *1. Notably, the plaintiffs brought that action at the same posture as the one here (a facial one),

and the Court found that the government is likely to succeed in showing that the executive order and memo are *facially* lawful without ruling on their implementation, as the workforce reduction "plans themselves" were "not before this Court." *Id.* at 1-2. Justice Sotomayor stated in her concurrence that the executive order, by directing "agencies to plan reorganizations and reductions in force 'consistent with applicable law,'" left open whether the plans "can and will be carried out consistent with the constraints of law." *Id.* at 3. Thus, at bottom, the Court indicated that the phrase "consistent with applicable law" is both clear *and* showed that all facial challenges failed.

Turning to the general reasons that require dismissal of *all* due process challenges to *any* executive order provision, CWIT cannot succeed on a single one because (1) vagueness doctrine is inapplicable in this context, (2) CWIT can show no deprivation of a protectable Fifth Amendment interest, and (3) the challenges are improperly brought at a facial posture.

Vagueness doctrine addresses "two connected but discrete due process concerns: first, that regulated parties should know what is required of them so they may act accordingly; second, precision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way." *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012). Thus, courts have traditionally applied vagueness doctrine to *statutes* that *proscribe conduct* because the doctrine "guarantees that ordinary people have 'fair notice' of the conduct that a *statute proscribes*," *Sessions v. Dimaya*, 584 U.S. 148, 156 (2018) (plurality) (emphasis added), and otherwise limit the doctrine's reach to statutes and regulations governing primary conduct. *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012). No purpose of the doctrine is implicated, however, when the President provides even unclear directives to his subordinates. Indeed, such a stunning expansion of the doctrine would pose severe separation-of-powers problems. "Under our Constitution, the 'executive Power'—all of it—is 'vested in a President,' who must 'take Care that the Laws be faithfully executed,'" and "the Framers expected that the President would rely on

subordinate officers for assistance." *Seila Law LLC v. Consumer Financial Protection Bureau*, 591 U.S. 197, 203 (2020) (quoting U.S. Const., Art. II, §§ 1, cl. 1 & § 3). But that core principle would be threatened were the judiciary able to render void the President's unclear directives to his subordinates, whether conveyed through an executive order or a phone call. That is not the law; as the Fourth Circuit concluded, all provisions here "only purport to direct executive policy and actors," so even if they were vague, that would not be "outcome determinative" on whether they are constitutional. *Diversity Officers*, No. 25-1189 at 5 (Diaz, J., concurring); *see also Nat'l Urban League,* 2025 WL 1275613 at *18-20 (rejecting Fifth Amendment vagueness challenges to Certification and Termination Provisions). Thus, vagueness doctrine is inapplicable here.

Second, a "void-for-vagueness challenge is ultimately a due-process claim," so "a plaintiff must allege that he was deprived of a constitutionally-protected property or liberty interest," but CWIT alleges no such deprivation from any executive order provision. *McClelland v. Katy Ind. Sch. Dist.*, 63 F.4th 996, 1013 (5th Cir. 2023). CWIT lacks any property interest in its "'ordinary' or 'routine' government contracts" and grants, and not one was terminated under any provision anyhow. *Gizzo v. Ben-Habib*, 44 F. Supp. 3d 374, 385 (S.D.N.Y. 2014); *see also Redondo-Borges v. U.S. Dep't of Hous. & Urb. Dev.*, 421 F.3d 1, 10 (1st Cir. 2005) ("We have held with a regularity bordering on the echolalic that a simple breach of contract does not amount to an unconstitutional deprivation of property."); *New Vision Photography Program*, *Inc.*, *v. District of Columbia*, 54 F. Supp. 3d 12, 29 (D.D.C. 2014) ("The Supreme Court has never held that government contracts for goods and services create property interests protected by due process.") (citation omitted). And no provision implicates protected speech for reasons discussed below. *Infra* at 32-33.

Third, the only appropriate posture for CWIT's vagueness challenges is an as-applied one. "Objections to vagueness under the Due Process Clause rest on the lack of notice, and hence may be overcome in any specific case where reasonable persons would know that their conduct is at

risk." *Maynard v. Cartwright*, 486 U.S. 356, 361 (1988). No specific case is at issue for CWIT's *facial* challenge. While the Supreme Court recognized a rare exception permitting facial vagueness challenges in *Johnson v. United States*, 576 U.S. 591 (2015), that exception has only been applied once outside the criminal context, and even there, the Court justified its extension to a civil deportation statute by explaining that "deportation is a particularly severe penalty, which may be of greater concern to a convicted alien than any potential jail sentence," *Dimaya*, 584 U.S. at 157. Thus, the exception does not apply to the President's directives to his subordinates.

### B. The Court Properly Rejected the First Amendment Challenges.

The First Amendment challenges should be dismissed for the reasons the court rejected them before. Dkt. 68 at 26-32. As the court concluded, the Termination Provision comports with the First Amendment because it does not attempt to regulate speech by funding recipients on their "own time and dime," including equity-related speech. *Id.* at 29 (quoting *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 218 (2013)). Instead, the provision provides for terminations of equity-related grants and contracts to the extent permitted by law, and the government's "refusal to fund" speech does not run afoul of the First Amendment. *Rust v. Sullivan*, 500 U.S. 173, 193 (1991); Dkt. 68 at 28-29. The First Amendment can prohibit unconstitutional conditions on federal funding, but no violation occurs when the government specifies "the activities" it "wants to subsidize" and does not "leverage funding to regulate speech outside the contours of the programs itself." *Agency for Int'l Dev.*, 570 U.S. at 214-15. Here, the Termination Provision does not "authorize termination of grants based on a grantee's speech or activities outside the scope of the funded activities," and thus does not impose viewpoint discrimination or an unconstitutional condition on CWIT's speech. *Diversity Officers*, No. 25-1189 at 7 (Harris, J., concurring); *see also Nat'l Urban League*, 2025 WL 1275613, at *21-22, 26 (accord).

