# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHICAGO WOMEN IN TRADES, | |
| Plaintiff, | |
| | Case No. 1:25-cv-02005 |
| v. | |
| | Judge: Hon. Matthew F. Kennelly |
| PRESIDENT DONALD J. TRUMP, DEPARTMENT OF LABOR, ACTING SECRETARY OF LABOR VINCENT MICONE, OFFICE OF MANAGEMENT AND BUDGET, DIRECTOR OF THE OFFICE OF MANAGEMENT AND BUDGET RUSSELL VOUGHT, U.S. DEPARTMENT OF JUSTICE, ATTORNEY GENERAL OF THE U.S. DEPARTMENT OF JUSTICE PAMELA BONDI, | JURY TRIAL DEMANDED |
| Defendants. | |

**MEMORANDUM IN OPPOSITION TO DEFENDANTS'
MOTION FOR A PROTECTIVE ORDER TO STAY
<u>DISCOVERY PENDING RESOLUTION OF THEIR MOTION TO DISMISS</u>**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................1

BACKGROUND ................................................................................................................2

LEGAL STANDARD ........................................................................................................4

ARGUMENT ....................................................................................................................5

I.      THE COURT HAS ALREADY RULED THAT DISCOVERY SHOULD
PROCEED, AND NO INTERVENING CASE LAW WARRANTS
RECONSIDERATION ...........................................................................................6

      A.      Defendants' Motion to Dismiss Does Not Justify a Stay, Where the
Arguments in that Motion Primarily Rehash Arguments This Court
Has Already Rejected...............................................................................6

      B.      The Recent Supreme Court Decisions Do Not Justify Defendants'
Requested Stay. .......................................................................................8

II.     A STAY WOULD PREJUDICE PLAINTIFF WHILE SLOWING THE
CASE ....................................................................................................................8

III.   NEITHER THE DELIBERATIVE PROCESS PRIVILEGE, NOR THE
BROADER EXECUTIVE PRIVILEGE, IMMUNIZE DEFENDANTS
FROM THE DISCOVERY SOUGHT BY PLAINTIFF..................................12

CONCLUSION..............................................................................................................15

i

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*25 W. Ave. LLC v. Lester*,
No. 22 C 2697, 2024 WL 182241 (N.D. Ill. Jan. 17, 2024) ...................................................13

*Am. Public Health Ass'n v. Nat'l Inst. of Health*,
No. CV 25-10787-WGY, 2025 WL 1745899 (D. Mass. June 24, 2025) ..........................9, 10

*Bilek v. America's Health Ctr. Inc.*,
No. 21 cv-1651, 2021 WL 10298831 (N.D. Ill. July 30, 2021)...........................................4, 6

*Cheney v. U.S. Dist. Ct. for D.C.*,
542 U.S. 367 (2004).....................................................................................................13, 14

*Dalton v. Specter*,
511 U.S. 462 (1994).............................................................................................................7

*Enviro Tech Int'l, Inc. v. U.S. E.P.A.*,
371 F.3d 370 (7th Cir. 2004) ..............................................................................................14

*Epps v. Dart*,
No. 22 C 2393, 2022 WL 17251279 (N.D. Ill. Nov. 28, 2022)...............................................12

*Fralish v. Digital Media Solutions*,
Case No. 21-CV-00045-JD-MGG, 2021 WL 5370104 (N.D. Ill. Nov. 17,
2021) .................................................................................................................................5

*Harper v. Cent. Wire, Inc.*,
No. 19 CV 50287, 2020 WL 5230746 (N.D. Ill. Sept. 2, 2020)...........................................4, 9

*Nuclear Reg. Comm'n v. Texas*,
605 U.S. ---- (June 18, 2025) ..........................................................................................8, 11

*Parungao v. Cmty. Health Sys., Inc.*,
No. 15-CV-4453, 2015 WL 7195909 (N.D. Ill. Nov. 16, 2015) ..............................................5

*Pfizer Inc. v. Apotex Inc.*,
744 F. Supp. 2d 758 (N.D. Ill. 2010) ....................................................................................5

*Tamburo v. Dworkin*,
No. 04 C3317, 2010 WL 4867346 (N.D. Ill. Nov. 17, 2010)...........................................4, 6, 9

*Trump v. CASA, Inc.*,
--- S. Ct. ---- (June 27, 2025) .............................................................................................11

*In re U.S. DOGE Serv.*,
  No. 24A1122 ................................................................................................8, 11

