## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHICAGO WOMEN IN TRADES, | |
| Plaintiff, | Case No. 1:25-cv-02005 |
| v. | Judge: Hon. Matthew F. Kennelly |
| PRESIDENT DONALD J. TRUMP, DEPARTMENT OF LABOR, ACTING SECRETARY OF LABOR VINCENT MICONE, OFFICE OF MANAGEMENT AND BUDGET, DIRECTOR OF THE OFFICE OF MANAGEMENT AND BUDGET RUSSELL VOUGHT, U.S. DEPARTMENT OF JUSTICE, ATTORNEY GENERAL OF THE U.S. DEPARTMENT OF JUSTICE PAMELA BONDI, | JURY TRIAL DEMANDED |
| Defendants. | |

### PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

## TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND................................................. 2

    A.    Chicago Women in Trades............................................................. 2

    B.    Executive Order 14151, "Ending Radical And Wasteful Government DEI Programs And Preferencing" ........................................ 3

    C.    Executive Order 14173, "Ending Illegal Discrimination and Restoring Merit-Based Opportunity".......................................... 3

    D.    The Government has Acted to Enforce the Anti-Diversity EOs................ 4

    E.    The Anti-Diversity EOs Threaten CWIT's Federally Funded Grants ........................................................................................ 5

    F.    The Anti-Diversity EOs Have a Chilling Effect on CWIT ...................... 7

    G.    CWIT's Claims ............................................................................. 8

    H.    Scope of Court's Preliminary Injunction Relating to the Certification Provision ........................................................... 10

    I.    Filings and Proceedings Following the Entry of the Preliminary Injunction ...................................................................... 10

ARGUMENT ...................................................................................................... 11

    I.    THERE IS NO BASIS TO DISMISS THE CLAIMS AS TO THE TERMINATION PROVISION ......................................................... 11

        A.    This Court Should Not Dismiss CWIT's Challenge to Section 3(c)(iii) of the J21 EO, which Calls For the Termination of Grants ........ 11

        B.    CWIT Has Standing to Sue All of the Defendants ................................ 11

        C.    CWIT'S Fifth Amendment Due Process Claims Should Not be Dismissed .................................................................................. 14

        D.    CWIT Adequately Pled Its First Amendment Claims ........................... 18

        E.    Neither The Separation of Powers Nor the Spending Clause Claims Should Be Dismissed .................................................... 20

-i-

1.     The Court's Decision as to the WANTO Grant Is Correct .......... 20

2.     There Is No Basis For This Court to Reconsider Its Prior
       Jurisdictional Ruling Regarding the Tucker Act ........................ 22

3.     There Is No APA Claim and CWIT Can Invoke the Court's
       Equitable Authority ...................................................................... 25

II.    THE MOTION TO DISMISS SHOULD BE DENIED AS TO THE
       CERTIFICATION PROVISION ........................................................ 26

       A.     CWIT Has Standing ............................................................... 26

              1.     CWIT Alleges and Demonstrated a Credible Threat of
                     Enforcement .................................................................. 26

              2.     CWIT Has Alleged that the Conduct in which it Engages
                     Falls within the Scope of the Executive Orders .......................... 27

              3.     CWIT Has Properly Alleged a Chilling Effect ........................... 28

       B.     The Government's Motion as to the First Amendment Claim is
              Meritless .................................................................................. 29

       C.     The Fifth Amendment Claim Should Not be Dismissed ........................ 30

       D.     The Motion to Dismiss the Separation of Powers and Spending
              Clause Challenges Lack Merit .................................................. 30

CONCLUSION ............................................................................................... 31

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*,
  570 U.S. 205 (2013)..................................................................................................18

*Am. Ass'n of Colleges for Teacher Educ. v. McMahon*,
  No. 25-1281, 2025 WL 1232337 (4th Cir. Apr. 10, 2025)....................................24

*American Public Health Assoc. v. Nat'l Institutes of Health*,
  2025 WL 1822487 (July 2, 2025) .............................................................. *passim*

*Babbit v. United Farm Workers Nat'l Union*,
  442 U.S. 289 (1979)...........................................................................................26, 27

*Bd. of Regents of State Colleges v. Roth*,
  408 U.S. 564 (1972)...............................................................................................15

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)..................................................................................................1

*Bowen v. Massachusetts*,
  487 U.S. 879 (1988)...............................................................................................24

*Brown v. Kemp*,
  86 F.4th 745 (7th Cir. 2023) ......................................................................26, 27, 28

*Chamber of Com. of the United States v. Reich*,
  74 F.3d 1322 (D.C. Cir. 1996)...............................................................................13

*City & Cnty. of S.F. v. Trump*,
  897 F.3d 1225 (9th Cir. 2018) ...............................................................................21

*Dalton v. Specter*,
  511 U.S. 462 (1994)...............................................................................................20

*DCH Reg'l Med. Ctr. v. Azar*,
  925 F.3d 503 (D.C. Cir. 2019)...............................................................................25

*Doe v. Reed*,
  561 U.S. 186 (2010)...............................................................................................21

*Elev8 Balt., Inc. v. Corp. for Nat'l & Cmty. Serv.*,
  Civ. No. MJM-25-1458, 2025 WL 1865971 (D. Md. July 7, 2025)......................24

*Ezell v. City of Chi.*,
   651 F.3d 684 (7th Cir. 2011) ...................................................................21

*FCC v. Fox Television Stations, Inc.*,
   567 U.S. 239 (2012) .................................................................................16

*Franklin v. Mass.*,
   505 U.S. 788 (1992) (Scalia, J., concurring in part and concurring in the
   judgment) .................................................................................................13

*Gizzo v. Ben-Habib*,
   44 F. Supp. 3d 374 (S.D.N.Y. 2014) ........................................................15

*Int'l Union of Operating Engineers Local 139 v. Schimel*,
   863 F.3d 674 (7th Cir. 2017) ...................................................................21

*Koala v. Khosla*,
   931 F.3d 887 (9th Cir. 2019) ...................................................................19

*Kubiak v. City of Chi.*,
   810 F.3d 476 (7th Cir. 2016) .....................................................................1

*La. Delta Serv. Corps. v. Corp. for Nat'l and Comty. Serv.*,
   Case No. 25-378-JWD-RLB, 2025 WL 1787429 (M.D. La. June 27, 2025) .........................15

*Legal Servs. Corp. v. Velasquez*,
   531 U.S. 533 (2001) .................................................................................19

*Manning v. Caldwell for City of Roanoke*,
   930 F.3d 264 (4th Cir. 2019) ...................................................................17

*Margaret S. v. Edwards*,
   794 F.2d 994 (5th Cir. 1986) ...................................................................17

*Mass. Fair Hous. Ctr. v. Dep't of Hous. & Urb. Dev.*,
   Civ. Action No. 25-30041-RGS, 2025 WL 941380 (D. Mass. Mar 26, 2025),
   *order dissolved* 2025 WL 1225481 (D. Mass. Apr. 14, 2025) ................................24

*Mazurek v. Armstrong*,
   520 U.S. 968 (1997) ...................................................................................1

*McClelland v. Katy Ind. Sch. Dist.*,
   63 F.4th 996 (5th Cir. 2023) ...................................................................15

*Merrill v. Milligan*,
   142 S. Ct. 879 (2022) (Kavanaugh, J., concurring) .................................22

*Michigan v. U.S. Army Corps of Engineers*,
667 F.3d 765 (7th Cir. 2011) ......................................................................................1

*Milk Train v. Veneman*,
310 F.3d 747 (D.C. Cir. 2002) ...................................................................................22

*Nat'l Assn' of Diversity Officers in Higher Educ. v. Trump*,
No. 25-1189, Dkt. No. 29 (4th Cir. Mar. 14, 2025).............................................7, 18

*Nat'l Council of Nonprofits et al v. OMB et al*,
1:25-cv-00239 (D.D.C 2025), ECF No. 30................................................................4

*Nat'l Endowment for the Arts v. Finley*,
524 U.S. 569 (1998)................................................................................14, 15, 18, 19

*Nat'l Institutes of Health, et al. v. Am. Public Health Assoc.*,
No. 25A103 ...................................................................................................... *passim*

*Nat'l Urban League v. Trump*,
No. 25-471 (TJK), 2025 WL 1275613 (D.C.D.C. May 2, 2025) ............................18

*New Vision Photography Program, Inc., v. District of Columbia*,
54 F. Supp. 3d 12 (D.D.C. 2014) ..............................................................................15

*Perkins Coie LLP v. U.S. Dep't of Justice*,
Civ. Action No. 25-716(BAH), 2025 WL 1207079 (D.D.C. Apr. 25, 2025) ..........13

*Perry v. Sindermann*,
408 U.S. 593 (1972)...................................................................................................19

*Redondo-Borges v. U.S. Dep't of Hous. & Urb. Dev.*,
421 F.3d 1 (1st Cir. 2005) ..........................................................................................15

