IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **CHICAGO WOMEN IN TRADES,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 25 C 2005 |
| | ) | |
| **PRESIDENT DONALD J. TRUMP, DEPARTMENT OF LABOR, ACTING SECRETARY OF LABOR VINCENT MICONE, OFFICE OF MANAGEMENT AND BUDGET, DIRECTOR OF THE OFFICE OF MANAGEMENT AND BUDGET RUSSELL VOUGHT, U.S. DEPARTMENT OF JUSTICE, ATTORNEY GENERAL OF THE U.S. DEPARTMENT OF JUSTICE PAMELA BONDI,** | ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

On April 14, 2025, the Court issued a preliminary injunction enjoining the defendants—the Department of Labor (DOL) and various government officials—from enforcing section 3(b)(iv) of Executive Order 14173, which mandates that "every contract or grant award" must include "term[s]" requiring the recipient to "certify" certain matters. Exec. Order No. 14173, 90 Fed. Reg. 8633, § 3(b)(iv)(A)–(B). The Court concluded that enjoining enforcement against any grantee or contractor—rather than just the plaintiff, Chicago Women in Trades (CWIT)—was justified by the nature of the First Amendment rights at stake and the need to afford CWIT complete relief. *Chicago*

*Women in Trades v. Trump*, 778 F. Supp. 3d 959, 993–96 (N.D. Ill. 2025). The defendants have appealed the Court's preliminary injunction ruling.

About two and one-half months after the Court issued its ruling, the Supreme Court cautioned against issuing injunctions that cover nonparties. *Trump v. CASA, Inc.*, 606 U.S. 831, 837–38 (2025). About ten days after the *CASA* decision, the government filed a notice of appeal from the preliminary injunction decision. The appeal is pending before the Seventh Circuit. The next day, the government filed a motion asking this Court to issue an indicative ruling stating that it would limit the scope of the injunction if the Seventh Circuit remanded the case for that purpose, and to order a partial stay limiting the injunction pending appeal. Because the scope of the preliminary injunction comports with *CASA*, the Court overrules the government's motion in its entirety.

**Background**

Chicago Women in Trades is a non-profit organization dedicated "to promoting diversity, equity, and inclusion within the skilled trades industry." Compl. ¶ 12. It provides programming "centered on equity," including "training programs, best practices guides, employer resources, and advocacy to attract and retain women in skilled trades." *Id.* ¶ 35; Pl.'s Mem. in Supp. of Prelim. Inj. at 2. These programs are focused on "preparing women across the country to enter and remain in high-wage skilled trades, including carpentry, electrical work, welding, plumbing, and others." Compl. ¶ 12. Although primarily based in Illinois, CWIT "has provided technical assistance and gender equity training to industry stakeholders in all 50 states." Pl.'s Mem. in Supp. of Prelim. Inj., Vellinga Decl. ¶ 15; *see also* Compl. ¶ 37. As of the date CWIT filed this suit, it was receiving about forty percent of its annual budget from federal funding.

2

In the first two days of his administration, President Donald Trump issued two Executive Orders addressing diversity, equity, and inclusion (DEI). The January 20, 2025 Order (J20 Order), titled "Ending Radical and Wasteful Government DEI Programs and Preferencing," focused on ending DEI programs within the federal government. Exec. Order No. 14151, 90 Fed. Reg. 8339, § 1; Compl., Ex. A. The January 21, 2025 Order (J21 Order), titled "Ending Illegal Discrimination and Restoring Merit-Based Opportunity," focused on "enforcing civil rights laws" by "ending illegal preferences and discrimination" in the federal government and the private sector. Exec. Order No. 14173, 90 Fed. Reg. 8633, § 1; Compl., Ex. B.