14

The court also correctly found that CWIT fails to show that the Termination Provision, which applies to government *funding*, is unlawful based on the First Amendment coercive threat framework, which instead applies to government *coercion*. Dkt. 68 at 29-32 (distinguishing *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 198 (2024)). Courts have applied the coercive threat framework when government officials send targeted communications threatening investigations and prosecutions, not when the government chooses whether to subsidize certain speech. *Id.*

Moreover, insofar as CWIT contends that the Termination Provision imposes a chilling effect on protected speech by being *vague*, that contention lacks merit for the reasons discussed above. *Supra* at 11. When the government acts "as patron," it does not infringe on constitutionally protected speech even when it articulates funding standards with "imprecision." *Finley*, 524 U.S. at 589. Rather, "as it bears upon First Amendment concerns, the vagueness doctrine addresses the problems that arise from government regulation of expressive conduct," not "government grant programs." *Id.* at 599 (Scalia, J., concurring). As a result, no First Amendment concern exists even though, "as a practical matter," federal funding recipients "may conform their speech to what they believe to be" the "decisionmaking criteria in order to acquire funding." *Id.* at 588.

## C. The Purported Separation-of-Powers and Spending Clause Challenges Fail.

The court should dismiss CWIT's purported separation-of-powers and Spending Clause challenges to the Termination Provision. Previously, the court rejected all but one. Dkt. 90 & 68 at 37-41. Below, the defendants first ask that the court dismiss the already-rejected challenges and then present reasons for why all the challenges should be dismissed.

### 1. The Court Properly Rejected Nearly All of the Challenges.

CWIT's facial challenge alleges that the Termination Provision is invalid because the law *never* permits any official to terminate *any* equity-related grant or contract. That challenge easily fails. As the court found, CWIT cannot show that the provision "conflicts with *every* statute that

15

appropriates funds for grants," as it must to succeed on any facial challenge. Dkt. 68 at 37 (citing *Ezell v. City of Chicago*, 651 F.3d 684, 698 (7th Cir. 2011)). There are in fact many "situations in which the Executive Branch could lawfully terminate such grants without running afoul of the separation of powers." *Id.* (citing *City of Chicago v. Sessions*, 888 F.3d 272, 284 (7th Cir. 2018)).

The remaining challenges all allege that certain appropriations act provisions prohibit the defendants from ever terminating any equity-related grant or contract specifically arising from the five federal programs through which CWIT receives funds. The court properly rejected all but one of those challenges, reasoning that the relevant appropriations act provisions do not even restrict use of funds for any equity-related grant or contract, let alone protect any from termination. Dkt. 90. An appropriations act provision for one funding source, the Tradeswomen Building Infrastructure Initiative grant, provides DOL discretion to terminate equity-related grants and contracts at least by stating that funds appropriated for DOL's Women's Bureau not *must*, but "*may* be used for grants to serve and promote the interests of women in the workforce.'" *Id.* at 13-14 (quoting and adding emphasis to Further Consolidated Appropriations Act, 2024, Pub. L. No. 118-47, 138 Stat. 460, 641)). DOL also has discretion with respect to equity-related grants and contracts as to three additional funding sources—the Apprenticeship Building America grant and the Jobs for the Future grant and contract. None of the authority CWIT invokes for its challenges involving those funding sources strip DOL of such discretion. *E.g.*, Dkt. 90 at 14-16 (discussing discretion allowed for DOL under the Consolidated Appropriations Act, 2021, Pub. L. No. 116-260, Div. H, Tit. I, 134 Stat. 1182, 1547–49).

### 2. The Challenges Fail for Additional Reasons the Court Did Not Adopt.

CWIT's last challenge, which involves the WANTO Act, should be dismissed, and the court should reconsider its conclusion that it is likely to succeed. Dkt. 90 at 9-10. For that challenge, CWIT asks the court to permanently enjoin the defendants from terminating WANTO Act grants

where legally permissible, as the Termination Provision directs, based on two statutory provisions. The first is in the WANTO Act itself and states that DOL "shall make grants to community-based organizations to provide technical assistance to employers and labor unions." 29 U.S.C. § 2503(a). And the second is in an appropriations act and states that "not less than $5,000,000 shall be used for grants authorized by the" WANTO Act. Pub. L. No. 118-47, 138 Stat. 460, 641.

All purported separation-of-powers and Spending Clause challenges, including the one involving the WANTO Act, fail because they are not *constitutional* challenges, would fail to satisfy standards for limited facial challenges if they were, and can only belong in the Court of Federal Claims. But even if the challenges were constitutional and sought no "money damages," they would fail because the APA would provide a path of judicial review, and no extreme error occurred.

### i. The Challenges Are Not Constitutional and Could Not Satisfy the Standards of Limited Facial Constitutional Challenges if They Were.

CWIT's challenges should be dismissed at the outset because they all arise from appropriations act provisions, not the Constitution, and those provisions do not provide CWIT any implied cause of action. In *Dalton*, the Supreme Court rejected the proposition that "whenever the President acts in excess of his statutory authority, he also violates the constitutional separation of powers doctrine." 511 U.S. at 471. The Court held that not "every action by the President, or by another executive official, in excess of his statutory authority is *ipso facto* a violation of the Constitution" and "distinguished between claims of constitutional violations and claims that an official has acted in excess of his statutory authority." *Id.* The Constitution is implicated only if the official relies on it as the "only basis of authority" or relies on an unconstitutional statute. *Id.* at 473 & n.5. Thus, *Dalton* draws a distinction between when an official claims "statutory authority" for an action—a statutory claim—and when the official claims to be acting "in the absence of any statutory authority" but under the Constitution—a constitutional claim. 511 U.S.

17

at 471.  CWIT's challenges fall on the statutory side of the *Dalton* test.