*United States v. White*,
  950 F.2d 426 (7th Cir. 1991) ..............................................................................12

**Other Authorities**

U.S. Const. Amend. I ...............................................................................................9

Executive Order 14151 ...........................................................................................2

Executive Order 14173 ...........................................................................................2

Fed. R. Civ. P. 33(b)(4)......................................................................................5, 13

Fed. R. Civ.P. 34 ...................................................................................................13

Fed. R. Civ. P. 26(c) ...............................................................................................4

Fed. R. Civ.P. 12(b)(6)........................................................................................4, 6

## INTRODUCTION

As Defendants have acknowledged, this Court has already authorized discovery to proceed. *See* ECF No. 106 at 1, ECF No. 94. In doing so, it rejected Defendants' contention that no discovery is necessary to determine the merits of this case. ECF No. 92; ECF No. 94. Ignoring the Court's directive, Defendants have refused to engage in good faith discovery or comply with the Federal Rules of Civil Procedure, the Local Rules, or this Court's prior Order authorizing discovery. Instead, Defendants filed their Motion for a Protective Order to Stay Discovery Pending Resolution of Their Motion to Dismiss, ECF No. 105 ("Motion to Stay"). But the vast majority of Defendants' memorandum in support of that motion does nothing to address why a stay is appropriate, nor does it meet the requirements for seeking a protective order. Instead, Defendants' motion relates to the *scope* of discovery—an issue Defendants could and should have addressed with Plaintiff's counsel during a meet-and-confer, but did not.

Defendants' motion is unfounded for several reasons. ***First***, the Court has already ruled that discovery should proceed. ECF No. 94. Defendants provide no intervening authority that warrants reconsideration of that ruling. ***Second***, Defendants' motion to dismiss does not justify a stay.[1] Rather, Defendants' motion to dismiss is based on arguments the Court ***already rejected*** at the temporary restraining order ("TRO") and preliminary injunction ("PI") stages—stages where Plaintiff Chicago Women in Trades' ("Plaintiff" or "CWIT") burden was ***higher*** than at the pleading stage. Therefore, Defendants' renewed arguments are unlikely to be successful, and the motion to dismiss provides no adequate justification for a stay. ***Third***, the executive and deliberative process privileges do not immunize Defendants from the discovery sought, and even

---

[1] On July 8, 2025, the Court ordered Defendants to refile their memorandum in support of their motion to dismiss because their original filing was excessively long. ECF No. 116.

if they did, Defendants waived their objections and have failed to establish good cause to absolve them of their responsibility to respond to Plaintiff's reasonable discovery requests.

In short, Defendants maintain that no discovery is needed and their Motion to Stay is their effort to achieve that goal notwithstanding this Court's orders. Reduced to its essence, it is an improper and unsupported motion for reconsideration of this Court's prior ruling and an attempt to evade Defendants' discovery obligations. The Court should deny the motion.

## BACKGROUND

Plaintiff initiated this case on February 26, 2025, challenging Executive Order 14151 signed by President Donald J. Trump on January 20, 2025 (the "J20 Order") and Executive Order 14173 signed by President Trump on January 21, 2025 (the "J21 Order"). ECF No. 1.

On March 5, Plaintiff moved for a PI. ECF No. 25. Plaintiff, citing changed circumstances since the Court set the PI schedule, then moved for a TRO. ECF No. 41, ECF No. 42. On March 27, the Court granted in part Plaintiff's motion for TRO. ECF No. 52 at 1. In its order granting Plaintiffs' motion for TRO, the Court stated that "[t]he burden to demonstrate standing in connection with a motion for entry of a TRO is 'at least as great as the burden of resisting a summary judgment motion.'" ECF No. 52 at 4 (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 907 n.8 (1990)). The Court then went on to find that as to Section 2(b)(i) of the J20 Order (the "Termination Provision") and Section 3(b)(iv) of the J21 Order (the "Certification Provision"), Plaintiff had demonstrated injuries "imminent enough to constitute concrete injuries in fact that support standing to challenge the Termination and Certification Provisions." ECF No. 52 at 7. The Court also found that Plaintiff had "shown it is likely to succeed on the merits of its claim against the Termination Provision" and had "shown that it is likely to succeed on the merits of its claim challenging the Certification provision." *Id.* at 16, 18.