*Regan v. Taxation With Representation of Wash.*,
461 U.S. 540 (1983)...................................................................................................19

*Runnion v. Girl Scouts of Greater Chi*,
786 F.3d 510 (7th Cir. 2015) .......................................................................................2

*Rust v. Sullivan*,
500 U.S. 173 (1991)..............................................................................................18, 19

*S. Educ. Found v. United States Dep't of Educ.*,
Civ. Action No. 25-1079(PLF), 2025 WL 1453047 (D.D.C. May 21, 2025) ..........24

*S. F. A.I.D.S. Found. v. Trump*,
Case. No. 25-cv-01824, 2025 WL 1621636 (N.D. Cal. June 9, 2025)........... *passim*

*S.F. Unified Sch. Dist. v. Americorps*,
    Case No. 25-cv-02425-EMC, 2025 WL 974298 (N.D. Cal. Mar. 31, 2025).........................24

*Santa Cruz Lesbian and Gay Cmty. Center v. Trump*,
    508 F. Supp. 3d 521 (N.D. Cal. 2020) ...................................................................16

*Silha v. ACT, Inc.*,
    807 F.3d 169 (7th Cir. 2015) ...........................................................................1, 13

*Simic v. City of Chi*,
    851 F.3d 734 (7th Cir. 2017) ...............................................................................27

*Solutions in Hometown Connection v. Noem*,
    Civ. Action No. 25-cv-00885-LKG, 2025 WL 1103253 (D. Md. Apr. 11,
    2025) ................................................................................................................24

*Speiser v. Randall*,
    357 U.S. 513 (1958).............................................................................................19

*Spuhler v. State Collection Serv., Inc.*,
    983 F.3d 282 (7th Cir. 2020) ...............................................................................13

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014).............................................................................................26

*Thakur v. Trump*,
    Case No. 25-cv-04737-RFL, 2025 WL 1734471 (N.D. Cal. June 23, 2025) ..................22, 24

*Trump v. Am. Fed'n of Gov't Employees*,
    No. 24A1174, 2025 WL 1873449 (S. Ct. July 8, 2025) .........................................21

*Trump v. Sierra Club*,
    140 S. Ct. 1 (2019).........................................................................................20, 22

*United States v. Berkowitz*,
    927 F.2d 1376 (7th Cir. 1991) .............................................................................23

*United States v. Plummer*,
    581 F.3d 484 (7th Cir. 2009) ...............................................................................30

*Wirfshafter v. Trustees of Indiana Univ.*,
    No. 1:24-cv-00754-RLY-MKK, 2025 WL 1558171 (S.D. Ind. May 29, 2025) ..................27

*Woonasquatucket River Watershed Council v. U.S. Dept' of Agric.*,
    C.A. No. 1:25-cv-00097-MM-PAS, 2025 WL 1116157 (D.R.I. Apr. 15, 2025) ..................24

**Statutes**

5 U.S.C. § 704..........................................................................................................25

18 U.S.C. § 287 ...............................................................................................................30

29 U.S.C. § 50 ...................................................................................................................6

29 U.S.C. § 2503 ...............................................................................................................5

Pub. L. No. 102-530, 106 Stat. 3465 § 2 (1992) ............................................................5

Pub. L. No. 105-277, 112 Stat. 2681-641, 653 (1998) ...................................................6

Pub. L. No. 113-128, 128 Stat. 1425 (2014) ...................................................................7

Pub. L. No. 116-260, 134 Stat. 1182, 1548 (2020) .........................................................6

**Other Authorities**

2 C.F.R. § 200.340(a) .....................................................................................................15

Fed. R. Civ. P. 12(b)(1) ....................................................................................................1

Fed. R. Civ. P. 12(b)(6) ....................................................................................................1

Fed. R. Civ. P. 56 ............................................................................................................13

**INTRODUCTION**

Each of Plaintiff Chicago Women in Trades' ("CWIT") claims allege factually and legally plausible claims for relief, several of which have met the much more demanding standard for preliminary injunctive relief. Yet each claim—even those that may not have met the much higher standard for injunctive relief, satisfy Rule 12(b)(6) pleading standards and should be allowed to proceed to discovery and resolution by this Court. For a motion to dismiss, a Court is required to "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Kubiak v. City of Chi.*, 810 F.3d 476, 480–81 (7th Cir. 2016). And the allegations of the complaint need only "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Id.* at 480; *Silha v. ACT, Inc.*, 807 F.3d 169, 174 (7th Cir. 2015) ("[W]hen evaluating a facial challenge to subject matter jurisdiction under Rule 12(b)(1), a court should use *Twombly-Iqbal's* 'plausibility' requirement, which is the same standard used to evaluate facial challenges to claims under Rule 12(b)(6).") (citations omitted); *see also Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556 (2007) (noting that "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable" or recovery "remote and unlikely").

The motion to dismiss standard stands in stark contrast to the standard that applies to a motion for preliminary injunction. *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). Further, the "findings made at the preliminary injunction stage do not bind the district court as the case progresses." *Michigan v. U.S. Army Corps of Engineers*, 667 F.3d 765, 782 (7th Cir. 2011) (cleaned up). With these standards in mind, the Court's preliminary injunction conclusions do not establish that CWIT has failed to plausibly state a claim.

1

This is all the more important because this case has now moved to the stage where CWIT is entitled to discovery to demonstrate how the government *applies* the anti-diversity EOs. Neither this Court nor CWIT is obligated to rely on what the government *says* it may do to implement these EOs or its repeated claim that all the government is doing is enforcing federal anti-discrimination laws. Were that the measure of a motion to dismiss, a defendant would need to do little more than deny allegations to obtain a final disposition in its favor.

The Court should deny the government's motion to dismiss in its entirety. But if the Court is inclined to dismiss as to certain provision of the EOs at issue, it should be without prejudice to CWIT's reviving them should the government claim authority to act under that or some different provision. If the Court does decide to grant the government's motion, CWIT should be given leave to amend. *Runnion v. Girl Scouts of Greater Chi*, 786 F.3d 510, 519-20 (7th Cir. 2015) (noting that leave to amend should be granted and endorsing view that the federal policy is to decide cases on the substance rather than a technicality).

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Chicago Women in Trades

CWIT is a non-profit organization that prepares women across the country to enter and remain in high-wage skilled construction trades (*e.g.*, carpentry, electrical work, welding, and plumbing), which are plagued by longstanding discrimination and occupational segregation. *See* ECF 1 ¶¶ 32-34. CWIT is dedicated to promoting diversity, equity, and inclusion, including the barriers faced by program participants identifying as Black and Latina. *See id.* ¶¶ 35-40. As a recipient of multiple federal grants (*see infra*, Factual Background § E), CWIT provides training programs, best practices guides, employer resources, and advocacy to attract and retain women in skilled trades. *See id.* ¶ 41-. CWIT's national reach includes mentorship programs in Illinois, New York, Michigan, Texas, Pennsylvania, and Ohio. *See id.* ¶ 38.

2

**B.     Executive Order 14151, "Ending Radical And Wasteful Government DEI Programs And Preferencing"**

On January 20, 2025, President Trump signed Executive Order 14151 (the "J20 EO") declaring programs promoting diversity, equity, and inclusion "illegal and immoral discrimination." J20 EO § 1.

Section 2(b)(i) of the J20 EO orders all executive agencies to "terminate . . . 'equity-related' grants or contracts" without defining "DEI," "DEIA," "diversity," "equity," "equity-related," "inclusion," or "accessibility." § 2(b)(i) ("J20 Termination Provision").

**C.     Executive Order 14173, "Ending Illegal Discrimination and Restoring Merit-Based Opportunity"**

On January 21, 2025, President Trump signed Executive Order 14173 (the "J21 EO", and together with the J20 EO, the "anti-diversity EOs"). The J21 EO declares programs supporting diversity, equity, and inclusion "dangerous, demeaning, and immoral." § 1. Like the J20 EO, the J21 EO does not define "DEI," "DEIA," "diversity," "equity," "equity-related," "inclusion," or "accessibility."

Section 3(c)(iii) of the J21 EO orders the OMB Director, with the assistance of the Attorney General, to "[t]erminate all 'diversity,' 'equity,' 'equitable decision-making,' 'equitable deployment of financial and technical assistance,' 'advancing equity,' and like mandates, requirements, programs, or activities, as appropriate." ("J21 Termination Provision").

Section 3(b)(iv) orders all executive agencies to "include in every contract or grant award" a certification, enforceable through the False Claims Act, that the contractor and grantee "does not operate any programs promoting DEI that violate any applicable Federal anti-discrimination laws." ("Certification Provision").