CWIT brought this lawsuit to challenge the legality of several provisions in the Executive Orders. As relevant to the present motion, CWIT challenges the Certification Provision of the J21 order. That provision requires the "head of each agency" to include "term[s]" in "every contract or grant award" that require the counterparty to "certify" certain matters. *Id.* § 3(b)(iv)(A)–(B). Specifically, two terms are to be included in every contract or grant agreement under the J21 Order:

> (A) A term requiring the contractual counterparty or grant recipient to agree that its compliance in all respects with all applicable Federal anti-discrimination laws is material to the government's payment decisions for purposes of [the False Claims Act]; and
>
> (B) A term requiring such counterparty or recipient to certify that it does not operate any programs promoting DEI that violate any applicable Federal anti-discrimination laws.

*Id.* CWIT claims that the Certification Provision violates the First Amendment by regulating speech and conduct outside the contours of the federal grants.

On April 14, 2025, the Court determined that CWIT was likely to prevail on the merits of its First Amendment challenge and that a preliminary injunction against

3

enforcement of the Certification Provision was warranted.[1]  *CWIT*, 778 F. Supp. 3d at 983–985, 994–96.  The Court directly addressed the question of the scope of the preliminary injunction and concluded that enjoining enforcement "against *any* grantee or contractor" was appropriate for three main reasons.  *Id.* at 994.  First, "because CWIT has raised a facial challenge, the Court's analysis that the Certification provision violates the First Amendment applies to all federal grantees and contractors."  *Id.*  Second, the Court found that it was likely that the Certification Provision would impact and chill protected speech of other grantees and contractors.  *Id.* at 994–95.  Third, the Court observed that enjoining enforcement against other grantees and contractors likely was necessary to afford CWIT complete relief.  *Id.* at 995.  Otherwise, there would be a "strong likelihood" that other entities would be reluctant to collaborate with CWIT.  *Id.*

On June 27, 2025, the Supreme Court addressed the propriety of so-called universal injunctions in *Trump v. CASA, Inc.*, holding that district courts lack the authority under the Judiciary Act of 1789 to enjoin nonparties when doing so is not necessary to administer complete relief between the parties.  . *CASA*, 606 U.S. at 847, 850–54, 861. The government filed a notice of appeal from the preliminary injunction in this case about ten days later, and its appeal is pending before the Seventh Circuit.  The government then filed the present motion, which the Court has construed as (at least in part) a motion for reconsideration.  The motion contains two related requests.  First, the government asks the Court to indicate that it would limit the injunction to, at most, CWIT and its partners if the Seventh Circuit remanded the case.  Second, the

---

[1] The Court also found that the other considerations for a preliminary injunction were met.  *CWIT*, 778 F. Supp. 3d at 992–93; *see also Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (listing factors).

4

government asks for a partial stay similarly limiting the injunction pending appeal.

## Discussion

**A.     Jurisdiction to issue partial stay pending appeal**

"[T]he filing of a notice of appeal . . . confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982). As a result, a district court cannot grant a motion asking it to alter its decision on an issue pending on appeal. But when a district court is asked to grant "relief that the court lacks authority to grant because of an appeal that has been docketed and is pending," it may "(1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." Fed. R. Civ. P. 62.1. The latter is what the government seeks by way of its request for an "indicative ruling." By stating that it would grant the motion rather than actually granting it, a district court avoids exceeding its jurisdiction under *Griggs*.

In addition to requesting an indicative ruling, the government asks the Court to act now and partially stay the injunction pending appeal. A district court unquestionably has authority to stay a preliminary injunction pending appeal. *See* Fed. R. Civ. P. 62(d)

**B.     Standards for reconsideration and stay**

The Court turns next to clarifying the appropriate legal standard. CWIT argues that the Supreme Court's recent decision in *CASA* is an insufficient reason to grant the government's motion. It contends that the government's motion must qualify under one of the six "Grounds for Relief from a Final Judgment, Order, or Proceeding" set out in

Federal Rule of Civil Procedure 60(b). That rule provides:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). CWIT contends that the "only likely applicable category is the catchall for 'any other reason that justifies relief.'" Pl.'s Opp. to Mot. for Indicative Ruling and Partial Stay at 4–5 (quoting Fed. R. Civ. P. 60(b)(6)). But according to CWIT, "even if the Court's injunction was premised on an error of law . . . , errors of law do not generally warrant relief" under the catchall provision in Rule 60(b)(6). *Id.* at 5 (citing *Banks v. Chi. Bd. of Educ.*, 750 F.3d 663, 667 (7th Cir. 2014)).