In prior decisions, the court concluded that only the challenge involving the WANTO Act is a constitutional one under *Dalton*.  Dkt. 90 at 9-11.  In reaching that conclusion, the court first found that all conceivable grants under the WANTO Act must be equity-related because the Act's examples of technical assistance involve supporting women holding nontraditional occupations. *Id.* at 2-3.  From this, the court inferred that Congress, through the WANTO Act appropriations provision, *mandated* DOL to pay appropriated amounts to CWIT, so DOL lacks any authority whatsoever to terminate CWIT's grant regardless of the circumstances and can only do so by violating the Constitution. *Id.* at 9-11.  The defendants submit that this analysis misapplies *Dalton*.

As a threshold matter, DOL did not terminate CWIT's WANTO Act grant, whether under the Termination Provision or otherwise, so DOL cannot have terminated the grant in either manner *Dalton* requires for there to be a *constitutional* challenge—*i.e.*, under the Constitution in the conceded absence of statutory authority or based on an unconstitutional statute.  CWIT itself alleges that the grants and contracts at issue "*could* be subject to termination," thus recognizing that no agency *actually* terminated such a grant or contract under the Termination Provision. Compl. ¶ 40 (emphasis added); *see also id.* ¶¶ 9 (referencing "potential" financial consequences), 44 ("CWIT does not know" if its WANTO Act grant "will be terminated), 50, 55, 57.  Thus, CWIT alleges that *possible* future grant and contract terminations by DOL would violate *appropriations act provisions*—not the *Constitution*—because those provisions entail that DOL can never terminate any associated grant or contract, even under any circumstances, consistent with the law.

Not only are those allegations *statutory* under *Dalton*, but they are also incorrect.  Not even CWIT can dispute that the WANTO Act appropriations act provision grants DOL discretion to terminate WANTO Act grants in many circumstances.  DOL, for example, can *at least* terminate such grants after using $5 million as specified, or if the grantee dissolves, ceases work, or begins

18

working on matters disconnected from the grant agreement. Yet, if the court agreed with CWIT that the Constitution prevents terminations of WANTO Act grants such that a permanent injunction should issue, DOL would be prohibited from terminating grants to the extent permitted by law in even *those* circumstances—though all parties must agree that such terminations would be lawful. Again, DOL did not terminate CWIT's grant, so all such circumstances are left open.

Moreover, based on those and other conceivably lawful applications of the Termination Provision, there can be no constitutional challenge facially applicable to any *subset* of grants or contracts, including the WANTO Act grant subset. Such a constitutional "claim and the relief that would follow" would reach "beyond the particular circumstances of" CWIT itself and thus require CWIT to satisfy the "standards for a facial challenge to the extent of that reach." *Doe v. Reed*, 561 U.S. 186, 194 (2010); *see also Intern'l Union of Operating Engineers Local 139 v. Schimel*, 863 F.3d 674, 678 (7th Cir. 2017) (describing as "facial" a takings challenge against a statute that would apply to all unions but not invalidate the statute). For example, as for WANTO Act grants, CWIT's claim would be that, even beyond CWIT's unique situation, an appropriations act provision prohibits DOL from terminating *any* WANTO Act grant in *any* way law can permit, so DOL cannot terminate WANTO Act grants where legally permitted as the Termination Provision directs without violating separation of powers and the Spending Clause. But to succeed on that challenge, CWIT would need to, but could not, satisfy the facial standard that the appropriations act provision *never* permits WANTO Act grant terminations. *Reed*, 561 U.S. at 194; *see also Ezell*, 651 F.3d at 698.

The Supreme Court's recent decision in *Am. Fed'n*, 2025 WL 1873449, discussed above, is also instructive here. *Supra* at 11-12. There, the plaintiffs challenged an executive order and associated memorandum at a *facial* posture, including under separation of powers, *Am. Fed'n*, 139 F.4th 1020, 1029 (9th Cir. 2025), even though both directed agencies to carry out federal workforce reductions "consistent with applicable law," *id.* at 1043 (Callahan, J., dissenting); Exec. Order No.

19

14210, 90 Fed. Reg. 9669, § 3(c) (Feb. 14, 2025). The Supreme Court found the government likely to succeed in its argument that the executive order and memo are *facially* lawful, including under separation of powers, with only one justice dissenting. 2025 WL 1873449. And the Court expressly did not decide on the lawfulness of agencies' *implementation* of the executive order and memo because finalized workforce reduction plans were "not before this Court." *Id.* at *1.

Similarly here, the President directed agencies to implement the five executive order provisions consistent with law, yet CWIT challenges the provisions and any agency application *before* final implementation—*e.g.*, before DOL has terminated any grant or contract at issue under the Termination Provision or required CWIT to make any certification under the Certification Provision. That is improper. This court has "no occasion to consider whether" the executive order provisions "can and will be carried out consistent with the constraints of law," as the executive orders require. *Id.* at *1 (Sotomayor, J., concurring). And if any implementation were to violate statutory requirements, that would be contrary to the executive orders, not because of them. There is no basis to prohibit agencies from acting as law permits based on fear they might violate law.

Additionally, the appropriations act provisions leave DOL with discretion "about how the moneys" for the funding programs "could best be distributed consistent with" the pertinent statutes. *Milk Train*, *Inc. v. Veneman*, 310 F.3d 747, 751 (D.C. Cir. 2002). Nothing in those statutes divests DOL of discretion to take appropriate action if DOL determined there were a proper basis, including withholding payments, suspending performance, or terminating the grant. Nor do the statutes provide any justiciable standard for evaluating such discretionary decisions by DOL. Thus, no appropriations act provision entitles CWIT, specifically, to undisrupted federal funding.