On April 14, the Court granted in part Plaintiff's motion for a PI. ECF No. 68. In its order, the Court again found "that CWIT has standing to pursue its challenges to the Termination Provision . . . and the Certification Provision." *Id.* at 16. The Court "adopt[ed]" and "incorporate[d]" its prior ruling on standing, but also "elaborate[d] on its prior conclusion," dedicating five pages of the order to the question of Plaintiff's standing. *Id.* at 11-16. The Court also again found that Plaintiff had demonstrated a likelihood of success on the merits for at least some of its claims. *Id.* at 41. On April 18, Plaintiff moved to modify the PI, ECF No. 73. On May 7, the Court denied that motion, keeping its original ruling in place, ECF No. 90.

On May 9, the Parties filed a joint status report. ECF No. 92. In it, Plaintiff announced its intent to seek limited discovery relating to guidance Defendants had prepared or provided to agencies regarding the interpretation or implementation of the J20 and J21 Orders; any prior, ongoing, or planned implementation or enforcement efforts by Defendants related to the J20 and J21 Orders; the definition of the terms "Diversity, Equity, and Inclusion" ("DEI"), "Diversity, Equity, Inclusion, and Accessibility" ("DEIA"), and "equity-related grants" as used in the J20 and J21 Orders; and other topics. *Id.* at 1-2. In response, Defendants argued that discovery was not necessary prior to a final ruling on the merits of Plaintiff's claims. *See id.* at 2-5.

The Court disagreed with Defendant's effort to avoid all discovery. On May 14, the Court issued a minute order stating that "[d]iscovery can proceed." ECF No. 94. On May 28, Plaintiff served Defendants with limited written discovery. ECF 108 at 1. It was not until June 26—one day before Defendants filed the instant motion and prior to serving their "General Objections" to Plaintiff's discovery requests—that Defendants met and conferred with Plaintiff. *Id.* Defendants made no attempt during that meet and confer to discuss the reasonableness of or their objections to any of Plaintiff's discovery requests, did not ask Plaintiff to narrow or revise any of its requests

or otherwise discuss potential resolution of any objections, and have not substantively responded to any discovery. ECF 108 at 2. Defendants only requested Plaintiff's acquiescence to a stay of all discovery pending resolution of Defendant's forthcoming motion to dismiss, and notified Plaintiff that in the absence of Plaintiff's agreement, Defendants intended to serve general, non-substantive objections to those requests, *id.*, which Defendants did on June 30. *See* Ex A.

## LEGAL STANDARD

A movant must "show that good cause exists for [a] stay" during the pendency of a motion to dismiss.[2] *Harper v. Cent. Wire, Inc.*, No. 19 CV 50287, 2020 WL 5230746, at *1 (N.D. Ill. Sept. 2, 2020). The good cause determination "encompasses factors such as whether the stay will prejudice the non-movant; whether the stay will simplify the issues in the case; and whether the stay will reduce the burden of litigation for the parties or the court." *Id.* Where a stay of discovery "is unlikely to significantly expedite the litigation, and may actually slow it down," a motion of stay should be denied. *Tamburo v. Dworkin*, No. 04 C3317, 2010 WL 4867346, at *2 (N.D. Ill. Nov. 17, 2010) (citation omitted). A stay of discovery pending a motion to dismiss is "generally only appropriate when a party raises a potentially dispositive threshold issue . . ." *Id.* at *1. A motion to dismiss for failure to state a claim under Rule 12(b)(6) is "usually insufficient" to support a stay of discovery. *Bilek v. America's Health Ctr. Inc.*, No. 21 cv-1651, 2021 WL 10298831, at *3 (N.D. Ill. July 30, 2021).

To the extent the Defendants are seeking a protective order, their motion must be "accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action," and they must show good cause why the protective order is warranted. Fed. R. Civ. P. 26(c). *See*

---

[2] Defendants have filed a notice of appeal. ECF No. 112. Their motion to stay, however, makes no mention of that appeal as grounds justifying the stay. *See* ECF 106 at 1.

*Pfizer Inc. v. Apotex Inc.*, 744 F. Supp. 2d 758, 762 (N.D. Ill. 2010) (articulating standard, denying protective order, and noting that "[f]ailure to include the required certificate of compliance is grounds for denying a protective order.").