3

**D.      The Government has Acted to Enforce the Anti-Diversity EOs**

On January 21, 2025, Defendant Office of Personnel Management ("OPM") issued a memorandum directing agency heads to "terminate any DEIA-related contractors" and, by January 23, 2025, to provide Defendant OPM with "a complete list of all DEIA-related agency contracts as of November 5, 2024." ECF 1 ¶ 77. Consistent with this memorandum, on January 22, 2025, CWIT received an email from the grant administrator at Defendant DOL Women's Bureau directing the immediate cessation of "all activities related to 'diversity, equity, and inclusion' (DEI) or 'diversity, equity, inclusion, and accessibility' (DEIA) under [its] federal awards, consistent with the requirements of the" anti-diversity EOs." ECF 1 ¶¶ 79-80.  That same day, CWIT received Training and Employment Notice ("TEN") No. 21-24 from the Acting Deputy Assistance Secretary Michelle Paczynski of Defendant Department of Labor (the "DOL") with the subject "Immediate Implementation of [the anti-diversity EOs]."  It directed the same.  ECF 1 ¶ 81.

On January 27, 2025, Defendant OMB issued Memorandum M-25-13, instructing all federal agencies, as of January 28, 2025, to "temporarily pause all activities related to . . . financial assistance for . . . nongovernmental organizations, DEI, [and] woke gender ideology[.]" ECF 1 ¶ 84; *see also id*. ¶ 85, Ex. D (OMB Fact Sheet of January 28, 2025). Defendant OMB rescinded Memorandum M-25-13 two days later in response to a federal district court order. *See id*. ¶ 86, Ex. E; *see also Nat'l Council of Nonprofits et al v. OMB et al*, 1:25-cv-00239 (D.D.C 2025), ECF No. 30.  However, the White House Press Secretary stated that the rescission was "NOT a rescission of the federal funding freeze" and the anti-diversity EOs "on federal funding remain in full force and effect and will be rigorously implemented."  ECF 1 ¶ 86.

On February 5, 2025, Defendant Attorney General issued a memorandum, citing the J21 EO, stating that DOJ's Civil Rights Division "will investigate, eliminate, and penalize illegal DEI and DEIA preferences, mandates, policies, programs, and activities in the private sector and in educational institutions that receive federal funds." ECF 1 ¶ 89.

In fact, the government has terminated grants under the authority of the J20 and J21 EOs. *See generally American Public Health Assoc. v. Nat'l Institutes of Health*, 2025 WL 1822487 (July 2, 2025).

### E. The Anti-Diversity EOs Threaten CWIT's Federally Funded Grants

CWIT operates as a federal grantee, sub-grantee, and sub-contractor; approximately 40% of its annual budget comes from the federal government. ECF 1 ¶ 16. CWIT receives funding through the following five federal programs directly affected by the anti-diversity executive orders:

*(1)* ***The Women in Apprenticeship and Nontraditional Occupations ("WANTO") Grant.*** The WANTO Grant, through DOL, funds CWIT's "Transforming the Workforce System to Ensure Gender Equity in Infrastructure" program, which develops women-focused pre-apprenticeship programs and workforce equity plans for infrastructure projects, and creates women-focused cohorts for co-educational pre-apprenticeship programs. The WANTO Grant is authorized by the WANTO Act, Pub. L. No. 102-530, 106 Stat. 3465 § 2 (1992), which requires the Secretary of Labor to "make grants to community-based organizations to provide technical assistance to employers and labor unions," including "developing outreach and orientation sessions to recruit women into the employers' apprenticeable occupations and nontraditional occupations[.]" 29 U.S.C. § 2503. ECF 1 ¶¶ 44-49.

*(2)* ***The Apprenticeship Building America ("ABA") Grant.*** CWIT's ABA Grant, through DOL, partially funds two apprenticeship programs providing math and test preparation, workforce readiness, physical conditioning, basic construction, and hands-on trade-specific experience in partnership with apprenticeship programs. ECF 1 ¶ 50. CWIT's ABA Grant is authorized by the National Apprenticeship Act ("Apprenticeship Act"), with funds appropriated in the Consolidated Appropriations, 2021, Public Law 116-260, Division H, Title I. The Consolidated Appropriations provides that "any grant funds used for apprenticeship shall be used to support only those apprenticeship programs registered under the National Apprenticeship Act." Pub. L. No. 116-260, 134 Stat. 1182, 1548 (2020). In turn, the Apprenticeship Act authorizes DOL to "bring together employers and labor for the formulation of programs of apprenticeship." 29 U.S.C. § 50. The ABA Grant is also authorized by the American Competitiveness and Workforce Improvement Act, Section 414(c), which requires the Secretary of Labor to use funds and "award grants" "to establish demonstration programs or projects to provide technical skills training for workers, including both employed and unemployed workers." Pub. L. No. 105-277, 112 Stat. 2681-641, 653 (1998). ECF 1 ¶¶ 50-53.

*(3)* ***The JFF's Improving Diversity and Equity in Apprenticeship for Manufacturing ("IDEA-M") Contract.*** As a subcontractor to JFF under its IDEA-M contract, CWIT provides services to increase the number of women entering and retained in advanced manufacturing apprenticeship programs through in-person and online diversity, equity, and inclusion training to sponsors of apprenticeship programs. ECF 1 ¶ 54.

*(4) **The JFF Apprenticeship Grant.*** CWIT is a subrecipient of JFF's Apprenticeship USA Grant from the DOL. Under this grant, CWIT facilitates the inclusion of women in pre-apprenticeship and apprenticeship programs and provides programing aimed to recruit, mentor

6

and retain women. The Apprenticeship Grant, like the ABA Grant, is authorized by the Apprenticeship Act.  ECF 1 ¶ 55.

*(5) The Tradeswomen Building Infrastructure Initiative ("TBII") Grant.* Via its TBII Grant, CWIT performs a subaward through the Illinois Department of Labor ("IDOL") in which, *inter alia*, CWIT advocates for inclusive and diverse infrastructure worksites, promotes the Framework for Workforce Equity for Women and People of Color, and provides state-level support and data evaluation jointly with IDOL. The TBII Grant is authorized by the Workforce Innovation and Opportunity Act, Pub. L. No. 113-128, 128 Stat. 1425 (2014).  ECF 1 ¶¶ 56-57.

F.      **The Anti-Diversity EOs Have a Chilling Effect on CWIT**

In addition to threatening CWIT's federal funding, the anti-diversity EOs have had a significant chilling effect on CWIT's diversity, equity, and inclusion efforts. ECF 1 ¶¶ 92-96. CWIT's mission is to achieve gender equity in male-dominated industries; equity is the throughline across all CWIT programs. ECF 1 ¶¶ 32-41.  But CWIT has lost its ability to engage in its work, even its work not funded by the government, without fear of violating the anti-diversity EOs.  ECF 1 ¶¶ 92-101.  This is all the more true because the EOs do not define DEI, DEIA, diversity, equity, equity-related, inclusion, or accessibility.  ECF 1 ¶¶ 90-91.  And the government has refused to define those terms.  *See, e.g., Nat'l Ass'n of Diversity Officers in Higher Educ.*, 767 F. Supp. 3d 243, 283 (D. Md. 2025) (noting that "even the government does not know what constitutes DEI-related speech that violates federal anti-discrimination laws"); *American Public Health Assoc. v. Nat'l Institutes of Health*, Civ. Action No. 25-10787-WGY, 2025 WL 1822487 at * 5 (D. Mass. July 2, 2025) *16 (no definition); *see also S. F. A.I.D.S.*

*Found. v. Trump*, Case. No. 25-cv-01824, 2025 WL 1621636 * 9, 17 (N.D. Cal. June 9, 2025). (no definition).[1]

Because of its equity-driven mission, CWIT also has lost partnerships as a result of the anti-diversity EOs. ECF 1 ¶ 96. Indeed, one of the grantees to which CWIT is a subawardee asked CWIT to modify its materials to remove any reference to DEI. *Id.*

The anti-diversity EOs also threaten CWIT's work under fourteen grants from sources other than the federal government. ECF 1 ¶¶ 97-101. Many of these grants require CWIT to perform work related to diversity, equity, inclusion, or accessibility. ECF 1 ¶ 97. CWIT's ongoing ability to benefit from these grants is in jeopardy because the J21 EO Certification Provision requires that CWIT "certify that it does not operate *any* programs promoting DEI" that violate "applicable Federal anti-discrimination laws," ECF 1 ¶ 72 (emphasis added), regardless of the program's source of funding. *see* J21 EO § 3(b)(iv)(B).

## G.    CWIT's Claims

Based on these allegations, CWIT has asserted eight causes of action.

***First Amendment Claims.***  CWIT has asserted three First Amendment claims, each of which alleges that the anti-diversity EOs violate the First Amendment "facially and as applied" to CWIT.  ECF 1 ¶¶ 102, 110, 120.  Count I alleges that the EOs violate the First Amendment

---

[1] On July 24, 2025, in *American Public Health Assoc.*, the government filed in the Supreme Court an application to stay the district court's judgment pending the government's appeal. *Nat'l Institutes of Health, et al. v. Am. Public Health Assoc.*, No. 25A103, Appl. to Stay Judgments of D. Mass. & Req. for Immediate Admin. Stay (S. Ct.).