Rule 60(b), however, does not apply. By its terms, the Rule applies to relief from a "*final* judgment, order, or proceeding." Fed. R. Civ. P. 60(b) (emphasis added). By definition, a preliminary injunction is not final. Thus Rule 60(b) does not supply the applicable standard for the government's motion. *See Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570, 571 (7th Cir. 2006) (stating that Rule 60(b) "is inapplicable to interlocutory orders"). Instead, "[t]he authority of a district judge to reconsider a previous ruling in the same litigation . . . is governed by the doctrine of the law of the case, which authorizes such reconsideration if there is a compelling reason." *Id.* at 571–72. That includes a "change in, or clarification of, law that makes clear that the

6

earlier ruling was erroneous," which is what the government claims *CASA* is. *Id.* at 572. In short, Rule 60(b) presents no barrier to the government's motion.

Whether the Court should issue a partial stay of the preliminary injunction pending appeal likewise turns, at least in part, on the question of whether the Court's earlier ruling survives *CASA*. In a suit against the government, like this one, the party seeking the stay must show: a likelihood of success on the merits, a threat of irreparable injury, and the public interest favors the stay. *Nken v. Holder*, 556 U.S. 418, 434–35 (2009). In this case, the government's argument for each consideration depends on its claim that the injunction is overly broad under *CASA*. If the government is correct on that point, it has shown irreparable injury, and the public interest likely favors a stay. *See CASA*, 606 U.S. at 859–61.

The Court therefore proceeds to address whether the scope of the preliminary injunction is appropriate after *CASA*.

**C.     The scope of the injunction**

In *CASA*, the Supreme Court stayed three universal injunctions that enjoined enforcement of Executive Order No. 14160—which "identifies circumstances in which a person born in the United States is . . . not recognized as an American citizen"—against anyone in the country. *Id.* at 837–39. The sole issue before the Court was "one of remedy: whether, under the Judiciary Act of 1789, federal courts have equitable authority to issue universal injunctions." *Id.* at 839. The Court answered no to that question, observing that injunctions historically have tended to be party specific. *Id.* at 842–47.

The Supreme Court recognized, however, that a court may enjoin enforcement

7

against nonparties to "administer complete relief *between the parties*." *Id.* at 851, 861 (quoting *Kinney-Coastal Oil Co. v. Kieffer*, 277 U.S. 488, 507 (1928)). It explained that "while party-specific injunctions sometimes advantage nonparties, they do so only incidentally." *Id.* at 851 (cleaned up). The Court provided an "archetypal case: a nuisance in which one neighbor sues another for blasting loud music at all hours of the night." *Id.* In that situation, though a court's "only . . . feasible option"—"order the defendant to turn her music down"—would "necessarily benefit the defendant's surrounding neighbors too[,] there is no way 'to peel off just the portion of the nuisance that harmed the plaintiff.'" *Id.* at 851–52. So, the Court asserted, "while the . . . injunction might have the *practical effect* of benefiting nonparties, that benefit is merely incidental." *Id.* at 852 (cleaned up).

In addition, the Court acknowledged that "[t]here may be other injuries for which it is all but impossible for courts to craft relief that is complete *and* benefits only the named plaintiffs," such as harm caused by racially gerrymandered congressional maps. *Id.* at 852 n.12 (citing *Shaw v. Hunt*, 517 U.S. 899 (1996)). It explained that the question under the complete-relief principle is "whether an injunction will offer complete relief *to the plaintiffs before the court*." *Id.* at 852 (citing *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)). Applying this test, the Court concluded that prohibiting enforcement of the Executive Order against only the children of the individual plaintiffs was sufficient to give those plaintiffs complete relief without extending the injunction to "all other similarly situated individuals." *Id.* at 852–53.