### ii. The Challenges Fail Based on Tucker Act Principles.

The purported separation-of-powers and Spending Clause challenges also fail based on Tucker Act principles. Congress has vested the Court of Federal Claims with exclusive jurisdiction

20

over challenges about federal grant and contract funding through the Tucker Act. *Dep't of Educ. v. California*, 145 S.Ct. 966 (Apr. 4, 2025). The Tucker Act vests exclusive jurisdiction in the Court of Federal Claims over claims alleging breach of express or implied contracts seeking over $10,000, 28 U.S.C. §§ 1491(a), 1346(a)(2), "unless such jurisdiction was explicitly withheld or withdrawn by statute," *Slattery v. United States*, 635 F.3d 1298, 1321 (Fed. Cir. 2011) (*en banc*); *see Hammer v. United States,* 989 F.3d 1, 2 (D.C. Cir. 2021). Accordingly, CWIT's contractual allegations concerned with federal grant and contract funding cannot be prosecuted in this forum.

In a prior decision, this court found that Tucker Act principles do not require CWIT to prosecute its allegations in the Court of Federal Claims because they primarily implicate chilled speech, not federal money, and because CWIT explicitly requests only equitable relief that the Court of Federal Claims cannot provide. Dkt. 68 at 21. The court should reconsider this finding.

With respect to the court's first reason for why the Tucker Act does not divest this court of jurisdiction, the allegations about chilled speech concern only the First Amendment, and even a First Amendment challenge that the court rejected. *Supra* at 14. At the heart of all other challenges, including those involving appropriations act provisions, is CWIT's desire to prevent terminations of certain grants and contracts and thus ensure continued disbursement of *money*.

Turning to the court's second reason, CWIT cannot escape the reach of the Tucker Act by explicitly requesting only injunctive relief. In *California*, 145 S.Ct. at 968, for example, the Supreme Court considered a temporary restraining order (a type of injunction) "enjoining the Government from terminating various education-related grants" and requiring "the Government to pay out past-due grant obligations and to continue paying obligations as they accrue." Even so, the Court held that "the Government is likely to succeed in showing the District Court lacked jurisdiction to order the payment of money under the APA" because "the APA's limited waiver of immunity does not extend to orders 'to enforce a contractual obligation to pay money' along the

21

lines of what the District Court ordered." *Id.* (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U. S. 204, 212 (2002)). "Instead, the Tucker Act grants the Court of Federal Claims jurisdiction over suits based on 'any express or implied contract with the United States.'" *Id.* (quoting 28 U. S. C. § 1491(a)(1)). The Court held that the Tucker Act divested the district court of jurisdiction to decide even challenges involving grants that the government had not terminated. *Id.* CWIT's challenges here also involve grant and contract terminations that never occurred.

Other courts, post-*California*, similarly concluded that grant termination actions belong in the Court of Federal Claims. *See Solutions in Hometown Connections v. Noem*, No. 25-cv-885 (D. Md. Apr. 8, 2025), Dkt. 46 (denying the plaintiffs' TRO motion challenging the termination of certain U.S. Citizenship and Immigration Services grants and concluding that the plaintiffs' APA claims were "in essence contract claims against the United States for which" the "Court of Federal Claims has exclusive jurisdiction"); *Am. Ass'n of Colleges for Teacher Educ. v. McMahon*, No. 25-1281, 2025 WL 1232337 (4th Cir. Apr. 10, 2025), (staying a district court's preliminary injunction in a case involving education-related grants in light of the Supreme Court's *California* decision); Electronic Order, *Mass. Fair Housing Ctr*, 2025 WL 1225481 (D. Mass. Apr. 14, 2025) (dissolving a temporary restraining order that had enjoined termination of federal grants in light of the Supreme Court's "unmistakable directive"). Meanwhile, the Seventh Circuit has held that the Tucker Act "assigns to the Claims Court all actions seeking equitable relief based on a contract with the United States," including efforts to obtain specific performance. *Wabash Valley Power Ass'n, Inc. v. Rural Electrification Admin.*, 903 F.2d 445, 452 (7th Cir. 1990); *see also Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 80 (D.C. Cir. 1985).

CWIT's WANTO Act challenge to the Termination Provision seeks to ensure continued payments under a federal grant, so it sounds in contract and belongs in the Court of Federal Claims. That the grant is funded by appropriations is of no moment. After all, virtually no federal funds

can be paid absent appropriations. *See Seila Law. LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 207 (2020) (noting that most agencies rely on annual appropriations for funding).

### iii. CWIT Cannot Invoke the Court's Equity Powers Because the APA Provides a Path of Judicial Review, and There Is No Extreme Error.

CWIT's purported separation-of-powers and Spending Clause challenges would also fail if they were constitutional challenges and sought no "money damages." In that case, they arise under the court's equity powers, but two limits on those powers would require dismissal. First, the APA would provide a path of judicial review. *Nuclear Regul.*, 145 S.Ct. at 1776. And second, CWIT shows no extreme error. *DCH Reg'l Med. Ctr. v. Azar*, 925 F.3d 503, 509 (D.C. Cir. 2019).

CWIT's challenges seek non-statutory review under the court's equity powers. *Supra* at 8. But non-statutory review provides a "catch-all remedy" only when "*no statute specifies a path of judicial review*." *Employers Ins. of Wausau v. Browner*, 52 F.3d 656, 662 (7th Cir. 1995) (emphasis added). Because non-statutory review "could become an easy end-run around the limitations" of "judicial-review statutes," the Supreme Court has "strictly limited" it. *Nuclear Regul.*, 145 S.Ct. 1762, 1775. Indeed, a non-statutory review claim "is essentially a Hail Mary pass—and in court as in football, the attempt rarely succeeds." *Id.* at 1776; *see also Armstrong*, 575 U.S. at 327-28 (the power of federal courts of equity to enjoin unlawful executive action is subject to limitations).

Importantly, the Supreme Court recently held that non-statutory review is "unavailable if, as is usually the case, a statutory review scheme provides aggrieved persons 'with a meaningful and adequate opportunity for judicial review,' or if a statutory review scheme forecloses all other forms of judicial review." *Id.* at 15 (quoting *Bd. of Governors of Fed. Reserve Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 43 (1991)). This is a usual case where a statutory path of judicial review exists.