## ARGUMENT

Defendants' motion should be denied because Defendants have offered no "good cause" in favor of a stay or a protective order. To the contrary, (1) the Court has already ruled that discovery should proceed, and no intervening authority supports reconsideration; (2) Defendants' motion to dismiss does not justify a stay, as it is based on arguments the Court has already rejected after analyzing them at a higher standard at the TRO and PI stages; and (3) the executive and deliberative process privileges do not immunize Defendants from the discovery sought, and even if they did, Defendants have waived those objections and fail to establish good cause to absolve them of their responsibility to respond to Plaintiff's discovery requests, *see e.g.*, Fed. R. Civ. P. 33(b)(4) (objections to interrogatories must be stated with specificity; any objection not stated is waived unless the court excuses the waiver for good cause); *see also Fralish v. Digital Media Solutions*, Case No. 21-CV-00045-JD-MGG , 2021 WL 5370104, at *5 (N.D. Ill. Nov. 17, 2021) (explaining that boilerplate objections that lack particularity are waived and collecting cases stating the same).

And if Defendants are in fact seeking a protective order to relieve them of their discovery obligations, they have neither articulated nor met the standard for a protective order, which requires a showing of good cause and certification that the parties have at least attempted to meet and confer. Defendants have done neither and are therefore not entitled to a protective order. *See, e.g., Parungao v. Cmty. Health Sys., Inc.*, No. 15-CV-4453, 2015 WL 7195909, at *1 (N.D. Ill. Nov. 16, 2015) (denying protective order where plaintiff failed to show good cause and "did not

include any certification that his counsel had conferred, or attempted to confer, in good faith with opposing counsel.").

## I. THE COURT HAS ALREADY RULED THAT DISCOVERY SHOULD PROCEED, AND NO INTERVENING CASE LAW WARRANTS RECONSIDERATION

Rejecting Defendants' argument that there should be no discovery, on May 14, 2025, nearly two months ago, the Court issued a minute order stating "[d]iscovery can proceed." ECF No. 94. Nearly six weeks later, after Plaintiff had already served written discovery and with the response deadline nearing, *see* ECF No. 108 (joint status report stating that Plaintiff had served discovery on May 28, 2025, and that Defendants filed the instant Motion to Stay on June 27, 2025), Defendants now, in an attempt to avoid their discovery obligations, seek to overturn that ruling in what is essentially a motion for reconsideration. Defendants, however, introduce no new facts or law that warrant overturning that ruling—neither Defendants' motion to dismiss nor a pair of Supreme Court opinions issued in June 2025 are intervening events that justify reconsideration.

### A. Defendants' Motion to Dismiss Does Not Justify a Stay, Where the Arguments in that Motion Primarily Rehash Arguments This Court Has Already Rejected.

Defendants' claim that their motion to dismiss justifies a stay is unavailing. A stay of discovery pending a motion to dismiss is "generally only appropriate when a party raises a potentially dispositive threshold issue . . ." *Tamburo*, 2010 WL 4867346, at *1. A motion to dismiss for failure to state a claim under Rule 12(b)(6) is "usually insufficient" to support a stay of discovery. *Bilek*, 2021 WL 10298831, at *3.

While Plaintiff does not know the exact grounds for Defendants' Motion to Dismiss now that the Court has struck their memorandum in support of their motion, ECF No. 116,

Defendants' earlier-filed memorandum largely rehashes arguments that this Court has already rejected ***under a higher standard*** as support for their motion to dismiss.

For example, much of Defendants' argument in support of their Motion to Dismiss appears to be based on standing. *See* ECF No. 115 at 9-10 (arguing that Plaintiff has failed to establish standing to sue particular Defendants); *id.* at 21-25 (arguing that Plaintiff has failed to establish standing with regard to the Certification Provision). But this Court has already found that Plaintiff has standing to challenge the Certification Provision and the Termination Provision under a ***higher*** burden of proof than required at the motion to dismiss stage. *See* ECF No. 52 at 4, 7 (stating that for a TRO, standing should be evaluated at a standard at least as great as would be required for resisting a motion for summary judgment and finding that Plaintiff had shown sufficient standing); *see also* ECF 68 at 16 (finding that for purposes of its motion for PI, Plaintiff demonstrated sufficient standing to challenge the Certification and Termination Provisions). Similarly, Defendants argue in their motion to dismiss that under *Dalton v. Specter*, 511 U.S. 462 (1994), Plaintiff's challenge to the Termination Provision is not properly a constitutional challenge and thus is not within the Court's jurisdiction. ECF No. 115 at 1-2. The Court already rejected this argument as well, again under a PI standard rather than the motion to dismiss standard. ECF No. 90 at 4-11.

Finally, Defendants once again invoke the Tucker Act to argue that Plaintiff's challenge to the Termination Provision must be brought in the Court of Federal Claims. But this too is an argument the Court has already rejected. ECF No. 68 at 17-22. The Court, having given Defendants a full and fair hearing on each of these arguments, is not required to provide Defendants a "do-over" on any of them.