On July 29, 2025, the Attorney General issued Guidance for Recipients of Federal Funding Regarding Unlawful Discrimination directed to "All Federal Agencies."  This "Guidance," purports to clarify "the application of federal antidiscrimination laws to programs or initiatives that may involve discriminatory practices, including those labeled as Diversity, Equity, and Inclusion ('DEI') programs." *See* July 29, 2025 Memorandum, at 1 (July 31, 2025 at 20:22 CDT). The Attorney General still fails to define DEI or DEIA in her "Guidance."

because they fail "to properly identify or define the specific speech and expressive conduct that is prohibited." ECF 1 ¶ 105. As such, they "are unconstitutional because they violate . . . the overbreadth doctrine." ECF 1 ¶ 109. Count II alleges that the anti-diversity EOs violate the First Amendment because they "impermissibly chill the exercise of CWIT's constitutionally protect speech, based on its content and viewpoint. ECF 1 ¶¶ 112-113; *see also id*. ¶¶ 116-117. Count III alleges that the J21 EO violates the First Amendment because it imposes an unconstitutional condition. ECF 1 ¶¶ 120-127.

**Due Process Claim.** CWIT asserts a Fifth Amendment "facial and as applied" due process claim because the anti-diversity EOs are vague and "provide no guidance as to what is required" or allowed given that the anti-diversity EOs do not define critical terms. In addition, the anti-diversity EOs fail to set guardrails for government action. ECF 1 ¶¶ 128-139.

**Spending Clause Claims.** Count Five alleges that the J20 Termination Provision violates the Spending Clause because the Executive Branch cannot unilaterally terminate grants and contracts without express statutory authority, which is lacking here. ECF 1 ¶¶ 140-147. Count Six alleges that the J21 Certification Provision violates the Spending Clause because the Executive Branch lacks the authority to "condition grant awards on requiring a compliance condition." ECF 1 ¶¶ 151; *see also id.* ¶¶ 148-155.

**Separation of Powers Claims.** Count Seven alleges that the J20 Termination Provision violates the Separation of Powers because Congress has not "authorized the Executive Branch to withhold, withdraw, or terminate federal grant moneys . . . on the basis that the grants involve 'equity action plans,' 'equity actions, initiatives, or programs' or that they are considered 'equity-related grants or contracts.'" ECF 1 ¶¶ 162; *see also id.* ¶¶ 156-168. Count Eight alleges

that the Executive Branch cannot impose the conditions set forth in the J21 EO Certification

Provision because it lacks statutory authority to do so.  ECF 1 ¶¶ 169-187.

### H. Scope of Court's Preliminary Injunction Relating to the Certification Provision

On April 15, 2025, this Court entered a preliminary injunction that enjoined the

Termination Provision (§ 2(b)(i)) of J20 EO) and the Certification Provision (§ 3(b)(iv)) of the

J21 EO).  ECF 69; *see also* ECF 68.

The preliminary injunction as to the Termination Provision enjoined the Secretary of

Labor, the DOL, and its officers, agents, employees, and "and other persons who are in active

concert or participation with them" from canceling, terminating, or altering the terms of the

WANTO grant.  ECF 69.

As for the Certification Provision, this Court entered a preliminary injunction, which

among other things, enjoined the same group from requiring "any grantee or contractor to make

any 'certification' or other representation pursuant to the Certification Provision. *Id.*

### I. Filings and Proceedings Following the Entry of the Preliminary Injunction

After this Court entered the preliminary injunction, CWIT filed a motion to alter or

amend the injunction, which this Court denied on May 7. ECF 73, 74, 90. The government

subsequently filed a notice of appeal on July 3. ECF 112. Eight days after the government

noticed its appeal, the government filed a motion to dismiss. ECF 122.

**ARGUMENT**

I.     **THERE IS NO BASIS TO DISMISS THE CLAIMS AS TO THE TERMINATION PROVISION**

    A.     **This Court Should Not Dismiss CWIT's Challenge to Section 3(c)(iii) of the J21 EO, which Calls For the Termination of Grants**

The Court concluded that CWIT was not entitled to a preliminary injunction as to Section 3(c)(iii) of the J21 EO, Section 4(b) of the J21 EO, and Section 2(b)(ii)(A) of the J20 EO because these provisions "focus on internal government processes and programs and reporting to the President from his subordinates. ECF 52 at 5. Based solely on this conclusion, the government asks that the Court dismiss any claims as to these three provisions. ECF 122 at 8 (citing EFC 52 at 5).

While Sections 4(b) of the J21 EO and 2(b)(ii)(A) of the J20 EO may implicate internal government agency processes and programs, Section 3(c)(iii) does not. Section 3(c)(iii) directs the OMB with the assistance of the Attorney General to "[t]erminate all 'diversity,' 'equity,' 'equitable decision-making,' 'equitable deployment of financial and technical assistance,' 'advancing equity,' and like mandates, requirements, programs, or activities, as appropriate." Its scope is *not* limited to the internal processes or programs of any agency. Rather, its scope is consonant with the scope of the Termination Provision that purports to mandate the termination of "all equity action plans,' 'equity' actions, initiatives, or programs, 'equity-related' grants or contracts . . . ." J20 EO § 2(b)(i).

Because CWIT has standing to challenge the Termination Provision, it follows that it has standing to challenge Section 3(c)(iii).

    B.     **CWIT Has Standing to Sue All of the Defendants**

CWIT does not oppose the dismissal of the President as a Defendant. The remaining Defendants are properly parties to this action. According to the government, "CWIT offers no

specific unlawful act by any non-DOL defendant . . . that caused it a redressable injury" and "CWIT offers no hint at why any non-DOL defendant is required for complete relief."  ECF 122 at 10.  The government is incorrect.

First, the Termination Provision expressly contemplates that any termination will be done by the DOL, "in consultation with the Attorney General, the Director of OMB, and the Director of OPM, as appropriate . . . ."  J20 EO § 2(b); *see also* J21 EO § 3(c)(iii) ("with the assistance" of the Attorney General).  Any decisions (and any injuries) therefore flow from the work of all named Defendants.

Second, the Certification Provision necessarily involves action by the Department of Justice and the Attorney General because they enforce the False Claims Act, which the Certification Provision invokes.

Third, the government's own enforcement actions with regard to the anti-diversity EOs establish OPM, OMB, and DOJ as proper defendants because each of them took specific actions that gave rise to this lawsuit.  On January 21, 2025, Defendant OPM issued a memorandum directing agency heads to "terminate any DEIA-related contractors" and giving them two days to provide Defendant OPM with "a complete list of all DEIA-related agency contracts as of November 5, 2024." ECF 1 ¶ 77.  Then, on January 27, Defendant OMB issued Memorandum M-25-13, instructing all federal agencies to "temporarily pause all activities related to . . . financial assistance for . . . nongovernmental organizations, DEI, [and] woke gender ideology[.]" ECF 1 ¶ 84; *see also id.* ¶ 85.

Finally, on February 5, Defendant Attorney General on behalf of Defendant DOJ issued a memorandum citing the J21 EO and stating that DOJ's Civil Rights Division "will investigate, eliminate, and penalize illegal DEI and DEIA preferences, mandates, policies, programs, and

activities in the private sector and in educational institutions that receive federal funds." ECF 1 ¶ 89.

The Complaint's allegations thus plausibly allege facts which establish standing to sue the agencies that are directing and acting to direct the enforcement of the anti-diversity EOs. As this Court concluded, these actions reflect "injuries . . . imminent enough to constitute concrete injuries in fact . . . ." ECF 52 at 7; ECF 68 at 15. CWIT has properly sued all Defendants in this case. *See Perkins Coie LLP v. U.S. Dep't of Justice*, Civ. Action No. 25-716(BAH), 2025 WL 1207079 at *5 (D.D.C. Apr. 25, 2025) (stating that "it is black letter law in [the D.C. Circuit] that those agency officials empowered to enforce executive orders are proper defendants in actions challenging the orders' implementation," including "*all agencies*" charged with implementing an executive order's directives (emphasis in original)); *see also Franklin v. Mass.*, 505 U.S. 788, 828 (1992) (stating that "[r]eview of the legality of Presidential action can ordinarily be obtained in a suit seeking to enjoin the officers who attempt to enforce the President's directive. . . ") (Scalia, J., concurring in part and concurring in the judgment) (citations omitted)); *Chamber of Com. of the United States v. Reich*, 74 F.3d 1322, 1329 (D.C. Cir. 1996) (stating that even where an agency head is acting at the behest of the President, courts have the power to compel subordinate executive officials to disobey illegal Presidential commands).[2]

---

[2] The government cites one case in support of the argument that CWIT's claims should be dismissed because it lacks standing to sue any party other than DOL—*Spuhler v. State Collection Serv., Inc.*, 983 F.3d 282 (7th Cir. 2020). ECF 122 at 10. Its facts are not remotely like those of this case. First, *Spuhler* was decided on summary judgment. Thus, the plaintiff's burden to demonstrate standing was greater than at the motion to dismiss stage. *Compare* Fed. R. Civ. P. 56 *with Silha*, 807 F.3d at 174. Second, that case did not involve a government agency. It involved a claim against a bill collector. And it did not decide the case on the standing argument the government asserts. Rather, it found plaintiff had failed to prove with specific facts that defendant's conduct was unlawful as a legal matter and therefore plaintiff did not have a justiciable claim. *Spuhler*, 983 F.3d at 285-86.