The Court treated the plaintiff States differently. The States had argued that a "blanket ban on the enforcement of the Executive Order" was necessary to provide

8

complete relief to them. *Id.* at 853. Otherwise, they would incur financial costs and administrative burdens from having to track and verify the immigration status of the parents of every child for whom they provide federally funded benefits. *Id.* The government responded that such an injunction, even if necessary for complete relief, would be overly burdensome. *Id.* The Supreme Court declined to take up these arguments in the first instance and instead remanded the case to the lower courts to determine whether a narrower injunction was appropriate regarding the States. *Id.* at 854. In doing so, it cautioned that "[c]omplete relief is not a guarantee—it is the maximum a court can provide." *Id.*

The government argues that the preliminary injunction in this case "directly contravenes these principles" and must be narrowed, for two main reasons. Defs.' Mot. for Indicative Ruling and Partial Stay at 5. First, in the government's view, the injunction "goes beyond simply enjoining DOL with respect to CWIT with 'mere incidental' benefits to nonparties—it provides relief directly *to* nonparties." *Id.* Second, the government contends that "even if an injunction beyond CWIT could theoretically make CWIT's relief 'more complete,'" enjoining enforcement of the Certification Provision against all DOL funding recipients is "unduly burdensome." *Id.*

These arguments do not persuade the Court that it must narrow the injunction. Regarding the first point, it is true that one of the Court's reasons for enjoining enforcement against nonparties was to directly protect nonparties' First Amendment rights. But enjoining all enforcement was and remains necessary to provide CWIT complete relief. In particular, it is necessary to protect CWIT's ability to partner and collaborate with others, something CWIT has done consistently in the past and intends

9

to do in the future. If the Court were to only enjoin enforcement against CWIT, other recipients of federal funds would still be subjected to the Certification Provision. As the Court previously observed, that provision offers no definition of DEI and thus chills recipients from engaging in a wide range of activities. This chilling effect is likely to encompass much, if not all, of CWIT's programming. *See* Pl.'s Mem. in Supp. of Prelim. Inj., Vellinga Decl. ¶ 50 ("Equity is the throughline across everything CWIT does."). For other recipients, collaborating with CWIT would come with the risk of losing federal funding or making a certification that will be deemed false and thus subject them to liability under the False Claims Act. By enjoining enforcement against all recipients, the injunction protects CWIT from losing its collaborative prospects due to the Certification Provision. The benefit to the covered nonparties is incidental to that need.

This same reasoning rebuts the government's contention that enjoining enforcement against all recipients is inappropriate because it is unduly burdensome. The likelihood that the Certification Provision will shut down efforts at collaboration is an important part of the harm that provision causes CWIT. Protecting CWIT from that harm is equally important.

The government's response is that covering "thousands of current and prospective DOL funding recipients" is unwarranted because "while it may be theoretically possible for CWIT to enter into partnerships with any one of those current and prospective DOL recipients, in practice, CWIT has only partnered with a handful of recipients." Defs.' Mot. for Indicative Ruling and Partial Stay at 5. Most future collaborations, the government asserts, are "purely hypothetical" and "would not even sufficiently establish CWIT's standing to seek injunctive relief—let alone justify universal

10

relief." *Id.* at 6. On the other side of the scale, the government points out, is the burden from "outright barring an Executive Branch agency from carrying out the President's directive with respect to *any* of its thousands of funding recipients." *Id.* The government warns that enjoining all enforcement under these circumstances would conflate complete relief with universal relief. Instead, it urges that narrowing the injunction to enjoin enforcement against, at most, "CWIT and the few DOL funding recipients with whom CWIT *actually* partners would provide CWIT with complete relief." *Id.* at 5.

The Court disagrees. The core problem with the government's reasoning is that it downplays the harm to CWIT that justifies the scope of the injunction. The government's argument assumes that a cognizable injury occurs only when the Certification Provision cuts off CWIT's relationship with another recipient who is ready to partner, or has already partnered, with CWIT. In reality, the chilling effect from the Certification Provision harms CWIT much sooner. It disrupts CWIT's existing collaborations, as the government focuses on, but it also risks dissuading others from beginning discussions with CWIT; from reaching out to CWIT themselves; or from contemplating, internally, whether to do so. That effect—and the corresponding harm to CWIT—applies to anyone subject to the Certification Provision (including those who are considering applying for federal funding in the future), not just those CWIT is currently or likely to be partnered with. Accordingly, the injunction should cover anyone subject to the Certification Provision and not, as the government requests, only those entities with which CWIT has already partnered.