First, if CWIT's brings contractual allegations concerned with "money damages," only the Court of Federal Claims can provide a path of judicial review. *DeVillier v. Texas*, 601 U.S. 285,

293 (2024) (reversing non-statutory exercise of jurisdiction where the plaintiff had an available statutory "cause of action" for compensation that it did not exercise); *Knick v. Township of Scott*, 588 U.S. 180, 201 (2019) (non-statutory equitable relief was unavailable because of availability of a statutory "adequate provision" for obtaining relief under the Tucker Act); *Fed. Express Corp. v. U.S. Dep't of Com.*, 39 F.4th 756, 763-764 (D.C. Cir. 2022).

And second, if CWIT brings constitutional allegations seeking no "money damages," CWIT would have a different "means of vindicating its rights without nonstatutory review: the APA." *Commonwealth of Puerto Rico v. United States*, 490 F.3d 50, 59-60 (1st Cir. 2007). The APA allows plaintiffs seeking "relief other than money damages" to seek "judicial review" on whether final agency action, 5 U.S.C. § 702, and agency action leading up to it, § 704, is "contrary to constitutional right," § 706(2)(B). CWIT believes that it even has a "right" to "bring APA claims." Dkt. 1 (Compl.) at 30 n.22. But if "the APA" can "provide adequate relief," as the APA could here, "an equitable remedy via nonstatutory review ought not be available." 33 Fed. Prac. & Proc. Judicial Review § 8307 (2d ed.) (May 22, 2025 update); *Ctr. for Biological Diversity*, 453 F. Supp. 3d at 48 ("The Court doubts that Plaintiffs can bring an equitable claim when a statutory cause of action is available to it" under the APA); *Fed. Express Corp.*, 39 F.4th at 763.

CWIT has not shown that either mechanism for review—under the APA or the Tucker Act—is "constitutionally insufficient" such that it "must have a nonstatutory cause of action to vindicate" its rights. *Puerto Rico*, 490 F.3d at 60. Moreover, though the Tucker Act and APA provide different relief than that requested in the complaint, the Supreme Court just held that constitutional challenges under the court's equity powers do not permit such broad relief, either. Indeed, the Supreme Court made clear that awarding even "complete relief" under those powers is often improper. *CASA, Inc.*, --- S.Ct. ----, 2025 WL 1773631, at *6, 12. But the Court did not resolve "the distinct question whether the Administrative Procedure Act authorizes federal courts

24

to vacate agency action." *Id.* at *8 n.10 (citing 5 U.S.C. § 706(2)). Supreme Court precedent therefore forecloses CWIT's requested relief under the court's equity powers yet has not resolved whether the APA can permit broader relief. Thus, CWIT's challenge, even if constitutional, should be dismissed because it must be brought under the APA and observe its requirements.

Non-statutory review is also limited in that it can apply only where an agency "plainly acts in excess of delegated powers," a standard that captures "only extreme agency error, not merely garden-variety errors of law or fact." *DCH*, 925 F.3d at 509. But here, neither DOL nor any other defendant terminated CWIT's grant, and CWIT cannot show *extreme error* in grant or contract terminations that never happened. *Supra* at 18. Accordingly, non-statutory review is foreclosed based on this second limit on the court's equity powers as well.

### iv. The Supreme Court Indicated Agreement with Arguments the Defendants Raise Here in *Sierra Club v. Trump*, 140 S.Ct. 1 (2019).

The Supreme Court indicated that it would support the defendants' foregoing arguments in *Sierra Club v. Trump*, 140 S.Ct. 1 (2019). In that case, two nonprofit plaintiffs alleged that the President and certain cabinet members took actions to fund a border barrier construction that "exceeded the scope of their constitutional and statutory authority by spending money in excess of what Congress allocated for border security" and "violated separation of powers principles as well as the Appropriations Clause and Presentment Clause of the Constitution" and a federal statute. *Sierra Club v. Trump*, 929 F.3d 670, 683 (9th Cir. 2019). For one claim, they alleged that the defendants unlawfully used a section in an appropriations act to "'reprogram' funds appropriated by Congress to the Department of Defense for Army personnel needs and to redirect those funds toward building a barrier." *Id.* at 675. That section authorized DoD to "transfer funds for military purposes if the Secretary determines that the transfer is for higher priority items, based on unforeseen military requirements and the items for which funds are requested has" not "been

25

denied by Congress." *Id.* at 676 (cleaned up). The plaintiffs "argued that the requirements" had "not been satisfied and that the use of the funds to build a border barrier was accordingly unsupported by any congressional appropriation and thus unconstitutional." *Id.*

The district court granted a preliminary injunction, and the Ninth Circuit denied the government's stay application over a dissent. *Id.* at 677. While the majority believed that the plaintiffs' claim was, "at its core, one alleging a constitutional violation," *id.* at 677, the dissent criticized that finding for "turning every question of whether an executive officer exceeded a *statutory* grant of power into a *constitutional* issue," *id.* at 707, and found that claim was *statutory* because the legal issue turned on whether the requirements in a section of an *appropriations act* were satisfied, *id.* at 689. The dissent then concluded that the plaintiffs had no implied cause of action under the appropriations act section, *id.* at 712, no APA claim because they fell outside the section's zone of interests, *id.* at 715, and no challenge under the court's equity powers because "the APA" provided a path of judicial review, even if not for the specific plaintiffs, *id.* at 716.

Critically, the Supreme Court issued an emergency stay and endorsed the dissent. The Court found that the government, which argued that the plaintiffs lacked a cause of action for the same reasons the dissent expressed, "made a sufficient showing at this stage that the plaintiffs have *no cause of action* to obtain review of the Acting Secretary's compliance with" the appropriations act, whether under courts' equity powers, the APA, or the act itself. *Trump v. Sierra Club*, 140 S.Ct. 1 (2019) (emphasis added); *see also Maryland v. King*, 567 U.S. 1301 (2012) (emergency stay petitions must establish "a fair prospect that the Court will then reverse the decision below"). The Court later denied a motion to lift the stay. *Trump v. Sierra Club*, 140 S.Ct. 2620 (2020).