**B.  The Recent Supreme Court Decisions Do Not Justify Defendants' Requested Stay.**

Defendants argue that two Supreme Court orders, *In re U.S. DOGE Serv.*, No. 24A1122 (D.C. Cir. 2025) and *Nuclear Reg. Comm'n v. Texas*, 605 U.S. ---- (June 18, 2025) justify a stay. They do not.

*First*, *DOGE* specifically deals with the ***scope*** of discovery, not whether discovery is allowable—indeed, the order in that case specifically contemplates that discovery would move forward "consistent with this order." *See* ECF 106-2 at 3. If anything, an objective reading of *DOGE* supports denial of the stay because the *DOGE* court ordered discovery to proceed.

*Second*, *Nuclear Regulatory Commission* has nothing to do with discovery—rather, it considered whether entities who were ***not parties*** could intervene to seek judicial review under a highly specific regulatory scheme relating to nuclear fuel. *See* ECF 106-3 at 8. Plaintiff is, of course, a party here—a party that this Court has repeatedly held has standing to pursue its claims.

*Third*, Defendants try to shoehorn the Supreme Court's ruling in *Nuclear Regulatory Commission* into the case at bar by claiming that it stands for the proposition that "the APA limits discovery based on record-rule principles." *See* ECF No. 106 at 11. But Plaintiff did not bring any APA claims here, and this Court has already recognized that this case involves constitutional rights.[3] ECF No. 68 at 22.

## II.  A STAY WOULD PREJUDICE PLAINTIFF WHILE SLOWING THE CASE

When determining whether good cause exists for a stay, courts should consider "factors such as whether the stay will prejudice the non-movant; whether the stay will simplify the issues

---

[3]  Defendants' stay motion repeatedly notes CWIT's invocation in its complaint of its "'right' to bring 'APA claims' based on its allegations." *See* ECF No. 106 at 3. But Plaintiff merely reserved the right to bring an APA claim should the Department of Labor terminate its grants at issue, an action that has not yet occurred, and cannot occur in light of the Court's injunction.

in the case; and whether the stay will reduce the burden of litigation for the parties or the court." *Harper*, 2020 WL 5230746, at *1 (citation omitted). Further, where a stay of discovery "is unlikely to significantly expedite the litigation, and may actually slow it down," a motion to stay should be denied. *Tamburo*, 2010 WL 4867346, at *2. Prejudice to Plaintiff and slowing the case to a standstill would be the inevitable result of granting Defendants the relief they seek.

Here, Plaintiff will be significantly prejudiced by the stay. CWIT filed its complaint in February of this year, and nearly five months later, has yet to receive any discovery. This case is about not only CWIT's constitutional rights but also funding that is vital to CWIT's very survival. *See* ECF No. 1, ¶ 42 (alleging that forty percent of CWIT's annual budget originates from the federal government). It is therefore imperative that CWIT receive final resolution regarding its federal funding as soon as possible, and discovery is a critical step in moving toward that final resolution. Defendants claim that CWIT is not prejudiced because the Court has entered a PI preventing termination of some of its funding and enforcement of the Certification Provision against CWIT. ECF No. 106 at 14. But a PI is just that—preliminary.[4] CWIT's First Amendment rights are still chilled by Defendants' continuing refusal to define what constitutes "illegal DEI." Moreover, CWIT needs a final resolution as to whether its funding will be protected so that it can properly plan its budget and spend funds. *See Am. Public Health Ass'n v. Nat'l Inst. of Health*, No. CV 25-10787-WGY, 2025 WL 1745899 at *2 (D. Mass. June 24, 2025) (recognizing that "[e]ven a day's delay further" regarding funding appropriated for

---

[4] For this same reason, Plaintiff is, of course, entitled to seek discovery relating to all of its claims brought in its complaint. To the extent Defendants are arguing that Plaintiff is not entitled to discovery on issues ruled on during the preliminary injunction phase, they are wrong. *See Moss Holding Co. v. Fuller*, 2020 WL 1081730, at *1 (N.D. Ill. Mar. 6, 2020) (recognizing that at the preliminary injunction stage, a court makes factual determinations on the basis of the evidence available at that stage, but is not bound to those findings as the case progresses).

expenditure would constitute irreparable harm). Defendants' position here amounts to asking CWIT to spend substantial amounts of money to complete work, including in furtherance of previously approved federal grants, all under the risk that that funding may ultimately be revoked and expenditures not reimbursed.