### C.       CWIT'S Fifth Amendment Due Process Claims Should Not be Dismissed

The government makes the following arguments regarding CWIT's Fifth Amendment claims.  The government repeats this Court's view that imprecision is allowed when the government acts as a patron and not as a sovereign.  ECF 122 at 11.  It claims that the Termination Provision's phrase "'to the maximum extent allowed by law'" is not unconstitutionally vague because it only directs executive policy and actors so "even they were vague, that would not be 'outcome determinative' . . . ."  ECF 122 at 13.  The government claims that CWIT cannot show a deprivation of a Fifth Amendment interest.  ECF 122 at 12.  And in fact, the government suggests that a due process challenge cannot ever be maintained against an Executive Order.  ECF 122 at 12.  Finally, the government argues CWIT only levels a facial challenge and the Supreme Court has allowed such a challenge only once in the non-criminal context.  ECF 122 at 13-14.

First, while some aspects of the anti-diversity EOs demand internal government assessments and reassessments, this is beside the point.  CWIT's due process claim turns on how the government will apply the anti-diversity EOs to CWIT, not what else the EOs say or require. The government cannot and does not dispute that it has *already* applied the EOs to other holders of government grants.  *See Am. Pub. Health Assoc.*, Case No. 25-10787-WGY, 2025 WL 1822487 at * 5 (D. Mass July 2, 2025).  And Plaintiff has plausibly alleged that the government would already have applied it to CWIT as well were it not for the preliminary injunction. *See supra*, Statement of Facts, Section D (listing steps the government has taken to enforce the anti-diversity EOs). The government's contrary argument is meritless.

Second, *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 589 (1998), upon which the government bases its "patron/sovereign" distinction, does not warrant dismissal of CWIT's due process claim based on the Termination Provision.  As the Northern District of California

noted in *S.F. A.I.D.S. Foundation*, "whereas the vague language in *Finley* was only another factor to be considered in an inherently subjective evaluation alongside 'artistic excellence and artistic merit,' the Equity Termination Provision renders categorically ineligible for funding any contract or grant based on the single determination of whether it is 'equity-related' without any guidelines as to what that term may mean." 2025 WL 1621636 at *21.

Third, CWIT has a protected interest that is "safeguarded by procedural due process": "an interest in continued receipt" of grants. *See Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 576-77 (1972). In this regard, grants are not government contracts, and therefore the government cannot terminate them for convenience. Instead, applicable regulations cabin the government's termination ability. *See* 2 C.F.R. § 200.340(a). Nothing in the regulations allows the Executive Branch to unilaterally defund congressionally authorized programs simply because it does not like them, much less authorize actions that contravene statutory requirements, like the anti-diversity EOs do. *See* ECF 1 ¶¶ 44-57 (describing the statutes setting forth the purposes of the grants at issue). Therefore, CWIT properly alleges a Due Process claim, including that it has a protectible right at stake. *La. Delta Serv. Corps. v. Corp. for Nat'l and Comty. Serv.*, Case No. 25-378-JWD-RLB, 2025 WL 1787429 *25-26 (M.D. La. June 27, 2025) (denying a motion to dismiss a Fifth Amendment Due Process claim in light of 2 C.F.R. § 200.340(a)).[3]

---

[3] The cases the government cites—*McClelland v. Katy Ind. Sch. Dist.*, 63 F.4th 996, 1013 (5th Cir. 2023), *Redondo-Borges v. U.S. Dep't of Hous. & Urb. Dev.*, 421 F.3d 1, 10 (1st Cir. 2005), *Gizzo v. Ben-Habib*, 44 F. Supp. 3d 374, 385 (S.D.N.Y. 2014), and *New Vision Photography Program*, *Inc.*, *v. District of Columbia*, 54 F. Supp. 3d 12, 29 (D.D.C. 2014)—do not reference or discuss application of due process claims within the framework of 2 C.F.R. § 200.340(a). *See* ECF 122 at 13.

.

Fourth, the government suggests that the vagueness doctrine does not apply because "traditionally" it has been applied to statutes and because the anti-diversity EOs are simply "the President provid[ing] . . . unclear directives to his subordinates." ECF 122 at 12. The fact that grants pursuant to these anti-diversity EOs establishes that this argument has no merit. *See Am. Public Health Assoc.*, 2025 WL 1822487. And contrary to the government's assertion, the Due Process' vagueness doctrine has been applied—repeatedly—to Executive Orders. *See, e.g., S.F. A.I.D.S. Found.*, 2025 WL 1621636 at *21; *Santa Cruz Lesbian and Gay Cmty. Center v. Trump*, 508 F. Supp. 3d 521 (N.D. Cal. 2020). The government nowhere argues that it cannot be applied in the context of EOs. *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239 (2012), that the Government appears to cite in support of that argument, does not support the proposition. ECF 122 at 12.

Finally, the government acknowledges that the Due Process vagueness doctrine addresses two things: (1) notice to the regulated party so that it knows how to act in accordance with the government directive, and (2) whether the government directive is precise enough so that the government cannot act in an arbitrary or discriminatory manner. *Id*. But the government claims that "no specific case is at issue for CWIT's *facial* challenge." *Id.* at 14 (emphasis in original).

CWIT has brought a facial and as applied challenge. ECF 1 ¶¶ 128-139.[4] CWIT will show that the EOs are arbitrarily enforced and that no federal grant recipient could possibly know how to conform to their dictates. This is true despite the language that they will only be enforced "to the maximum extent allowed by law." ECF 122 at 11. As demonstrated in *Am.*

---

[4] The government suggests that a facial challenge is foreclosed because the Supreme Court has only been applied once" applied the Due Process clause to a facial challenge outside of the criminal context. ECF at 14. Notably, the government does not argue that a facial challenge is foreclosed by either the Supreme Court or any other court.

*Public Health Assoc.*, 2025 WL 1822487, the same anti-diversity EOs at issue here that purport to allow the termination of DEI grants only "to the maximum extent allowed by law" and that the government claims are intended only to enforce federal anti-discrimination laws provide no guidance. *Id.* at *5. There, as here, "the record [was] completely devoid of a definition" of DEI. *Id.* *16. And the result was arbitrary and capricious decision making because the government could "to arrive at whatever conclusion it wishe[d] . . ." *Id.* at *17. Accordingly, as the *Am. Public Health* court concluded, the government violated federal anti-discrimination laws rather than enforced them. *Id.* at * 2 n. 5.

CWIT has brought a facial and an as applied challenge. ECF 1 ¶¶ 128-139. It has the right to conduct discovery to show that the anti-diversity EOs are arbitrarily enforced and that no one could possibly know how to conform to their dictates. This is true despite the language that they will only be enforced "to the maximum extent allowed by law." ECF 122 at 11. As found in *Am. Public Health Assoc.*, 2025 WL 1822487, the anti-diversity EOs provided no guidance at all to the government's decisionmaking—the agencies could "arrive at whatever conclusion [they] wishe[d] . . ." *Id.* at *17. And, as noted, the government violated federal anti-discrimination laws rather than enforced them. *Id.* at * 2 n. 5.

For these reasons, CWIT has stated a valid due process claim. *Manning v. Caldwell for City of Roanoke*, 930 F.3d 264, 278 (4th Cir. 2019) (finding statute "unconstitutionally vague" because a term in the statute "invites the very type of arbitrary enforcement that the Constitution's prohibition against vague statutes is designed to prevent," including as applied to the plaintiffs in the case); *Margaret S. v. Edwards*, 794 F.2d 994, 999 (5th Cir. 1986) (holding that a statute which prohibited "experimenting" on fetus was unconstitutionally vague because

17

"physicians who treat pregnant women are being threatened with an inherently standardless prohibition" when being asked to distinguish "between medical experiments and medical tests.").

### D.    CWIT Adequately Pled Its First Amendment  Claims

The government again invokes *Rust v. Sullivan*, 500 U.S. 173 (1991), for the proposition that the Termination Provision is not unlawful because the government can refuse to fund speech without violating the First Amendment.  The government continues that, because the Termination Provision does not authorize termination of grants based on speech outside of the scope of the funded activities, it cannot impose viewpoint discrimination or an unconstitutional condition.  ECF 122 at 14.  In support of these propositions, the government cites *Nat'l Urban League v. Trump*, No. 25-471 (TJK), 2025 WL 1275613 (D.C.D.C. May 2, 2025), and *Nat'l Assn' of Diversity Officers in Higher Educ. v. Trump*, No. 25-1189, Dkt. No. 29 (4th Cir. Mar. 14, 2025).  The government's arguments are meritless.