Enjoining all enforcement in this case is also consistent with other well-accepted jurisdictional and remedial principles. It is possible that the government is correct that

11

federal courts should draw remedial and standing limitations in line with one another to avoid jurisdictional end-runs. See Defs.' Reply in Supp. of Mot. for Indicative Ruling and Partial Stay at 6. (citing *Washington v. Trump*, 145 F.4th 1013, 1041 (9th Cir. 2025) (Bumatay, J., concurring and dissenting in part)). But the government's analogy to standing—that harm to CWIT from the chilling effect on others is too speculative for standing—ignores the fact that CWIT's challenge, and the basis for the preliminary injunction, is rooted in a facial First Amendment claim.

Courts, including the Supreme Court, have long recognized that a plaintiff may bring a facial First Amendment challenge "not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the [challenged law]'s very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 956–57 (1984) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973)). And such a challenge—if successful—justifies an "expansive remedy . . . suspending *all* enforcement" of the challenged law, to protect "an uninhibited marketplace of ideas" and "reduce the[] social costs caused by the withholding of protected speech." *Virginia v. Hicks*, 539 U.S. 113, 119 (2003).

Moreover, the injury to CWIT is not merely an abstract social cost; the Certification Provision, if enforceable against others, acts as a barrier to collaborating with CWIT. The benefit to CWIT from removing that barrier would suffice for Article III standing and, more relevant to this motion, warrants enjoining enforcement against others. See *Diamond Alt. Energy, LLC v. EPA*, 145 S. Ct. 2121, 2136–2139 (2025) (holding that predictable downstream effects from the government's regulation of a third

12

party suffice for Article III standing, even without evidence from the third parties supporting the plaintiffs' theory of injury).

Finally, the Court—keeping in mind that "complete relief" is a narrower concept than "universal relief"—concludes that enjoining all enforcement of the Certification Provision is justified by the "necessities of the particular case." *See CASA*, 606 U.S. at 854 (quoting *Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944)). CWIT as a plaintiff, like the plaintiff States in *CASA*, presents special considerations for crafting the remedy in this case. A main focus of CWIT's work—"providing technical assistance and gender equity training to industry stakeholders"—is inherently collaborative. *See* Compl. ¶¶ 36–38. Furthermore, CWIT has collaborated with others across the country, and there is no reason to think that it no longer intends to do so.

Given the range of potential partners that may be chilled by enforcement of the Certification Provision, it is impracticable to require CWIT, as the government requests, to identify each of the nonparties that it believes it is likely to collaborate with. And because the chilling effect would preemptively shut the door on those collaborative efforts, CWIT would have no way of knowing (let alone proving, which the government would likely demand) which nonparties it likely would have collaborated with but for the Certification Provision. Nor has the government, besides providing one example organization that CWIT disputes, taken up the task of identifying for the Court specific nonparties that should not be covered by the injunction. That leaves the Court with only "one feasible option" to afford CWIT complete relief at this stage: enjoin all enforcement of the Certification Provision. *Cf. CASA*, 606 U.S. at 852 (noting that a court may grant relief to nonparties if it is the only "feasible option" to afford the plaintiff complete relief).

13

In conclusion, enjoining enforcement of the Certification Provision against all recipients of federal funds is necessary to afford CWIT complete relief, supported by background jurisdictional remedial principles, and justified by the facts of the particular case. It is therefore consistent with the Supreme Court's decision in *CASA*. As a result, the Court declines to indicate that it would modify the scope of the injunction on remand, or to order a partial stay.

## Conclusion

For the reasons stated above, the Court denies the government's motion for an indicative ruling and partial stay [dkt. no. 119].

Date: October 30, 2025

_____
MATTHEW F. KENNELLY
United States District Judge