Here, like the plaintiffs in *Sierra Club*, CWIT twists allegations turning on whether the government violated *appropriations act provision* requirements about appropriated funds into *constitutional* allegations. But as the Supreme Court indicated in *Sierra Club* and *Dalton*, they are

not. The WANTO Act provision, for example, does not entail that DOL lacks authority to terminate WANTO Act grants altogether. Nor does the provision mandate that any portion of appropriated funds be used for CWIT specifically. Instead, the provision regulates the relationship between Congress and DOL regarding certain funds without guaranteeing CWIT's interest in any expenditure of appropriations. Thus, CWIT's allegations based on the provision are *statutory*, and CWIT has no cause of action just like the plaintiffs in *Sierra Club*, so its challenges must fail.

## IV. CWIT's Challenges to the Certification Provision Should Be Dismissed.

The court should also dismiss CWIT's challenges to the Certification Provision. They are pre-enforcement facial challenges, but CWIT does not establish standing requirements for such challenges, and they also lack merit. Notably, two recent district court decisions upheld the Certification Provision, including against facial First Amendment challenges—*Nat'l Urban League*, 2025 WL 1275613, at \*20-24 and *San Francisco*, 2025 WL 1621636, at \*19.

### A. CWIT Lacks Standing to Bring Its Pre-Enforcement Challenges.

This court properly found that CWIT brings only pre-enforcement challenges to the Certification Provision and must therefore satisfy standing requirements for challenges brought at that posture for each specific challenge. Dkt. 68 at 12 (citing *Speech First, Inc. v. Killeen*, 968 F.3d 628, 638 (7th Cir. 2020) and *Genusa v. City of Peoria*, 619 F.2d 1203, 1209 (7th Cir. 1980)). But contrary to the court's prior conclusion, CWIT does not satisfy those requirements. In holding otherwise, the court referenced allegations by CWIT that might concern only challenges to the *Termination Provision*. The court referenced CWIT's allegations about pressure it faced to self-censor when Jobs for the Future sent it a notice of "*termination*" supposedly due to the executive orders and an email directing it to "cease DEI-related activity and warning of possible *termination* of grants" and when OPM sent a memo directing agency heads to "'*terminate* any DEIA-related contractors.'" Dkt. 68 at 14-15 (emphasis added). But there is no connection between those

allegations and any grant or contract certification under the *Certification Provision*, let alone one sufficient for standing. *See id.* CWIT also lacks standing for the additional reasons below.

### 1. CWIT Fails to Show an Imminent, Concrete, and Particularized Injury.

When a "plaintiff brings a facial challenge under the First Amendment, a prior enforcement action is not required." *Speech First*, 968 F.3d at 638. "In the absence of an enforcement action, though, plaintiffs must make one of two showings to establish an injury in fact." *Id.* The plaintiff must show either "an intention to engage in a course of conduct arguably affected by a policy, and that he faces a credible threat the policy will be enforced against him when he does" or "a chilling effect on his speech that is objectively reasonable, and that he self-censors as a result." *Id.* For challenges *not* involving allegations of chilled speech, such as separation-of-powers and Spending Clause challenges, the plaintiff can show standing under just the first *Speech First* standard. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161 (2014). But CWIT satisfies neither standard here.

As for both *Speech First* standing standards, CWIT fails to show any *imminent*, *concrete*, and *particularized* injury from the Certification Provision. The Supreme Court summarized pre-enforcement actions where plaintiffs satisfied those independent requirements in *Susan B. Anthony List*, 573 U.S. at 161. The cases generally involved a history of past enforcement, enforcement warning letters, and enforcement statutes that could be easily used against the plaintiff. *Id.* In *Susan B. Anthony* itself, for example, the plaintiffs satisfied these standing requirements for their pre-enforcement First Amendment challenge to a state false statement law by showing "specific statements they intend to make in future election cycles" that may violate the law, *id.* at 161, a "history of past enforcement," even against a plaintiff, *id.* at 164, and features of the law that made enforcement easy, such as that the law allowed *any person* to file a complaint about *any false statement, id.* at 164. CWIT makes no such showings as to the Certification Provision. Indeed, CWIT does not even allege that it intends to apply for a grant or contract that might require a

28

certification or when it intends to do so.  Without even *that* showing, CWIT cannot show *imminent* injury, let alone any *concrete* and *particularized* one.  CWIT lacks standing for these reasons alone.

### 2.  CWIT Fails to Satisfy the First *Speech First* Standard.

CWIT also satisfies neither element of the first *Speech First* standing standard.  The Certification Provision requires the contractual counterparty or grant recipient to agree that its "compliance in all respects with all applicable Federal anti-discrimination laws" is material to government "payment decisions" under a False Claims Act provision.  EO 14173 § 3(b)(iv)(A).  But CWIT does not allege that it *intends* to engage in conduct that violates federal anti-discrimination laws.  *Wirtshafter v. Trustees of Indiana Univ.*, 2025 WL 1558171, at *5 (S.D. Ind. May 29, 2025) (plaintiffs lacked standing under this *Speech First* standard where they alleged that they "*would like* to," but not that "they *intend* to," "engage in conduct forbidden by the challenged policy).  Nor could it; the Seventh Circuit has held that plaintiffs cannot establish pre-enforcement standing by alleging "concrete plans" to violate a law "of unquestioned validity."  *Simic v. City of Chicago*, 851 F.3d 734, 738-39 (7th Cir. 2017).  In *Simic*, for example, the plaintiff could not show standing to challenge a *local* distracted-driving law by alleging an intention to violate a *state* distracted-driving law.  *Id.*  Thus, CWIT cannot show standing with plans to violate unquestionably valid federal antidiscrimination laws.  And even if the Certification Provision concerned protected speech, CWIT does not show that it intends to engage in any protected speech involving anything made illegal under federal anti-discrimination law.  Rather, CWIT offers general allegations, such as that it speaks about "promoting women in the skilled trades" or "stating facts" like "women face discrimination in the skilled trades."  Compl. ¶ 93.  But such speech is not tied to anything *illegal* under federal anti-discrimination law.  And CWIT does not allege facts showing that the government plans to use the Certification Provision to prosecute anyone for such speech.