Defendants' own actions have exacerbated the prejudice here. Core to the discovery that Plaintiff seeks from Defendants are documents sufficient to show Defendants' ***definition*** of "diversity," equity," and "inclusion," the very words Defendants have used to try to terminate CWIT's grants. ECF No. 106-1 at 10 (seeking "[a]ll Documents reflecting Defendants' or any Executive Branch official's or agency's definition" of the words "diversity," "equity," inclusion," or "accessibility" in relation to the J20 and J21 Orders). To date, Defendants have refused to define any of these terms in this or any other litigation. *See* ECF No. 68 at 25 (recognizing Defendants have "studiously declined to shed any light" on what "DEI" means); *see also* Findings of Fact, Rulings of Law, and Order for Partial Separate and Final J. at 14, *American Public Health Ass'n v. Nat'l Institutes of Health*, Case No. 1:25-cv-10814-WGY (D. Mass. July 2, 2025) (ECF No. 163) (stating Executive Branch failed to define what DEI means). Plaintiff is thus stuck in limbo—it does not yet have final resolution as to whether the funds already appropriated to it can be spent, and it does not know how it can seek to get new funds moving forward. Nor does it know whether its core mission—to help women enter skilled trades—constitutes "illegal DEI" because it is equity based. This is especially true given that Defendants have terminated all other WANTO grants based on the anti-DEI EOs, leaving CWIT as the last WANTO grant standing due to the PI. An expedient final resolution of this case is thus vital to Plaintiff, and discovery is vital to moving toward that final resolution.

Indeed, Defendants' own arguments seem to suggest that they are arguing not about whether discovery should be stayed, but rather the *scope* of discovery. For example, and as noted above, Defendants rely heavily on the *DOGE* case as justification for why a stay is appropriate. ECF No. 106 at 5-7. But again, that case was about the *scope* of discovery. Similarly, Defendants invoke separation of powers concerns to support a stay but spend most of their brief arguing about why separation of powers protects Defendants from the *breadth* of Plaintiff's requested discovery. *See* ECF No. 106 at 7. Defendants even dedicate an entire section of their brief to the "discovery tools" that "enable the court to *limit* any discovery," *id.* at 8 (emphasis added), rather than why the Court should *stay* discovery. The Defendants fail to cite a single case where a court granted a stay on facts in any way remotely similar to the facts here.

That Defendants' concerns relate to the scope of Plaintiff's discovery, rather than whether it should be allowed to proceed at this time, is made all the more apparent by Defendants' citation to *Trump v. CASA, Inc.*, --- S. Ct. ---- (June 27, 2025). Defendants argue that *CASA* "requires that discovery be limited to DOL and CWIT", ECF No. 106 at 10, but do not argue it counsels in favor of a *stay* of discovery.[5] Thus, Defendants' own arguments fail to articulate a legitimate basis for a stay. Instead, Defendants' actual argument is that the scope of Plaintiffs' discovery is too broad—a wholly different issue than whether a stay should be granted. And, assuming *arguendo* that they were in fact too broad, the appropriate resolution should have been, in the first instance, a meet-and-confer—a resolution Defendants had the opportunity to take but failed to do so. Accordingly, a stay would only delay the parties from reaching any actual disputes over the scope of discovery.

---

[5] As with the other cases Defendants cite, such as *Nuclear Regulatory Commission*, *CASA* has nothing to do with discovery *or* a motion to stay discovery, and therefore has no bearing as to Defendants' Motion to Stay.

III. **NEITHER THE DELIBERATIVE PROCESS PRIVILEGE, NOR THE BROADER EXECUTIVE PRIVILEGE, IMMUNIZE DEFENDANTS FROM THE DISCOVERY SOUGHT BY PLAINTIFF.**

Finally, Defendants assert that the doctrine of separation of powers is "deeply offend[ed]" by Plaintiff's discovery requests because, Defendants argue, the Court failed to "protect the Executive Branch from unnecessarily intrusive discovery." ECF 106 at 1, 6. Defendants' entire line of reasoning is premature at best, for multiple reasons. First and foremost, as explained above, the Defendants have ***never*** tried to meet and confer regarding the scope of Plaintiff's discovery requests. Second, Plaintiff's discovery requests do not seek to intrude into executive privilege or its narrower cousin, the deliberative process privilege, as is evident from the plain language of the requests, not one of which seeks exclusively privileged information.