First, the decisions relied on by the government were not decided on a motion to dismiss. *Rust* is a summary judgment case and all had established factual predicates.  The others are preliminary injunction cases where at issue is whether a stay should issue.

Second, the government's assertion that it is controlling speech only within the scope of the funded activities does not address how CWIT's allegations under the standards applicable to a motion to dismiss fail.  Also, even were the statement to be accorded some consideration, as noted by the Supreme Court, "conditions that define the federal program and those that reach outside it—[are] not always self-evident...." *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 217 (2013).

Third, "even in the provision of subsidies, the government may not 'ai[m] at the suppression of dangerous ideas.'" *Finley,* 524 U.S. at 587 (quoting *Regan v. Taxation With Representation of Wash.,* 461 U.S. 540, 550 (1983))*.*  The Supreme Court has recognized that

"the government can violate the First Amendment by withholding benefits for a censorious purpose . . . ." *Koala v. Khosla,* 931 F.3d 887, 898 (9th Cir. 2019) (discussing *Finley*, 524 U.S. at 587, *Regan*, 461 U.S. at 548, *Speiser v. Randall*, 357 U.S. 513, 518–19 (1958), *Perry v. Sindermann*, 408 U.S. 593, 597 (1972)).

Fourth, *Rust* is no panacea for the further reason that it does not allow the government to arbitrarily cut federal funding. According to *Rust*, the government has the specific right not "to fund activities, including speech, which are specifically excluded from the scope of the project funded." 500 U.S. at 194-95. But *Rust* does not allow the government to single out of an idea because it is dangerous or disfavored. As the Supreme Court later observed, "Title X [at issue in *Rust*] did not single out a particular idea for suppression because it was dangerous or disfavored; rather, Congress prohibited Title X doctors from counseling that was outside the scope of the project." *Legal Servs. Corp. v. Velasquez*, 531 U.S. 533, 541 (2001). Unlike Title X, the Termination Provision is "not directed towards advancing any legitimate objectives embedded within the programs they burden—as appropriated and determined by Congress—but towards disfavored speech." *S.F. A.I.D.S. Foundation*, 2025 WL 1621636 at *17.

Nor does Finley assist the government here. The anti-diversity EOs are patently aimed at specific speech—i.e., speech that promotes or advances DEI and equity—while clearly tolerating speech in opposition to those principles. As the Court noted in *S.F. A.I.D.S. Foundation*, *Id.* at *18: "[t]his is precisely the kind of 'invidious viewpoint discrimination' that the Supreme Court has suggested would present First Amendment concerns even in the context of federal subsidies. *See Finley*, 524 U.S. at 587 (explaining that the result in *Finley* would likely be different 'if the NEA were to leverage its power to award subsidies on the basis of subjective criteria into a penalty on disfavored viewpoints'").

19

Finally, the government's application of the anti-diversity EOs establish concretely the plausibility of CWIT's First Amendment claims. The government has applied the anti-diversity EOs in an arbitrary and capricious manner that violate anti-discrimination laws." *Am. Public Health Assoc.*, 2025 WL 1822487 at *17; *see also id.* *2 n 5. That the government is willing to apply EOs of the type at issue here in violation of the First Amendment is further shown by the government's interpretation of an EO intended to end funding for any programs that promote gender ideology. According to the government, this EO allows the government to control the pronouns grantees use to address clients "even when addressing them by such pronouns is pure speech that has no relation to the public health objectives for which the federal grants they receive aim to fund." *S.F. A.I.D.S. Found.*, 2025 WL 1621636 at *17.

In short, CWIT's sufficiently alleges First Amendment claims.

### E. Neither The Separation of Powers Nor the Spending Clause Claims Should Be Dismissed

#### 1. The Court's Decision as to the WANTO Grant Is Correct

The government again attempts to transform CWIT's constitutional claims into statutory claims. ECF 122 at 17-20, 25-27. Under both *Dalton v. Specter*, 511 U.S. 462 (1994), and *Trump v. Sierra Club*, 140 S. Ct. 1 (2019), the government's arguments fail.

This Court has already found *Dalton* does not apply here. ECF 90 at 11 ("*Dalton* is inapposite."). And nothing in the government's motion to dismiss warrants a different result. As this Court explained, *Dalton* confirms that where, as here, CWIT claims the executive branch lacks discretion to act as it has (*i.e.*, by directing DOL to terminate all equity-related grants despite Congressional direction that the WANTO Act must be used to fund equity-related grants), CWIT properly asserts a constitutional claim. ECF 90 at 10; *Dalton*, 511 U.S. at 473-74.

Recognizing that this Court has rejected its argument, the government attempts to re-cast the Court's decision as "inferr[ing] that Congress, through the WANTO Act appropriations provision, *mandated* DOL to pay appropriated amounts to CWIT" and therefore DOL cannot terminate CWIT's WANTO grant for any reason. ECF 122 at 18 (emphasis in original). But neither CWIT nor this Court has taken the position that DOL was required to award a grant to CWIT or that CWIT is insulated from its grant being terminated for statutorily approved reasons.[5] Rather, CWIT argues that because it was awarded funds through the WANTO Act, and because the WANTO Act requires the DOL to fund "projects impacting women" (ECF 68 at 38), the government cannot terminate CWIT's WANTO grant on the basis that it violates the anti-diversity EOs as an "equity-related" grant.

The government also argues that under the appropriations provisions of the WANTO Act, DOL is vested with the discretion to decide which programs it should fund. ECF 122 at 20. But the government may not withhold funds appropriated to promote a specific viewpoint simply because a new administration disagrees with that viewpoint. *See City & Cnty. of S.F. v. Trump,* 897 F.3d 1225, 1235 (9th Cir. 2018) (administration may not withhold properly appropriated

---

[5] The government's argument becomes even more attenuated as it tries to draw an unnecessary distinction between a facial and an as applied separation of powers challenge to the Termination Provision. ECF 122 at 19-20. The Supreme Court has confirmed that "[t]he label is not what matters." *Doe v. Reed,* 561 U.S. 186, 194 (2010). And, because CWIT does not claim that the government is constrained from terminating "*any* WANTO Act grant in *any* way" (ECF 122 at 19, emphasis in original), the cases on which the government relies are inapt. *See Reed,* 561 U.S. at 201 (rejecting broad First Amendment challenge, but noting that a narrower challenge is not foreclosed); *Int'l Union of Operating Engineers Local 139 v. Schimel,* 863 F.3d 674 (7th Cir. 2017) (claim that right-to-work law prohibiting union agreements was facially invalid as an unconstitutional taking dismissed because relief sought was too broad); *Ezell v. City of Chi.,* 651 F.3d 684 (7th Cir. 2011) (plaintiffs entitled to preliminary injunction based on Second Amendment claim where prohibition on all firing ranges was found too broad); *Trump v. Am. Fed'n of Gov't Employees,* No. 24A1174, 2025 WL 1873449, at *1 (S. Ct. July 8, 2025) (granting stay in shadow docket but expressing no view on the underlying issue because agency plans were not before the Court).

funds to advance its own policy goals). Moreover, *Milk Train v. Veneman*, 310 F.3d 747 (D.C. Cir. 2002), is distinguishable because it does not address already appropriated funds, as is the case here.

In a last ditch attempt to paint CWIT's constitutional claims with a statutory brush, the government misleadingly characterizes the Supreme Court's grant of a stay in *Sierra Club* as "endors[ing]" the government's position. ECF 122 at 25-26. However, a stay decision "is not a ruling on the merits." *Merrill v. Milligan*, 142 S. Ct. 879 (2022) (Kavanaugh, J., concurring). And the stay applied to a permanent injunction, not a motion to dismiss.

## 2. There Is No Basis For This Court to Reconsider Its Prior Jurisdictional Ruling Regarding the Tucker Act

The government argues that the Court should "reconsider [its] finding" that the Tucker Act does not preclude CWIT from pursuing its separation of powers claims in the district court. ECF 122 at 28. The government contends that the Court found that the Tucker Act does not divest it of jurisdiction because CWIT's allegations about chilled speech concern only the First Amendment. The government further argues that "the heart of all other challenges . . . is CWIT's desire to prevent terminations of certain grants and contracts and thus ensure continued disbursement of money." ECF 122 at 21.

The Court addressed these arguments, concluding that "CWIT's claims are not in essence contract claims." ECF 68 at 20; *see also Thakur v. Trump*, Case No. 25-cv-04737-RFL, 2025 WL 1734471 at *20 (N.D. Cal. June 23, 2025) (holding Plaintiffs' claims that the Termination Provision violated the First Amendment and APA claims did not "rely on the terms of any contract" reasoning that "[d]istrict courts routinely adjudicate viewpoint discrimination cases, regardless of whether the discrimination occurred through the act of terminating a contract").