### 3.  CWIT Fails to Satisfy the Second *Speech First* Standard.

CWIT also satisfies neither element of the second standing standard. The first requires CWIT to show an *objectively reasonable* chilling effect from the Certification Provision. But CWIT supplies only allegations of "subjective 'chill,'" which "are not an adequate substitute for a claim of a specific present objective harm or a threat of specific future harm." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 417-18 (2013); *Bell v. Keating*, 697 F.3d 445, 454 (7th Cir. 2012). While the Certification Provision ties a provision of the False Claims Act to compliance with federal antidiscrimination law, no *objective* chilling can result from requiring compliance with federal antidiscrimination law. CWIT also cannot show *objective* chilling by alleging that its *confusion* about the provision might result in an enforcement action under the False Claims Act; the Act "requires proof of falsity, knowledge, materiality," so CWIT's *confusion* upon certifying would be a *defense* in the action. *United States ex rel. Health v. Wisconsin Bell, Inc.*, 92 F.4th 654, 659 (7th Cir. 2024) (citing 31 U.S.C. § 3729(a)(1)(A)); s*ee also United States ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739, 752-53 (2023) (scienter requirement focuses on *subjective* beliefs).

CWIT alleges that the executive orders generally chill its speech because they "do not reference or comport with relevant precedent interpreting federal anti-discrimination laws." Compl. ¶ 15. But the President has no obligation to *cite precedent* about federal antidiscrimination law to avoid an objective chill of speech by persons who suspect that he does not intend to honor or apply such precedent. CWIT also does not explain what specific federal antidiscrimination law the executive order violates and how. CWIT further alleges that the executive orders provide that "***any*** diversity, equity, and inclusion is prohibited and must be eliminated." *Id.* But the executive orders do not "purport to establish the illegality of all efforts to advance" DEI and "should not be so understood." *Diversity Officers*, No. 25-1189 at 7 (Harris, J., concurring); *id.* at 2.

The second element requires the plaintiff to show specific instances of self-censoring based on an objective chilling effect. But CWIT does not even *allege* a single instance of self-censoring,

let alone *show* one arising from the Certification Provision specifically. *See generally* Compl. Courts require *specific* showings of self-censoring. For example, a professor showed that he self-censored due to a university policy he challenged when he "refrained from using pedagogically relevant cases in class because he fear[ed] they may be too racially charged." *Kilborn v. Amiridis*, 131 F.4th 550, 565 (7th Cir. 2025). Students, faculty, and others showed that they self-censored due to a policy when they refrained from engaging in unapproved campus protests. *Wirtshafter*, 2025 WL 1558171, at *5. And a protestor showed self-censoring due to an ordinance criminalizing certain disorderly conduct when he had been previously arrested under the ordinance and subsequently became less willing to participate in future protests. *Bell*, 697 F.3d at 454.

CWIT, however, offers no such specific showings of self-censoring tied to the Certification Provision. CWIT vaguely alleges that it felt *pressure* to self-censor, not that it *did* self-censor. Moreover, those allegations are not particularized, concrete, or specifically tied to the *Certification Provision*. *See Spokeo*, *Inc. v. Robins*, 578 U.S. 330, 339 (2016) (a particularized injury must affect the plaintiff in a personal, actual, and individual way, and a concrete injury be "'*de facto*'; that is, it must actually exist"). CWIT offers no detail about what specific speech it would have said, when, where, and to whom, had it not been for the Certification Provision.

### B. The First Amendment Challenges Lack Merit.

Standing aside, the First Amendment challenges also fail on the merits. As the government has argued here and elsewhere, the Certification Provision concerns activity that would violate federal anti-discrimination law, not protected speech. *Nat'l Urban League*, 2025 WL 1275613 at *24-25. CWIT insists that the Certification Provision does not mean what it says and even applies to *all* DEI activity, but that reading is at odds with the text and explicitly stated purpose of the provision. *Id.* at *20; *Diversity Officers*, No. 25-1189 at 7 (Harris, J., concurring).

Regardless, the canon of constitutional avoidance demands that this court favor the government's narrower interpretation so long as it is "fairly possible," even if it is "not the best one." *United States v. Hansen*, 599 U.S. 762, 781 (2023) (applying canon in action involving facial First Amendment overbreadth challenge to statute); *I.N.S. v. St. Cyr*, 533 U.S. 289, 299 (2001); *Artis v. District of Columbia*, 583 U.S. 71, 89 (2018); *New York v. Ferber*, 458 U.S. 747, 769 n.24 (1982). The government's reading here is more than fairly possible; indeed, multiple courts have adopted it. As those courts have explained, the Certification Provision only requires "a certification that the grant recipient or contractual counterparty will not violate the federal antidiscrimination laws that they had to comply with long before President Trump issued the executive orders." *Nat'l Urban League*, 2025 WL 1275613 at \*24-25. It requires "counterparties to certify that they do not violate federal laws that they are otherwise obligated to comply with does not chill protected speech." *Id.* at \*25. It does not "purport to establish the illegality of all efforts to advance" DEI and "should not be so understood." *Diversity Officers*, No. 25-1189 at 2; *id.* at 7 (Harris, J., concurring). And its "operative word, 'violate,' modifies 'programs'—rather than 'promoting' or 'DEI' and thus "implicates the *operation* of programs that both promote DEI and 'violate any applicable Federal anti-discrimination laws." *San Francisco*, 2025 WL 1621636, at \*18-19.