As noted above, just prior to filing its present motion, Defendants met with Plaintiff, ECF 108 at 1, but the discussion was limited by Defendants to whether Plaintiff intended to oppose Defendants' motion to stay and whether Plaintiff would agree to extend Defendants' time to respond to written discovery. At no time did Defendants ask if Plaintiff would agree to narrow or revise its discovery requests—a discussion to which Plaintiff is amenable at any time—nor did Defendants' written responses to discovery offer any opportunity to discuss the scope of discovery. Tellingly, Defendants served blanket objections to all of Plaintiff's requests, referring Plaintiff to this motion. *See* Ex. A. Those objections do not provide support for Defendants' requested stay. *See Epps v. Dart*, No. 22 C 2393, 2022 WL 17251279, at *7 (N.D. Ill. Nov. 28, 2022) (denying motion to stay discovery, reasoning harassment and burden objections have "no merit" when "unsupported by any evidence or supporting declaration"); *see United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991) (stating that a "claim of privilege cannot be a blanket claim; it 'must be made and sustained on a question-by-question or document-by-document basis.'") (citation omitted). Defendants' motion should be denied on that basis alone, and by

12

failing to provide particularized objections, Defendants have waived those objections. *See Fralish v. Digital Media Sols.*, Case No. 21-CV-00045-JD-MGG , 2021 WL 5370104, at *5 (N.D. Ill. Nov. 17, 2021) (explaining that boilerplate objections that lack particularity are waived and collecting cases stating the same); *see also* 25 *W. Ave. LLC v. Lester*, No. 22 C 2697, 2024 WL 182241 (N.D. Ill. Jan. 17, 2024) (stating that "[a]ny objections must state whether any responsive materials are being withheld on the basis of that objection . . . failure to meet [Fed. R. Civ. P. 34's] deadline can result in a waiver of [those] objections" and holding that responding party's objections were waived during pending motion to stay discovery); *see also* Fed. R. Civ. P. 33(b)(4) (objections to interrogatories must be stated with specificity; any objection not stated is waived unless the court excuses the waiver for good cause).

Additionally, even if Defendants had fulfilled their obligations to meet and confer regarding the scope of discovery before seeking relief from the Court, Defendants' invocation of executive privilege and the deliberative process privilege do not justify a stay of discovery. Defendants rely on *Cheney v. United States District Court for the District of Columbia*, 542 U.S. 367 (2004), for the sweeping proposition that all discovery should be stayed because Plaintiff's requests "impose highly distracting discovery obligations on senior executive branch officials and the Office of the President." ECF 106 at 8.

*Cheney*, however, involved an extraordinary writ of mandamus sought by the Vice President and other executive branch officials to, among other things, vacate "overly broad discovery requests approved by the District Court." 542 U.S. at 383, 386. Notably, unlike here, the separation-of-powers argument in *Cheney* did not arise primarily through the discovery dispute, and the district court, "acknowledging that discovery itself might raise serious constitutional questions," noted "that the Government could assert executive privilege to protect

sensitive materials from disclosure." *Id.* at 376. Also, unlike here, in *Cheney*, "[t]he Government, however, did in fact object to the scope of discovery and asked the District Court to narrow it in some way," requests that "were ignored." *Cheney*, 542 U.S. at 388. Nevertheless, the Supreme Court declined to direct the Court of Appeals to issue a writ against the district court, *id.* at 391, and instead stated that the district court had other options for addressing discovery that could implicate executive privilege, such as narrowing the requests. *Id.* at 390. Indeed, the Supreme Court cautioned that "[e]xecutive privilege is an extraordinary assertion of power 'not to be lightly invoked.'" *Id.* at 389 (*quoting United States v. Reynolds*, 345 U.S. 1, 7 (1953).) *Cheney*, therefore, provides no support for Defendants' position that a stay of discovery is warranted here.

Furthermore, not only are Plaintiff's discovery requests reasonable and well within the bounds of the relevancy requirement of Federal Rule of Civil Procedure 26(b), but not a single one of Plaintiff's requests exclusively seeks information or documents that could, under even the most generous reading, intrude on the government's deliberative process. "[T]o qualify for the [deliberative process] privilege, a document must be both predecisional in the sense that it is 'actually [a]ntecedent to the adoption of an agency policy,' and deliberative in the sense that it is 'actually . . . related to the process by which policies are formulated.'" *Enviro Tech Int'l, Inc. v. U.S. E.P.A.*, 371 F.3d 370, 375 (7th Cir. 2004) (quoting *Jordan v. U.S. Dep't of Justice*, 591 F.2d 753, 774 (D.C. Cir. 1978) (en banc), *overruled in part on other grounds by Crooker v. Bureau of Alcohol, Tobacco, & Firearms*, 670 F.2d 1051 (D.C. Cir. 1981) (en banc).)