The government seems to argue, this time, that because the Court found CWIT unlikely to succeed on its First Amendment claim with regard to the Termination Provision, the Tucker Act now divests this Court jurisdiction. ECF 122 at 28. The government cites no authority to support this one-sentence argument, much establish that the CWIT's allegations cannot pass muster under the standards that apply to a motion to dismiss. In any case, a one sentence blurb without support is no argument at all. *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority are waived").

Second, the government argues that "CWIT cannot escape the reach of the Tucker Act by explicitly requesting only injunctive relief." ECF 122 at 21-22 (citing *Dept' of Educ. v. California*, 145 S. Ct. 966 (Apr. 4, 2025)). Again, the Court addressed this argument, finding *California* "distinguishable" (ECF 68 at 22) and holding that CWIT's "sole focus on injunctive relief supports this Court's jurisdiction, as the Court of Federal Claims 'has no power to grant equitable relief.'" *Id.* at 21 (quoting *Bowen v. Massachusetts*, 487 U.S. 879, 905 (1988) (citation omitted)). Unlike the present case, *California* does not involve "claims asserting the infringement of constitutional rights, a request for declaratory judgment, or a request for injunctive relief preventing harm." *S.F. A.I.D.S. Foundation*, 2025 WL 1621636 at *12 (retaining jurisdiction over Plaintiffs' challenge to anti-diversity EOs and distinguishing *California*).

The government challenges this Court's decision insisting that this Court is wrong because *California*, like here, involved challenges to grants that the government had not terminated. However, district courts have repeatedly addressed the government's Tucker Act arguments and have retained jurisdiction in cases challenging EOs and involving plaintiffs like

CWIT who have not had their grants terminated. *See e.g., S.F. A.I.D.S. Foundation*, 2025 WL 1621636, at \*9, \*12 ) (retaining jurisdiction over Plaintiffs' claims who "will likely lose federal funding for their organizational activities" as a result of, *inter alia*, the anti-Diversity EOs); *S.F. Unified Sch. Dist. v. Americorps*, Case No. 25-cv-02425-EMC, 2025 WL 974298 (N.D. Cal. Mar. 31, 2025) (retaining jurisdiction over Plaintiffs' claims challenging new conditions to grants pursuant to anti-diversity EOs).[6]

Finally, several courts to consider the issue post- *California* (*San Francisco A.I.D.S Found.*, *San Francisco Unified Sch. Dist.*, *Thakur*) including this one, have concluded that *Bowen* controls and that grant termination actions belong in district courts. Here, the government makes *no* attempt to square *California.* with *Bowen*, which this Court found controlling, and makes no attempt to explain why courts that have agreed with this Court's conclusion are wrong. *See e.g., S. Educ. Found v. United States Dep't of Educ.*, Civ. Action No. 25-1079(PLF), 2025 WL 1453047 at \*9 (D.D.C. May 21, 2025), ("Defendants make no attempt to square [*California*] with *Bowen* ..."); *Woonasquatucket River Watershed Council v. U.S. Dep't' of Agric.*, C.A. No. 1:25-cv-00097-MM-PAS, 2025 WL 1116157, at \*15 (D.R.I. Apr. 15, 2025) ("the Court cannot disregard *Bowen*" because it "directly controls") (internal citation omitted); *Elev8 Balt., Inc. v. Corp. for Nat'l & Cmty. Serv.*, Civ. No. MJM-25-1458, 2025 WL 1865971, at \*13-14 (D. Md. July 7, 2025) (collecting post- *California* grant cases that *Bowen* controls).

---

[6] The government cites several post- *California* cases concluding that grant termination actions belong in the Court of Federal Claims. ECF-122 at 22. None of these cases involve purely constitutional claims as is the case here. *Compare Solutions in Hometown Connection v. Noem*, Civ. Action No. 25-cv-00885-LKG, 2025 WL 1103253 at \* 1 (D. Md. Apr. 11, 2025) (Plaintiffs brought APA claims); *Am. Ass'n of Colleges for Teacher Educ. v. McMahon*, No. 25-1281, 2025 WL 1232337 at \* 1 (4th Cir. Apr. 10, 2025) (same); *Mass. Fair Hous. Ctr. v. Dep't of Hous. & Urb. Dev.*, Civ. Action No. 25-30041-RGS, 2025 WL 941380 \* 2 (D. Mass. Mar 26, 2025), *order dissolved* 2025 WL 1225481 (D. Mass. Apr. 14, 2025) (same).

For these reasons, and those set forth in this Court's preliminary injunction opinion, the government's argument should be rejected.

### 3. There Is No APA Claim and CWIT Can Invoke the Court's Equitable Authority

Nowhere in the Complaint is there a claim based on the Administrative Procedure Act. Yet, the government relies on a nonexistent APA claim to argue that CWIT cannot seek non-statutory review due to the availability of the APA or Tucker Act. ECF 122 at 23. For the reasons explained above, the arguments regarding the Tucker Act are meritless. The Government's arguments regarding the APA are even more so.

To bring an APA claim, there must be final agency action. 5 U.S.C. § 704. Here, because the government has not terminated CWIT's grants, as result of the preliminary injunction, there is not a final agency action on termination. The government cites to footnote 22 of CWIT's complaint, in which CWIT reserves its right to amend the Complaint to include APA claims, as if it were proof that the APA applied. But a footnote that signals that CWIT reserves the right to bring an APA upon the execution of a final agency action does not create an APA claim that could provide CWIT with relief.

Citing to *DCH Reg'l Med. Ctr. v. Azar*, 925 F.3d 503 (D.C. Cir. 2019), the government makes a final puzzling argument, claiming that "extreme error" is required for this Court to rule on CWIT's non-statutory claims. ECF 122 at 25. The case has no application. In *DCH*, at issue was the narrow set of circumstances in which a court could disregard a statutory bar on judicial review. *Id.* at 509. In that context, the case law required, among other things, an implied statutory preclusion of review and an "extreme" agency error. *Id.* Here, no such statutory bar exists. The reasoning is entirely inapposite.

## II.      THE MOTION TO DISMISS SHOULD BE DENIED AS TO THE CERTIFICATION PROVISION

### A.      CWIT Has Standing

The government claims that CWIT does not have standing to bring a challenge to the Certification Provision because CWIT fails to show an imminent, concrete, and particularized injury.  The government claims that this Court's conclusion to the contrary relied on allegations as to the Termination Provision.  Moreover, the government relies on *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014), claiming that *generally* to have pre-enforcement standing there must be a showing of specific statements a plaintiff intends to make, a history of past enforcement of the law, enforcement warning letters, and enforcement statutes that could easily be used against a plaintiff.  ECF 122 at 28 (emphasis added).  In addition, the government argues that CWIT must declare an intent to violate the law and that any claimed injury is not objectively reasonable.  ECF 122 at 28-31.  The government's arguments fail.

### 1.      CWIT Alleges and Demonstrated a Credible Threat of Enforcement

This Court properly found that CWIT's allegations and the declarations submitted in connection with CWIT's motions for a TRO and preliminary injunction were sufficient to establish "concrete injuries of fact" as to both the Termination and Certification Provisions.  ECF 52 at 5-7, 18; ECF 68 at 11-16; ECF 1 ¶¶ 92-101 (allegations as to how the EOs chill speech); *see also* ¶¶ 107, 113 (certification provision chills speech).

Next, the test under *Susan B. Anthony List* is not different than what this Court applied.  The test is whether a party "ha[s] alleged a credible threat of enforcement."  573 U.S. at 159; *Brown v. Kemp*, 86 F.4th 745, 761 (7th Cir. 2023).  A party establishes such a threat by showing its intention to engage in the conduct that is arguably prescribed by the government edict.  *Babbit v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979); *Brown*, 86 F.4th at 761.  CWIT

has made those allegations, which must be accepted as true. ECF 1 ¶¶ 32-41, 92-101. CWIT has also properly alleged its actual and well-founded fear that the EOs will be enforced against it. *Babbitt*, 442 U.S. at 298; *Brown*, 86 F.4th at 761; Statement of Facts Section D. In fact, as to the Certification Provision, the Attorney General, citing the J21 EO, made clear that the DOJ's Civil Rights Division "will investigate, eliminate, and penalize illegal DEI and DEIA preferences, mandates, policies, programs, and activities in the private sector and in educational institutions that receive federal funds." ECF 1 ¶ 89.

CWIT's allegations pass muster under the standards applicable to a motion to dismiss.