Moreover, the Certification Provision should be interpreted together with the *whole* executive order, "'considering the purpose and context of the" executive order and "consulting any precedents or authorities that inform the analysis.'" *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 7 (2011) (quoting *Dolan v. Postal Serv.*, 546 U.S. 481, 486 (2006)). Such consultation should involve prior precedent detailing what conduct violates federal anti-discrimination law. *Id.* Further, the Certification Provision is in an executive order that references "Ending *Illegal Discrimination*" in its title, EO 14173, has the explicitly-stated "purpose" of ensuring that the government is "enforcing our civil-rights laws" by "ending *illegal* preferences and

discrimination," *id.* § 1 (emphasis added), and directs for all provisions in the executive order to be implemented consistent with law and particularly the First Amendment rights of federal contractors and other parties, *id.* § 7(b).  The False Claims Act's scienter requirement also supports that CWIT's due process and First Amendment challenges lack merit.  The Supreme Court has repeatedly "made clear that scienter requirements alleviate vagueness concerns." *Gonzalez v. Carhart*, 550 U.S. 124, 149 (2007); *Holder v. Humanitarian Law Project*, 561 U.S. 1, 20 (2010) ("the knowledge requirement of the statute further reduces any potential for vagueness") (collecting cases).  And CWIT cannot satisfy the *facial* standards when it cannot even identify any of its *own specific speech* that the provision purportedly prohibits.  *See Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024).

### C.  The Fifth Amendment Challenge Lacks Merit.

The Fifth Amendment challenge to the Certification Provision is a nonstarter.  As the defendants explained above, vagueness doctrine is inapplicable here.  *Supra* at 12-13.  CWIT has also identified no protectable property interest in the routine grants or contracts at issue, *supra* at 13, and no liberty interest in any speech when the Certification Provision does not apply to speech.  Even if the challenge were viable, the Certification Provision is not vague because it concerns compliance with established federal antidiscrimination law, *supra* at 31-33; *see also Nat'l Urban League*, 2025 WL 1275613, at *20 (rejecting vagueness challenge to the Certification Provision).  And even if the Certification Provision could be read to be vague, the canon of constitutional avoidance would require that doubt be resolved in the government's favor here.  *Supra* at 32.

### D.  The Separation-of-Powers and Spending Clause Challenges Lack Merit.

The separation-of-powers and Spending Clause challenges to the Certification Provision, all facial, lack merit because CWIT cannot show that the provision's requirement that recipients certify that they do not operate DEI programs that "violate any applicable Federal anti-discrimination laws" is unconstitutional in all applications.  EO 14173 § 3(b)(iv)(B); *see also Ezell*,

33

651 F.3d at 698. There need only be one situation where requiring a certification of compliance with federal antidiscrimination law is lawful for a facial challenges to fail, and there are many here.

Additionally, while "*new* conditions on federal funds" may implicate separation of powers, *see Cnty. of Santa Clara v. Trump*, 250 F. Supp. 3d 497, 516 (N.D. Cal. 2017) (emphasis added), no such concern arises when the Executive merely reinforces preexisting legal obligations. Here, the Certification Provision imposes no new requirements, adopts no new construction of any federal antidiscrimination law, and does not declare all DEI to be illegal. *Nat'l Urban League*, 2025 WL 1275613, at *20. The provision simply requires recipients to certify their compliance with existing legal obligations under applicable federal civil rights laws such as Title VI of the Civil Rights Act of 1964, which applies to all recipients of federal assistance, 42 U.S.C. § 2000d-1—laws that are binding independent of any certification requirement. Indeed, it has been true for decades that every "application for Federal financial assistance must, 'as a *condition* to its approval and the extension of any Federal financial assistance,' contain assurances that the program will comply with Title VI *and* all requirements imposed pursuant to the executive regulations issued under Title VI." *Guardians Ass'n v. Civ. Serv. Comm'n of City of N.Y.*, 463 U.S. 582, 629-30 & n.22 (1983) (Marshall, J., dissenting). Such "assurance" of compliance is "given in consideration of" federal aid, "and the federal government extends assistance in reliance on the assurance of compliance"—but the obligations of Title VI apply regardless of any certification. *Id.* at 630.

While the Certification Provision addresses unlawful DEI programs specifically, that merely renders it narrower than scores of certifications signed by recipients of federal assistance attesting that they are complying with Title VI in *every* respect. CWIT neither argues that these longstanding requirements are unconstitutional nor explains why their breadth is constitutionally required. At bottom, the certification "does not place upon a recipient [any] unanticipated burdens because any recipient must anticipate having to comply with the law." *Id.*

34

**E.   The Tucker Act or APA Provides a Path of Review, and There Is No Extreme Error.**

CWIT's challenges to the Certification Provision should also be dismissed because they arise under the court's equity powers, but the Tucker Act or APA provide *statutory* paths of judicial review (CWIT could also raise constitutional challenges *defensively* in a court), and CWIT shows no extreme error arising under the Certification Provision (it was not even asked to certify).  *Supra* at 23-25; *see also Nuclear Regul.*, 145 S.Ct. at 1776.  Insofar as CWIT can bring a constitutional challenge seeking no "money damages" by alleging that its funding "will be terminated" under the provision, Compl. ¶ 50, the APA provides a path of review upon final agency action, *supra* at 24.

### Conclusion

For the foregoing reasons, the defendants request that CWIT's complaint be dismissed.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

JOSEPH E. BORSON
Assistant Branch Director

PARDIS GHEIBI
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel.: (202) 305-3246
Email: pardis.gheibi@usdoj.gov

ANDREW S. BOUTROS
United States Attorney

By: s/ Patrick Johnson
THOMAS P. WALSH
PATRICK JOHNSON
Assistant United States Attorneys
219 S. Dearborn Street, 5th Floor
Chicago, Illinois 60604
(312) 353-5312
(312) 353-5327
thomas.walsh2@usdoj.gov
patrick.johnson2@usdoj.gov