At least eight of CWIT's sixteen document requests (ECF 106-1 at 7-11) seek information that in no way implicates the deliberative process; instead they seek documents and information "provided to government contractors" (Request for Production Nos. 2, 3, 5), "approved for use" (Request for Production No. 4), "sufficient to show all grants that

14

Defendants. . . have terminated or identified for termination" (Request for Production No. 6), "reflecting Defendants' . . .definition of the words 'diversity,' 'equity,' 'inclusion,' or 'accessibility'" (Requests for Production No. 11), "related to Defendants'. . . definition of the terms 'DEI,' 'DEIA,' or 'equity-related'" (Request for Production No. 12), and "issued or promulgated" (Requests for Production No. 14). And although CWIT's remaining eight document requests could conceivably involve subject-matter that could be considered privileged, for example, documents "relating to any guidance, interpretation of, or application of the Anti-Diversity EOs" (Request for Production No. 1), even then the request specifically asks for fact sheets, press releases and other final documents that are neither predecisional nor antecedent to Defendants' policy actions. A stay of discovery would only unnecessarily delay final resolution of this case and prejudice Plaintiffs efforts to discover evidence supporting its claims in the possession of Defendants.

## CONCLUSION

For these reasons, CWIT respectfully requests that the Court deny Defendants' Motion for a Protective Order to Stay Discovery Pending Resolution of Their Motion to Dismiss.


Dated: July 11, 2025                                         Respectfully Submitted,


/s/ *Jason P. Stiehl*                                        /s/ *Anuj Vohra*
Jason P. Stiehl                                              Anuj Vohra
CROWELL & MORING LLP                                         Keith J. Harrison
455 N Cityfront Plaza Dr.                                    CROWELL & MORING LLP
Suite 3600                                                   1001 Pennsylvania Avenue, NW
Chicago IL 60611                                             Washington, DC 20004
Tel: (312) 840-3108                                          Tel: (202) 624-2500
jstiehl@crowell.com                                          avohra@crowell.com
                                                             kharrison@crowell.com

15

/s/ *Meshach Y. Rhoades*
Meshach Y. Rhoades
CROWELL & MORING LLP
1601 Wewatta Street
Suite 815
Denver, CO 80202
Tel: (303) 524-8660
mrhoades@crowell.com

s/ *Sabrina A. Talukder*
Sabrina A. Talukder*
Kathryn J. Youker
Adria J. Bonillas
Olivia Sedwick
Gillian Cassell-Stiga
Lawyers' Committee for Civil Rights
Under Law
1500 K Street, N.W. Suite 900
Washington, D.C. 20005
Telephone: (202) 662-8600
Facsimile: (202) 783-0857
stalukder@lawyerscommittee.org
kyouker@lawyerscommittee.org
abonillas@lawyerscommittee.org
osedwick@lawyerscommittee.org
gcassell-stiga@lawyerscommittee.org

Aneel L. Chablani (No. 6242658)
Ami D. Gandhi (No. 6282924)
Chicago Lawyers' Committee for
Civil Rights
100 N. LaSalle St., Ste. 600
Chicago, IL 60602
Telephone: (312) 630-9744
Facsimile: (312) 630-1127
achablani@clccrul.org
agandhi@clccrul.org

*Attorneys for Chicago Women in Trades*

**Pro hac vice motion forthcoming*

/s/ *Warrington Parker*
Warrington Parker
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, CA 94111
Tel: (415) 986-2800
wparker@crowell.com

Elizabeth E. Theran
Adrienne DerVartanian
National Women's Law Center
1350 I Street NW, Suite 700
Washington, DC 20005
Telephone: (202) 588-5180
Fax: (202) 588-5185
etheran@nwlc.org
adervartanian@nwlc.org

Lourdes M. Rosado
Rafaela Uribe
LATINOJUSTICE PRLDEF
475 Riverside Drive, Suite 1901
New York, NY 10115
Telephone: (212) 739-7583
lrosado@latinojustice.org
ruribe@latinojustice.org

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused a true and correct copy of the foregoing to be served on July 11, 2025 on all counsel of record by the Court's electronic filing system.

/s/ <em>Jason P. Stiehl</em>
Jason P. Stiehl