### 2. CWIT Has Alleged that the Conduct in which it Engages Falls within the Scope of the Executive Orders

It is not the case, as the government argues, that CWIT must "allege that it *intends* to engage in conduct that violates federal anti-discrimination laws." ECF 122 at 29 (emphasis in original). As the Seventh Circuit has explained, "a plaintiff does not need to show or confess that her intended conduct will actually violate the statute in question if enforcement is likely against her." *Brown*, 86 F.3d at 761 (citing *Babbitt*, 442 U.S. at 301-02). It is enough that the conduct is arguably prescribed by the government edict. *Id.* Here, CWIT has alleged that it is *actually engaging* in conduct—programming to advance opportunities for women in skilled trades—that falls within the intentionally opaque proscriptions of the Certification Provision. ECF 1 ¶¶ 32-41, 92-101; Statement of Facts Section D. This is unlike *Wirfshafter v. Trustees of Indiana Univ.*, No. 1:24-cv-00754-RLY-MKK, 2025 WL 1558171 * 5 (S.D. Ind. May 29, 2025), where plaintiffs could say no more than they "would like" to engage in the proscribed conduct. The same is true of *Simic v. City of Chi*, 851 F.3d 734 (7th Cir. 2017), where it was unclear that the plaintiff was engaged in any conduct that fell within the challenged law.

### 3. CWIT Has Properly Alleged a Chilling Effect

Finally, the government claims that CWIT cannot show an objectively reasonable chilling effect from the Certification Provision because the Certification Provision only requires "compliance with antidiscrimination laws" and CWIT could assert its confusion as a defense to a False Claims Act claim. ECF 122 at 30. Moreover, according to the government, CWIT has alleged no self-censorship because courts require specific showings of self-censorship. ECF 122 at 30-31.

The Certification Provision does not require compliance with antidiscrimination laws. It requires a certification that CWIT does not operate "any programs *promoting DEI* that violate any applicable Federal anti-discrimination laws." J21 EO § 3(iv)(B). There is no definition of DEI. There is no definition of promote. The government has demonstrated its intent to enforce DEI EOs as shown in *Am. Public Health Assoc.*, 2025 WL 1822487 at * 1, and as demonstrated in this case. Statement of Facts, Section D. The fear is demonstrably objective.

Nor is it dispositive to claim that CWIT can assert a defense in a False Claims Act case. A party need not await prosecution or enforcement to bring a claim. "A party who is the target of an unconstitutional law need not expose himself to liability before challenging its constitutionality if there are "circumstances that render the threatened enforcement sufficiently imminent." *Brown*, 86 F.4th at 761.

As to the argument that CWIT must make a specific showing of self-censoring, the cases cited by the government do not say that. ECF 122 at 31. Rather, these cases merely describe how such allegations were in fact made in the respective cases. Moreover, CWIT's allegations do more than allege how it felt "pressured" to self-censor. ECF 122 at 31. CWIT alleges that as a result of the EOs, "CWIT lost its ability to do and promote its work . . . ." ECF 1 ¶ 93. And that it has "lost partnerships with other organizations . . . ." ECF 1 ¶ 96.

28

**B.      The Government's Motion as to the First Amendment Claim is Meritless**

The government claims that the Certification Provision "concerns activity that would violate federal anti-discrimination law [sic], not protected speech. ECF 122 at 31. For that reason, the government claims that there could not be a First Amendment violation given the "canon of constitutional avoidance." ECF 122 at 32. This argument is not only incorrect, but frivolous.

In applying the EOs, the government has evinced no desire to simply enforce anti-discrimination laws. The government's missives after the issuance of the EOs directed that CWIT immediately cease DEI, diversity, equity, and inclusion efforts without regard to whether those activities violated federal anti-discrimination laws. ECF 1 ¶¶ 79-80. The Attorney General did not claim that DOJ would enforce federal anti-discrimination laws when she invoked the J21 EO. Rather, she stated that DOJ's Civil Rights Division "will investigate, eliminate, and penalize illegal DEI and DEIA preferences, mandates, policies, programs, and activities in the private sector and in educational institutions that receive federal funds." ECF 1 ¶ 89.

Moreover, the government's refusal to define DEI gives the government the leeway to apply the Certification Provision in any way it wishes. That there is every reason to believe that is precisely what the government will do is shown by the government's actions in *Am. Public Health Assoc.*, 2025 WL 1822487 at * 1.

Last, this argument ignores the two additional reasons this Court enjoined the Certification Provision. First, as this Court noted, '[t]he government conceded at oral argument that the Certification Provision attempts to regulate grantee's speech outside of their federally-funded programs." ECF 68 at 24. The government says nothing about this concession. Second, as this Court concluded, even were the Certification Provision limited to "illegal DEI," "it is a

bedrock First Amendment principle that advocating for violation of law cannot be proscribed unless it rises to incitement." ECF 68 at 26.

### C. The Fifth Amendment Claim Should Not be Dismissed

The government claims that the Due Process claim challenging the Certification Provision should be dismissed because the vagueness doctrine does not apply, CWIT has no protectable property interest, and there is no liberty interest in any speech because the Certification Provision does not apply to speech. And in any case, it is not vague because the EOs are cabined by federal antidiscrimination law. ECF 122 at 33.

For the reasons explained with respect to the Termination provision, all of the government's arguments fail. The vagueness doctrine does apply. Argument I, C. There is a protectible interest. Argument I, C. The Certification Provision applies to speech. Argument II, B. And the Certification Provision is vague. Argument I, II.

Finally, the Certification Provision invokes the False Claims Act, a violation of which can give rise to criminal charges. *See* 18 U.S.C. § 287. The Attorney General has declared an intent to prosecute. Certainly, the Due Process clause protects against prosecution without due notice of the acts that justify the prosecution. *United States v. Plummer*, 581 F.3d 484, 488 (7th Cir. 2009).

### D. The Motion to Dismiss the Separation of Powers and Spending Clause Challenges Lack Merit

The entirety of this argument brings to mind Jonathan Swift's *A Modest Proposal*. The government's sole argument for dismissal of the separation of powers and spending clause challenges relies on its assertion that the Certification Provision is simply enforcing existing anti-discrimination law and imposes no new conditions on federal funds. ECF 122 at 33-35.

Before the anti-diversity EOs, the government had never demanded that CWIT or any other cease activities related to DEI, diversity, equity, inclusion. This demand is a new condition. As for the claim that the government is merely enforcing anti-discrimination laws, the opinion in *Am. Public Health Assoc.*, 2025 WL 1822487 at * 1, gives lie to that argument.

## CONCLUSION

For the foregoing reasons, this Court should deny the government's motion to dismiss in its entirety. Each of CWIT's claims have alleged factually and legally plausible claims for relief and each should be allowed to proceed to discovery and resolution by this Court.

Dated: August 1, 2025                    Respectfully Submitted,

/s/ *Jason P. Stiehl*
Jason P. Stiehl
CROWELL & MORING LLP
455 N Cityfront Plaza Dr.
Suite 3600
Chicago IL 60611
Tel: (312) 840-3108
jstiehl@crowell.com

/s/ *Anuj Vohra*
Anuj Vohra
Keith J. Harrison
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004
Tel: (202) 624-2500
avohra@crowell.com
kharrison@crowell.com

/s/ *Meshach Y. Rhoades*
Meshach Y. Rhoades
CROWELL & MORING LLP
1601 Wewatta Street
Suite 815
Denver, CO 80202
Tel: (303) 524-8660
mrhoades@crowell.com

/s/ *Warrington Parker*
Warrington Parker
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, CA 94111
Tel: (415) 986-2800
wparker@crowell.com

s/ *Sabrina A. Talukder*
Sabrina A. Talukder*
Kathryn J. Youker
Adria J. Bonillas
Olivia Sedwick
Gillian Cassell-Stiga
Lawyers' Committee for Civil Rights Under
Law

Elizabeth E. Theran
Adrienne DerVartanian
National Women's Law Center
1350 I Street NW, Suite 700
Washington, DC 20005
Telephone: (202) 588-5180
Fax: (202) 588-5185
etheran@nwlc.org
adervartanian@nwlc.org

1500 K Street, N.W. Suite 900
Washington, D.C. 20005
Telephone: (202) 662-8600
Facsimile: (202) 783-0857
stalukder@lawyerscommittee.org
kyouker@lawyerscommittee.org
abonillas@lawyerscommittee.org
osedwick@lawyerscommittee.org
gcassell-stiga@lawyerscommittee.org

Aneel L. Chablani (No. 6242658)
Ami D. Gandhi (No. 6282924)
Chicago Lawyers' Committee for Civil
Rights
100 N. LaSalle St., Ste. 600
Chicago, IL 60602
Telephone: (312) 630-9744
Facsimile: (312) 630-1127
achablani@clccrul.org
agandhi@clccrul.org

Lourdes M. Rosado
Rafaela Uribe
LATINOJUSTICE PRLDEF
475 Riverside Drive, Suite 1901
New York, NY 10115
Telephone: (212) 739-7583
lrosado@latinojustice.org
ruribe@latinojustice.org

*Attorneys for Chicago Women in Trades*

*\*Pro hac vice motion forthcoming*